UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

DAVID BENSON-STAEBLER,

              Plaintiff,

           -against-

CITY OF NEW YORK; Sergeant SHAUN
BROWN, Shield No. 00875; Police Officer
MICHAEL CARACCIOLO, Shield No. 22016;
Lieutenant "BLAKE"; Lieutenant "GLUF"; and
JOHN and JANE DOE 1 through 10, individually
and in their official capacities (the names John and
Jane Doe being fictitious, as their true names are
presently unknown),

              Defendants.

-----------------------------------------------------------X

**AMENDED COMPLAINT**

Jury Trial Demanded

17-CV-04519 (AMD) (ST)

## NATURE OF THE ACTION

1.    This is an action to recover money damages arising out of the violation of Plaintiff's rights under the Constitution and laws of the United States of America.

## PRELIMINARY STATEMENT

2.    Plaintiff DAVID BENSON-STAEBLER brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for the wrongful acts of Defendants CITY OF NEW YORK ("CITY"), SERGEANT SHAUN BROWN (Shield No. 00875), POLICE OFFICER MICHAEL CARACCIOLO (Shield No. 22016), LIEUTENANT "BLAKE", LIEUTENANT "GLUF" and POLICE OFFICERS JOHN AND JANE DOE #1-10 (collectively "Defendants"), all acting under color of state law and pursuant to their official authority, in violation of Plaintiff's rights under the Constitution and laws of the United States of America.

## JURISDICTION AND VENUE

3.      This action seeks redress for the violation of Plaintiff's constitutional and civil rights, pursuant to, inter alia, 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America.

4.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## JURY DEMAND

6.      Plaintiff demands a trial by jury in this action.

## PARTIES

7.      Plaintiff DAVID BENSON-STAEBLER ("Plaintiff") was at all pertinent times a resident of Kings County, in the City and State of New York.

8.      Defendant CITY is a municipal corporation organized under the laws of the State of New York. It is authorized by law to maintain and operate the NYPD, an agency of Defendant CITY in the area of law enforcement. Defendant CITY is thereby responsible for the actions of the NYPD. The NYPD is responsible for the training, appointment, supervision, promotion and discipline of police officers and supervisory police officers, including the individually-named defendants herein.

9.      Defendants SERGEANT SHAUN BROWN ("BROWN"), POLICE OFFICER MICHAEL CARACCIOLO ("CARACCIOLO"), LIEUTENANT "BLAKE" and LIEUTENANT "GLUF", at all pertinent times, were carrying out their official duties as police officers, detectives or supervisors employed by the NYPD, with the authority attendant to those positions, under color of state law. Defendants BROWN,

2

CARACCIOLO, "BLAKE" and "GLUF" are sued in their individual and official capacities.

10.     Plaintiff presently does not know the real names and shield numbers of defendants JOHN and JANE DOE 1 through 10.

11.     Defendants JOHN and JANE DOE 1 through 10, at all pertinent times, were carrying out their official duties as police officers, detectives or supervisors employed by the NYPD, with the authority attendant to those positions, under color of state law. Defendant Police Officers JOHN and JANE DOE 1 through 10 are sued in their individual and official capacities.

### FACTS

12.     Plaintiff is a white man who was 28 years old at the time this incident began.

13.     Besides this incident, Plaintiff has never been arrested or charged with any crime by police in any jurisdiction.

14.     On or about September 10, 2014, Plaintiff moved into a four-bedroom duplex apartment at 677 Quincy St., Apt. 1B, in Kings County, New York.

15.     Another apartment occupant was a woman named Rita Obi, whom Plaintiff did not know before moving into the apartment.

16.     On or about the time period from September 19, 2014 through September 30, 2014, Ms. Obi bragged to Plaintiff that she had a sexual relationship with some unnamed NYPD officers.

17.     In sum and substance, Ms. Obi told Plaintiff that, in exchange for the sex acts she engaged in with the officers, those officers would provide her with favorable legal treatment.

18.     Ms. Obi said that she would probably use this quid pro quo arrangement to have the police arrest someone who had crossed her.

19.     On October 8, 2014, at about 3:00 p.m., inside the apartment, Ms. Obi physically attacked Plaintiff.

20.     Soon thereafter, another woman living in the apartment, Sharmeen Azmudeh, witnessing this attack, called the police.

21.     Police Officer Vasco (Tax No. 931364) and another police officer, Officer Bravo, arrived at the apartment and entered it at about 3:45 p.m.

22.     Officer Bravo directed Ms. Obi to stop her attack on Plaintiff and move away from him.

23.     Ms. Obi refused to comply with the officer's request.

24.     Officer Bravo was forced to pull Ms. Obi away from Plaintiff.

25.     The officers questioned Plaintiff, Ms. Obi and Ms. Azmudeh about the attack.

26.     Ms. Obi claimed that Plaintiff had stolen her cell phone, which was false.

27.     The officers stated to Ms. Obi that unless she agreed to leave Plaintiff alone and refrain from attacking him again, she would be arrested.

28.     The officers left the apartment at about 4:30 p.m.

29.     Later that day, at about 11:00 p.m., two different, unidentified police officers, Defendant Police Officers JOHN DOE 1 and 2, arrived at and entered the apartment.

30.     There was no apparent reason to Plaintiff why they had come.

31.     Plaintiff told them that other police officers had already been to the

4

apartment earlier that day, assessed the situation, and declared police involvement in the matter "closed."

32.     Defendant Police Officers JOHN DOE 1 and 2 claimed to have no knowledge of this earlier police visit.

33.     Defendant SERGEANT SHAUN BROWN arrived at the apartment along with Defendant POLICE OFFICER MICHAEL CARACCIOLO.

34.     Defendant SERGEANT SHAUN BROWN then said, in the presence of Plaintiff, Defendant NYPD OFFICER MICHAEL CARACCIOLO, and Defendant NYPD Officers JOHN DOE 1 and 2, that he was "going to examine [Ms. Obi's] body."

35.     Defendant SERGEANT SHAUN BROWN and Ms. Obi went into Ms. Obi's bedroom and closed the door.

36.     They remained inside for about twenty minutes.

37.     The following allegations will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: SERGEANT SHAUN BROWN then directed Defendant Police Officers JOHN DOE 1 and 2 to arrest Plaintiff.

38.     Without probable cause or reasonable suspicion to believe that Plaintiff had committed any crime, Defendant Police Officers JOHN DOE 1 and 2 physically arrested and handcuffed Plaintiff.

39.     Plaintiffs asked these Defendant Police Officers why he had been arrested, but they did not reply.

40.     Plaintiff was transported to the NYPD 81st Precinct and processed there.

41.     At no point did any Defendant Police Officer Mirandize Plaintiff, nor was Plaintiff ever Mirandized by anyone.

42.     Plaintiff was transported to Brooklyn Central Booking and put in a jail cell where other inmates threatened to kill him because he was occupying a seat.

43.     Plaintiff was fraudulently arraigned there on 10 false criminal charges, including three felonies.[1]

44.     Having been unjustly detained for approximately 24 hours, Plaintiff was released from custody following arraignment on October 9, 2014.

45.     On or about October 14, 2014, Plaintiff filed a police report against Ms. Obi at the 81st Precinct, and Detective Thomas Fellows was assigned to investigate the report.

46.     However, Detective Thomas Fellows told Plaintiff that he would not investigate the report, because, in sum and substance, "the precinct had already taken a position on the matter generally."

47.     On or about November 13, 2014, Plaintiff filed a complaint with the NYPD Internal Affairs Bureau regarding the incident, to Detective "Mendez."

48.     The Internal Affairs Bureau directed Plaintiff to speak with Defendant LIEUTENANT BLAKE at the 81st Precinct about his complaint.

49.     Plaintiff spoke with Defendant LIEUTENANT BLAKE at the 81st Precinct on or about January 28, 2015.

50.     Plaintiff requested that Defendant LIEUTENANT BLAKE speak with Police Officer Vasco, as Officer Vasco had personal knowledge that Plaintiff was innocent of all of the false criminal charges perpetrated against him.

---

[1] NYPL §§ 160.10(2)(A) – Robbery in the Second Degree; 160.05 – Robbery in the Third Degree; 155.30(5) – Grand Larceny in the Fourth Degree; 120.00(1) – Assault in the Third Degree; 120.14(1) – Menacing in the Second Degree; 155.25 – Petit Larceny; 165.40 – Criminal Possession of Stolen Property in the Fifth Degree; 265.01(2) – Criminal Possession of a Weapon in the Fourth Degree; 120.15 – Menacing in the Third Degree; 240.26(1) – Harassment in the Second Degree.

51.     The following allegations will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: Defendant LIEUTENANT BLAKE either neglected to ever speak with Police Officer Vasco, or did speak with him, but chose to ignore his truthful account of the incident, which would have absolved Plaintiff of all false criminal charges.

52.     After this date, Defendant LIEUTENANT BLAKE never reported back to Plaintiff on the status of the Internal Affairs Bureau investigation.

53.     As Defendant LIEUTENANT BLAKE had not reported back to Plaintiff on the status of the Internal Affairs Bureau investigation, Plaintiff again contacted the Internal Affairs Bureau in March of 2015 for an update.

54.     The Internal Affairs Bureau directed Plaintiff to speak with Defendant LIEUTENANT GLUF about the investigation.

55.     On or about March 30, 2015, Plaintiff spoke with Defendant LIEUTENANT GLUF at 80 Gold Street in Brooklyn.

56.     Plaintiff requested that Defendant LIEUTENANT GLUF speak with Police Officer Vasco, as Officer Vasco had personal knowledge that Plaintiff was innocent of all of the false criminal charges perpetrated against him.

57.     Defendant LIEUTENANT GLUF told Plaintiff that he would do so and contact Plaintiff with his findings in "a week."

58.     The following allegations will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: Defendant LIEUTENANT GLUF either neglected to ever speak with Police Officer Vasco, or did speak with him, but chose to ignore his truthful account of the incident, which would have absolved Plaintiff

of all false criminal charges.

59. After this date, Defendant LIEUTENANT GLUF never reported back to Plaintiff on the status of the Internal Affairs Bureau investigation.

60. On November 9, 2015, in Kings County criminal court, the assigned assistant district attorney stated before the court that he had contacted Police Officer Vasco and that, in sum and substance, Ms. Obi might lack credibility as a "complaining witness" against Plaintiff.

61. After defending himself against these false and malicious charges for 14 months, and appearing in court approximately 15 times, all charges were dismissed in Plaintiff's favor on December 8, 2015.

62. The following allegations will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: the only explanation for the foregoing false arrest and malicious prosecution against Plaintiff was that Ms. Obi utilized the above-mentioned quid pro quo arrangement to have Defendant SERGEANT SHAUN BROWN falsely arrest Plaintiff in exchange for engaging in sex acts with him.

63. The following allegations will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: Plaintiff suspects that Defendant SERGEANT SHAUN BROWN and Ms. Obi engaged in a sex act during the time when they were alone in Ms. Obi's bedroom, which would have been consistent with Ms. Obi's previously-disclosed sexual quid pro quo arrangement with NYPD officers, and with Defendant SERGEANT SHAUN BROWN statement that he was "going to examine [Ms. Obi's] body", immediately prior to entering Ms. Obi's bedroom with her, closing the door and remaining inside with her for about twenty minutes.

## FIRST CLAIM
### False Arrest under 42 U.S.C. § 1983.

64.     Plaintiff repeats and re-alleges every allegation contained in the paragraphs above as if fully set forth herein.

65.     As a result of Defendant Police Officers' aforementioned conduct, Plaintiff was subjected to an illegal, improper, and false arrest by said Defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated, and prosecuted by said Defendants in criminal proceedings, without any probable cause, privilege, or consent.

66.     As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time, and Plaintiff was at all times aware of his confinement. Plaintiff was put in fear for his safety and his life and subjected to handcuffing and other physical restraints without probable cause.

67.     As a direct and proximate result of his false arrest, Plaintiff was subjected to humiliation, ridicule, and disgrace before his neighbors and peers. Plaintiff was discredited in the minds of many members of his community. Plaintiff suffered and will continue to suffer physical, mental, and emotional pain and suffering, mental anguish, embarrassment, and humiliation.

68.     Defendant Police Officers carried out the aforementioned acts under color of state law.

69.     Said Defendants' false arrest of Plaintiff without probable cause or reasonable suspicion deprived Plaintiff of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983, for which Defendant Police Officers are individually liable.

9

70.     The acts of said Defendants were intentional, wanton, malicious, reckless, and oppressive and entitle Plaintiff to an award of punitive damages.

71.     Defendant Police Officers are liable, in their individual and official capacities, for compensatory and punitive damages, in amounts to be determined at trial.

## SECOND CLAIM
### Malicious Abuse of Process under 42 U.S.C. § 1983.

72.     Plaintiff repeats and re-alleges every allegation contained in the paragraphs above as if fully set forth herein.

73.     Defendant Police Officers employed regularly issued legal process by arresting, processing, and initiating criminal proceedings against Plaintiff to forbear him of liberty and the lawful use of property.

74.     Defendant Police Officers acted with intent to do harm by forcing him to defend himself against false criminal charges and to face the possibility of imprisonment and other penalties if he were convicted or otherwise found guilty on those charges.

75.     Defendant Police Officers undertook the aforementioned acts in order to obtain a collateral objective outside the legitimate ends of the process, namely to obtain sexual favors from members of the civilian population. This collateral objective is outside of the legitimate ends of the criminal justice process.

76.     As a direct and proximate result of this malicious abuse of process, Plaintiff suffered numerous violations of his constitutional rights, including deprivation of liberty following his arrest.

77.     Also, Plaintiff was subjected to humiliation, ridicule, and disgrace before his neighbors and peers. Plaintiff was discredited in the minds of many members of his

community. Plaintiff suffered and will continue to suffer physical, mental, and emotional pain and suffering, mental anguish, embarrassment, and humiliation.

78.     Defendant Police Officers carried out the aforementioned acts under color of state law.

79.     This malicious abuse of process against Plaintiff deprived Plaintiff of rights secured by Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983, for which Defendant Police Officers are individually liable.

80.     The acts of said Defendants were intentional, wanton, malicious, reckless, and oppressive and entitle Plaintiff to an award of punitive damages.

81.     Defendant Police Officers are liable, in their individual and official capacities, for compensatory and punitive damages, in amounts to be determined at trial.

## THIRD CLAIM
### Malicious Prosecution under 42 U.S.C. § 1983.

82.     Plaintiff repeats and re-alleges every allegation contained in the paragraphs above as if fully set forth herein.

83.     Defendant Police Officers initiated criminal proceedings against Plaintiff without probable cause or reason to believe that the criminal charges against him could succeed and with actual malice, thereby causing Plaintiff to be prosecuted on baseless charges for 14 months and to suffer a significant deprivation of liberty in connection therewith.

84.     The criminal charges against Plaintiff were terminated in his favor.

85.     As a result of Defendant Police Officers' malicious prosecution of Plaintiff,

Plaintiff was subjected to humiliation, ridicule, and disgrace before his neighbors and peers. Further, as a result of Defendants' unlawful acts, Plaintiff was discredited in the minds of many members of the community. Plaintiff suffered and will continue to suffer mental and emotional pain and suffering, mental anguish, embarrassment, and humiliation.

86.     These Defendant Police Officers carried out the aforementioned acts under color of state law.

87.     Said Defendants' unlawful prosecution of Plaintiff without probable cause and denial of associated due process rights, as described herein, violated Plaintiff's rights under the Fourth Amendment and Fourteenth Amendment to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983, for which these Defendant Police Officers are individually liable.

88.     The acts of said Defendants were intentional, wanton, malicious, reckless, and oppressive and entitle Plaintiff to an award of punitive damages.

89.     Defendant Police Officers are liable, in their individual and official capacities, for compensatory and punitive damages, in amounts to be determined at trial.

## FOURTH CLAIM
### Failure to Intervene under 42 U.S.C. § 1983.

90.     Plaintiff repeats and re-alleges every allegation contained in the paragraphs above as if fully set forth herein.

91.     The individually-named Defendant Police Officers who were present during the incident but did not actively participate in the unlawful conduct described herein did observe such conduct and had an opportunity to prevent such conduct, and therefore had an affirmative duty to intervene on behalf of Plaintiff to prevent the aforementioned

violations of his constitutional rights.

92. These Defendant Police Officers failed to so intervene.

93. As a direct and proximate result of Defendant Police Officers' abdication of their affirmative duty to so intervene on behalf of Plaintiff, Plaintiff sustained the injuries described herein.

94. These Defendant Police Officers carried out the aforementioned acts under color of state law.

95. These actions against Plaintiff deprived Plaintiff of rights secured by Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983, for which these Defendant Officers are individually liable.

96. These Defendant Officers are liable, in their individual and official capacities, for compensatory damages, in amounts to be determined at trial.

<u>**FIFTH CLAIM**</u>
**Violation of Procedural Due Process under 42 U.S.C. § 1983.**

97. Plaintiff repeats and re-alleges every allegation contained in the paragraphs above as if fully set forth herein.

98. Defendants LIEUTENANT BLAKE and LIEUTENANT GLUF knowingly and intentionally neglected to speak with Police Officer Vasco about the incident resulting in Plaintiff's false arrest.

99. Alternatively, Defendants LIEUTENANT BLAKE and LIEUTENANT GLUF did so speak with Police Officer Vasco but knowingly and intentionally ignored Police Officer Vasco's statements asserting Plaintiff's innocence of any alleged crime

13

during the incident.

100.    In so doing, Defendants LIEUTENANT BLAKE and LIEUTENANT GLUF knowingly and intentionally deprived Plaintiff of his constitutional right to a fair hearing before the Internal Affairs Bureau of the NYPD.

101.    If Defendants LIEUTENANT BLAKE and LIEUTENANT GLUF had not so deprived Plaintiff of the opportunity for said hearing, it is likely that the false criminal charges against Plaintiff would have been dismissed far earlier than they were, sparing him the significant injuries that he suffered during that time interval.

102.    As a direct and proximate result of Defendant LIEUTENANT BLAKE's and LIEUTENANT GLUF's unlawful conduct, Plaintiff sustained the injuries described herein.

103.    Defendants LIEUTENANT BLAKE and LIEUTENANT GLUF carried out the aforementioned acts under color of state law.

104.    By these actions, Defendants LIEUTENANT BLAKE and LIEUTENANT GLUF deprived Plaintiff of rights secured by the Constitution of the United States of America, in violation of 42 U.S.C. § 1983, for which these Defendant Police Officers are individually liable.

105.    The acts of said Defendants were intentional, wanton, malicious, reckless, and oppressive and entitle Plaintiff to an award of punitive damages.

106.    These Defendant Police Officers are liable, in their individual and official capacities, for compensatory damages and punitive damages, in amounts to be determined at trial.

### SIXTH CLAIM
### Violation of Substantive Due Process under 42 U.S.C. § 1983.

107.    Plaintiff repeats and re-alleges every allegation contained in the paragraphs above as if fully set forth herein.

108.    Defendant SERGEANT SHAUN BROWN effected a false arrest of Plaintiff for the purpose, upon information and belief, of obtaining Ms. Obi's consent to engage in sexual activity with her.

109.    Such false arrest of Plaintiff deprived Plaintiff of his fundamental right to liberty of his person for approximately 24 hours.

110.    The purpose for which Defendant SERGEANT SHAUN BROWN effected Plaintiff's false arrest is one that both shocks the conscience and constitutes a gross abuse of governmental authority.

111.    As a direct and proximate result of Defendant SERGEANT SHAUN BROWN's unlawful conduct, Plaintiff sustained the above-described injury, to wit, a deprivation of his fundamental right to liberty of his person.

112.    Also, Plaintiff was subjected to humiliation, ridicule, and disgrace before his neighbors and peers. Plaintiff was discredited in the minds of many members of his community. Plaintiff suffered and will continue to suffer physical, mental, and emotional pain and suffering, mental anguish, embarrassment, and humiliation

113.    Defendant SERGEANT SHAUN BROWN carried the aforementioned acts under color of state law.

114.    By these actions, Defendant SERGEANT SHAUN BROWN deprived Plaintiff of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983, for which Defendant

SERGEANT SHAUN BROWN is individually liable.

115.    The acts of Defendant SERGEANT SHAUN BROWN were intentional, wanton, malicious, reckless, and oppressive and entitle Plaintiff to an award of punitive damages.

116.    Defendant SERGEANT SHAUN BROWN is liable, in his individual and official capacities, for compensatory damages and punitive damages, in amounts to be determined at trial.

**SEVENTH CLAIM**
**Municipal Liability under 42 U.S.C. § 1983.**

117.    Plaintiff repeats and re-alleges every allegation contained in the paragraphs above as if fully set forth herein.

118.    All of the aforementioned acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to him by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983.

119.    The acts of the individual Defendant Police Officers complained of herein were committed while they were carrying out their official duties as police officers, detectives or supervisors employed by the NYPD, with the authority attendant to those positions, under color of state law.

120.    The acts of the individual Defendant Police Officers complained of herein were committed pursuant to the customs, policies, usages, practices, procedures, and rules of Defendant CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

121.    The foregoing customs, policies, usages, practices, procedures, and rules of

Defendant CITY and the NYPD produced a deliberate indifference to the safety, well-being and constitutional rights of Plaintiff.

122.    The foregoing customs, policies, usages, practices, procedures, and rules of Defendant CITY and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiff, as alleged herein.

123.    The foregoing customs, policies, usages, practices, procedures, and rules of Defendant CITY and the NYPD were the moving force behind the constitutional violations suffered by Plaintiff, as alleged herein.

124.    Defendant Police Officers, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff's constitutional rights.

125.    Defendant Police Officers, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of Plaintiff's constitutional rights.

126.    Defendant CITY, as municipal policymaker in the training and supervision of the NYPD, has pursued a policy and custom of deliberate indifference to the rights of persons in its domain who suffer violations of the right to freedom from false arrest and prosecution not based on probable cause or reasonable suspicion, in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

127.    All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

     a.   To be free from deprivation of liberty without due process of law;

     b.   To be free from search, seizure, arrest, prosecution and imprisonment not based upon reasonable suspicion or probable cause; and

     c.   To be free from malicious prosecution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

1. Compensatory damages against all defendants, jointly and severally;

2. Punitive damages against the specified individual defendants, jointly and severally;

3. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

4. Such other and further relief as this Court deems just and proper.


Dated:          November 14, 2017
                New York, New York



                                        Respectfully,


                                        */s/ Joseph M. Stancati*
                                        _____

                                        **Law Office of Joe Stancati**
                                        305 Broadway, 9th Floor
                                        New York, NY 10007
                                        212-822-1456 (office)
                                        212-858-9205 (cell)
                                        212-656-1363 (fax)
                                        joe@stancati-law-nyc.com

                                        *Attorney for Plaintiff*