UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————X

L. Davies                                    :
                                             :
                    Plaintiff,               :
                                             :
               -against-                     :                    FOURTH AMENDED
                                             :
The Corporation of the City of New York;     :                    COMPLAINT
                                             :
NYPD Defendants: (Tax # in parentheses)      :                    17-CV-4519 (AMD) (ST)
Sir William Bratton,                         :
Commissioner James O'Neill,                  :
Commissioner (Office)                        :
Chief of Staff (for Commissioner Bratton)    :
       John or Jane Doe 1                    :
Chief of Staff (for Commissioner O'Neill)    :
       John or Jane Doe 2                    :
Police Administration Staff                  :
       John or Jane Does (Twenty)            :
Police Operations Staff and Senior Systems   :
       Administrators J. Does (Ten))         :
Deputy Commissioner Reznick,                 :
Deputy Commissioner IAB (Office)             :
IAB Command Center (all command or           :
       critical operations personnel         :
       John or Janes Yoes (Twenty)           :
Internal Affairs Senior Management           :
       John or Janes Yoes (15))              :
Deputy Commissioner, Information             :
       Technology Jessica Tisch              :
Deputy Commissioner, Counsel to Police       :
       Commissioner  Ashley Waters           :
Deputy Commissioner, Legal Matters           :
       Ernest F. Hart                        :
Staff of Deputy Commissioner, Legal          :
       Matters (Does [])                     :
Deputy Commissioner, Risk Management         :
       Jeffrey Schlanger                     :
Deputy Commissioner of Intelligence          :
       John Miller                           :
Deputy Commissioner, Trials                  :
       Rosemarie Maldonado                   :
Retired Chief of Department Carlos Gomez     :

RECEIVED
SEP 0 2019
PRO SE OFFICE

Chief of Department Terence Monahan :
Chief of Department (Office) :
Chief of Department Senior Management :
     (John or Jane Does (Fifteen)) :
Chief of Patrol Terence Monahan :
Chief of Patrol (Office) :
Chief of Patrol Rodney Harrison :
Management at Chief of Patrol :
     (John or Jane Does Ten) :
Chief of Detectives Dermot F. Shea :
Chief of Intelligence Thomas Galati :
Chief of Personnel William Morris :
IAB teams preparing annual reports to the :
     annual post-Mollen (J. Yoes Twelve):
Chief and supervisors of the IAB team :
     preparing annual reports to the :
     annual post-Mollen (J. Yoes Nine) :
Other Police-Administrator Racketeers :
IAB Complaint Managers (and persons of :
     pertaining or related duties :
     (John or Jane Yoes[6] Twelve) :
Supervisor(s) and Trainers of Chief Insp. :
     S. Henderson (Does (Six) :
Supervisors of Lts. Gluf and Parese :
     (John or Jane Yoes (Six) :
Chief Inspector Scott Henderson :
Police waiting at 81st Precinct at 8:15 p.m. :
     Oct. 8th, 2014 upon Plaintiff arrival :
     (¶ 29: John Does (Ten) :
Other 81st Precinct police[7] involved after :
     8:15 p.m.; John Does (Nine) :
Lieutenant "Gluf" (Brooklyn IAB) :
Lieutenant J. Parese [spelling unknown] :
Lieutenant Richard Matellino :
Lieutenant "Picoulli" (IAB) :
End-of-Bratton
Managers[8] & Supervisors of Sergeant :
     Rosello in summer of 2017 :

---

[6] Including the IAB superior(s) whom the tall, slight-haired IAB Detective at Manhattan IAB HQ: referred 2015 IAB-complaint concerning Lt. Blake certainty that Sergeant Brown was not on duty on the evening of October 8th, 2014 having triple checked all paperwork of that day (J Doe 52-55)

[7] Processor and police member stating there was no record identifying who had performed the removing-seizure of Plaintiff to the 81st.

[8] regarding orders given to Sgt. Rosello regarding Sgt. Rosello's recorded call to Plaintiff

```
                (Does (Seven)                        :
    "Brooklyn North" Command of 2015-2016  :
            (J. Does Five)                   :
    Police assigned IAB investigation at     :
            Brooklyn North (J. Does Eight)   :
    Sergeant Shaun Brown                     :
    Sergeant Rosello                         :
    Sergeant Brazys                          :
    Sergeant Fishman, Louis (922347)         :
    Sergeants signing as if supervising signing :
            of "D00007 #1 (J. Doe) and       :
            #2 (J. Doe)                       :
    Memo book supervisors 81st Precinct      :
            signatories (illegible)          :
    NYPD Liaison with CCRB Inspector Butler  :
            (J. Doe(s) [])                    :
    Supervisors and Trainers of NYPD Liaison :
            with CCRB Inspector Butler       :
            (J. Does )                        :
    Michael Culkin (897277)                  :
    Supervisors and Trainers of             :
            M. Culkin (J. Does )             :
    Detective Glenn Tomasello (926214)       :
    Supervisors and Trainers of G. Tomasello :
            (J. Does )                        :
    NYPD "Liaison" to Corporate Counsel      :
    Supervisors and Trainers of NYPD         :
            "Liaison" to Corporate Counsel   :
            (J. Does )                        :
    Officer Carraciolo, Michael (950158)     :
    Supervisors and Trainers of M. Carracciolo :
            (J. Does )                        :
    Officer Casciola, Gerald (950168)        :
    Supervisors and Trainers of G. Casciola  :
            (J. Does )                        :
    Officer Hellberg                         :
    Supervisors and Trainers of Hellberg     :
            (J. Does )                        :
    Police overseeing or approving vulnerable :
            police records and data at all recent :
            times of review                  :
    Police database operators and administrators :
            (J. Does )                        :
    81st Precinct Dispatch Operators         :
                                             :
    Additional Does (X)& Yoes (Y);           :
```

```
                                              :
King's County (District) Attorney's Office:   :
King's County (District) Attorney             :
Supervisor(s) and Trainers of Defendant       :
      Anthony Barosi                          :
      (J. Roe 1-4)                            :
Supervisor(s) and Trainers of Defendant       :
      J. Scarcella (J. Roe 5-8)               :
Supervisor(s) and Trainers of Defendant       :
      M. Midey (J. Roe 9-12)                  :
Supervisor(s) and Trainers of Defendant       :
      T. Middleton  (J. Roe 13-16)            :
Supervisor(s) and Trainers of Defendant       :
      Parugia (J. Roe 17-20)                  :
Supervisor(s) and Trainers of other involved :
      or of pertaining duties Defendant       :
      KCDA attorneys (J. Roe 21-31)           :
Manager or liaison of primary Autumn of       :
      2015 KCDA attorney representing         :
      the State, i.e. the "penultimate"[9]    :
      (J. Roe 32-34)                          :
Communicator(s) with John Gutman              :
      (J. Roe 35-36)                          :
Anthony Barosi                                :
Persons of duties witnessing Barosi (and      :
```

---

[9] Corporate counsel continues to refuse to identify this Defendant among persons specifically requested for identification amounting to injunction-meriting DaCosta violations against Rosenkilde, Fudim, and Carter of the Corporation Counsel as Plaintiff has prepared, but had to defer to attend to the instant Statement (Plaintiff has long (without the proper name) referred to this male KCDA attorney (whom Plaintiff would certainly recognize and who was potentially not of ADA rank in 2015) as "the penultimate" for the pivotal significance of this KCDA attorney's court record admission of "Brady violation" obstructions among those KCDA had overtly reinforced for over a year against Plaintiff at the request and directive of police Defendants, et cetera (an act the penultimate was forced to do by another (see ¶ 30)); penultimancy being particularly important as the penultimate essentially declared Plaintiff to be a victim and invoked protocol that an additional appearance would be appropriate upon some inquiry KCDA would be obligated to perform regarding malicious prosecution  (the penultimate did not reappear at the withdrawal—(see Count [])—the final KCDA representative was consistent with the penultimate, but seemed to lack having being the most knowledgeable person and rather merely a message carrier (as a defensive tactic by KCDA—there was no promised follow-up to the Court concerning the penultimate's (ashamed and reluctant) describing the penultimate's of duty to investigate defrauding of the King's County court) in saying, in sum and substance, the evidence required full withdrawal by the State on all City assertions against Plaintiff).

```
            otherwise witnessing and            :
            participating in KCDA racketeering  :
            operations and corruption tort      :
            (J. Roe 37-50)                      :
ADA Jacqueline Scarcella                         :
ADA Matthew Midey                                :
ADA Tyear Middleton                              :
ADA Parugia                                      :
"The penultimate"¹⁰ (supra; KCDA attorney):
            (John Roe 51)                        :
Other KCDA attorneys involved or of              :
            pertaining duties (J. Roes 52-66    :
Mr. Waters                                       :
Other John and Jane Roes (W);                    :
                                                 :
CCRB Defendants:                                 :
The Civilian Complaint Review Board              :
Trainers of J. Butler                            :
            (J. Soe 1-2)                         :
Christopher DeNitto                              :
Inspector J. Butler                              :
Additional John or Jane Soes (Z);                :
                                                 :
                                                 :
_____                             :
Corporation Counsel  (municipal entity)          :
Zachary Carter                                   :
                                                 :
(W, X, Y, Z (supra; additional Does, Roes,       :
            Yoes, and Soes are of number         :
            unknowable-without discovery)        :
                                                 :
                        Defendants.¹¹ :
```

_____

[10] See Footnote 6, supra

[11] Individual liabilities specifications have been commenced at ¶ 781.  In addition to being defendants in an individual capacity—each is a defendant by the official capacity to a full extent the latter is not superfluous given the municipal corporation of the City is a Defendant.  Individual Defendants may find the indentification of Claims against them at ¶¶ [after Claims] and ¶¶ [] collect all Claims against the Municipality.  Plaintiff does not name the 9-1-1 operators on duty on the [all operators] evening of October 8th, 2014 as Plaintiff believes the entries in their names which Defendants Admit are fabrication have nothing to do with them other then those operators having worked at that time, i.e. that the Admitted fabrication was done without their knowledge.  Other persons to be deposed may need to become Defendants even though to Plaintiff's best knowledge at present, those persons may or should not need to be named as Defendants—see ¶ [prior to the supra] regarding Plaintiff's considerations regarding the identification of individual

_____X

1.  The instant Action obtained and obtains original Article III jurisdiction under: Title 28 of the United States Code §§ 1331, 1332, & 1343—as well as pendant jurisdiction of State law[12] via 28 U.S.C. § 1367; Title 42, which concerns The Public Health and Welfare, §§ 1981, 1983, 1985, 1988,[13] & 1989; and Title 18, [obstruction] including The Organized Crime Control Act of 1970 §§ 1961, 1962, 1964, & 1965 [attorney fee [Footnote 4]]];. Regarding venue: most or, perhaps, all Defendants' being in New York, including the City of New York, is the greatest determining factor for a N.Y. D.C., particularly the present venue, E.D. N.Y., one of the City-inclusive districts.

---

Defendants, including reasons against naming potential Defendants for such as Plaintiff's belief that individual Defendants are doing their best to avoid or mitigation tort against Plaintiff and the public under duress from Defendants. [Reference ¶ BtoC (given the fraudulent and fabricated ). See ¶ 20 regarding definitions and use of abbreviations—many of which apply to Defendants and Defendant groups. Specifications of liability imposed by each person of the Defendants is indicated at ¶¶ [end of Claims].

[12] Legal-categories of common-law Cause of Action are stated at ¶¶ [list of certain from 101-149][if diverse, describe with reference to the identified]

[13] Attorney fees jurisdiction is necessary under Titles 42 and 18 of the U.S.C. (or otherwise) as the Plaintiff Party is entitled to recovery of the billable hours expended in the enacting and conduct of suit—including hours billable described by Mr. Stancati as amounting to a bill around $$ 60,000-85,000 (as well as any additional attorney hours representing Plaintiff by an eligibile attorney as well as any other attorneys potentially retained in the course of Proceedings). It is worth currently noting that per the 8 February 2018 agreement of Mr. Stancati and Mr. Benson-Staebler, before this Court, to resolve Mr. Stancati's termination; Mr. Stancati is limited to receive a set maximum of $17,500 (the amount Mr. Stancati and Mr. Rosenkilde (Corporate Counsel) had bargained for Mr. Stancati to receive through Plaintiff amid Mr. Stancati's extreme fiduciary obligations pertaining to the Action's damages to bunt the Action for the benefit of Defendants—i.e. Mr. Stancati's former and aspired employer (Defendant Corporation Counsel). The whole (or remainder) of the recovery under § 1988 pertaining to Mr. Stancati—who explicitly refused to provide documentation of billable hours as well as fufill other fiducirary obligations in transition—should be fairly retained by Plaintiff prope persona (consideration as compensation for various prejudicing conduct by Mr. Stancati could be more specifically considered with regard to Defendants' various role and participation in fraudulent conduct by Mr. Stancati violating basic fiduciary law).

2.   To simplify the statement of the Complaint: various abbreviation is used (FRCiP, [14] O.F.C., [15] CoA, [16] as well as abbreviation for Defendant bureaucratic divisions ("KCDA, [17] IAB, [18] CoD," [19] "NYPD," [20] "CoP," [21] "CCRB," [22]), and in certain abbreviations by paragraph number outlined at ¶ 20) and certain specific acts or

---

[14] (the) Federal Rules of Civil Procedure

[15] Originally Filed Complaint. Plaintiff's prope persona amendment process could largely be considered the proper restoration of the instant Action to the Complaint statement filed in 2015 to King's County court (major updates being the application of law (the O.F.C. lacked any legal observation or analysis simply making lay facts of KCDA, IAB, et alia Defendants' crimes injuring Plaintiff rasing the need for Plaintiff's damages and injunctive reform of operating municipal law enforcement. The attorney who picked up Plaintiff as a client through a friend of Plaintiff upon Defendants' being forced to withdraw the fraudulent, et cetera, action against Plaintiff, stalled (for a total net of about two years) and then unilaterally bunted the statement of the Action without explanation before committing more overt and extreme fiduciary violations for the benefit of Defendants and Corporation Counsel, that attorney's former and aspired-for-future employer (Plaintiff did not even know the extent of that attorney's outrageous ficiary violations when there was more than sufficient basis for Plaintiff to take a lawyer friend's advice (familiar enough with Plaintiff to know that Plaintiff was capable of reading law, et cetera) to fire that attorney and figure out bring the Action pro se. Defendants have always possessed the O.F.C. since Plaintiff was first instructed the need (and existence of the very principle, for that matter) of serving Defendants (i.e. KCDA) a copy of the O.F.C. (which was prior to the termination of Kafka-esque coercion by Defendants which clearly equitably estopped all limitations.

[16] Categories of legal action by the whole variety of bases of Claims are brought (see Footnote 27, infra)

[17] (the) King's County (District) Attorney: either the incumbency, the incumbent, or the bureau, e.g KCDA attorney—an attorney representing the KCDA: Corporation Counsel was aware of Plaintiff's intent to civilly prosecute the police-instructed-and-designed tortfeasance of the many involved KCDA (one or two exceptions)

[18] for the Internal Affairs Bureau (sometimes including lower internal investigation divisions to be specified further upon discovery) of the NYPD; at times, the Internal Affairs Bureau satellite affiliate "integrity" staff in are referred to as "IAB" (as distinctions pertaining to relevant individuals have not been explained by the possessors of such information, Defendants)

[19] Chief of Department (as either the bureau, the office as occupied by an incumbent, or that incumbent) of the NYPD,

[20] for the New York Police Department

[21] Chief of Patrol

[22] Civilian Complaint Review Board (entity (of the municipality under the City Charter) or its individual members)

events of tort, et alia, are, here, defined (information-assemblage, [23] furtherance array, [24] constitutional-operator, [25] corruption blue wall, [26] opening and completion of racketeering and corruption posse commitatus, [27] ejectum, [28]

---

[23] the compilation of materials generated by police Defendants at KCDA which was full of red flags prompting duties that were failed by KCDA attorneys to work with it or represent it, et cetera. It was created to be defaming and injuring Plaintiff and thus naturally increasing damages to Plaintiff with any or every publication, should not be published to the Docket, but treated with appropriate care to prevent aggravation and continuing injuries to Plaintiff caused by Defendants' injuring to Plaintiff. Plaintiff will subsequently discuss as necessary.

[24] Coordinated racketeering and organized corruption furtherance (i.e. tort to advance the objectives, or to support, already committed, initiated, or planned tort. Both for the sake of managing maintaining or administering racket and organized corruption operability, systems, or capacity of the Defendant Corporation and with regard to finishing off victims or achieving particular objectives.

[25] The person at KCDA who forced KCDA Defendants to admit Brady-violation obstruction and fold case with suspicion cast (at least) on police Defendants with Ms. Obi.

[26] Racket (enterprise participants) and organized corruption coordination, collaboration, assistance, hand-off, responsive to racket or corruption participant's request for role performance of (or pertaining to) furtherance array tort

[27] Police sex bribery contract to which Ms. Obi was recruit and upon which Ms. Obi and Defendant Brown bargained involved Ms. Obi opening (when theft, harassment, or other crime of Ms. Obi was felt to be needed to be escalated into physical violence upon the corruption and racketeering victim) and completed upon Ms. Obi's call to Defendant Brown for Defendant Brown to appear.

[28] Ms. Obi ejected data storage (the "ejectum") that Ms. Obi stated contained criminal material Ms. Obi consistently tampered misappropriated material from Plaintiff (of a nature that was enhanced by Ms. Obi's admitted and harassingly discussed secret and unprivileged or defensible (as Ms. Obi admitted) invasions into Plaintiff's chattels to read Plaintiff's text messages with women, et cetera) that Plaintiff had on a previous day warned gave Plaintiff effective rights against and upon the data for self defense and the blocking of misappropriation crime, et cetera (ranging from harassment, to extortion based on fabrication of the extortion, to unlawful enrichment with the misappropriate material noxious or worse to Plaintiff (depending on the tortious editing by Ms. Obi (who was a professional radio sound editor with access and experience regarding manipulation of persons with manipulation of recorded material) power of enforcing government obtaining of the material to review the criminal intent, et cetera, destroy the unlawfully obtained material, and enjoin entirely, et cetera.

Fourth Amended Complaint        E.D. N.Y. 17CV4519        Page 10

mashed, [29] ) to anchor such terms reducing the need for reiteration in the statement and discussion of Claims.  Given such as the needed multifariousness of the legal basis of Claims for full recovery and Remedy, Plaintiff has sequenced aspects (prologue, [30] CoA, [31] Counts, [32] injuries, [33] Claims, [34] assignments of liability, [35] Remedies, [36] § 1961 (R.I.C.O.) predicates, [37] and background to Counts) [38] of the statements of Claims of the Action.

3.     The instant Action began, with respect to its directly involving Plaintiff,[39] when Plaintiff objected to crimes committed from [40] Defendants' racketeering

---

[29] Ms. Obi worked or works as a sound editor for a state of the art radio business where Ms. Obi had equipment knowledge and access from which to "mash" (i.e. mix, fabricate, et cetera) recording of one material with another and to alter recordings.  Ms. Obi demonstrated one mash, which was overtly for a hundred reasons and would be clearly evidenced as such—which is why in spite of Defendants making reference to it—it has never been presented as it would demonstrate the rampant fraud of the material. Preclusion would, at this point, strike inadmissible anything Defendants would have been obligated to gather in 2014 and 2015, et cetera—if Defendants did not know that Defendants obligations were only to take responsibility and admit Defendants' crimes (not that Defendants were particularly, pointed, or frequently aware of this)—but that Defendants could not recover and produce any material as the mashed recordings Ms. Obi had prepared were not usable except to clearly and easily demonstrate Defendants racketeering and corruption with the misappropriated and other material (see Counts [] ). Matter relates to ongoing and permanent damages Plaintiff suffers (see Injuries () ()).

[30]  ¶¶ 3-19 begin at the accruing-involvement of Plaintiff with regard to the Action; ¶¶ 41-49 discuss []; ¶¶ 50-59 the audio recording of Defendants, Plaintiff, and the only 9-1-1 caller (i.e. ¶ 26); ¶¶ 60-69 discussion the information-assemblage; ¶¶ 70

[31]  ¶¶ 100-155 introduce the legal-categories of the Cause of Action: i.e. ¶¶ 101-155 each define at category of law that apply to certain Counts resulting in Claims—each is thus referenced by a CoA # corresponding to the order stated 1-50.

[32]  ¶¶ 200- Defendants' tortious or tortious and unconstitutional acts or events injuring Plaintiff; the end of each statement indicates CoA that apply for a Claim using the CoA #

[33]  ¶¶ 525 et sequent state injury descriptions referenced and give injury overview

[34]  ¶¶ ~600 Claim statements are bundled in paragraphs as introduced at

[35]  ¶¶ 781 et sequen

[36]  ¶¶ 11000-1299

[37]  ¶¶ 1300-1349 sample racketeering predicates of Defendant racketeering enterprise

[38]  ¶¶ 1350-1399, providing some additional detail pertaining to Counts

[39] See footnote [] supra

operations [41] in service of tyrannical [42] racketeering, with Plaintiff seeking

government actors to intervene against the particular crimes[43]; Plaintiff was (and

---

[40] i.e. via, resultant, and as a product of (with regard to Plaintiff the State action is also elaborately jointly enacted and furthered, et cetera, by Defendants' racketeering operations); regarding these precipating-Plaintiff-petition-action "crimes"—see Footnote 8, infra.

[41] These initiating-Plaintiff's-being-victimized operations involved Ms. Rita Akweugo Obi, a woman by her own confident, verbal swearing of oath who was a Defendant-racketeering-participant, having been recruited into police sex bribery racketeering by a group of frequently participating-in-Defendant's-racketeering women in New York City with a contract with Sgt. Shaun Brown allowing Ms. Obi power-via-such-racketeering to break laws and, specifically, violently assault at-will whom Ms. Obi were to choose (it is worth broadcasting that all of such is independently grounded in 2014 evidentiary material, et cetera). Given the immense evidentiary support from all sources including Defendant Brown's 2017 Admission of having committed administrative perjury to cover-up the previously secreted-from-written-record "prior relationship" with Ms. Obi (see ¶ [BtoC]—it would be amendable error for the fact of sex-based unlawful state-power bargain execution to not be presumed)

[42] The word "tyrannical" is of particular and highly-important reference as per its meaning in regard of the Constitution as the United States Constitution was designed with significantly-judicial (co-equality and fully separated) dimension to ward against tyranny, tyranny in consideration of 2100 years of history state or proto-state (ancient tyrant kings preceeding the Roman state as a state which was clearly by modern standards a state as a thing in itself)—the word tyranny in English coming directly from those early Kings of Rome and in the context of representative democracy functioning to prevent abuses of power subsequently in history of the Roman Republic and Empire known and imminently influential to the founding of the United States as a jurisdiction of law, order, and government beside and not controlled by the Crown. Illegal benefit seeking through and with continuing monopolization of force to wage tyranny as currency and for benefits including organized criminal purposes as an enterprise within the law enforcement mechanisms of New York City is properly described as "tyrannical" speaking in the context of the word's meaning. "Tyranny" as a dimension of Bill of Rights design, strengthened by Fourteenth Amendment enforcement [case] particularly mandating enforcement of tyranny's prohibition and, when found established in these United States, tyranny's rooting-out: is an elemental part of certain Claims enforced by the instant Action; no word could rightly replace the use of "tyranny" in the instant Action given the very etymological strength of "tyranny" as diction for the instant Proceeding.

[43] For this detail see description at ¶ [BtoC] concerning communications and events of which notice to the Docket has more than sufficiently occurred. Ms. Obi, by Ms. Obi's own gloating and prideful boasting (of which Defendants possess non-party-sourced evidencing), was refused the participation of a fellow student in the commissions of violations of academic intergrity at Brooklyn College and (Ms. Obi crowed as warning of Ms. Obi's own municipal-racketeering-power as a municipal-racketeering-participant via

is furthermore and continuingly) unconstitutionally and tortiously-under-common-law put under duress by the Defendant-tyrannical-racketeering.[44] For petitioning[45] against Defendant's tyrannical racketeering, its victimization[46] of Plaintiff and others, Plaintiff was retaliated against[47] causing further injuries to Plaintff, threating the immediate termination of Plaintiff's life (in succession and generally) to a continuing extent, as well as, moreover, destroying Plaintiff's life with respect to the full array of property (stated otherwise as life, liberty, privacy, and property[48]) interests of Plaintiff protected by the Bill of Rights and New York Constitution; Plaintiff's exercise of Plaintiff's life, liberty, privacy, and certain

---

the sex-bribery defacto-program) destroyed the classmate victim's lab report from Brooklyn College's files to injury the classmate victim's protected interests. Plaintiff was elected at Plaintiff's undergraduate liberal arts college as a member of its Honor Council to adjudicate violations of academic integrity and thus Plaintiff's responsible petitioning to Brooklyn College against the racketeering-enabled-and-caused crime was all the more instinctive for Plaintiff amid the context of Plaintiff's other petitioning against the racketeering's victimization of others and Plaintiff.

[44] see Counts [C] ; this racketeering is, of course, actionable under not just constitutional and common-law, but federal law against racketeering. The legal-categories of the Cause of Action are introduced at ¶¶ 99 & 100.

[45] Plaintiff's activities from: objecting to Defendants' racketeering, causing government to act against the municipal corruption, attempting to cause the government to quash the municipal corruption, and seeing, including very much in the instant Action, judicial enforcement to remedy with reforms against the municipal corruption are protected petition activities under the First Amendment and Substantive Due Process—Defendants' past and continuing retaliations against and for Plaintiff's petition activity is the legal-category of the Cause of Action is stated at ¶ 137 & ¶ 138 (two work side by side frequently [consider citation/cut]), respectively—most of Defendants' tort is actionable as petition retaliation giving the action broad applicability.

[46] actionable under criminal, statutory civil, and common law. Racketeering predicates are identified for purposes of Civil R.I.C.O. at ¶¶ []

[47] see Counts [C][]

[48] See ¶ 5[][] on property injury for encompassing use of "property" [and the compendium], e.g. "property" under the application of Civil R.I.C.O. damages is distinguished.

other personalty (and economic advantages under NY law) is still actionably confined under common law.

4.      Defendants' confinement[49] of Plaintiff, as part of Defendants' retaliation for Plaintiff's petitioning against Defendants' corruption and crimes, became absolute on October 8th, 2014, on three occasions[50] shortly after mid-day, under homicidal threats and actions[51] imposed as Defendant-racketeering, in furtherance of Defendant racketeering, antecedent Defendant-racketeering (as declared-by-Defendant-racketeering-participant[52]) qua Defendant-racketeering-contract execution ensuite with further Defendant-racketeering,[53] and which has

---

[49] New York law of tortious confinement (which includes known common law "false imprisonment" (which has been construed by the Eastern District Judiciary under the name "tortious confinement" and for which Plaintiff uses as it is less-prejudicing to Plaintiff) closely tracks the law of Fourth Amendment confinement under the United States Constitution. Plaintiff has separated the operation of confining (seizing) tort by several statements of such legal-categories of the Cause of Action: ¶ 107 being tortious confinement under common-law (New York law extending in Minnesota and Colorado law), ¶ 121—unconstitutional seizure, ¶¶ 122 & 123 being confining as if under the operation of process-at-law (Constitutional and Common-law malicious process of State aggression, prosecution). Another matter very much steming from the Fourth Amendment is the legal-category of Cause of Action of unconstitutional search, ¶ 120; furthermore ¶¶ [] discuss important planning Claims in accordance with such as the Second Circuits' Terebesi].

[50] see Counts [C[]]. Plaintiff distinguishes "absolute" confinements from partial confinements where Defendants' completely restrained Plaintiff to a state of physical immobility; Justice Ginsburg is a leading figure in the Second Circuit and more broadly on the wider scope of confinement as the impinging of liberties sufficient for vindication by constitutional enforcement (that is not to say that Plaintiff would suggest Justice Ginsburg's dissent in *Oliver* encapsulates Second Circuit's stare decisis).

[51] see Counts [C[]]; [summary]

[52] Declarations of Ms. Obi—see Footnote 6, supra

[53] Counts were declared, as discussed above by defendant-racketeering-participant, Ms. Obi, to be part of an exchanged bargain between recruited racketeering participant, Ms. Obi and Defendant Brown, racketeering participant, as an authorized agent to promise and execute the corruption racketeering facility (more on the latter at ¶ []). In regard to the preceeding list describing distinct arrivals for the liability Defendants' racketeering as tort: Defendants' tort is actionable for various Counts were an individual Defendant was

successively (and is continually) furthered by Defendants' racketeering,[54] including such as contumacious obstruction[55] of the instant Proceeding.[56] The latter being from the Proceeding's first written form (conceived but not extant in

---

not physically present where Defendants' proximately caused the tort: in joint-State-action; where Defendants' furthered Defendants' tort; where Defendants' had premediateted Defendants' tort as parts of other Defendant tort with specific acts and agreement; et cetera. Defendants practiced most of Defendants' process tort [Counts []] as necessary operational parts of Defendants' racketeering facility, which was necessary for the commissions and omissions of Defendants' tort and which did and does further and advance Defendants' tort; it is entirely implausible to suggest Defendants employed the obstruction which is much of the tort which the instant Action contravenes not from an established menu of racketeering furtherance sufficient for enforcement of dismissal of Defendants' offering of any such Defense. [] [Rewrite in reference of ¶ 20]

[54] Counts [[most all from x point]] are in furtherance of Counts [C[]]

[55] Counts [] portend and raise Claims of obstruction of the instant Action under § 1985 (2); see such Claims at ¶¶ [].

[56] The whole of Defendants' furthering tort upon the Defendants' tort which (as described in the first sentence of ¶ 2) involed Plaintiff (made Plaintiff involved, i.e. the racketeering enterprise existed before Plaintiff's being involved and without the Action of this Court (or parallel Action) which will continue—Defendants' involvement of Plaintiff should result by the instant Action in reform to facilitate (against a long trend (i.e. see Footnote 1)) sufficient prevention of much or most of the racketeering enterprise and corruption of which the instant Action has scope) is part of the package generated by the enterprise's(s') racketeers to which the police-sex-bribery-racketeering-women recruited Ms. Obi and of which Defendant Brown and Ms. Obi had a meeting of the minds upon which Defendant Brown and Ms. Obi established a bargain of which Ms. Obi exercised in anticipation of available execution with the occurrence of execution starting on October 8th, 2014. Thus Defendants' liability for these Counts is actionable for Defendants': tortious facility; tortious premediation with instigation and witnessing of the proven racketeering practices successful for preventing federal and common-law vindication against the Defendant's Plaintiff-involving tort; tortious premediation presented as encouragement (to such as and particularly) the Defendant's Plaintiff-invovling tort committed; tortious premediation with guarantees of adoption and furtherance to ensure against federal or common-law vindication against the Defendant's Plaintiff-involving tort; and Defendants' many, committed furtherances upon the Defendant's Plaintiff-involving tort, including joint-State-action, et cetera State action, tort committed with several other non-m[capitalize]unicipality-employees which has occurred and continues.

Fourth Amended Complaint     E.D. N.Y.  17CV4519     Page 15

Filing), to its first written form filed in King's County court (the latest[57]

antecedent to which the enacted-in-federal-court Action relates back), and to

present contumacious obstructions including that requiring the foremost attention

for the Court's sanctions against this false appearing[58] by Defendants as stated in

the Motion for Initial Inherent Power Sanction of Defendants.[59]

5.   Tortious-under-New York-law and unconstitutional confinement of Plaintiff as

retaliation by Defendants' for Plaintiff's petition against Defendants' corruption

and crimes continued on October 8th, 2014 precipitating with the aforementioned

"ensuite" Defendant-racketeering, which occurred upon Plaintiff's return to eat[60]

after avoiding the same racketeering participant in the aftermath of the homicidal

attack[61] against Plaintiff which had only ended with the physical arrest of the

Defendant racketeering (see ¶ 27, infra): as per the aforementioned Defendant-

racketeering-participant declarations (see Footnote 6[, 16]) upon Defendant-

---

[57] Attorney employees of Defendants, it is established in disinterested evidentiary material, received notice of Defendants' liability and certain of Plaintiff's Claims along with statement of the res gestae.

[58] Defendants' contempt demonstrated from Defendants'          Defendants'          are failing to legitimately (without wholesale contempt) Answer the Claims or Appear before this Court raising adjudication of Defendants' default.

[59] One of the documents contained in Docket Entry #

[60] Plaintiff has a fairly restricted diet causing Plaintiff to cook Plaintiff's own meals more than may be typical.  Plaintiff eagerly sought to avoid the homicidal attacker's last hours at 677 Quincy (prior to the previously scheduled landlord removal the next day), but had been tortuously inhibited from cooking since October 7th, 2014 and needed to return to cook a meal (Plaintiff has many times described details relating to Plaintiff's need to cook to the Defendants—for more detail, see ¶ [BtoC]).  As Plaintiff had been prevented from cooking up to that time, early on the evening of October 8th, 2014 and then, before Plaintiff had boiling a large pot that Plaintiff had started on the stove upon returning from the evasion of errands, Plaintiff's being, again, absolutey confined by Defendants (upon ¶ 28) through, as described, supra, at Footnote 26, without food—Plaintiff was deprived of eating for fifty hours.

[61] Counts []

racketeering gurantees, a fourth[62] absolute confinement of Plaintiff occurred with calculated-but-scant veneer (as if to give appearance as being not wholly premeditated-racketeering) upon the overtly tyrannical removing-seizure[63] of Plaintiff at approximately 8:20 p.m. (20h20) following the preceding Terry-seizure at 7:00 (19h00); during the absolutely-confining-removed-seizure of 8 & 9 October 2014, Defendants' used homicide-threating and Sixth-Amendment-implicating coercion[64] as part of in toto usurpation[65] of the adjudication that was to be given to The Honorable John Hecht including broadcast of written and spoken distinctly-injurious fiercely-deliberately-false and fraudulent defamation to ensure the exclusion of a constitutional operator from allowing the United States Constitution to operate through that appearance of Plaintiff in King's County court.

6.   Paragraphs 3-5 have introduced Defendants' joint-action (et cetera) tortfeasance with particular regard to confinements of Plaintiff all pursuant to fraudulent

---

[62] extending from approximately 7:00 p.m. (19h00) to 10:00 p.m. (22h00) on October 9th, 2014 and including Plaintiff's removal from 677 Quincy to 31 Rogers Avenue (81st Precinct), a police van, and then downtown Brooklyn (processing and King's County court facilities).

[63] see Count CC[]

[64] See Counts CC[] [Rikers upon Pinder and coercion of ¶ 22 (including systemic such as ¶ 22)]

[65] Plaintiff raises an Eighth Amendment Claim (Claim # [], see ¶ []) upon Defendants' usurpation of the constitutionally required hearing for Plaintiff to be subjected to process: this Claim's compensatory derives from the harm Plaintiff suffers as a result of Plaintiff's knowledge of suffering such vindication—of which Plaintiff continues to be denied—as well as hearing process.   Plaintiff's profession in government, skills related to governmental knowledge and relation, and   particularly germane to the impact. Real estate business owners commented on the value to to the cooperation of their business with Plaintiff given Plaintiff's excellent and knowledgeable relations with government. This eighth-amendment-implicating usurpation of hearing by an adjudicator [recovery under amplification of [Zeta] 21, 22, 23)   the process required hearing. raises concerns very much rooted in the Constitution's peneaological .

Fourth Amended Complaint       E.D. N.Y.  17CV4519       Page 17

imposition of quasi-process-at-law. [66]   Plaintiff uses the term joint-action, though—more specifically—the non-municipal-actor-State-actors are municipal-State-actors by several configurations: of which, with regard to the instant Action, the contract discussed in ¶¶ 3-5 generally can be used to, importantly, separate the the injurious-to-Plaintiff-tortfeasance-by-Defendants into three parts: tortfeasance which facilitated the police-sex-bribery recruitment of Ms. Obi by the group of police-sex-bribery-participating-recruiting-women and Ms. Obi's contracting police-sex-bribery with Defendant Brown; secondly, the contracting between Ms. Obi and Defendant Brown activitating Ms. Obi's powers to exercise crimes under such police-sex-bribery contract given the en-suite racketeering by the whole of the enterprise; and thirdly, all of the enterprise's resources and racketeers' exercising of the contracts' guarantees to recruiters, Ms. Obi, Defendant Brown and in furtherance of ensuring continued racketeering operations: facilitation of racketeering that led to the formation of police sex bribery contract; the racketeering under the contract prior Ms. Obi repaying racketeering for contract; and the *en suite* racketeering with the contract (which followed Ms. Obi's physical arrest by police and warning of a menacing citation) involving Ms. Obi's return to the racket for exercising powers under Ms. Obi's participation.[67] Most of the Counts are tortfeasance of the third category—and they continue to accrue

---

[66] regarding "quasi" as opposed to actual, i.e. not as-if, process at law, see the end of ¶ 4, supra, and ¶ 149.

[67] Ms. Obi and Defendant Brown admit going into Ms. Obi's room alone where Ms. Obi admits, (payments at-least-began (no reason to think police-sex-bribery-participating-women are ever free from coerced sex from the racket, et cetera) Ms. Obi at a minimum privately disrobed for Defendant Brown; though Ms. Obi indicated the bribe price to be oral or anal sex by Ms. Obi to Defendant Brown) for all racketeering that would be needed to complete the victimization).

and be committed by Defendants' in furtherance or all and to manage racketeering operability for the enterprise.

7.    Defendants' state-Action with regard to the second part described in ¶ 5: i.e. the racketeering under the contract prior to Ms. Obi's repayment [68] (or, more precisely, calling Defendant Brown (Admitted fact) to schedule repayment or the initiation of repayment and to inform Defendant Brown of the imminent needs for the en suite racketeering to cover up Ms. Obi's crimes and to ensure the arresting of Plaintiff's petition via further injuring of Plaintiff by Defendants' State-power racketeering) is State-action for purposes of tort liability as in common-law and as such is established in stare decisis (which although somewhat varying by Claim and legal-category of the Cause of Action—may generally be described as meets and exceeds standards for State-action in decisions) on 42 U.S.C. § 1983.  Details of ¶¶ 2-4 describe various ways Defendants' actions prior to accruing-involement against Plaintiff and the en-suite racketeering has particularly furthered various aspects of stage two of the racketeering as well as more generally, and futherance of such part of Defendants' racketeering, et cetera, against Plaintiff more for or with the purpose of more specifically retaliating against Plaintiff's petitioning against Defendants' racketeering to maintain operability for the enterprise— which is all the more a driver of all-the-more of Defendants' continuing retaliation and racketeering against Plaintiff.

---

[68] (sexual overtones of Defendant Brown and admitted private disrobing (admissions of Ms. Obi) with sexual touching or intercourse may or may not have included the payment of oral or anal sex Ms. Obi indicated was payment while Plaintiff and ¶ 28 were present at the scene at which Ms. Obi had been physically arrested and given only a warning of a menacing citation)

8.  Retaliatory quasi-process at King County court's end.  The King's County's court's suspicions against the retaliatory proceeding that was against Plaintiff when the scales broke freeing Plaintiff of hesitation about abandoning the sixth-amendment-attorneys, not just immediately to counter the immediate necessity that arose that day, 7 May 2015, even though no attorney to be confident in was reasonably to be hired.[69]  Plaintiff made plain that what were ultimate facts (contravening the malicious action against Plaintiff) were entirely available from the police who arrested[70] Ms. Obi at 2:10 p.m. (14h10) on 8 October 2014 (this pair of police officers are identified in and as ¶ 27, infra: referenced, hereafter in the Action, as either Complaint ¶ 27 or "the 9-1-1-responding police") who were being obstructed "boxed-out (per the evidentiary material)" entirely from involvement—even though the 9-1-1-responding police were obvious witnesses. Judge Campanelli tested Defendants asking Defendant (ADA) Midey that if Plaintiff had taken anything without privilege or right so to do, had any such thing been recovered: to which Defendant Midey responded to Judge Campanelli that he, Defendant Midey, could not answer for lack of information or belief.

9.  Plaintiff effected a message to a constitutional-operator, i.e. someone at the King's County (District) Attorney's Office operating constitutionally all the time,

---

[69] given the intimidation of any attorney in taking on such tyranny against Due Process, et cetera, from Defendants and where Plaintiff articulated sources of abundant genuine material should have produced the end of the quasi-process against Plaintiff where Plaintiff had agreed representation for the proceeding of Plaintiff's Claims.

[70] See ¶ [BtoC] as required by duty to the (stipulated by Parties) only 9-1-1 call from 677 Quincy on or around 8 October 2014 made by the (stipulated by Parties) eyewitness to all relevant events of 8 October 2014 (the stipulated-by-Parties-only 9-1-1 caller is discussed further at and hereafter referenced as ¶ 26, infra) after Ms. Obi refused the commands of the 9-1-1-responding-police

as this Court enforces, as opposed to other employees at the King's County (District) Attorney, including the past and present titular incumbent: pro-se, for lack of sound alternative; as such simple communication was all that was more than sufficient to make obvious the need for Defendants' tortious actions against Plaintiff to be halted and for further remedy; and it was rather plainly obvious that a lay statement would suffice. By cause of the constitutional operator's impostition of constitutionality with the force of whistleblowing, Defendants were forced to terminate the action against Plaintiff, more than a year after Defendants had reduced Plaintiff's partial, compromised, and all-but-absolutely-confined liberty to expirations-in-one-month-increments in succession.

10. Any police official or King's County official to take a substantive evaluation of a case as it stood with a primary allegation which was contrary to physics and, independently, contrary to reasonable human behavior. The dossier futher lacked what procedure required including manifest of ¶ 27 and explanation of the contact precipitating ¶ 28, as only ¶ 26 was in the file as audio or Sprint report; including these points, the file had a number of holes which would have required any observer to inquire, which would have resulted in the same as the constitutional operator's findings. The fact that the case managers at the King's County (District) Attorney's Office, not only did not follow procedure regarding the critical flaws and holes, [no audio recording(s) represented sworn by Caracciolo to be primary evidentiary material in police possession—which KHR has represented were never in police possession [check exact phrasing of KHR in 20 Feb email in regard to Plaintiff's 19 Feb]] but pointedly stated that they were

following (racketeering) policy availed by police administration to block ¶ 27 absolutely from any involvement or contact with coercion effected upon ¶ 22 to that effect and under threats communicated to ¶ 22 regrading abuse of Plaintiff. It is wholly implausible that Defendants Midey, Scarcella, Picoulli, Middleton, and Roe made such overt unconstitutional furtherance at the command, instigation, and sufficiently proximate cause of Defendants in total contravention of duties . Defendants refused to produce the Class A Misdemeanor citation against Ms. Obi as a mere warning .

11.   The withdrawal of the retaliatory action against Plaintiff, upon forced exposure to the King's County court of immense "Brady violation" (quoting the writing of Court Reporter "A" of ADA Midey's words to court), confirmed by dismissal and sealing of the action against Plaintiff: only partially remedied the cause of action that Plaintiff had asserted in pro se Filings to that Court, which included claims for damages; most of Plaintiff's Claims relate back to Filings to King's County, noticed to King's County attorneys. Defendants' obtained delays to Plaintiff's enaction in this Court via a former corporate counsel employee who severally acted to Defendants' benefit and committed absolute violations of fiduciary and agency obligations in an effort to reduce the present Action to be not more than a bunt that Mr. Stancati and  Defendants intended to force to be excepted with an enforcement mechanism to silence Plaintiff's witness and further petition.  The existence of the instant Instrument is a testament to Plaintiff's dedication to the necessary vindication of the Constitution, remedy of the municipal law enforcement corruption, and the need for Plaintiff's full compensation for and all

injunctive means of reducing Plaintiff's injuries via continuing petition: and so functions with separated sections identifying the legal-categories of the Cause of Action, the Counts, and the Action's Claims applying the categories of tort law upon Defendants' tortious acts and events, the Counts.

12.  The Action begins, Plaintiff states in the first phrases of ¶ 2—supra, with respect to Plaintiff, as Defendants' unconstitutional and tortious-under-common-law commissions and omissions sufficiently causing the Action's damages and raising the Action's injuctive relief measures began prior to Plaintff's being injured. The central Defendant-racketeering contract: crimes covered up unconstitutional-and-tortious-under-common-law seizures and fraudulent process with usurpation of an adjudication to initiate process at law: exchanging sexual favors for law enforcement furtherance of crimes and tyrannical crimes surrounding process to ensure successful furtherance with mechanisms of support throughout and the management of internal affairs up to the furtherances by the very police Commissioner, King's County (District) Attorney, agents of the CCRB, and a sufficient network of non-municipal-employee confederates to ensure target fish do not escape the net: chits trading, coercion, or blackmail, as available, as means to ensure the racketeering enterprise is succsful in benefit-seeking and furthering the enterprise's operations, continuation, and monopolization-of-force's safety from the Constitution. Defendants' caused Plaintiff's injuries under conspiracy law and proximately, as a link in a chain not committing to readiness to be part of the corruption facility would undermine the whole chain as each Defendant understood, has knowledge, and is aware of multiple predicate acts to be

committed upon each target fish.  The distinction of the Actions' begininng with respect to the direct involving of Plaintiff is made (and is important) as Defendants' tort which the Action addresses and the systems of Defendants' facility (in and with Defendants' governance and setting of municipal policy, practices, and operations) is sufficiently rife with tort of proximate cause of the injuries and injustice raising the Remedies of the Action.

13.   The overt agreement to facilitate the racketeering furtherance mechanisms (which occurred prior to the Action's roots with respect to the dye casting of Plaintiff's becoming am injured victim) which were followed through upon Plaintiff once Plaintiff was identified for the pulling of the various and successive triggers, including ongoing obstructions including, e.g. Counts [], Defendant's procuring the King's County Court reporter's clerk's coordinator, Ms. Doreen Ierardo, to obstruct Plaintiff's access to the record, cited supra at ¶ [], by Court Reporter "A," of which Plaintiff had described the importance and contents amounting to forced admissions by Defendants of Brady violations—followed by Ms. Ierardo's nonsensical menacing indicating all copies of the notes had been destroyed[71] and that production of the King's County court record would never occur: only the intervention of a fourth party led to the production of the record, but with certain tampering[72] designed to deflect Defendant liability[73]—Ms. Ierardo, in delivering the particular record, while continuing other obstructions upon which the fourth

---

[71] Count []

[72] Count []

[73] of which the Supervising Judge of that King's County court is a witness given Defendants' nonsensical tampering with words of the Supervising Judge which contradict the Supervising Judge

party did not intervene,[74] which Ms. Ierardo had stated was ready to mail to Plaintiff upon Ms. Ierardo's receipt of payment from Plaintiff, fraudulently represented cause for delay[75] in remitting the transcript to Plaintiff in order for Defendants to attempt such tampering with the coordination Mr. Anthory Barosi and likely in consideration of information from Mr. Stancati, as certain tampering and errors-to-the-tampering reflect more than a jury could find coincidental,[76] Mr. Stancati's questioning of Plaintiff about the document, i.e. Defendants' hoped that with information (perhaps indirectly from Mr. Stancati—through intermediary) that the tampering could be subtle enough that Plaintiff would not notice certain differences and ad libbing by Court Reporter Appel, which sought to deflect[77] broad Defendant liability upon the prepared for sacrifice (by Defendants) ¶ 28, particularly Defendants Brown and Caracciolo.  Defendants actions to till the field that it be furthered sufficiently for optimal racketeering operations prior to Plaintiff's being the one to receive an injury directly each cause, given the necessity of links everywhere in the chain that it takes to submit each victim to successful fraudulent, et cetera, adjudication or the signing of a waiver to rights to raise law enforcement corruption issue before the constitutional enforcement mechanism, the courts.  As Plaintiff brings Claims (see ## []) against Defendants for the integral readiness in greasing the rails for the execution of racketeering of the enterprise, including police sex bribery.

---

[74] Count []
[75] Count []
[76] Plaintiff noticed having immediately found the extensive, yet-in-some-ways subtle corruption of the evidentiary material by cause of Defendants unconstitutional, tortious-under-common-law obstruction in the late summer of 2017 to the Docket.
[77] Claim #

14.    Upon the Defendants' racketeering corruption facility, Defendant Brown could bargain a contract with police sex-bribery recruit, Ms. Rita Akweugo Obi, with the confidence that Defendant Brown had upon the tremendous assurances and testimonials from the Brooklyn-police-sex-bribery-racketeering-participant-women who recruited Ms. Obi recounting the smooth operation of the law enforcement execution of false arrest and malicious prosecution upon the assault and battery, et cetera, of the racketeering participant women (these women possess, by municipal-racketeering participation, what could analogized to a jury as a superpower); without Defendants'[78] commissions of proven racketeering facilitation, the police-sex-bribery-recruiting women could not so successfully have recruited Ms. Obi and Defendant Brown could not have so successfully bargained a sex bribery contract with Ms. Obi and so smoothly, carelessly, and powerfully have precipitated exercise of racketeering beyond with joint-action with Ms. Obi and, further, for so many operators of cogs through the process to have so steadily, unquestionably, and firmly violated constitutional obigations and operations to commit tort in furtherance of Defendants' tort.  Close examination of the process reveals fine details demonstrating the vastly shocking scope of Defendants' shockingly wanton and unconstitutional tort.  Ms. Obi could not have been an successfully recruited to commit the joint-action racketeering as Ms. Obi did with the individual Defendant which only together form the sum facility; Defendants could not have carried out the vast array of furtherances, which Defendants did, without the same facility for which each individual Defendant

---

[78]   and other racketeering participants including municipal employees outside of likely outside adjudication in the instant Action

having committed to the establishment of the facility. The system simply could not work as smoothly, steadfastly, and without risk or interruption as it did in furtherance of the prior sum of Defendants' tort, as fact finders will observe and find in the whole of the Evidence upon close examination of what was committed and Defendants' corruption systems. Preparations to present on the apportionment of the plural liability are appropriately made after much or most discovery that must examine, very closely, Defendants' relevant operations.

15. The scope of corruption and sufficient Evidence to establish wholesale Internal Affairs corruption and fraudulent reporting to the post-Mollen annual review committee and Police Commissioner operational leadership establishes sufficient gravity of tyrannical operations for the scale of injunctive-power-utilizing inquiry and, upon such inquiry and other findings, the appropriate measures of punitive damages and injunctive reform identified in Remedies, infra.

Implications needing focused varieties of substantive due process for adjudication.

16. Varities of punitive damages, based on total of accumulated commission of intended damages; introduction to Plaintiff's compensatory, continuing, et cetera. Preventing permanent damages (Plaintiff holding the dyke of permanent life-destroying damages). Corruption facility punitive liability primarily on command units and officers participating and thereby causing.

17. Distinction between cases calling for 1985 (2) enforcement, generally, and the instant case where the obstruction is not just obstruction of civil rights, but clearly part of racketeering enterprise with maintained operational functionality and

discrete role cooperation throughout controllable bureaucratic system: in-your-face approach, not guarding loose ends (i.e. demonstrating systemic confidence), IAB spoliation (there-is-one), fabricated Tomasello report in response to amended pleading, house-of-cards collapse of action against Plaintiff, intimidating obstruction of transcripts, tampering with court transcripts, brazen and outrageous Kafkaesque tyrannical retaliation, systemic KCDA obstruction reinforcement, admitted sex bribery, admitted 81st Precinct fabrication of records (other than Tomasello), Corporation Counsel participation and reinforcement (sidelining of Mr. Rosenkilde) and use of fraud to injure and attempt to obstruct, Defendant Barosi's assertion of assistance by Mr. Barsoi's friends at the local FBI office.

18. Synopsis preceeding: Obi first show of aggression was harassment which Ms. Obi openly referred to as wishing bad death to a person's sexual orientation (subsequent reference to the person in the declaration in the context of violently attacking); violation of surety, pending landlord-ordered-removal-before-thirty-days of Ms. Obi, recording threat and evidentiary implications given Plaintiff's belief that most contacts had been recorded [intent of recordings to violate § 50 regarding publication; then the threat was imposed]. Defendants attempted to plant material on Plaintiff's phone and took successful and deliberate steps to accomplish such (only narrowly not complete due to Plaintiff's having used confidential limited secure storage)].          Plaintiff's adds to the discussion of the "bargain," the word (frequently used in discussions of state action and cause) "nexus:" passim, Plaintiff's references to the instant Footnote and to the "bargain nexus" encompass and include the variety or package of

Defendants' liaibilties causally established at this nexus of state action, causation, and liability.   Defendants' liabilities intersect at this nexus or fulcrum as Defendants' corruption and racketeering facilitation set up the mechanisms necessary for the involvement of racketeers and the ability of racketeers to racketeering under the facility, protections, and operations of the corruption and racketeering facility of the municipality; also tied to the same "particular police-sex-bribery-bargain nexus" are Defendants' many tortious commissions and omissions for Ms. Obi to be recruited and to come to the point of being able to be contracted by Defendant Brown  (all as Ms. Obi admissibly declared (also tied to the same "particular police-sex-bribery-bargain nexus" is the actually meeting to meet minds of Ms. Obi and Defendant Brown, where both understood usage of the color of law, established racketeering and corruption facility including most used against Plaintiff (with ancillaries);  also tied to the same "particular police-sex-bribery-bargain nexus" are all the furtherance understood by the recruited and contracted certainty of all corruption, obstruction, and racketeering necessary to maintain the enterprise and exculpate the acts of the bargain, including Defendants' many ongoing deliberate furtherance of the widely-involved corruption known to involve varieties of tortious and unconstitutional acts including with persons of various different departments of the City of New York and non-employees of the City of New York.

19.

20.

21.

Fourth Amended Complaint        E.D. N.Y.  17CV4519        Page 29

20.

21.   677 Quincy refers to King's County address where Plaintiff had pre-leased ("pre-leased explained elsewhere—had full tenant rights but the arrangement was informal given trust and odds of it being temporary.

22.   Plaintiff's first opportunity to speak about being wrongfully removed, as Plaintiff has recorded many times in prior Pleading Filing, and documents including privileged documents was to the person who is represented in this Complaint as ¶ 22, i.e. the person referenced in ¶ 22 and referenced by reference to ¶ 22.  As the person of ¶ 22 has been considerably detailed in these, the former, writings, Plaintiff does not reiterate such material at this time.  Plaintiff may likely continue to reference "Complaint ¶ 22" as a reference for this person throughout the Proceeding of 17CV4519.

23.   Paragraph 23, as in previous iterations, was named as an advisor to Plaintiff prior to Plaintiff writing Plaintiff's O.F.C. (Originally Filed Complaint).

24.   Paragraph 24, like ¶ 23, is structured like ¶ 22 as a reference to a previously well identified personage of Plaintiff's prior Pleading, Filing, and writings: the IAB police staff who determined that as a matter of absolute certainty upon triple-checking all related documentation (including that identifying the other person on the duty shift in question) that Sgt. Shaun Brown was not on duty and thus could not have been in uniform (Sgt. Shaun Brown's appearance was municipal-backed, organized, facilitated, furthered, and propounded-upon-still racketeering—not Constitutionally-lawful police work, permissible use of the color of law and State power, or non-liable violation).

25.     Plaintiff confidential matters discussed under the mutual protective order.

26.     Paragraph 26, like ¶ 25, is structure like ¶ 22 as a reference to the 9-1-1 caller, the only person to call 9-1-1 from 677 Quincy from the time Plaintiff took executed interest in space at 677 Quincy until 10 October 2014, when Plaintiff was mandated to call. Several Counts concern the only 9-1-1 caller (referred to by the abbreviation "¶ 26").

27.     Paragraph 27, like ¶ 22 references a person: ¶ 27 references the only-9-1-1-responding police. Mr. Rosenkilde definitively admitted that Ms. Obi did not call police, did not call 9-1-1, but called Sgt. Brown's private cell phone from Ms. Obi's cell phone (and Sgt. Brown then contacted Officers Caracciolo and Casciola—Sgt. Brown told Officers Caracciolo and Casciola that Sgt. Brown needed racketeering duty from them regarding Ms. Obi and that Sgt. Brown would follow up when it was time for Officers Caracciolo and Casciola to go to 677 Quincy for Sgt. Brown). That the Sgt. Brown four (¶ 28, infra) obstructed the police work of the 9-1-1-responding police (the instant pair, ¶ 27) is judicially noticeable from the *penultimate's* King's County court statement that the obstruction and hiding what (¶ 27) witnessed was a "Brady violation" obstruction, as described in Plaintiff's late August 2018 Filing.[79]

---

[79] Plaintiff had previously described on record to the penultimate how the obstruction of the 9-1-1-responding police was immensely important as it massively contradicted the (fraudulent) statements against Plaintiff brought by the municipal racketeering organization and the Sgt. Brown four, by Sgt. Brown in Sgt. Brown's own words of ownership of the (horribly abusively and violative) action against Plaintiff. The penultimate states on this November, 2015 court appearance that the penultimate conclusion that the 9-1-1-responding police's having been "Brady"-obstructed was based on telephone conversations with the 9-1-1-responding police (the 9-1-1-responding police saved Plaintiff from the appearing-qua-psychotic attacks of Ms. Obi, whom the 9-1-1-

28.     Paragraph 28, like the supra through ¶ 22 references personage: ¶ 28 references

Sgt. Brown and Officers Caracciolo, Casciola, and Hellberg. These four, whom

Plaintiff has also referred to as "the Sgt. Brown four" submitted written

statements which Defendants have admitted were fraudulent and likewise were

recorded by the CCRB on these matters which Defendants have also admitted

were fraudulent[80]: Sgt. Brown organized the appearance of the three, Officers

Caracciolo and Casciola described Sgt. Brown as "the boss" and after Sgt. Brown

was in Ms. Obi's room where Sgt. Brown had stated Sgt. Brown was going to

"examine her [Ms. Obi's] body" Officers Caraciolo and Casciola told Plaintiff,

still under the seizure imposed at the arrival of Officer Caracciolo and Casciola,

that the Sgt. Brown four would just leave after Sgt. Brown finished in Ms. Obi's

---

responding had to lawfully arrest from Ms. Obi's attacking Plaintiff, who was barricaded
behind a door on the floor covering Plaintiff's head from the strikes of Ms. Obi: Ms. Obi
proceeded to admit to repeated homicidal attacks of Plaintiff and having said to Plaintiff
that Ms. Obi would "kill" Plaintiff: such circumstances have never been denied in
assertion other than on occasions by Defendants in which Defendants now admit having
committed frauds in such statements of assertions: Mr. Rosenkilde admitted upon Mr.
Rosenkilde's review of materials known to Defendants and Mr. Rosenkilde's
conversations with the 9-1-1-responding pair that Defendants action against Plaintiff was
"wrong." Fourth Amendment law clearly does not allow police to override other police
witnessing the events in question on the basis of the identified perpetrator (Defendants
successively have admitted as did Mr. Rosenkilde Ms. Obi was cited for Class A
Misdemeanor (not at Plaintiff's request) and Ms. Obi discusses on Ms. Obi's CCRB
interview that Ms. Obi pressed for action against Plaintiff (the 9-1-1 responding police
said the most that could be alleged against Plaintiff was a warning regarding text
messages sent to Ms. Obi on a prior day (which were in regard to Ms. Obi's extortive
actions with State power which the State has amplified with the actions of the very Police
Commissioner) which Plaintiff could address along with the broader circumstances when
submitting an affidavit concerning Ms. Obi along with the 9-1-1 caller's supporting
affidavit (in spite of the 9-1-1 caller's submission of an affidavit to the 81st Precinct in
short order Defendants continue to represent—even upon the furtherance of the 9-1-1
caller's testimony the 9-1-1 caller's testimony in the CCRB interview.
[80] though Officer Hellberg clearly did not want to be blatantly racketeering and denied
remembering much of anything in Officer Hellberg's CCRB interview and thus in a
number of ways is less aligned and involved than the other three

Fourth Amended Complaint     E.D. N.Y. 17CV4519     Page 32

room and that Plaintiff need not be stressed at being then seized while all waited for Sgt. Brown and Ms. Obi: Sgt. Brown emerged and whispered to Sgt. Brown's three officers instructions and left. The Sgt. Brown four admit in CCRB interviews that the Sgt. Brown four had ascertained that the 9-1-1 caller was present at the time the the Sgt. Brown four's appearance at 677 Quincy with Sgt. Brown making the only contact which consisted of Sgt. Brown identifying the presence, willingness to testify, and relevance of the 9-1-1 caller (but with Sgt. Brown telling the 9-1-1 caller that Sgt. Brown was acting against Plaintiff and did not want to hear from the 9-1-1 caller as the 9-1-1 caller related in sworn affidavit and sworn CCRB interview. The Sgt. Brown four told the King's County District Attorney's racketeering facilitators and participants not to allow the 9-1-1-responding pair to be called to court and to assert that the Sgt. Brown four has appeared earlier (as if not the 9-1-1-responding pair, but Officers Caraciolo and Casciola had appeared earlier—to thereby entirely obstruct the 9-1-1-responding pair: Mr. Rosenkilde Plead this fabrication in reply as Defendants still thought such a fabrication, at that time, was a live ball—Plaintiff identified such in Plaintiff's May 7th, 2018 prope persona Pleading.

29.    Consists of the group several police that were gathered for Plaintiff's arrival on October 8th, 2014 that as the paperwork could be fabricated in accordance with Sgt. Brown's wishes, all potential false witnesses could potentially be ready to say they were involved at the scene as Sgt. Brown and Officer Hellberg's not having been on duty made for cause for wide racketeering participation at the precinct to ensure bases necessary were covered.

30. KCDA constitutional operator

31. First 2017 IAB contact

32. Confidential witnesses of employ of the Defendant New York Corporation

33. Academic-setting witnesses including in New York area

34. Plaintiff confidential business witnesses and material

35. Plaintiff private matters of various confidential nature (description of nature would injure non-parties)

36. Plaintiff privileged Documents that recount Defendant tort

37. Plaintiff privileged information pertaining to Defendants' sexual, racio-sexual, and extortive misappropriation and harassment violations

38.

39.

40. **Plaintiff detail** Plaintiff discussed in King's County court, regarding self-representation, Plaintiff's education which has included some time preparing towards a thesis project to earn a Doctoral Degree in Great Britain, ultimately, over Nine Months working with various faculty under association with a University, Plaintiff decided that as Plaintiff had no intention to particularly use a doctoral degree (as has been broadly a family occupation) and instead decided to move to New York to trade equities,[81] arriving in March of 2011. Plaintiff had lived in New York for a month conducting an independent (advised) study with

---

[81] Deciding that building independent capital was the needed priority, which the identical objective with Plaintiff's switch to real estate, which Plaintiff had brought to a quarterly transaction amount of [] (see lost profits (injury *a* # 1) in profit at the time of first-accruing-Defendant-injuring of Plaintiff (many injuries obviously continue and with ongoing Defendant tortfeasance, continue to accrue) after completing two mentorship training experiences under high-8-or-well-into-9 figure-transaction-volume brokers.

some oblique association with Columbia University to the extent of attending some classes related to the study topic and using the library, in 2007. The Course was based on Aristotle's notion of the "The City as a Teacher" and sought to examine the built environment and construable government interests with regard to planning: focusing particularly on a dichotomy of applications in Jane Jacobs and Robert Moses: how does the City facilitate eudaimonia (the object of wisedom, as would be said in the philosophical terms) or tax eudaimonia with its built environment. Plaintiff had the opportunity to conduct a few other such independent studies: examining "Ethics of Web Friendship," which Plaintiff attempted to, indirectly, use to obtain a summer position at the Washington Post trying to convince an executive that such as Facebook could take over the News business if it applied itself correctly (and thus Washington Post, should invest in its own software (competing platform[82]) with Plaintiff's assistance), and more relevant, Plaintiff studied how the Constitutional framers of The United States sought to use the best lessons from the history of ancient Rome and Greece to not fail[83] in reincarnating a democratic State. Constitutional enforcement against tyranny is quite literally a major subject of the instant Vindication, particularly rasing the need for the particular Substantive Due Process CoA[84] designed against systemic corrupt government usages, practices, and policy (including written policy chosen to allow scarcely written corruption and racketeering policy—such

---

[82] Plaintiff has been since serious undergraduate courses a middling mathematician and classicist, among other continuing academic interest: Plaintiff's math knowledge is mostly in pure mathematics—translatable into computer science—of which Plaintiff does have fundamental training and knowledge.

[83] See *tyranny*, discussed at ¶ []

[84] (¶¶ 125, 126, 127,128,136, [149])

as weakness of law enforcement data systems to facilitate municipal and racketeering fraud[85]). The largest latest accruing injury involves Defendants' injuring Plaintiff's 2013 drafted contract (et cetera) as a part of development project of which the municipality had some 2013 notice regarding its strong interests and its role (including privately supported public infrastructure not otherwise built).[86] [synopsis RE: injuries, more generally as not indicated supra:]

41. Defendants, across the tortfeasance, made and make it increasingly impossible (through Defendants' action and specific words and manner, continuing) that Defendants' are not operating precisely what Ms. Obi described, racketeering (police sex bribery was the component Ms. Obi admissibly described in detail and then executed against Plaintiff—an irony Plaintiff raised to Defendant Brown on 8 January 2014—of which there is no excuse but Defendant unconstitutionality for Defendants' non-production (given Plaintiff's immediate notice to Internal Affairs—which incidently led to the Internal Affairs finding that Defendant Brown was not on duty and not-according to written municipal policy allowed to be wearing).[87] Internal Affairs, in discussing in the Spring of 2015 why such finding of Internal Affairs had not ceased the wildly, horribly, and life

---

[85] Particularly, to thwart the post-Mollen review (demonstrated succinctly in a 2017 IAB interrogation

[86] (of which Plaintiff cannot discuss in certain detail without seal and (on another level, with record) to prevent third party injury, et cetera)—see injuy c # [1]; and of which the City would strongly prefer to the alternative, which does not involve Plaintiff (accrual has occurred as the weaker-municipal-interest alternative has received excluding go ahead in February of 2019 as Plaintiff immediately noticed to the Docket.

[87] Which is among the reasons Plaintiff was seized for no reason but to wait for Defendant Brown while he went home, dressed, and got Officer Hellberg (who was also not on duty) to dress and drive Defendant Brown to Plaintiff for police sex bribery with Ms. Obi

destroyingly fraudulent Action against Plaintiff (different personnel) dramatically

furthered the retaliation against Plaintiff's petition against municipal government

corruption upon Plaintiff's next accruing tortious and unconstitutional seizure.

42.    Among the red flags of the *information-assemblage*[88] are: reference a piece of

pseudo-evidence Defendants knew was fraudulent (and otherwise non-existent)

and thus it was never collected into the assemblage (a glaring red flag hole in the

information); reference to physically-impossible physical acts (inherent from

examination of the text); no explanation for the chronological irregularities

(which pertained to the forcing by the "constitutional-operator"[89] at the KCDA to

have "the penultimate" Admit was based in Brady-violation obstruction[90] of the

relevant or material police witnesses); inherently identifying a witness and yet

asserting "zero" witnesses (the Admitted-only-9-1-1 caller, clearly a witness from

the[91] audio, that Defendants knew to be a contrary witness and thus Brady-

---

[88] Which as it was created to be defaming and injuring Plaintiff and thus naturally increasing damages to Plaintiff with any or every publication, should not be published to the Docket, but treated with appropriate care to prevent aggravation and continuing injuries to Plaintiff caused by Defendants' injuring to Plaintiff.   Plaintiff will subsequently discuss as necessary.

[89] See Affidavit ¶ 1.41 regarding the "constitutional-operator."  As Plaintiff still has been refused basic FRCiP # 26(a)(1)(A)(i) identifications from Corporation Counsel, even upon the 19 February 2018 identification requests still (evaded and) unanswered, Plaintiff must continue to reference certain persons by such identifications.  The "constitutional-operator" is described as such as it was the one person (or with another) of those involved at KCDA who, instead of reinforcing the obstructions that were red flags with the information-document: forced the "penultimate" to admit "Brady-violation (court reporter text—which has been otherwise discussed aside from this citation)"

[90] Complaint ¶ 27

[91] (tortiously redacted of Plaintiff's opening statements declaring being under attack); which Corporate Counsel tortiously suggested had to do with the protection of a phone number which was provided in the middle of the recording, not the beginning, (point related to other Defendant tort)

Fourth Amended Complaint        E.D. N.Y.  17CV4519        Page 37

obstructed[92]); after its first (and wildest) iteration, always in conflict with prior iterations. Essentially, the information-document failed[93] who, what, when, how review based on fraud originating from the 81st Precinct: all agency (with leadership) involved at the KCDA, IAB, and 81st Precinct only responded to various *layer* flaws and red flags raised by Plaintiff in objections, inquiries, forcing attention and the supposed administrative remedies (IAB, CCRB, et cetera) only to enforce the obstructions and overtly increase Defendants' expressions of knowledge of the red flags of the information-assemblage (furtherance)—until the constitutional operator's forcing the penultimate to make Admission of Brady violation obstruction et cetera.

43. Plaintiff's "Exhibit A" of Plaintiff's mid-May 2019 Filing cites the O.F.C., which as it was made with quite essentially nothing but lay knowledge and intent (Case so obvious that a jury would by unconstitutionally shocked (which is arguably as perceivable to the lay as to the law) if that jury were told the law did not allow such as punitive damages to Plaintiff and injunctive relief including municipal reform (e.g. Defendants explicitly threatened on 7 May 2015 (at 120 Schermerhorn) that Plaintiff totally shut up about internal affairs police corruption or Plaintiff was going to death or gagged-solitary without ever seeing or saying a word to a jury (the reason for Plaintiff's premature prope persona Complaint Amendment being made prematurely was to re-incorporate into the federally-

---

[92] even upon 81st Precinct receipt of notarized "testimony" document in 2014 from the Admitted-only-9-1-1 caller
[93] Though such is certainly not the limit of the tort the instant Action addresses regarding the tortiously formed, maintained, and subsequently treated information-assemblage and other process, nor, certainly, the main tort or nexus of the variety addressed by the Action, 17-CV-4519.

enacted Pleading fresh notice of the Count from the O.F.C. on the 2018 anniversary of the Count))—i.e. in stating the Claim in the O.F.C., no need for legal knowledge or inquiry beyond lay facts statements seemed (nor was—for complaint status—as it included damages with equity power) the least bit necessary (given this shocking, obvious, and inherent nature) for Plaintiff to establish in written statement cause for the Court to grant Plaintiff's request of 31 March 2015 that Plaintiff be immediately allowed court hearing for Plaintiff's damages: therefore (all-the-more with consideration of such as Defendants' coercing and imposing duress), the O.F.C. should be, generally, delimited—outside establishment of Plaintiff's uses.  The assault (et cetera) of 7 May 2015 did further quiet Plaintiff's petition activity (as Plaintiff was obligated to mitigate and reduce risk of damages such as death) and did delimit Plaintiff, necessarily, from initiation of further contact to NYC police.  All of the facts of the instant FN have been already asseverated to the Docket and are completely consistent with and supported by the universe of evidentiary material.

44.   Plaintiff described (to the Docket in 2018) a strong indicator of the severe more-than-intentional-infliction-of-mental-anguish having been aggravating of Defendants' prior and continuing injurying as Plaintiff's having been encouraged by a State of Italy Attorney to consider Asylum in Italy rather than to risk continuing to appear in the Autumn of 2015 given Defendants promised escalation of retaliation after having destroyed Plaintiff's life and homicidally menaced Plaintiff with such comfort, establishment, practice , and ease.

100. Legal-categories of the Cause of Action (abbreviation CoA) are identified in the foregoing ¶¶ 101-155; a frequently used word for differentiation multifarious the legal bases of Action is species.[94] Defendants' tort broadly offends common law and the constitution as applied in bill of rights enforcement law via the Fourteenth Amendment so that most Counts have many legal means of recovering. The "CoA" tags are used to demarcate at least most of each individual attachment of a Claim to a Count, i.e. every Count contains significations of at least most of the Claims which independently attach (some Claims are aggregates of Counts and thus are reached by clusters of Counts rather than an individual—the identification of a Claim in a given Count paragraph (which start at ¶ 200) signifies particularly that the finding of the Count reaches the identified Claim(s

101. Cause of Action legal-category Civil R.I.C.O. (18 U.S.C. §§ 1961-1968) (CoA[A] "Alpha") is best stated[95] in Claims (under Second Circuit and New York City (districts) local pleading standards) with reference to the three of the four forms of § 1962: b-d (by which Defendants could be criminally prosecuted (by, likely, many of the United States Attorneys across the country) under Title 18 under the distinct criminal-law-adjudication standards). See ¶ 612 for further description of Civil R.I.C.O. Claims varying by subpart of § 1962. Certain Counts labeled

---

[94] Plaintiff takes difference with the term species for several reasons, thus it is only, here, included as a reference to familiarize Plaintiff's organization to the reader. Plaintiff uses the term legal-categories of Cause of Action, or "the" Cause of Action. Even with the distinguishable legal categories there are distinct groups operating, each "legal-category" comes from a distinct source or body of law drawing causes for the Adjudication.

[95] the instant paragraph sufficiently surmises (additionally by reference to content in the introductory paragraphs (¶¶ 2-[]) and reference forward to the Claims statements and Civil R.I.C.O. predicate paragraphs) as (and serves in lieu of) such as an adjoining case statement

XCI-XCVI (though not precisely in that order) allow configuration of the enterprise and the enterprise-within-the-enterprise (Claims are stated as operating with the larger racketeering enterprise or the more particular sex-bribery-ring enterprise within the larger enterprise). The Civil R.I.C.O. which reference the Civil R.I.C.O. predicate acts introduced at ¶ 1300   The   two   Counts   could, perhaps,   be   compared   to   micro   and   macro   economics   where   the microracketeering is the police sex bribery ring and the macroracketeering the larger system of which it is part   of which the former is part, more broadly encompassing the municipal corruption racketeering of law enforcement—which is, perhaps, the most fundamental cause of Defendants' injuring Plaintiff, et alia.

While there are two R.I.C.O. Counts, there are many Counts for which the finding of which finds concurrently either of the R.I.C.O. Counts, such as Count I, the Defendant Default Count.

102.   Cause of Action legal-category "Battery" invokes the well-established common law tort (and is abbreviated: CoA[B] "Beta"). Battery recovers damages[96] for the Defendants' causing of harmful physical impact[97] upon Plaintiff. Battery is considerably applied as joint-State-action as described at ¶ 3-6. The police-sex-bribery-participating-and-recruiting women explicitly described authorization, approval, furtherance, and protection the women had experienced in using battering victims that participating police would subsequently fraudulently arrest as en suite completion and furtherance had identified element of the battery of the

---

[96] see [bodily harm injuries] ¶ [] and Remedy ¶ 1202
[97] [cut:] see Counts C[] C[] C[] C[] C[] C[] C[] at ¶¶ []; and (Defendant C tight unprivileged application of wrist restraints) C[] at ¶ [] and Claims at ¶ []

racketeering victim pursuant to the fraudulent arrests, et cetera. Ms. Obi specifically articulated the intent, expectation, eagerness, authorization, and guaranteed furtherances Ms. Obi had to ensure Ms. Obi's successful State-action battering of Ms. Obi's selected victims. Compensatory recovered under respondeat superior.

103. Cause of Action legal-category "Assault" invokes the well-established common law tort (and is abbreviated: CoA [M] "Mu"). [clip: Assault recovers damages[98] for the Defendants' causing harm to Plaintiff from Plaintiff's natural and reasonable apprehension of Defendant's causing harmful physical impacts[99] upon Plaintiff. A considerable amount of Defendants' tortfeasance of assault against Plaintiff were commited in conjunction with, upon, and as aggravations of batteries and under State-action described at ¶ 6, though a considerable amount of the injury results from compounding and aggravations. Compensatory recovered under respondeat superior.

104. Cause of Action (abbreviated: CoA[T] "Tau") represents a variety of potentially-distinguishable action for Trespasses of Personalty and Real Estate (other than Conversion, Reputational Property, and Tortious Interference with Economic Advantage) which are stated at ¶ 105 and ¶ 139, respectively) operating under common law. Tortious acts include description of trespasses by terms such as violations, invasions, destructions, and interference. [Search common law equivalent] Compensatory recovered under respondeat superior.

---

[98] see [fear of harm from physical contact injuries and harm paragraph(s)] ¶ [] and Remedy ¶ 1203
[99] see Counts C[] C[] C[] C[] C[] C[] C[] at ¶¶ []; and (Defendant C tight unprivileged application of wrist restraints) C[] at ¶ [] and Claims at ¶ []

105.    Cause of Action legal-category "Conversion" invokes the well-established common law tort, which is also construed as "civil theft" (and is abbreviated: CoA[K] "Kappa").  The legal-category of Cause of Action is significantly applied to Defendants both as State-action under ¶ 6 and [in joint furtherances under the en suite part of the contract ] as well as better suiting part of the injury of some of Defendants' continuing and most recent Counts, although with the latter—it is likely that ¶ 124 would be preferable for final Adjudication of the means, amoung eligible means of recovery.  Although the recovery under conversion is a smaller portion of the one-full-Plaintiff's-recovery: the finding of most of the Counts to which conversion applies is necessary for additional reasons, hence—there are necessary contigent reasons for determining the Counts to which Conversion (or Conversion by itself) applies.    There are at least five kinds of Defendant conversions against Plaintiff: misappropriation of audio and the tortious staging to procure such audio (this kind overlaps with Fourth Amendment seizure CoA[Z] stated at ¶ 121.  A second type of conversion is Ms. Obi's thefts of Plaintiff's chattels (Claims ## 5.-5.). A third type of conversion is the taking of Plaintiff lease arraignment and with two months lost (the dislocation expenses of storage and travel are address at the Due Process violation implication the Liberty Right of Movement and Travel at ¶ 133); A fourth kind of conversion is Ms. Obi and Defendant continued tenure of evidentiary materials that should have been and should be produced.  Compensatory recovered under respondeat superior

106.    Cause of Action legal-category "Outrage" invokes the common law tort (and is abbreviated: CoA [M] "Mu"CoA[Ω]).  Outrage is applied (as is well established

as in New York law) as continuing tort.  Outrage is also known by other names including: intentional infliction of mental anguish; the Second Circuit has established that where another legal-category of Cause of Action is actionable— recovery should, in most cases, be under the latter rather than outrage.  Outrage is widely applicable to Defendants' tortfeasance injuring Plaintiff given the amount of Defendants' tortfeasance that shocks the conscience.  To a certain extent, the statement of Defendants' tortfeasance as being so shocking is consolidated with the statement of Outrage Claims, which are referenced in discussing the same with such as substantive due process and punitive damages, et cetera.  All types of operating State-action as discussed at ¶¶ 5-6, and ¶ [] apply considerably to the statement of Outrage Claims.   Compensatory recovered under respondeat superior.

107.   Cause of Action legal-category "Tortious Confinement"[100] invokes the common law tort redressing Defendants' tortious seizing of Plaintiff (and is abbreviated: CoA[Z] "Zeta;" the other legal-categories of Action against tortious seziures and Fourth-Amendment implicating action are likewise abbreviate with [Zeta]: for the instant: [Z]7).[101]  The finding of Counts to which [Z]7 recovers is also recovered under [Z]21 Claims, the insant legal-category of the Cause of Action predominates in the final selection of Remedy from the several available means

---

[100]   "Tortious confinement" was used to mean the same thing recently (case) in the Eastern District of New York; thus Plaintiff's less-prejudicing nomenclature (formed from the language of such as the Restatement) has precedence in the Eastern District.

[101] of which each may be distinguished in such abbreviation by the abbreviations' pairing with the number corresponding to the paragraph after ¶ 100:  ¶ 120 Fourth Amendment Search CoA ([Z]20), ¶ 121 Fourth Amendment Seizure CoA ([Z]21); ¶ 122 Fourth Amendment Quasi-Process CoA ([Z]22); ¶ 123 Common-Law Quasi-Process CoA ([Z]23)

(for compensatory damages) given the preference for a State common-law Remedy where equal relief may be had and the preference for State-law where the state law Remedy difference is the States preferred differentiation from the Federal convention under the constitutional Remedy arrival: thus the New York law respondeat superior for the applies.   Compensatory recovered under respondeat superior.

108.   Cause of Action legal-category Equal Protection Clause Violations of Plaintiff by Defendants' Tort Against Defendant's Racketeering (Corruption) Victims (abbreviated: CoA[E] "Epsilon": "[E]8" distinguishes racketeering victim class application of action under Equal Protection from the other two legal-categories under Equal Protection [102]).   The legal-category of CoA is actionable via 42 U.S.C. § 1983 for Defendants' injuring of Plaintiff as a Defendants' racketeering victim or organized corruption victim.   It is inherent that the racketeering and corruption practices Defendants have practiced and continue to employ to injure Plaintiff, which inherently required experience and knowledge based on experience to have so employed (in so many ways in regard to various aspects of) Defendants' racketeering and corruption tortfeasance.   Defendants' employments of these honed, tailored, and statistically-impossibly of spontaneous design demonstrate developed practice of employment of the injuring for analogous corruption and racketeering purposes; development of the techniques would only be performed in an environment employing racketeering and corruption and seeking to improve operability and power of racketeering and corruption and so

---

[102] [E]9 & [E]10 are listed at ¶¶ 109 & 110

casually availed with the low activation-energy-threshold proving regular employment across similarly selected racketeering and corruption victims. Once racketeering and corruption victims have been made aware of acutely-wanton fraudulent victimization by law enforcement—the larger well of corruption and racketeering is available as it is presumed a blank check may be used as the victim will eventually be shut up (typically coercion to waiver agreements with plea deals) or discredited with sufficient consistency that the risk such as the instant Action reaching the Constitutionally mandated hearing in spite of Defendants efforts, including instructing Corporation Counsel to attempt obstruction of such as the instant Action. Some Claims conform to Selective Enforcement and Selective Legal Process Claims known under Equal Protection Clause enforcement.

109. Cause of Action Action legal-category Equal Protection Clause Violations of Plaintiff by Defendants' Tort Against Defendant's Racketeering (Corruption) Victims (abbreviated: CoA[E] "Epsilon": "[E]9" distinguishes Defendants' disparate-injuring-of-Plaintiff-as-a-particularly-identified-Defendant-team-victim application of action under Equal Protection from the other two legal-categories under Equal Protection). [103] Defendants' specific injuriously-disparate tortfeasance in place of procedure (including tortious misuses and abuses of procedure—which otherwise applied could be constitutional) as Plaintiff was to be tortiously injured given Plaintiff's petition and particularly injured in other ways, particularly with regard to calculations of Defendants' racketeering and

---

[103] [E]8 are E]10 are listed at ¶¶ 108 & 110

corruption mechanisms with resepect to what Defendants' believed would ensure elimination of threat from Plaintiff's petition needed and appropriately availed under the levels and methods of consideration by which Defendants' employ Defendants' retaliatory racketeering and corruption, et cetera.

110. Cause of Action Action legal-category Equal Protection Clause Violations of Plaintiff by Defendants' Tort Against Defendant's Anti-Miscegenatory Discrimination (abbreviated: CoA[E] "Epsilon": "[E]10" distinguishes anti-miscegenatory victim-class application of action under Equal Protection from the other two legal-categories under Equal Protection). [104]  Defendant Brown particularly disparaged Plaintiff as being a miscegenator and Defendants' tortfeasance carried the unequal aspect of injuring seeking to intimidate Plaintiff against crossing from Plaintiff's euroid racial description to relations with women of more sub-saharan african racial description.  Anti-miscegenatory policies in practice from before by New York police from a bureaucratic level have been the subject of considerable legislation including a recent harassment action concerning police administrative tolerance and fostering of antimiscegenation against a policewoman in Manhattan.  Defendants,' prompted initially by Defendant Brown's instigation (which was related to Defendant Brown's sexual benefit receipt from Ms. Obi—beyond and as demonstrated[105] by Defendant Brown in Defendant Brown's words and actions at the ¶ 28, infra, tortious appearance including stating on Defendant Brown's way into Ms. Obi's room for

---

[104] [E]8 & [E]9 are listed at ¶¶ 108 & 109
[105] as Plaintiff has related to such as the audio recorded by the CCRB produced by Defendants, and otherwise consistently to police, et cetera, since 8 October 2014

Ms. Obi's initiation of repayment that Plaintiff should know better than to have relations with black women), sought to carry forward Defendant Brown's penultimate instruction to Plaintiff: i.e. before a final shut up, as Defendant Brown encouraged all of ¶ 28 and ¶ 29, and Defendant-tortfeasors of the 81st Precinct, generally, to tortiously injure Plaintiff with respect to Defendants' anti-miscegenation and prejudices against a trope of African Americans. As Plaintiff has many times asseverated to records and the Docket, Defendant Brown's taking Ms. Obi's information regarding Ms. Obi's then-a-degree-mixed feelings towards Plaintiff [106] was self-serving by Defendant Brown and Defendant Brown's instructions portending obstruction of administration (i.e. a violation) for non-compliance with Defendant Brown's instructions that prevent Plaintiff from speaking (which had other racketeering motive as the less other ¶ 28 knew beyond what racketeering instructions ¶ 28-other-than-Defendant-Brown were given the easier the racketeering operation could be performed.

111. Cause of Action legal-category "Tortious Interference with Economic Advantage" invokes the well-established common law tort, (abbreviated: CoA [I] "Iota"). Noticeable that journal indicated arguably bad news for a certain project Plaintiff had not yet gotten into contract but which City, principles, and players had been engaged with Plaintiff having begun the drafting process with legal representation—Plaintiff referenced the matter in mutual protective order discussions.

---

[106] in spite of Plaintiff's text messages of 7 October 2014 to Ms. Obi clearly seeking to undermine Ms. Obi's exploitative intent in using malicious records to dramatize fraudulent descriptions of relations between Ms. Obi and Plaintiff seeking tort including unlawful enrichment in violation of § 50 regarding publicity (see ¶ 112, infra).

112.   Cause of Action legal-category "Harrassment Violations Privacy" (abbreviated: CoA [II]18) Applies New York harassment statue as construed in suxh as Nader and Gallela. Compensatory recovered under respondeat superior.

113.   Cause of Action legal-category "Libel" invokes the well-established common tort applicable to published-Defamation (abbreviated: CoA[Δ] "Delta," [Δ]13; the other legal-category of Action addressing Defamation at common law is stated at ¶ 114). Most of the Defamation injury to Plaintiff has been by Defendants' libelous publications: much of which was and is outright fraudulent. Plaintiff raises the issue of addressing some of Defendants' most simply actionable and essentially admitted libel to mitigate and reduce continuing damages or to lock in mitigations Plaintiff is holding until such Stipulation or Adjudication.[107] Libel Claims statements are collected in paragraphs with Slander Claims and, generally, Unconstitutional Injuring of Liberty Interest in Reputation (¶ 134) and of Reputational Property (¶ 139)—and to a lesser extant the pure substantive due process regarding tyrannical disinformation and extortive coercion with defamation and threat of defamation (¶ 136). Compensatory recovered under respondeat superior.

114.   Cause of Action legal-category "Slander" invokes the well-established common tort applicable to strictly to oral publication of Defamation CoA[Δ]: (abbreviated: CoA[Δ] "Delta," [Δ]14; the other legal-category of Action addressing Defamation at common law is stated at ¶ 113). As explained at ¶ 113, supra, Defamation at common law (and constitutional reputational injuring of Plaintiff by Defendants)

---

[107] See injuies ¶ []

Fourth Amended Complaint       E.D. N.Y. 17CV4519       Page 50

Claims are listed in the Claims paragraphs, generally as a group.   Compensatory recovered under respondeat superior.

115.   Cause of Action legal-category "Fifth[108] Amendment Due Process and General Fair Trial Violation" operates via 42 U.S.C § 1983 (abbreviated: CoA[Φ] "Phi") applies enforcement of the Fifth Amendment with regard to Defendants' fraudulent partial use of coerced statement and more, generally, as the Fifth Amendment is otherwise constitutionally construed as a bridge[109] between the Fourth and Sixth Amendments.  With regard to the "General Fair Trial Violation" usage, Sixth Amendment principles or protection may dominate any involvement of Fifth.

116.   Cause of Action legal-category Deprivation of the Right to a Fair Trial operates via Title 42 of the United States Code § 1983: the most used application of fair trial right legal-category is "Freedom from False and Fabricated Pseudo-evidence," which the Second Circuit stare decisis most frequently describing as being violation of "right to a fair trial" and While Plaintiff distinguishes this legal-category of the CoA as being the encompassing "Sixth" Amendment tort action: the Second Circuit describes it (at least in regard of Defendants' fabricated and pseudo evidence violations as being a mix[110] of the Sixth with the Fourth and Fifth.  Various spoliation, fabrication, and fraud of Defendants against the King's County proceding against Plaintiff were also commited to obstruct Plaintiff's

---

[108] Fifth Amendment application is not entirely limited to ¶ 115, e.g. ¶ 116
[109] Citation to scholar needs additional time to properly cite, et cetera
[110] Citation to scholar needs additional time to properly cite, et cetera

ability to prosecute the instant vindication[111] of Plaintiff's constitutional and tortious injuries and Plaintiff noticed to Defendants and Defendants' attorneys at every chance of which Plaintiff was aware or given—which clearly raised further retaliatory Fair Trial Right violations.   [Other Claims such as coercion of attorneys, particular duress put on Plaintiff (7 May 2015), et cetera].

117.   Cause of Action legal-category Deprivation of Privacy (abbreviated: CoA [Π]17) operates via Title 42 of the United States Code § 1983 upon Due Process reflect constitutional dimension privacy Claims.  Previous statement was made in DE # 70 at ¶ 117, which needs restatement.

118.   Cause of Action legal-category "Misappropriation of Privacy" is based from the New York Civil Rights Law § 50 against misappropriated publication, which includes misappropriated voice audio of the victim (abbreviated: CoA [Π]18). Description drafted, but need reiteration

119.   Cause of Action legal-category "Unconstitutional Force" violating the Fourth Amendment is brought via 42 U.S.C. § 1983 (abbreviated: CoA[Z], "Zeta" [Z]19).   Most of the injuring force Defendants' waged upon Plaintiff was under Defendants' *corruption and racketeering posse commitatus opening* to the *Obi-Brown police sex bribery contracted bargain*.  The police sex bribery racketeering and corruption to which Ms. Obi was recruited has been frequently used with the corruption and racketeering posse commitatus opening for the ensuite closing by State process delivered by the completion of the posse commitatus with the arrival of the police participant—such completion being the promise upon which the

---

[111] Thus overlap with [Gamma]24

women's actions had faith and for which the police participant would recover sex

benefit returned for the police participants' fraudulent action.

120.     Cause of Action legal-category "Injurious and Unconstitutional Search" violating
the Fourth Amendment is brought via 42 U.S.C. § 1983 (abbreviated: CoA[Z],
"Zeta" [Z]20).  Defendants' unconstitutional search tort involves planning Claims
and execution upon various planning Claims.  Brought with planning Claims
(identified in the Counts)

121.     Cause of Action legal-category "Injurious Unconstitutional Seizure Not-As-If-By-
Process" violating the Fourth Amendment is brought via 42 U.S.C. § 1983
(abbreviated: CoA[Z], "Zeta," [Z]21). Cause of Action is distinct in that unlike
the Tortious Confinement CoA[Z] at ¶ 107, this Cause of Action is based on the
Fourth Amendment to the U.S. Constitution rather than common law.

122.     Cause of Action legal-category "Injurious Unconstitutional Seizure As-If-By-
Process" violating the Fourth Amendment is brought via 42 U.S.C. § 1983
(abbreviated: CoA[Z], "Zeta," [Z]22).

123.     Cause of Action legal-category "Injurious Tortious Seizure As-If-By-Process"
brought at common law (abbreviated: CoA[Z], "Zeta," [Z]23). Very similar to ¶
122, supra, but worth distinguishing for clarification of the schedule for final
recovery—and large utility on such.  Compensatory recovered under respondeat
superior.

124.    Cause of Action legal-category "Obstruction of Justice in the Vindicating of the Constitution"[112] under 42 U.S.C. §1985 (2) (abbreviated: CoA[Γ], "Gamma"). and as Plaintiff has noted in recent Filings each is a crime against the United States: the conspiracy furthered stems from the Defendant corporations' employees maintaining racketeering acts in pursuit of benefits from non-employees and various acts furring the enterprises of the police sex bribery and general corruption racketeering enterprise benefit-seeking: the conspiracy addressed by the Action has involved a lengthy series of furtherance involving many Defendants and non-employees-of-the-Defendant-corporation: including the women-police-sex-bribery-racketeering-participants who recruited Ms. Obi, Mr. Peter Appel, Ms. Doreen Ierardo, Ms. Rita Obi, Mr. John Gutman, Mr. Gabe Harvitz, and other racketeering participants.

125.    Cause of Action legal-category Vindicating the Substantive-Due-Process-Violating Municipal Tyranny and Corruption, Generally (abbreviated:CoA[Υ] "Upsilon" [Υ]25) which rises to constitutional magnitude which applies to many Counts and corrupt Defendant configurations and material to be covered.  The category of Cause of Action being broad ensures the specifically the corruption element of the Defendant liable event may be examined with greater focus and independence than simple punitive damages by a tort instrument pinpointing the vindication of this top constitutional prerogative.  The instant category of Cause of Action is brought under § 1983 of Title 42 of the United States Code.

---

[112] Alternatively stated (or more conventionally), in "Obstructive Conspiring of Civil Rights Proceeding"

126.    Cause of Action legal-category Vindicating the Substantive-Due-Process-Violating Municipal Racketeering (abbreviated:CoA[Υ] "Upsilon" [Υ]26). Civil R.I.C.O. is limited to a scope of relief which is vital to the recovery of Plaintiff's professional damages and Civil R.I.C.O. punishes Defendants for those and provides first recovery of certain accouterment with those: Civil R.I.C.O. leaves off the vindication of jury punishment of municipal racketeering: among particular concerns are the police sex bribery ring which recruited Ms. Obi and the vindicating of the serial violation is among the necessary prerogatives of this distinct means of vindicating Defendants' Substantive Due Process violations. The matters of 17CV4519 are full of the shocking State trading of benefits as part, surrounding, driven by, and consisting of racketeering.  The instant category of Cause of Action is brought under § 1983 of Title 42 of the United States Code.

127.    Cause of Action legal-category Vindicating the Substantive-Due-Process-Violating Operational Facilitation Designed to Incorporate, Permit, and not Prohibit Corruption, Racketeering, and Fraud (abbreviated:CoA[Υ] "Upsilon" [Υ]27) Focuses of application of systemization of corruption including IT Systems and fake results broadcast by mini-Mollen under Title 42 of the United States Code § 1983.   Corrupt facility, i.e. organization of corruption and racketeering facilitation. The instant category of Cause of Action is brought under § 1983 of Title 42 of the United States Code. IT

128.    Cause of Action legal-category Vindicating the Substantive-Due-Process-Violating (abbreviated:CoA[Υ] "Upsilon" [Υ]28) use of racketeering to extort Plaintiff with secretly recorded material, including from staged situations where

Plaintiff had full expectation of privacy (which is itself Fourth Amendment Seizure), as a product of local operating police sex bribery rings.  brought under § 1983 of Title 42 of the United States Code.

129.   Cause of Action legal-category Vindicating the Substantive Due Process Violation of Defendants' Horrific Tyrannical Disinformation (CoA[Y]) operating under Title 42 of the United States Code's § 1983.   Such is distinct from Defamation Cause of Action (Libel and Slander) in that the focus the substantively violative nature of more-than-malicious false.  A particular focus of what the instant paragraph's category of Cause of Action addresses is Defendants' particular tyrannical and racketeering objective of using State power to fabricate, spoliate, defraud information, material, or evidentiary material to discredit victims which has particularly egregious character in constitutional examination that for Defendants' employment of such, ongoing, the Court may penalize Defendants by adjudicating of jury award of Substantive Due Process penalty as in with especially the other CoA[Y], "Upsilon" Substantive Due Process and categories brought in the ¶ 1104 Adjudication.

130.   Cause of Action legal-category Tyrannical State-Power Mortal Hazarding (CoA[Y] "Upsilon" [Y]49)) Violating Substantive Due Process via Title 42 of the United States Code § 1983 is related to the tort of assault, however, the instant category of Cause of Action examines with particularity the indifference of municipal corruption to inflicting or risking life-ending racketeering, et cetera.

131.   Cause of Action legal-category Denial of Vindication Hearing Procedure under Title 42 of the United States Code § 1983 Procedural Due Process (CoA [Σ],

"Sigma").   Plaintiff has sufficiently Plead actions of Defendants for such important aspects of Defendants' injurious deprivation of Plaintiff for such categories of Cause of Action are important for juries' considerations of the injuries, constitutional deprivation, and scope or tortious conduct at law.

132.   Cause of Action Violation Due Process Rights in Takings under Title 42 of the United States Code § 1983 (CoA [Σ], "Sigma").  Plaintiff has sufficiently Plead actions of Defendants for such important aspects of Defendants' injurious deprivation of Plaintiff for such categories of Cause of Action are important for juries' considerations of the injuries, constitutional deprivation, and scope or tortious conduct at law.  Substantive violation of taking and process of taking (i.e. including constitutional-violation based conversion-tort).

133.   Duty to Administer Consitutional Systems, Technical Operations Model, Data Systems under Title 42 of the United States Code § 1983 (CoA [Σ], "Sigma")

134.   Cause of Action legal-category "Failure to Investigate" under Title 42 of the United States Code § 1983 (CoA [Σ], "Sigma") (from among rights as the to the police duty of investigation—

135.   Cause of Action legal-category "Failure to Intervene" in under Title 42 of the United States Code § 1983 (CoA [Σ], "Sigma").

136.   Cause of Action legal-category Access to Courts Due Process Deprivation operates via Title 42 of the United States Code § 1983 (CoA [Σ], "Sigma").  Considerable amount of Remedy is simply that the instant Action gets full hearing in spite of Defendants' obstructions and attempted obstructions.

137.   Cause of Action legal-category "Petition Retaliation Vindaction under the First Amendment" (abbreviated CoA[P] "Rho") via 42 U.S.C. § 1983 functions to bring Claims reaching full relief upon most Counts—as such the function would by itself reach most or all relief—though stare decisis would have such as Counts implicating Fourth Amendment be finally stated to be reached by the Fourth where both the First and Fourth reach the relief on the said Counts: the First Amendment does, operating on its own even more than Outrage (see ¶ 106), bring most relief. Applicable from Plaintiff's active objection to Ms. Obi's State-action racketeering or on the basis of Plaintiff's approaches to Internal Affairs, King's County, et cetera.   Petition activity encompasses Plaintiff's Petitions against racketeering generally and Plaintiff's victimization by that municipal racketeering.

138.   Cause of Action legal-category Substantive Due Process Petition Retaliation (CoA[P] "Rho") under Title 42 of the United States Code § 1983  is brought from Plaintiff's cooperation with Brooklyn College regarding Plaintiff's reporting of Ms. Obi's committing State-action racketeering, et cetera, crime against a student at Brooklyn.   Claims are organized by Petition event tracking CoA[P] # 37, i.e. First Amendment petition, i.e. given the nature of retaliation actions, the subsequent tort furthering the retaliation is brought under the retaliation action as is described at ¶ 137.

139.   Cause of Action legal-category Deprivation of Reputational Property under Title 42 of the United States Code § 1983 (CoA[O], "Omicron"). Plaintiff has suffered damages in such as capital built up in digitally extant reputational property qua

branding built from SEO expenditures, et cetera, to be discussed under the mutual protective order.

140.     Cause of Action legal-category Failure to Train Violating Due Process under Title 42 of the United States Code § 1983 (CoA[Θ], "Theta"). Plaintiff needs considerable discovery of the training materials to precise address substantive deficiency and in concert with the other tort analysis of Defendants' racketeering, criminal, unconstitutional, et cetera dysfunction which has injured Plaintiff and injures and endangers persons in New York.

141.     Cause of Action legal-category Failure to Supervise Violating Due Process under Title 42 of the United States Code § 1983 (CoA[Θ], "Theta").  Stewards of the City themselves needed to have demanded deeper supervision into police management .   The supervision where racketeering enterprise concerns are directly implicated establishes that supervision is conducted from police management down to exact specific tortious unconstitutionalism.

142.     Cause of Action legal-category Failure to Discipline Violating Due Process under under Title 42 of the United States Code § 1983 (CoA[Θ], "Theta").  E.g. the fraud of IAB reports to the annual Mollen being scrubbed for the purposes of defraud the oversight is inherently a systemic failure to discipline as the oversight has failed to ensure actual oversight—the process of disciplining corruption where it has been raised has been insufficient to impact the thriving of racketeering and corruption.

143.     Cause of Action legal-category Failure to Hire and Well-position staff Violating Due Process under Title 42 of the United States Code § 1983 (CoA[Θ], "Theta").

Not hiring and positioning appropriate character, skills, and responsibility for constitutional operations, et cetera.

144. Cause of Action legal-category Negligence (CoA[N]) under common law tort applies perhaps strictly in the punitive capacity as Defendants' intentional cause of essentially or almost all of the Plaintiff's compensatory and professional and business damages is abundantly established and while compensatory Compensatory recovered under respondeat superior.

145. Cause of Action legal-category "Conspiracy"[113] operates via common law and 42 U.S.C. § 1983 as like a helping verb—the instant CoA carries liability to apportion appropriately between the Defendants acting ensemble to further tort (abbreviated CoA[X] "Chi.") "Conspiracy" which derives from the Latin for "whispering together," meant much the same as when Cicero spoke of Cataline off whispering a conceited plot in the isolation of some alleyway that could not be spoken in public [and hence whispered], is an appropriate label for much of Defendants crime, wrongdoing, et cetera. Defendants' involvement in furthering the operating conspiracy carries principles of distributing liability. Conspiracy is brought in the singular as is typically preferred as opposed to separating that which is all in furtherance of the existing corruption relationships of municipal employees with non-municipal employees prior to Plaintiff contact with any Defendants, et cetera. The non-municipal-employees furthering the crimes,

---

[113] Conspiracy under Civil RICO (18 U.S.C. § 1962 (d)) is included under CoA [Alpha] at ¶ 101 (along with § 1962 (b) and (c)); Conspiracy to Obstruct Civil Rights Vindicating Action (42 U.S.C. § 1985 (2) (CoA[Gamma])—is ¶ 124; and § 1985 (3) under the overt anti-miscegenation discrimination to Defendants' injurious conduct (CoA [Epsilon] is stated at ¶ 110.

constitutional deprivations of Plaintiff causing injury to Plaintiff, et cetera are at least: Ms. Obi (specifically identified at ¶ 21), Ms. Doreen Ierardo, Mr. Gabe Harvitz, Mr. Peter Appel, Mr. John Gutman, and the police-sex-bribery-racketeering women who recruited Ms. Obi. Apportionment of liability is to be calculated upon the best reasonable examination of each indvidual's role by which the municipal Defendant may further be influenced to exact actual contributions. Wherever CoA [X] is applied, equivalent common law, agency, joint-action, common-law conspiracy is concurrent.

146. Cause of Action legal-category Ninth Amendment Defendants committed deliberate fraud and obstruction as an attempt to deprive Plaintiff of Ninth-Amendment protecting Common Law—particularly where such is supported by New York statute.

147. Cause of Action legal-category Usurpation of Eighth Amendment-Implicating-State Action From Adjudicators by Defendants (CoA[Θ]). Tyrannical usurpation under pure sub, eighth, fifth, sixth, ninth (clearly violated pre-consitutional protection incorporate and not removed—i.e. protected by ninth), as well as procedural due process  Harm by State action under usurped Judicial oversight (qua punishment displaced into state-empower-facilitated-and-supported harms sanctioned by the state under police-sex-bribery policy)

148. Cause of Action legal-category Abuse of Process may be more broadly applicable than is currently apparent ahead of most of pre-trial practice (CoA[H], "Eta"). Defendants' direction of Defendant Corporation Counsel to engage in litigation abuse Abuse of Process [Corporate Counsel]  It is possible that as matters shake

out the cause of action of abuse of process could contribute importantly to the cause of action.  Civil and Criminal process including using abusive criminal to injure and violate Plaintiff in civil litigation acts.  Where under common law: compensatory recovered under respondeat superior.

149.   Cause of Action legal-category Abuse of Force Depriving Plaintiff of the Liberty Interest in Bodily Integrity rests primarily in Procedural Due Process and operates via Title 42 of the United States Code § 1983 (CoA[Λ] "Lambda").  Functions to redress the State-actions of Ms. Obi as uniformed police abuse of force as the cause is rooted in Sgt. Brown's attitude toward abusing force—of which there are at least two recent or current suits redressing Sgt. Brown's misconduct and the failure of the City of have not fixed or prevented such a pattern of authoring abuse.  Deprivation of bodily integrity may also occur as a Fourth Amendment deprivation.

150.   Cause of Action legal-category Violation of Liberty to Employment & to Contract under Title 42 of the United States Code § 1983 (CoA[Λ] "Lambda").  Plaintiff has sufficiently Plead actions of Defendants for such important aspects of Defendants' injurious deprivation of Plaintiff for such categories of Cause of Action are important for juries' considerations of the injuries, constitutional deprivation, and scope or tortious conduct at law.

151.   Cause of Action legal-category Deprivation of Freedom of Movement and Travel in Violation of Due Process under Title 42 of the United States Code § 1983 (CoA[Λ] "Lambda"). injuries, constitutional deprivation, and scope or tortious conduct at law.

152.    Cause of Action legal-category Violation of Due Process Liberty Interest in Reputation under Title 42 of the United States Code § 1983 (CoA[Λ] "Lambda"). Plaintiff has sufficiently Plead actions of Defendants for such important aspects of Defendants' injurious deprivation of Plaintiff for such categories of Cause of Action are important for juries' considerations of the injuries, constitutional deprivation, and scope or tortious conduct at law.

153.    Unconstitutional municipal custom, policy, or usage

154.    Unconstitutional tort of municipal policymaker

155.    Unconstitutional adoption of tortfeasance by the municipality

199.   In accordance with FRCiP # 10, the Complaint contains Counts, which Plaintiff often identifies as *Defendant-liability acts or events*[114] as upon the finding of each Count-paragraph: liabilities are reached as law via the Claims (appended to them[115]) according to injury and equity.[116]  Given the abundance of numbered things and that counts are not infrequently assigned Roman numerals in litigation, Plaintiff uses Roman numerals (even though there are a relative large amount of Counts), but as the Counts are numbered with correspondence to paragraph numbers (plus 200), e.g. Count I is stated at ¶ 201.   All of the *facility*-tortfeasance Counts are stated below Count C (100). The first Count, Count I: is the • General Default Count and • Count II is the Advanced-Municipal-Corruption Default Count—the latter not excluding the finding of municipal corruption from the General—but such naming indicates its focus.  The Ultimate Count, naturally the last Count by sequence, is a comprehensive restating-device of all inferred, inherent, and admissible Defendant liability acts or events by which comprehensive Claims are stated for each category of Cause of Action.   In demarcating applicable CoA dashes are used only between like type of CoA located in consecutive paragraphs: multiple like types of CoA that are not consecutive are not demarcated with dashes, but are separated with comma.

---

[114] each Count is a statement of Defendant tort, generally as specific as is feasible
[115] At the end of each statement of Count is the demarcation of CoA
[116] Court's mandate to injunct, variously, from particular and the aggregate of the found Counts and with respect to the substantiated or held injuries (latter, again, discussed at ¶ [], after the whole of the Counts paragraphs, infra); monetary and equitable are addressed generally or specifically in each Claim statement.

200.    Counts are formed in a variety of structures across the infra two hundred and fifty

paragraphs as an attempt to notice with particularly the Defendant-liable acts

raised thus far in the Action and by admissible evidence material in a consolidated

space: such statement helps Parties and the Court ensure the bases of liability are

examined well and the consolidation of events helps the process of review to

ensure everything that needs to be addressed is prepared—where a liable event is

missing—such is more likely to be able to be raised by the amendment of a Count

or the Joinder of a Count prior to the plenary of timely adjudication that each and

all Counts are reached (and the merely-inherent incorporated in writing as early as

may notice sufficiently prior to timely or plenary adjudication); individual Counts

may, in such as discovery, be found to have cause to be restated or altered.  The

Counts are largely sequenced with respect to chronology and within that by

groups to some extent—such grouping might also be amended of altered.  The

ultimate Count is a means of basis of the statement of an aggregate Claim for

essentially each of the categories of Cause of Action: it essentially functions, as is

not uncommon in pleading today, as a broad restatement—one single such

"Ultimate Count" rather than one for each category of Cause of Action is much

tidier an no less functional.  In some cases the adjudication of an aggregate (or an

aggregate less Claims of a Cause of Action already reached) may be preferred

adjudication. Where more than one Count reaches similar, equivalent, or the same

remedy by the same category of Cause of Action: such are typically wolven into

the same paragraph stating the Claims.        —either  independently  reaches  the

Claim (aggregate Claims are reached by a Count, i.e. Defendant-liability-event, that reaches multiple Claims of a category of action (the Ultimate Count as an entire condensed restatement including all Counts); additionally, some Claim paragraphs are stated as the combination of multiple Claims. In some statements of Defendant liability acts the Count is stated to reach in its being reached another There is not an effort to establish all contingency of Counts upon other Counts— such structure is employed to simplify the statement of Claims as Claims are to be reaching by a root in a specific Count. Assignment of Claims to Counts and the exact structure, formation, and nature of Counts may be subject to change with the degree of change and ultimate distinction from the sum of inherent assertions a considerable consideration aside consideration of time; abundant notice, as practiced in the instant Instrument, when requiring change, should be read against notice having been particularized.

201.    COUNT  I                     Defendant (General)[117] Default Count.   Given the preponderance of: Defendants' counsel's litigation-abuse without substantive merit-touching argument; the Defendants' false, implausible, and non-substantive Pleading;   the   evidentiary   circumstances   relevant   and   material;   or   the

---

[117] "General," as the corp of Defendants' injuring of Plaintiff is easily reached as a matter of law or matter of default penalty, et cetera, by many configurations of adjudication; however, many of the means of finding such cluster of liability may not involve findings, or would not necessarily need to find some of the advance corruption operations, racketeering, et cetera, leaving the remainder of a general default being, potentially, the need to carry forward adjudication of the remainder (which generally may be found, quite likely by its own default (legally determinable) Count (Count II, infra)).  Additionally, the lost profits based on transaction in processed or in process as of the quarter from the accrual of real estate business terminating injury on 8-9 October 2014 is a separably found default consequence (or separately by many means legally determinable (Count III)).

contumacious character of Defendants' conduct before this Court in this matter: Defendants have defaulted and continue increasing the ripening of Defendants' default circumstances as described at ¶ 1103; Defendants have caused sufficient contempt by Defendant Party that Defendants have defaulted in the instant Action and are subject to ¶ 1103, Remedy upon Defendants' default.  Such a sufficient basis may be Plaintiff's having been maliciously seized and removed without reasonably arguable probable cause with the purpose of fraudulently and via coercive-preclusion-of legitimate-institution of State-seizure-process-at-law instituting malicious continuing seizure still injuring Plaintiff as other matters of law sufficiently reach from such basis sufficient inclusion of Plaintiff's damages Pleading.  Certain subsequent Counts are specifically identified as upon their finding contingently the instant Count and thus reaching the Claims and thereby Relief, as in all finding of the instant Count: such include among: Count CCXII (Casciola no witnesses; C & C trying to step into ¶ 27 shoes to fabricate account as specified threatened by Defendants until the removal of ¶ 22 when Defendants intensified assualt and retaliation Count [CXXX]).  Defendants' being found to have defaulted does not depend on the finding of any specified Counts per se as Defendants' litigation abuse is resoundingly indicative of disposition constantly and thoroughly demonstrative of the perversions, spoliation, tortious furtherance, obstruction, Rule violations, and contempt of a Party making brazenly illegitimate resistance violating this United States Court and duties binding of a litigant's continued participation in defending as opposed to compounding liability.

202.    COUNT II                              Advanced Municipal Corruption Liability Default

Count.  Given Defendants' pending Default as a matter of law to most of the

Action, the instant Count describes Defendant Default à la ¶ 1105 regarding the

compensatory for mental anguish inflicted upon Plaintiff by Defendants by

Defendants' extreme municipal corruption.

203.    COUNT III                             Quarterly-rate-real-estate-brokerage-lost-profits

Default Count.  New York law enforcement leadership and the municipality as

otherwise      a-person-responsible-for-leadership-exercised-as-its-own-liable-acts

refused to appropriately respond to observations by observers and observations

such as Brooklyn Borough President Eric Adams' public comments upon

publically available data as to how such data demonstrates IAB corruption or

dysfunction-sufficient-to-function-corruptly:      such      refusal      by      City      law

enforcement managers speaks to municipal liability for municipal, i.e. Defendant,

choice in the face of being called out by President Adams for the subsequent

corruption directly injuring Plaintiff, et alia. Count reaches additional Claims via

the concurrence of Count IX: Count II reaches simultaneously Count IX as if

Count IX were appended and within Count II. CoA[Y] # 19., 25., 27.  CoA[Θ] ##

41., 42., 43. CoA[N] # 44. CoA[Ω] # 6.

204.    COUNT IV                              Defamation-Preliminary-Mitigation-Injunction

Count.  Injunction achieving substantial blame upon Defendants for fraudulent

defaming of Plaintiff to achieve considerable mitigation of continuing defamation

injury.  It is tortious for Defendants to not concede this need for measure

vindicating against the continuing wounding of Plaintiff regarding Defendant Concession. [] [] [] [] [][] [] [] [] [][] [] [] [] [] []

205.  COUNT V                    Defendant Spoliation Default Penalty.  Seven figure spoliation penalty and costs with some measure from certain award of compensatory to Plaintiff. [] [] [] [] [][] [] [] [] [][] [] [] [] []

206.  COUNT VI                    Defamation-Repair    Damages    Default    Count. Reaching or surpassing the threshold of Defendant liability findings for award of the costs (see Remedy of ¶ 1106, which various Claims reach upon the finding of COUNT VI) [] [] [] [] [][] [] [] [] [][] [] [] [] []

207.  COUNT X                    General Facility (Necessary to Occasion Corruption or Racketeering) Count.  Defendants and the Defendant Corporation proactively and affirmatively[118] as an act of deliberate preparedness (upon experienced operations from which an continued willingness to so operate is established from aspects of communication)[119] sufficiently to cause[120] such corruption and racketeering exercise, activity, operations, systems, mechanism, et cetera: such as (1) the police sex bribery ring which recruited; prepared; encouraged posse commitatus attack as an imminently used, viable, and effacious exercise of police sex bribery contract; et cetera   (2) contract between Ms. Obi and Defendant Brown (3) 81st Precint readiness to facilitate and further racketerring and the

_____

[118] for others to be sure to trust in (of which basis those others are able to choose to operate without fear of consequence, penalty, or full or mandatorily applicable constitutional law or order)
[119] communication within the corruption and racketeering organization or system operated by Defendants
[120] by such involved preparedness to act for corruption and racketeer (that victims of the enterprise are reliably turned down by the whole of the organization)

execute various furtherance injuring Plaintiff, (4) KCDA readiness to facilitate and further racketerring and the execute various furtherance injuring Plaintiff, (5) IAB readiness to facilitate and further racketerring and the execute various furtherance injuring Plaintiff, (6) CoD readiness to facilitate and further racketerring and the execute various furtherance injuring Plaintiff, (7) CoP readiness to facilitate and further racketerring and the execute various furtherance injuring Plaintiff, (8) Brooklyn North readiness to facilitate and further racketerring and the execute various furtherance injuring Plaintiff, (9) CCRB personnel readiness to facilitate and further racketerring and the execute various furtherance injuring Plaintiff, (10) Corporate Counsel readiness to facilitate and further racketerring and the execute various furtherance injuring Plaintiff, or (11) other racketeering or corruption capacity of which operability was a necessary and precondition and causal occasion to Defendant commission of tort injuring Plaintiff.  [A]1(d) [Y]25-30 [Θ]40-43, 53-55 [Σ]31-35 [N]44 [X]45 [Ω]6

208.   COUNT **XI**                  Facility (Necessary to Occasion Corruption or Racketeering) Administration or System Construction Count.  Administrative or Criminal (§ 1961) Act to Manage or Strenghten the Operational Readiness Necessary for Corruption and Racketeering such as were availed in Defendants' Injuring of Plaintiff. [A]1(b)(c) [Y]25-30 [Γ]24 [Θ]40-43, 53-55 [Σ]31-35 [N]44 [X]45 [Ω]6

209.   COUNT XII                  General Municipal Proceedings-Obstruction Count. Defendants availed Defendants' *furtherance array* to commit obstructing of court proceedings (both a King's Count court and understood as ripe-to-file federal

Fourth Amended Complaint       E.D. N.Y.  17CV4519       Page 71

proceeding (such as the instant)) to confine; outrage; obstruct the hearing of Plaintiff by any adjudicator and with evidentiary material due; retaliate against Plaintiff's petition against Defendants' government corruption; obstruct Plaintiff's vindication; economically, interpersonally, reputationally and otherwise injure Plaintiff [A]1(b)(c) [P]37-38 [Y]25-27 [Γ]24 [Θ]40-43, 53-55 [Σ]31, 35 [N]44 [X]45 [Ω]6 [K]5 [M]3 [Π]12 [Z]7, 21-23 [Φ]15 [H]36 [Λ]50-52 [O]38 [E]8-10 [I]11 [T]4

210. COUNT XIII              General Municipal Federal Obstruction Count. Defendants availed Defendants' *furtherance array* to commit obstructing of the instant Proceeding to confine; outrage; obstruct the hearing of Plaintiff by any adjudicator and with evidentiary material due; retaliate against Plaintiff's petition against Defendants' government corruption; obstruct Plaintiff's vindication; economically, interpersonally, reputationally and otherwise injure Plaintiff [A]1(b) or (c) [P]37-38 [Y] 25-27 [Γ]24 [Θ]40-43, 53-55 [Σ] 31, 35 [N]44 [X]45 [Ω]6 [K]5 [M]3 [Π]12 [Z]7, 21-23 [H]36 [Λ]50-52 [O]38 [E]8-10 [I]11 [T]4

211. COUNT XIV             General Proceedings Tyrannical Disinformation Count. Defendants availed Defendants' *furtherance array*, *corruption blue wall*, or caused process actors (or non-process actors) to make hostile practice with the municipality's State-power voice (or by participating in such process) to commit (or pointedly aggravate) tyrannical fraudulent defamation knowning Plaintiff to know the injuring to be very deliberate fraud to prepatrate constitutional violation for Defendants corruption organization and racketet and concurrently to retaliate against Plaintiff to confine; outrage; obstruct the hearing of Plaintiff by any

adjudicator and with evidentiary material due; retaliate against Plaintiff's petition against Defendants' government corruption; obstruct Plaintiff's vindication; economically, interpersonally, reputationally and otherwise injure Plaintiff [P]37-38 [Y]25-29 [Γ]24 [Θ]40-43, 53-55 [Σ]31, 34-35 [N]44 [X]45 [Ω]6 [M]3 [Π] 12, 17-18  [Z]7, 21-23 [Φ]15 [H]36, 48 [Λ]50-52 [O]38 [Ψ]16  [Ξ]46 [E]8-10 [I]11 [T]4 [K]5

212.    COUNT XV                     General Federal Tyrannical Disinformation Count. Defendants availed Defendants' *furtherance array*, *corruption blue wall*, or caused process actors (or non-process actors) to make hostile practice with the municipality's State-power voice (or by participating in such process) to commit or aggravate tyrannical disinformation knowing Plaintiff to know the injury is very deliberate fraud to prepatrate constitutional violation for Defendants corruption organization and racketet and to confine; outrage; obstruct the hearing of Plaintiff by any adjudicator and with evidentiary material due; retaliate against Plaintiff's petition against Defendants' government corruption; obstruct Plaintiff's vindication; economically, interpersonally, reputationally and otherwise injure Plaintiff [P]37-38 [Y] 25-29 [Γ]24 [Θ]40-43, 53-55 [Σ] 31, 34-35 [N]44 [X]45 [Ω]6  [M]3 [Π]12, 17-18 [Z]7, 21-23 [H]36, 48 [Λ]50-52 [O]38 [Ξ]46 [E]8-10 [I]11 [T]4 [K]5

213.    COUNT XVI                    General Tortious Targeting of Corruption and Racketeering Victims Count.  Municipality [Theshold and generic] [Y] 25-2 [O]38 [E]8 [P]37-38

214.    Invasion (Searches)

215.     Confining (Seizures)

216.     Upsilon 25

217.     Upsilon 26

218.     COUNT                          General  Municipal  Futherance  Array  Denial  or
         Obstruction of Vindication Hearing Count

219.     Count IV              New   York   City   police   command   participates   in
         Racketeering  Enterprise  with  officers  and  non-law-enforcement  persons,  this
         choice  of  corruption  by  the  City  resulted  in  the  patterns  and  at-the-ready
         capability  for  Defendants  to  operate  the  particular  police  sex-bribery  and
         corruption racketeering injuring, et cetera, Plaintiff, et alia, from September 2014
         et sequent, demonstrating the tyrannical abuse and misuse of power directly of the
         category  the  Constitution  sought—with  a  frame  of  reference  spanning  two
         millennia—to prohibit, event, and combat: implicating Article III action against
         such  shocking  City  violations  of  substantive  due  process.  Count  reaches
         additional Claims via the concurrence Count IX: Count III reaches simultaneously
         Count IX as if Count IX were appended and within Count III.  CoA[Y] # 19., 25.,
         26., 27  CoA[Θ] ## 41., 42., 43.  CoA[N] # 44. CoA[Ω] # 6.

220.     Count V              The  King's  County  (District)  Attorney  participates  in
         racketeering enterprise with law enforcement and non-law-enforcement persons,
         this  choice  of  corruption  by  the  City  resulted  in  the  patterns  and  at-the-ready
         capability for Defendants to operate the particular malicious abuse of privileged
         State process in clear absence of jurisdiction and other corruption racketeering
         that  injured,  et  cetera,  Plaintiff,  et  alia,  from  October  8th,  2014  et  sequent,

demonstrating the tyrannical abuse and misuse of power directly of the category the Constitution sought—with a frame of reference spanning two millennia—to prohibit, event, and combat: implicating Article III action against such shocking City violations of substantive due process. Count reaches additional Claims via the concurrence of Count IX: Count IV reaches simultaneously Count IX as if Count IX were appended and within Count IV. CoA[Y] # CoA[Θ] ## 41., 42., 43. CoA[N] # 44. CoA[Ω] # 6.

221. Count VI        New York City law enforcement command has not or has not yet sufficiently taken action to reform a culture disregarding abuse of force, and diminishing victimization by violence, (noticeable generally in litigation against the municipality) by State action which contributed to Defendants' injuring of Plaintiff; other Actions before the Eastern District of New York and recently decided pertaining to current and relevant periods of time greatly contribute to discussion and information on this Count, such also contributes cause of particularly Count II and the choice of the City management to operate corruption racket to increase fundamental police interest in absolute possession of force. Count reaches additional Claims via the concurrence of Count IX: Count V reaches simultaneously Count IX as if Count IX were appended and within Count V. CoA[B] # 2. CoA[M] # 3. CoA[H] # 18. CoA[Y] # CoA[Θ] ## 41., 42., 43. CoA[N] # 44. CoA[Ω] # 6.

222. Count VII        New York City deliberately operates an anti-Constitutional parallel track of corruption operations vertically from certain police on the beat to the Commissioner and management (including the Command Center and Internal

Affairs management), that when the choice to corruptly track a certain matter, such as occurred with Defendants' injuring of Plaintiff—as this corruption track's high performance was cause of such injuries: victim attempts to remedy via Constitution and under Constitutional principles, as Plaintiff's experience demonstrates—as all Evidence in the instant matter demonstrates, all attempts to exposure the corruption are met with great doses and duration of corruption by all manner of potential recourse that could be available to the City's victim, making Plaintiff's escape to reach the point of surviving and bring the instant Action for United States' judgment against and reforming of New York City, fundamentally representative of the classes of City victims to the variety of injuries waged by Defendants against Plaintiff and others that part of the Defendant municipality's corruption tool kit or menu not particularly chosen, or not yet chosen, to be used in City's attacks upon Plaintiff, Plaintiff's interests, Plaintiff's protected interests, Plaintiff's liberty, Plaintiff's property, et cetera. Such customary methods of corruption to further corruption, unconstitutional pursuit of benefit, and racketeering activity operating when the City, in utter, et cetera, abrogation of the Constitutionality imposed by the Fourteenth Amendment to the United States Constitution on the municipality of New York City in the City of New York's operation of State power includes possession of corruption serving activity of the Civilian Complaint Review Board and the Grievance Committee [for the Second, Eleventh, and Thirteenth Judicial Districts] (serving as the locally available forum to report attorney abuse, misconduct, and crime for pursuit of remedies to such) as was clearly demonstrated in Plaintiff's abused pursuit of remedies from those

Fourth Amended Complaint      E.D. N.Y.  17CV4519      Page 76

auxiliaries demonstrating the horizontal scope of operating municipal corruption. Count reaches additional Claims via the concurrence of Count IX: Count VI reaches simultaneously Count IX as if Count IX were 44.appended and within Count VI. CoA[Y] #  CoA[Θ] ## 41., 42., 43. CoA[N] # 44. CoA[Ω] # 6.

223.   Count VIII          Scant record keeping alone is sufficient to demonstrate disingenuous use of State power amounting to more than callous and reckless indifference.  CoA[Y] # 26., 27. CoA[Θ] ## 41., 42., 43.  CoA[N] # 44. CoA[Ω] # 6.

224.   Count IX          Defendants' information technology systems chief operating design principle is to facilitate racketeering purpose or capability demonstrated in as little as that a constitutional, ethical, good-policing, et cetera system design would be hardwired to prohibit the corrupt actions of systemic, Commissioner-and-Command-Center-on-down   fraud,   which   the   currently operating system is designed for: such is judicially noticeable from Defendants' acts with any advising from any reference to the principles of information systems design.  A contingent liable event is IT chief signing off and continuing to sign off on systems known to be vulnerable: infra are some particular examples of demonstrate of fraudulent functionality and 2018 fraud functionality and related Counts.  Count reaches additional Claims via the concurrence of Count IX: Count VIII reaches simultaneously Count IX as if Count IX were appended and within Count VIII. CoA[Y] #  CoA[Θ] ## 41., 42., 43. CoA[N] # 44.

225.   Count X          Contingent Count to Counts II & VII subsist in identifying systemic corruption as a sufficient root cause of the commission which cause

Defendants' injuring of Plaintiff.(although no act of such Defendants of Sgt. Brown is specifically name, Sgt. Brown's exercise of racketeering benefits for Sgt. Brown's racketeering participation is inherent to the extent that apportionment of liability is not unmade; given ¶ [Damages—that Plaintiff advises the City to apportion higher than average final penalty to which individual (or particular individual  Defendants are obligated to be paid –it is pub  such comment is made in the context of the public information that police Defendants of the City of New york pay 0.0003% of damages.   Thus in addition to some particular Claims, the above series reach the instant broadly functioning in remedies Count from which Claims reached by the above series are reached through this instant paragraph)] CoA[A] ## 1.1, 1.2 CoA[B] # 2.01 CoA[M] # 3.01 CoA[T] # 4.1 CoA[K] # 5.1 CoA[Ω] # 6.01 CoA[Z] ## 7.01, 20.1, 21.01, 22.01, 23.01 CoA[E] ## 8.01, 9.01, 10.01 CoA[I] # 1.1 CoA[Δ] ## 12.01, 13.01, 14.1 CoA[Φ] # 15.1 CoA[Ψ] # 16.01 CoA[Π] # 17.01 CoA[H] ## 18.01, 48.01 CoA[Γ] # 24.01 CoA[Y] ## 19.01, 25.01, 26.01, 27.01, 28.01, 36.01 CoA[Θ] ## 29.01, 30.01, 31.01, 32.01, 33.01, 34.01, 35.01, 40.01, 41.01, 42.01, 43.01, 46.1, 47.1 CoA[P] # #37.01, 38.01CoA[O] # 39.01 CoA[N] ## 44.0t1 CoA[X] ## 45.01

226.   Count []                Failing to implement significantly-more-fraud-resistent information technology systems

227.   Count []                Failing to implement significantly-more-fraud-resistent information technology systems upon notice from auditing bodies.

228. COUNT [XCI] R.I.C.O. Comprehensive-enterprise Count under § 1962 (b). Defendants' administering and protecting[121] the operations of Defendants' racketeering enterprise[122] injured Plaintiff's property, professional, and business raising certain damages under § 1964 as stated at ¶ [Injuries].

229. COUNT [XCII] R.I.C.O. Comprehensive-enterprise Count under § 1962 (c). Defendants' racketeering enterprise's racketeering[123] injured Plaintiff's property, professional, and business raising certain damages under § 1964 as stated at ¶ [Injuries].

230. COUNT [XCIII] R.I.C.O. Comprehensive-enterprise Count under § 1962 (d). Defendants' agreement supported the Defendants' enterprise's racketeering.[124] The racketeering[125] of Defendants' enterprise injured Plaintiff's property, professional, and business raising certain damages under § 1964 as stated at ¶ [Injuries].

---

[121] [all acts which are administering and which protect the operability of the enterprise [need to add Defendant tort—such can be listed instantly: ignoring the recommedations of information systems professionals regarding the vulnerability of the information technology system [apply to leadership of police and intelligence Defendant]]][reference ¶¶[]]]

[122] See ¶ [or Footnotes from introductory at ¶ 101 and certain Footnotes, there][use same superscript for the subsequent set at enterprise except where differentiation is important]

[123] Racketeering predicates (of which the liability-finding-threshold is crossed with at least two committed (from the set of predicates injuring Plaintiff) and injury from at least one) are introduced at ¶ [], and ¶¶ [] state Defendants' racketeering predicates causing injuries to Plaintiff [as opposed to strictly (d) predicates and predicates committed by the enterprise injuring persons other than Plaintiff].

[124] Racketeering predicates of the enterprise (including those injuring Plaintiff and others conceived with the "agreement" or known to have been committed by the enterprise): of which the the liability-finding-threshold is crossed with at least two understood at the agreement.

[125] Racketeering predicates injuring Plaintiff are comprenhensively discussed at ¶ [Note such is the same as above where referenced by Footnote []]

231.   COUNT [XCIV]          R.I.C.O.      Enterprise-within-the-comprehensive-enterprise Count under § 1962 (b). Defendants' administering and protecting[126] the operations of Defendants' racketeering enterprise [127] injured Plaintiff's property, professional, and business raising certain damages under § 1964 as stated at ¶ [Injuries].

232.   COUNT [XCV]          R.I.C.O.      Enterprise-within-the-comprehensive-enterprise Count under § 1962 (c). Defendants' racketeering enterprise's racketeering[128] injured Plaintiff's property, professional, and business raising certain damages under § 1964 as stated at ¶ [Injuries].

233.   COUNT [XCVI]          R.I.C.O.      Enterprise-within-the-comprehensive-enterprise Count under § 1962 (d).   Defendants' agreement supported the Defendants' enterprise's racketeering.[129]  The racketeering[130] of Defendants' enterprise injured Plaintiff's property, professional, and business raising certain damages under § 1964 as stated at ¶ [Injuries].

234.   Count XI          [PART TWO: VARIOUS  KING'S COUNTY DISTRICT ATTORNEY]      The racketeering enterprise of Defendants within the King's County District Attorney's office caused Police Defendants to sufficiently commit their and other crimes, et cetera, against Plaintiff, as racketeering-attorney-Defendants could hide their participation in some criminal-safety-net-

---

[126] Enterprise-within-the-enterprise subset of administration and protection of operability (state at a designated ¶ in the predicates introduction section)
[127] Predicates injuring Plaintiff of the enterprise-within-the-enterprise
[128] [same as above]
[129] [subset of full (largest) set of predicates above for the enterprise-within-the-enterprise]
[130] [same as several above "racketeering predicates injuring Plaintiff" for the enterprise-within-the-enterprise]

racketeering-crimes (i.e. patrol (and fake patrol) can commit racketeering crimes knowing the municipality's racketeering furtherance will available obstruction against the operation of legal consequence upon racketeering participating patrol, et cetera) such as outrage (CoA[Ω]) against Plaintiff, et cetera, and obstruction of justice alongside reinforcement of the Brady violating of the actual material (for evidence which entirely opposed the fabricated pseudo-evidence (see Count XI) presented under State-privileged-process. Thus while certain post-investigatory and aside from the jurisdictionally absent May 7th, prosecutorially-employed Defendants may have immunity: they do not have immunity to encourage future crimes by police by guaranteeing racketeering exchange. Defendants King's County (District) Attorney's pay for play racketeering with Harvitz further damaged Plaintiff outside of prosecutorial activity as it is not prosecutorial activity to conspire to have Mr. Harvitz trick and mislead Plaintiff into waiting for Mr. Harvitz per Mr. Harvitz contractual attorney-client functional promise to represent Plaintiff to then leave Plaintiff to be picked up by Mr. Stancati after Plaintiff escaped (see ¶ []) regarding how Plaintiff escaped the racketeering trap by the conscience of the penultimate overcoming the King's County Attorney's racketeering. Defendant Barosi is CoA[Z] # 23. CoA[Y] #27., 36.,

235. Count XII         KCDA racketeering facilitation is a Defendant liability event (as is the participation of other then racketeering facilitators at the King's County (District) Attorney. All of the King's County (District) Attorney liable events other than racketeering facility are instrumented, procured, and sufficiently-caused by police Defendants although Defendants Officeholder-of-

King's County (District) Attorney, Barosi, Scarcella, and Midey also bear sufficient cause on other Counts to which prosecutorial immunity is not a defense if such activity were allowed to be found to apply given the lack of judicial event upon which State-seizure-process-at-law could have existed and such process as if State-seizure-process-at-law were permitted were not found to be—as such seziures are police power seizures.    Demonstrated in the Defendant Office of the position of the King's County (District Attorney) and Defendant Barosi's selection of the three to commit racketeering acts, Brady violations, and Defendant-instructed-ordered-commisssioned-and-caused malicious abuse of State-seizure-process at law (CoA[Z] at ¶¶ 122 & 123)  CoA[Y] 19., 25., 26., 27., 28., 36.

236.   Count XIII          As Defendants of the King's County (District) Attorney's office sufficiently caused Defendants' injuring, et cetera, of Plaintiff by such as their forceful acts to Brady exculpatory witnesses, their pre-October 2014 agreement to perform corrupt, but immune acts, illegally assist investigative efforts, and commit injurious tort, et cetera, in total absence of jurisdiction in general as part of New York City law enforcement racketeering enterprise participation.    This group of Defendants of the King's County (District) Attorney's office face potential disbarment, criminal proceedings, and the tort of inducing the crimes, tort, et cetera injuring, et cetera, Plaintiff—a non-prosecutorial tortious act. CoA[Z] # 23. CoA[Y] # 19., 25., 26., 27., 28., 36.

237.   Count XIII              As Defendants of the King's County (District) Attorney's
office sufficiently cause crimes et cetera of the racketeering enterprise of which
the instant Action's Defendants participated. CoA[Y] # 19., 25., 26., 27., 28., 36.

238.   Count XIV              Defendants of the King's County (District) Attorney's
office sufficiently cause crimes et cetera of the racketeering enterprise which
injured, et cetera, Plaintiff, by their non-immune facilitation of racketeering
enterprise by Defendant City law enforcement: these King's County (District)
Attorneys are not immune when they encourage racketeering activity by
promising general disposition of, when called, providing un-Constitutional
investigation, process, and acts-clearly-outside-of-all-jurisdiction, when needed,
in order to serve municipal corruption and racketeering.  It is not prosecutorial
activity to promise in the abstract to perform crimes, deprivations, Brady
violations, et cetera, as needed whenever or in whatever cases: some of those
corrupt furtherance of racketeering or racketeering act in furtherance of
racketeering acts may be immune in the ancient interest of managing as needed to
preserve prosecutorial power: but the habitual contract itself under which such
racketeering, et cetera, from the Office of the King County (District) Attorney is
not immune even where some the individual acts performed against Plaintiff from
this basis may be immune.  CoA[Y] # 19., 25., 26., 27., 28., 36.

239.   Count XV              KCDA Farming the local population of criminal defense
lawyers to be people who play ball or do not raise issues at the heart of systemic
corruption including extra-fiduciary communications with the pool of criminal

defense attorneys such as the now-dissolved former firm of Mr. Gabe Harvitz. CoA[Y] 25.,26.,27.,36.,  CoA[N] # 44

240.    COUNT                General Municipal Liability for Anthony Barosi's Work As The KCDA Corruption and Racketeering Enforcer or Operations Manager  []
□ □ □ □ □ □ □ □ □ □ □ □ □ □

241.    Count         In addition to the racketeering activity summarized in Count III The King's Count (District) Attorney operates pay-for-play trading of monies for acts of privileged government process.  CoA[Y] 26., 27.

242.    Count         KCDA advised on the fabrications of police officers consisting of the "investigative" phase. CoA[Z] # 22. & 23. CoA[Y]

243.    Count         KCDA prior to receipt of receipt of a prosecution order or that which would be sufficient for a prosecution to be formed in the mind upon information or knowledge regarding an event—received instructions to enforce certain Brady obstructions that would unravel the fabrication.  CoA[]

244.    Count         The Defendant King's County (District) Attorney operates anti-Constitutional corruption in coordination[131] with the police corruption racket. Corruption[132] of the King's County (District) Attorney powered and powers Defendants' crimes and violations, including of Count 1,[133] et cetera. [notably other counts?] CoA[Y] [] [] [] [] [][] [] [] [] [][] [] [] [] []

245.    Count         Mr. Anthony Barosi operates and has operated as a primary agent for anti-Constitutional and jurisprudential operations on behalf of the current and

---

[131] see Count 4
[132] see Count 5
[133] see Count 6

suddenly-late former King's County (District) Attorney CoA[Y] CoA[Θ] ## a prosecution in preparation to ensure the malicious prosecutor order qua a menu 41., 42., & 43. CoA[Z] # 23.

246. Count        as the particular operation of the sex-bribery racket depends on latent readiness of the King's County (District) Attorney's Office to such as was performed, collaborating in the pseudo-investigatory phase prior to considering as by the police racketeers. CoA[Y]

247. Count        If it were not for not for the King's County District Attorney's (Office Defendant) agreement to further criminal, unconstitutional, et cetera conduct in furtherance of wrongdoing qua conspiracy, et cetera, the police sex bribery racket which recruited Ms. Obi would not have had the force to cause its actions to produce the contract between Ms. Obi and Sgt. Brown which is the greatest manifestation of Defendants' tortious', et cetera, cause's trespasses, et cetera, into Plaintiff's affairs causing deprivations, injuries, et cetera. CoA[Y]

248. Count        The King's County (District) Attorney's racketeering participation, demonstrated by conduct described in the Counts of this Instrument stating the instant Action, et cetera, and otherwise in Plaintiff's Pleading, et cetera, of this Action which could not have occurred were it not habitual action: Defendants could not have collaborated to support criminal, outrageously unconstitutional conduct, et cetera, as identified in the instant and total Pleading of Plaintiff (regarding the context of Plaintiff's prior Pleading see ¶ regarding the obstruction of Mr. Stancati on Defendants" behalf and ¶ [] regarding Plaintiff's Pleading prior to the Filing of the instant Instrument) sua sponte in the fashions articulated by

Plaintiff as referenced in the supra portion of the instant Paragraph: such is impossible, unreasonable, outside plausibility, and inarguable [modify those adjectives]: e.g. Mr. Barosi could not have been in charge of receiving Plaintiff's calls, Defendants could not have coordinated to Brady the 9-1-1-responding pair (¶ 27), ADA Scarcella could not have so denied Sgt. Brown was present, May 7 2015 could not have been executed as it was, prosecutors could not have collaborated to fabricate fraud against the King's County Court and Plaintiff throughout the King's County action against Plaintiff, there would have been investigation upon delivery of Plaintiff's motion to dismiss the King's County's fraudulent, malicious, et cetera action against Plaintiff and, in particular, of the King's County (District) Attorney Brady violations enforced at Defendants behest by several King's County Prosecutors, Mr. Barosi would not have committed three violative acts directly against Plaintiff in telephone conversations including the March 2018 threat to abuse Mr. Barosi's power over FBI actions to harm Plaintiff against Integrity or the Interests of Justice qua further retaliation (CoA [P] see Count [] and Claim []):  the nature of these acts in the acts' very performance as practiced, smooth, well hewn operation confident in the surrounding coordinated racketeering activity of the network and of the successive furtherance of other racketeers to further retaliation, et cetera, to ensure the ultimate racketeering victory ensure this Court's judgment and verdicts of racketeering activity by the King's County District Attorney, let alone the admitted pay to play racketeering also simultaneously operating directly from the chair of the King's County District Attorney in the King's County (District)

Attorney's receipt of funds and trading action and process of the office and powers of the King's County (District) Attorney, which derives its power from the State of New York, cum quid pro quo exchange upon that receipt and other racketeering admitted and identified in the instant Action.   Without the streamlining of racketeering leadership across law enforcement, particularly in the given, instant Count of the police and the King's County (District) Attorney: the racketeering enterprise of the larger corruption racket or police sex bribery racket could not operate so as for the sex bribery contract of Ms. Obi and Sgt. Shaun Brown to be formed, nor executed, with the racketeering furthering that racketeering and the racketeering of the great enterprise, i.e. King's County (District) Attorney Defendants' participation in the racketeering of the enterprise and agreement, readiness, preparedness, consent to perform on call or exercise of racketeering chit or racketeering command from leadership et cetera, which has occurred and consists in the Counts to be accepted as Judgment and Verdict of the instant Action, including the instant which generally establishes such liability of Defendants, with particular identification to be further defined via Discovery, et cetera in the instant proceeding as to apportionment and contributions of liability within the King's County (District) Attorney's office in these matters of 17CV4519 of the Easten District of New York United States District Court. CoA[Y]  CoA[Z] # 22. & 23. [absent jurisdiction+] CoA[Θ] 29

249. Count        [PART THREE:      POLICE   CORRUPTION   GNEREAL   &   RACKETEERING]   The racketeering enterprise in which the Defendant municipality operates does serve fundamental police interests in controlling and

possessing force and the NYPD racketeering participant does obtain fundamental personnel morale interest in operating, protecting, and sustaining the unconstiutional racketeering furthering, in support of, and consisting in the cell, ring, or racket operating police sex bribery in Brooklyn which, via female non-law-enforcement and law enforcement including Sergeant Shaun Brown racketeering participants, recruited Ms. Rita A. Obi, non-Defendant Injunctee, into the or an operating police sex bribery racketeering enterprise amid the broader operating police corruption racketeering enterprise.   This police sex bribery racket created the sex bribery contract agreed between Ms. Obi and Sergeant Shaun Brown, which caused Ms. Obi to find a place to live near and within the 81st Precinct—i.e. to choose to domicile at 677 Quincy Street, Brooklyn—for the purpose of Sergeant Brown ensuring Ms. Obi would, when a time arose for the need, execute the sex bribery contract she made with him rather than with another police sex bribery participant and in Ms. Obi's interest of having the sex bribery contract she had made with Sergeant Brown easily executable and more potent.  The perceivable interest of sex as morale benefit to force personnel is noticeable in certain military context, et cetera, i.e. force racketeering enterprise pursuing its interest in force beyond lawful (per written law), Constitutional, et cetera, limits, et cetera, is further wrongfully served in sex bribery activity by police which is further observable in recent cases involving persons connected to the policeman recently deceased by his own gun without a suicide note, Michael Ameri, including Brooklyn police affiliated and supporting brothel operations discounting police.   See background to the Count at ¶ []

concerning Ms. Obi's expression as to the value of the contract over the plethora of similarly-priced abundant options to be closer than a one hour daily commute each direction.  It is quintessential in the motive or purport of the constitution and thus for those entrusted to adjudicate on its basis that the interest of force bearers in possession of force, i.e. possession is never perfect—but the word expresses continuing action of fulfilling possession as possible, is applicable notably likewise the models of concern directly in the minds of the Founders seeking the improved reinvention of the Roman model donning the United States with its equal Senate, et cetera, and checks to tyranny, sic semper tyrannis: the instant action brings before the Court the very heart of matters tyrannical racketeering obstructions almost entirely, were it not for such as this mistake in failing to obstruct Plaintiff from enacting and succumbing to a bent representative serving Defendants' interests, et cetera.   The finding of the instant Count concurrently finds Count IX, which reaches Claims broadly throughout the categories of Cause of Action

250.    Count        Defendants generally view all investigative records, e.g. an interview, with a if-we-wann-use-it-we'll-keep-if-it-is-not-inculpatory-destroy-it operating principle (e.g. Rosello and IAB records, et cetera)

251.    Count        Municipal corruption operations and racketeering were availed in Defendants depriving, injuring, et cetera acts against Plaintiff and in criminal, et cetera, furtherance of those idem acts of Defendants against Plaintiff. Defendants' fabrication of pseudo-evidentiary material and documents consist of every document entered in the prior proceeding and the current Proceeding, 17CV4519,

including the "Sprint Report"—which is as of yet rather unintelligible to Plaintiff (see   at ¶   )—even the 9-1-1 is not admissible as Defendants have and would purport given the deliberate obstruction of the original compromising its interpretability to the point that it is and all other documents, other than the sprint report" which is not yet found and shown to be fraudulent, are only admissible in 17CV4519 as material evidencing the instant Count and individual Counts based in the individual acts and supported other general racketeering, corruption, and organized furtherance of crime, et cetera, counts. The finding of the instant Count concurrently finds Count IX, which reaches Claims broadly throughout the categories of Cause of Action.

252.   Count             New York City chooses to operate the second track of anti-Constitutional corruption activities, including racketeering activity, out of its interest in possession of force and the obtaining of unconstitutional benefits. Plaintiff witness experience to the corruption sufficiently observed practiced nature of corruption custom availed against Plaintiff by Defendants; similarly, it is wholly implausible to a sufficiently impossible extent that most (not that all were and are not the outcome of operation corruption custom) that corruption practices employed by Defendants against Plaintiff were improvised—particularly in some cases where the entropy, so to speak, to create a corruption technique far and away exceeds risked, et cetera, at risk of exposure, et cetera, to not employing a technique to address a particular point of material for evidence of Defendants' crimes, and otherwise: that is say only in operational custom would such a corruption by employed as procedures involved, were the field not ploughed,

would make consideration of the corruption employed absolutely unthinkable; the casual nature, and at other times, deeply practiced smooth operations demonstrating as an experienced salesman overcomes objections a third assessment of objective certainty of the ready menu of operational corruption acts employed by the NYPD with the past and present Commissioners' support.  The corruption operations include a menu with considerable horizontal operational sphere control in that persons such as Court Reporters Clerk Doreen Ierardo are operational (see Counts ¶ []): such obstruction activity equivalently functions to block remedy as identified in Count [].   The finding of the instant Count concurrently finds Count IX, which reaches Claims broadly throughout the categories of Cause of Action.

253.    COUNT                  General   Municipal   Law   Enforcment   Court-Spoliation Unit.  [Referenced by Thomasello, Rosello, Evening Sprint, et cetera (broadly?)

254.    Count        [PART FOUR 81ST PRECINCT CORRUPT OPERATIONS] Defendant Chief Inspector Scott Henderson deliberately runs anti-Constitutional corruption as demonstrated in the instant Instrument, Plaintiff's Filings, et cetera. Simple enough statement is that Defendants' counsel could not plausibly articulate how all of such would be performed from the police sex bribery contract with all of the checks against the Precinct and directly to Defendant Henderson with the continued maintenance of racketeering approaches to make exposure go away rather than rescind racketeering operations, admit criminal operating method of the precinct, et cetera, were C. I. Henderson not personally to

have done such as order ¶ 24 not to expose Sgt. Brown for appearing as if on duty when not on duty and dressing in uniform for such purpose when not on duty as ¶ 24 identified: Plaintiff has discussed the movements of ¶ 24 which led to the involvement of Sgt. Brazys.  The finding of the instant Count concurrently finds Count IX, which reaches Claims broadly throughout the categories of Cause of Action. [] []    [] [] [] [][] [] [] [] [] [][] [] [] [] [] []

255.    Count        [PART FIVE            IAB CORRUPTION & RACKETEERING]
Internal Affairs (in Plaintiff's use "IAB"—Plaintiff was introduced to the term "IAB" from IAB references to themselves) is in terms of public expectation, the police charged to police the police.  Comparing police activities upon others to police activity on police provides evidence of substantive corruption.  Internal Affairs.  IAB operates "an investigative" phase consisting of determining an answer to the question: would our efforts to block discovery (unless the alleged misconduct or accused is some particular individual IAB has targeted for negative action (i.e. for non-cooperation with IAB racketeering, et cetera) blow up in our face—unless the danger is judged to be significantly great enough—IAB will perform all manner of tampering with material for evidence for §1983 action and other obstruction: this framework operates above some of moderately high rank within IAB who are unaware per the total concreteness of operations—those individuals are simply isolated from cases where their honest work is deemed dangerous to corrupt police interest, racketeering, and operating policy.  CoA[Y] # CoA[Θ] # 41.,42.,43. CoA[N] # 44  CoA[Ω] # 6.

256.   Count        The Defendant Police Department Command including Deputy
       Commissioner Reznick and Commissioner Bratton, having authorized supposed-
       to-be-discrete criminal activity for comprehensive-corruption racket participants
       (i.e. earn a chit, spend a chit for various Constitutional violations including
       racketeering activity): powered all Defendant criminal, et cetera, activity and
       Commissioner O'Neill continues the top-down authorization of earn-your-chit-
       spend-your-chit corruption for racketeering participants.   The finding of the
       instant Count concurrently finds Count IX, which reaches Claims broadly
       throughout the categories of Cause of Action.

257.   Count        IAB structure—The IAB information system: documentation,
       storage, et cetera is designed for the benefit of the racketeering enterprise in
       which racketeering participants are engaged which is demonstrating violative
       substantive due process abrogation which sufficiently caused much of Plaintiff's
       injury and facilitated the environment in which sex bribery racketeering thrives.
       CoA[Y] # CoA[Θ]  ## 41., 42., 43. CoA[N] # 44.

258.   Count        [PART SIX   SYSTEMIC POLICE CORRUPTION]      It     is
       systemic policy of the City of New York regarding law enforcement matters to
       fabricate documents as reflected in the system of fraud employed prior to the
       enactment of the instant Action, 17CV4519 (E.D.N.Y.), much of which was itself
       designed to thwart the instant Action prior to the enactment of the instant Action.
       The finding of the instant Count concurrently finds Count IX with matters of law,
       which reaches Claims broadly throughout the categories of Cause of Action.

259.　Count　　　It is systemic policy of the City of New York regarding law enforcement matters to fabricate documents as reflected in the systemic fraud employed after to the enactment of the instant Action, 17CV4519 (E.D.N.Y.), much of which is intended and designed to thwart the instant Action and the accomplishment of the fulfillment of the Claims for which Defendants have known and know their liabilities generically for deploying the corrupt, criminal, et cetera practices generally and particularly in the matters of the instant Action: such conduct implicates ¶ 1103 default by Defendants—the finding of the instant Count concurrently finds the Default Count, Count I, and additional punitive Claims under CoA[Y] # CoA[Θ] ## 41., 42., 43. CoA[N] # 44.

260.　Count　　　Defendants' facilitation and operational maintaining of the capability to fabricate Sprint reports. CoA[Y] #25., 26., 27., 36. CoA[Θ] ## 41., 42., 43. CoA[N] # 44. CoA[Ω] # 6.

261.　N Count　　The Police Commissioner knows and approves of IAB removing reports of police racketeering where such racketeering was furthered or facilitated by police administration from the independent oversight body set up by the Mollen Commission; the Police Commissioner knows that fraudulent records and the availability of means to defraud police records are inherent security vulnerabilities. Part of the police sex bribery ring operative as part of the instant case may involve police sex bribery in the vicinity of JFK Airport. CoA[Y] #25., 26., 27., 36. CoA[Θ] ## 41., 42., 43. CoA[N] # 44. CoA[Ω] # 6.

262.　Count　　　PART SEVEN　　　CONTRIBUTION TO GENERAL CORRUPTION OF CORPORATE COUNSEL'S FACILITATION]　Systemic

corruption furthering Defendants' crimes et cetera from Corporate Counsel caused Defendants activities sufficiently as racketeering participation for the final legal authority of the Corporation provides great backstop assurance to allow corrupt pursuit of corruption from City racketeers, et cetera. The finding of the instant Count concurrently finds Count IX, which reaches Claims broadly throughout the categories of Cause of Action.

263. Count [PART EIGHT RACKETEERING TOOL KIT AND SPECIFIC FUNCTIONS, MOVES, AND OPERATIONS AGAINST VICTIMS]

Juicing defamation in place of arraignment process with fraudulent juiced defamation with caused by the racketeering practices regular employment and availability on the racketeering menu or corruption toolkit that Defendants would know it would be available and that Corporate Counsel would obstruct production. CoA[Y] # 36. CoA[Θ] ## 41., 42., 43. CoA[N] # 44

264. Count Calculated systemic abuse of process such as restraining orders by fraud as a means to accomplish racketeering objectives. CoA[Y] # CoA[Θ] ## 41., 42., 43. CoA[N] # 44

265. Count Operational corruption collaboration as certifying systemic corruption by the very operational harmony. Conspiracy CoA[Y] # CoA[Θ] ## 41., 42., 43. CoA[N] # 44

266. Count Operational we can say anything about racketeering victims flagrantly inflicting defamation. CoA[Y] # CoA[Θ] ## 41., 42., 43. CoA[N] # 44

267. Count Culture of disregard to the serious instruments of power implemented partly to serve racketeering purposes that the corrupt acts occur with

less of a difference between Constitutional or more Constitutional lines of operation CoA[Y] # CoA[Θ] ## 41., 42., 43. CoA[N] # 44.

268.   Count       Racketeering practices have been systemically employed from habit in these matters resulting in strategic obstructions following a pattern which would unquestionably belie in any of random incident—some categories demonstrate statistically significant certainty statistically beyond question or doubt as a matter of law and all together the various species of obstruction make all the more overwhelming demonstration of bad faith conduct deserving default CoA[Y] # CoA[Θ] ## 41., 42., 43. CoA[N] # 44

269.   Count       Operation we can tyrannically terrify racketeering victims flagrantly acting in absolute abrogation of jurisdiction.  CoA[Y] # CoA[Θ] ## 41., 42., 43. CoA[N] # 44

270.   Count       Racketeering corruption menu item of endangering by selective confinement  CoA[Y] # CoA[Θ] ## 41., 42., 43. CoA[N] # 44

271.   Count       [PART NINE:       SYSTEMIC           OPERATIONAL VULNERABILITIES IN NY LAW ENFORCEMENT, SOME]     Lack        of common sense evidentiary rules created a void where Defendants might have though that not collecting obvious evidence might seem like oh-just-the-usual-careless-to-collect-available-evidence. CoA[Y] #  25., 27.  CoA[Θ] # 42

272.   Recruiting Ms. Obi via the other female police-sex-bribery-participants; recruiting is performed ultimately to serve the tyrannical racketeering operators of the State action racketeering.  CoA[Y] # 25., 26. P (b)(c)(d)

273. Count        Defendant Sergeant Shaun Brown contracting with Ms. Rita A. Obi a sex bribery exchange encouraging Ms. Obi to move into the 81st Precinct in anticipation of execution of the contract. Ms. Obi excitedly and in spontaneous response to the immediately proceeding contact with The 9-1-1 caller (¶ 26), bragged about the authorization and deputizing Ms. Obi had to use police force for criminal purpose of violent false arrest, specifically saying Ms. Obi would select a victim and batter Ms. Obi's victim prior to Ms. Obi's call to Defendant Sergeant Shaun Brown who had then follow through with fabricated allegations and false arrest: Ms. Obi said there was zero doubt Ms. Obi could incur any enforced liability as the idem female police sex bribery participants who recruited Ms. Obi resoundingly assured Ms. Obi that the police sex bribery contracts they had executed over multiple occasions all completed without trouble or concern: that being a police sex bribery racketeering participant meant in sum and substance having get out of jail for (Ms. Obi indicated oral or anal intercourse) a trick card. CoA[Y] Claim #

274. Count        The police sex-bribery racketeering contract between Ms. Obi and Defendant Sergeant Shaun Brown caused Ms. Obi to relapse or surge into violent felonious conduct for which Ms. Obi had been previously arrested and given three years probation: battery of two women: Ms. Obi in a moment of feeling emotionally troubled told Plaintiff that last person Ms. Obi had lived with end with a bad, possibly criminal situation in which she had to immediately depart to a hotel (see ¶ []); multiple witnesses observed Ms. Obi violently harassing women talking about the women's painful and near-future deaths—including of the

woman whom Ms. Obi's belligerence had prompted Ms. Obi to confidently pride of her intent to use the sex bribery contract to Plaintiff (see ¶ []); Ms. Obi excitedly impressed having just committed a crime against a classmate of Ms. Obi at Brooklyn College who had refused to violate academic integrity by giving Ms. Obi's answers under duress from Ms. Obi (see ¶ []). In sum, participating in police racket and possessing the racketeering contract acted like a license (not in the sense of anything resembling law of litigate licenses such as permits, but) functioning as shocking substantive due process infraction in the NYPD authorizing or delegating power to commit crimes to Ms. Obi with no fear of Constitutional operation in New York check abuse, misuses, and infractions of law committed via the joint action resolution and police pre-acceptance of owning the fulfillment of the crimes and ensuring perversion of justice. [Y] [Θ] [Σ]34 [Ψ] # spoliation

275. COUNT XC                    General Brown-Obi Police-Sex-Bribery Recruited Bargained Contract Count.    Specifically included was and proven utile by recruiting women the component and application of corruption and racketeering posse commitatus opened by the police sex bribery participated women and completed by the police sex bribery participating police. Defendant Brown and Ms. Obi bargained contract of police sex bribery, specifically contracting bargain for de facto posse commitatus attacking led by, or executed by Ms. Obi with Defendant Brown to coordinate police appearance by telephone to appear, support Ms. Obi's conclusion of physical victory, and continue the injuring of the victim with fraudulent Fourth Amendment-violating, et cetera, process against the victim

chosen and attacked by Ms. Obi as a means of resolving Ms. Obi's obtaining

anything needed from the victim or exercising Ms. Obi's displeasure.   As had

been previously promised and affirmed to Ms. Obi, the victim would be subject to

various and all needed racketeering *furtherance array* in order to ensure the

276.   COUNT XCI                     General Anti-Miscegenatory Tort-Aspect Count. []
       [] [] [] [] [][] [] [] [] [][] [] [] [] [] []

277.

278.   COUNT XCIII                    General   Privacy   Injury   Count.    Municipal
       Corruption and Racketeering Posse Commitatus Police Sex Bribery drove and
       furthered the privacy injuries—which were well actionable as of the 7 OCTOBER
       2014, but which injuries increased as a result of municipal employe deliberate
       furtherances and injuring of Plaintiff.   [] [] [] [] [] [][] [] [] [] [] [][] [] [] [] [] []

300.   Count  **C**                   General Defendants with Defendant Corporation Retaliated
       Against Plaintiff's Petition Against Defendants' Corruption and Racketeering
       Count.  Defendants targeted Plaintiff to be exercised upon as a police sex bribery
       retaliation victim after Plaintiff executed petition against Defendants' racketeering
       crime of education nature are prelude to posse commitatus police sex-bribery at a
       local academic institution.       [] [] [] [] [][] [] [] [] [][] [] [] [] [] []

301.   Count       The police sex-bribery racketeering contract between Ms. Obi and
       Defendant Sergeant Shaun Brown caused Ms. Obi to pressure Plaintiff to support
       Ms. Obi's criminal behavior at least morally, Plaintiff's abstaining to do so led to
       the passive aggressive behavior of Ms. Obi infringing upon Plaintiff's rights: at
       first such consisted of Ms. Obi's filling the sink with Ms. Obi's food cover dishes

which is a bad idea in a newly renovated space still undergoing some finishing by the landlord: Plaintiff mostly cooks daily and thus was seriously inconvenienced by the trespass and responded accordingly with daily polite, but straightforward requests of Ms. Obi to take care of her mess impacting others use of the shared kitchen—a situation witnessed by Ms. Obi's francophone female friend Jamie from a windward Caribbean island, somewhat probably Saint Lucie, who perceived Plaintiff final request to be reasonable, but to which Ms. Obi shouted back at Plaintiff: Plaintiff responded by leaving the room. Ms. Obi's behavior transition to the shocking behavior of coming to Plaintiff's room at midnight and shouting at Plaintiff, which neighbors observed as Plaintiff has noted: Plaintiff responded from Plaintiff's bed where Plaintiff was trying to sleep, why are you verbally harassing me and you must stop—you cannot harass me this way (in response to Ms. Obi); Ms. Obi kept repeating the same things which had little more sense then "You're not the boss" which she first utter as a response regarding Plaintiff's reminder to Ms. Obi to clean up Ms. Obi's unsanitary kitchen mess; Plaintiff was utterly baffled by the behavior and the way Ms. Obi would say something, pause for a little while, and then repeat herself: the same behavior continue just the same the next night after midnight, again for three hours, and then again the next night: again, with multiple witnesses. When Ms. Obi threatened that Ms. Obi had been surreptitiously recording these fishing for reaction attempts from Plaintiff in repeatedly these phrases ceaselessly in the night for hours three nights in a row, Plaintiff's estimation of understanding the behavior relied less of possible psychosis and more that Ms. Obi had been futilely

been simply behavior thusly as a part of the attempt to extort Plaintiff, uses equipment and her connections at Sirius radio, where Ms. Obi worked part time as a sound editor. While Plaintiff exerted nothing but tact in his unknowingly recorded responses, Ms. Obi having up to scores of hours of Plaintiff in conversation could by shear quantity be used with perhaps bits and pieces added subsequently from some other staged context, to create a seriously injuring extortive device existing in data format; immediately after Ms. Obi's threat, Plaintiff responded via text attempting to inoculate any attempt Ms. Obi might subsequently make to juice up a story—Plaintiff aimed for texts which Plaintiff thought to cut away some potential Maury Show storyline. CoA[Z] # 21 CoA[K] # CoA[Ω] # CoA[T] #

302. Count        The police sex-bribery racketeering contract between Ms. Obi and Defendant Sergeant Shaun Brown caused the situation of Plaintiff full rights, but limited obligations (Plaintiff had not even yet been presented with the lease to sign Plaintiff's authorized holding of partial tenancy of shared space and private space (the landlord's agent recognized Plaintiff as a professional with whom business concerning some of Plaintiff's clients looking for an investment property in the area of 677 Quincy (a transaction killed by Defendants' tort action, et cetera))) Plaintiff has detailed considerable material concerning this situation in Plaintiff's May 7th Filing and prior written documents by Plaintiff (see also ¶ []): Ms. Obi's transgressions of Plaintiff constituted what Plaintiff reported to others including The 9-1-1 caller (¶ 26) as a clear violation of Plaintiff's New York City law right to "Quiet enjoyment" of real estate interest: as such Plaintiff had

grounds to have the landlord agent remove Ms. Obi, which the landlord's agent was reluctant to do given Ms. Obi's parents had co-signed Ms. Obi's lease with their house as collateral on the loan, which the landlord greatly admired: furthermore, the landlord's agent was already anticipating Plaintiff could move without notice provided no loss was received by the landlord (again, Plaintiff had not even been presented with the lease for agreement of contract, but as a respected real estate professional was granted tenancy (Plaintiff was the first to occupy the space) ahead of such formality) (see ¶ []): Plaintiff expressed concern that Ms. Obi might be a problem for him and others tenants, including Plaintiff, on October 3rd and after a night of screaming from midnight to three in the morning (see paragraph [], supra) as a cruel fishing to serve a hypothetical Jerry Springer extortion scheme (which colors the Defamation on steroids Defendants still inflict against Plaintiff) Plaintiff sent the landlord's agent a text saying that Ms. Obi's behavior seemed psychotic and indicating that the landlord's agent would want to take prompt action (implying reference to Ms. Obi's tenancy not yet being thirty days—such New York City law allows immediate removal with costly and complicated eviction proceedings precisely for situations where, such as in the given occurrence, a tenant quickly demonstrates criminality, trespass, and violence): the landlord's agent said that he would implement the process of having Ms. Obi answer with everyone seated at a table and order Ms. Obi to move if given the opportunity to be heard, Plaintiff, The 9-1-1 caller (¶ 26), and Ms. Diaby (the three other tenants sharing common space in the duplex with Ms. Obi still felt Ms. Obi had to be removed for safety—such seemed to Plaintiff to be a

risky business decision (the landlord's agents approach seemed to be to want to keep Ms. Obi's parents' collateral on the landlord's agent's securities table for the landlord's agent's portfolio—the landlord's agent was trying a Hail Mary play that the situation would somehow resolve itself if the landlord's agent stalled) given Ms. Obi had already transgressed more than could possibly be ignored (Ms. Obi had started committed other petty crimes such as interfering with Plaintiff's internet in violation of agreement and stealing Twenty-Five Dollars from Plaintiff as is detailed in the May 7th Filing and in other documents).  Defendants' causing this interference and with Plaintiff's life and security via the authorization of Ms. Obi's criminal-conduct-at-will-guaranteed hampered Plaintiff severely for the period up to October 8th, 2014: when Sergeant Brown got the call from Ms. Obi to execute their contracted racketeering exchange interfering with Plaintiff's interstate and international business, as the corruption and police sex bribery enterprise does adversely impact local commerce.  [] [] [] [] [] [][] [] [] [] [] [][] []

[] [] [] []

303.   Count        Ms. Obi, as a deputized and joint State actor, did steal $25 as discussed in the Background to the Count ¶ [].  Levon (identified in Plaintiff's May 7th Filing, et cetera, as a man Ms. Obi identified both as one of Ms. Obi's "Hoes [i.e. slang for whore]" and as being Ms. Obi's boyfriend acknowledged that Ms. Obi had told Levon that Ms. Obi had taken Plaintiff's $25 in front of Ms. and stated that Ms. Obi would either repay Plaintiff in cash or shared utilities. Ms. Obi then refused to pay on October 8th, 2014 and offered surety against the threatened extortion ejecting the phone.  CoA[T] # 4. CoA[K] # 5.

304.   Count        Ms. Obi was not shy to violence and was specifically authorized to

violence and crimes of setting up situations for false State process upon fabricated

allegations as the women who recruited Ms. Obi and Sergeant Shaun Brown took

further in order to inflict sufficient weight, as if being sat up by a gargantuan that

the release for pressure would be to call for mercy exonerating the heavy sitter—

part of this seizure is still ongoing as demonstrated in a considerable proportion of

the remarks Mr. Rosenkilde has been instructed to use—the audience of the

November hearing (in the Courtroom on other business demonstrably grew

frightened of Plaintiff directly on the basis of the intent and deliberate defamatory

effect of Mr. Rosenkilde's remarks; Mr. Rosenkilde had admitted that upon

examination of the evidentiary material in possession of the police, Mr.

Rosenkilde had determined the presentable evidence indicate the seizing of

Plaintiff under the color of law was wrong.  This latent weapon-of-defamation can

be used against Plaintiff in all things and is a component of what must receive

certain relief (¶[]) or such will necessitate additional damages as discussed at ¶[].

CoA[Y] Claim #   CoA[Δ] Claim #

305.   Count        Defendants effectively deputized Ms. Obi to wage criminal

violence at will as State action with State action ready to complete functions and

the State ownership of actions performed by Ms. Obi outrageously-outside-the-

law as necessary to receive sex benefit qua bribery after recruiting Ms. Obi for

this purpose by multiple participants in the racket. This precipitated the very

contact of Plaintiff with Ms. Obi and Defendants, none of whom Plaintiff would

otherwise have ever even come into contact or met and is the primary cause[134] (see ¶¶ []). CoA[Y]  #

306.   Count 9:  Ms. Obi via the police sex bribery racketeering enterprise's authorizing violence against victims of Ms. Obi's selection as a racket action: did batter Plaintiff with her hands and a ceramic-like toothbrush holder.   This Count pertains to all the battery Counts () that certain elements common to all the battery Counts not need be restated.   Battery counts have been written and related to Defendants several times.   Ms. Obi's battery was pure battery without purpose, function, cause, excuse, et cetera, other than making violence.  Ms. Obi's violence was responded with strict nonviolence and vigorous verbal command and persuasion to stop Ms. Obi's violence.   All of such is established prior to the instant Pleading.   [] [] [] [] [][] [] [] [] [][] [] [] [] []

307.   Count 11: Ms. Obi via the police sex bribery racketeering enterprise authorizing violence trespass against Plaintiff in forms other than assault and battery as summarized in Count 9 & 10 including Conversion (CoA [K]), infringing on private space, destruction of  .  Ms. Obi's first serious trespass was night screaming directed at Plaintiff; it was                    CoA[M] Claim (#[] at ¶ []).

308.   Count          Ms. Obi State-Action-powered recording of Plaintiff for extortive purposes prior to the night-time attacks during which Plaintiff was in bed. CoA[T]

309.   Count          General          Quiet enjoyment real estate trespass CoA[Z]  Claim # CoA[T] Claim #  4. CoA[K] # 5.  CoA[P]  # 37., 38 CoA[Ω] # 6. CoA[Y] # 28

---

[134] as Plaintiff identified in Plaintiff first opportunity qua pleading by asserting it was the correct primary "incident"

310. Count          Night 1          October 3rd, 2014.   Quiet enjoyment real estate trespass   CoA[Z] # 21. Claim # CoA[T] Claim # 4.[]   CoA[P] # 37. CoA[Ω] # 6. CoA[K] # 5.  CoA[Y] # 28

311. Count          Night 2          October 4th 2014 Quiet enjoyment real estate trespass          The police sex-bribery racketeering contract between Ms. Obi and Defendant Sergeant Shaun Brown caused     Second night screaming at Plaintiff CoA[M] # 3.   CoA[P] # 37. CoA[Z] # 21. CoA[K] # CoA[T] # 4.

312. Count          Night 3          October 5th 2014 Quiet enjoyment real estate trespass                     police sex-bribery racketeering contract between Ms. Obi and Defendant Sergeant Shaun Brown caused          Third     night screaming at Plaintiff CoA[M] #3.03   CoA[K] # 5.  CoA[Z] # 21. CoA[T] # 4. CoA[P] ## 37., 38

313. Count          [Relocate? ]Ms. Obi, as a deputized and joint State actor, did steal as discussed in the supra Count ¶ []. CoA[K] # 5.  CoA[P] ## 37., 38.

314. Count 10:   Ms. Obi via the police sex bribery racketeering enterprise's authorizing violence against victims of Ms. Obi's selection as a racket action: did assault Plaintiff threatening bodily-harm causing extortion and defamation on October 7th, 2014 and amid other violence and threat of violence did homicidally threaten Plaintiff with the explicit language to Plaintiff: "I [Ms. Obi] will kill you [Plaintiff]" as this assault upon Plaintiff by Ms. Obi as part of racket-sanctioned activity occurred amid Ms. Obi's homicidal batteries upon Plaintiff and after the police were called by the third party.   All of the instant paragraph has been asserted prior, and to Defendants. –Other crime, tort, violation, deprivation of

other Counts, et cetera, does consist of assault or an assault component: e.g. every reaffirmation of Ms. Obi's standing promise to kill Plaintiff. CoA[M] # CoA[P] # 37.

315.   Count      The police sex-bribery racketeering contract between Ms. Obi and Defendant Sergeant Shaun Brown caused            Threatening   extortion   via recordings        CoA[M] # 3.   CoA[K] # 5.  CoA[P] # 37. CoA[Ω] # 6. CoA[Z] # 21.

316.   Count      The police sex-bribery racketeering contract between Ms. Obi and Defendant Sergeant Shaun Brown caused                Ms. Obi October 8th extortion threat amid offering surety against Ms. Obi's misappropriation and threat of extortion debt:              indicating in sum and substance "here they are; these really would fuck with your life" as Ms. Obi ejected the phone, hereafter the "ejectum" before Plaintiff for Plaintiff's reception as the surety against the misappropriated threat: Ms. Obi subsequently admitted that all recording functionality had been removed prior along with all data—the surety was a fraudulent one for the pretext applied as admitted to the 9-1-1-responding pair—Municipal Defendant is a very direct propagator upon and of this Count (see Count) regarding the Defendants' continuing actions and defamation on these matters which have always had apparent discoverability which Defendants continue to avail State power against reducing   CoA[Y] #  CoA[A] # (equivalent contribution to damages of CoA[O]); CoA[O] Claim #

317.   Count      First specific   (CoA [B]) Ms. Obi via the police sex bribery racketeering enterprise authorizing violence make State action of violence did

make the first interpersonal contact hitting Plaintiff as Plaintiff sat on Plaintiff's bed. Initiation of battering. Count also encompassing the horrible, baseless, and known fabrications of this essentially always evidentially certain matter of which Defendants obscene fabrications were always sufficiently impossible. CoA[Δ] Claim # 12. CoA[Λ]

318.   Count LX    The police sex-bribery racketeering contract between Ms. Obi and Defendant Sergeant Shaun Brown cause

319.   Count       The police sex-bribery racketeering contract between Ms. Obi and Defendant Sergeant Shaun Brown caused

320.   Count 8: Ms. Rita A. Obi qua a State actor with Defendant police and prosecutor joint actors did cause bodily harm and did intentionally inflict mental anguish in transgressions upon Plaintiff from late September of 2014[135] with a particular cluster including a homicidally violent cluster of transgression upon Plaintiff on October 8th, 2014.[136]    CoA[M] # 3. CoA[B]  Claim # CoA[Y] # 19., 25., 26., CoA[H] # 18

321.   Count       Trespass real estate entry upon specific instruction not without statement, discussion, or otherwise addressing any response to the repeated, witnessed verbal prohibition of entry.  CoA[T] Claim #  CoA[M] Claim #

---

[135] and does defame Plaintiff as a State actor and as joint action with police and prosecutors
[136] see ¶¶  [] regarding an overview of October 8th, 2014 and Footnote 40 regarding the exclusive direction of transgressions of the State powering Ms. Obi upon Plaintiff and ¶¶ [] laying out Plaintiff's self-risking entirely non-violent self-defense, retreat, et cetera, in the face of such horrible State outrage

322.   Count         On October 8th, 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did       Push, shove, and straddle      Second CoA[B] # 2. CoA[M] # 3. CoA[P] # 37. CoA[Ω] # 6. CoA[Y] # 19. CoA[H] # 18.

323.   The police sex-bribery racketeering contract between Ms. Obi and Defendant Sergeant Shaun Brown caused                Ms. Obi to by straddling and inflicting random hits of physical violence the threat of such as yanking or biting [] Plaintiff's genitalia  CoA[M] # 3.  CoA[P] # 37.  CoA[Ω] # 6.  CoA[Π] 17. CoA[H] # 18

324.   Count         The police sex-bribery racketeering contract between Ms. Obi and Defendant Sergeant Shaun Brown caused Ms. to act disposed to threaten Plaintiff's life in multiple and comprehensive ways causing Plaintiff's acute observation that Plaintiff's life was in danger           CoA[M]   Claim   #[] CoA[P] # CoA[Ω] #

325.   Count         On approximately October , 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did         Escalation of hits causing Plaintiff to need to flee           CoA[B] Claim #   CoA[M] Claim # CoA[Y] # 19. CoA[H]  # 18. CoA[Ω]  # 6.

326.   Count         On approximately October , 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did

327.   Count LXVI   On October 8th, 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did        Battery through door        See Fourth CoA[B] Claim #[]  CoA[M] Claim # CoA[P] # CoA[Ω] #

328.   Count        The police sex-bribery racketeering contract between Ms. Obi and

Defendant Sergeant Shaun Brown caused Ms. to act disposed to threaten

Plaintiff's life causing on October 8th, 2014 Ms. Obi, a deputized, empowered,

more-than-joint-State-actor, to directly homicidally promise to kill Plaintiff with

those words etched from that moment on of Ms. Obi promising to Plaintiff,

verbatim: "I [Ms. Obi] will kill you [Plaintiff]," which Ms. Obi denied saying and

then immediately, unquestionably, indubitably, and to-four-witnesses admitted

having herself, Ms. Obi, said, in those words quoted in this instant paragraph, to

Plaintiff prior to the directly homicidal batteries Ms. Obi inflicted upon Plaintiff

(see Counts [] at ¶¶[] []) to the police witnesses responding to the 9-1-1 call who

had to physically stop Ms. Obi from attacking Plaintiff's head after Ms. Obi

refused to obey their commands for Ms. Obi to cease  CoA[M] Claim #  CoA[Y]

Claim #

329.   Count        The police sex-bribery racketeering contract between Ms. Obi and

Defendant Sergeant Shaun Brown caused Ms. to act disposed to threaten

Plaintiff's life causing on October 8th, 2014 Ms. Obi, a deputized, empowered,

more-than-joint-State-actor, to press into a door behind which Plaintiff was

protecting himself in such a vigorous manner as to demonstrate imminent

physical harm to Plaintiff by Ms. Obi.   CoA[B] # 2.  CoA[M] # 3. CoA[Y] #

CoA[P]  # 37.

330.   Count        On October 8th, 2014 Ms. Obi, a deputized, empowered, more-

than-joint-State-actor, did slander Plaintiff by screaming to defraud listeners and

harass Plaintiff, which the witnesses eventually came to observe directly and expound upon verbally within the scene. CoA[Σ] ## 12., 14.

331.   Count LXX      On October 8th, 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did             Homicidal choke (external: Ms. Obi's right hand gripping front of Plaintiff's neck). CoA[B] # 2    CoA[M] # 3.  CoA[P] # 37. CoA[Ω] # 6.

332.   Count []      On October 8th, 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did      grip Plaintiff's tongue threatening to tear out Plaintiff's tongue with Ms. Obi's hand                         See CoA[B] # 2. CoA[M] # 3.  CoA[P] # 37. CoA[Ω] # 6. CoA[Y]  # 19.

333.   Count []      On October 8th, 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did act to             homicidally     suffocate     Plaintiff (internal:  Ms. Obi's hand inside Plaintiff mouth with Ms. Obi applying Ms. Obi finger's to Plaintiff esophageal opening)      CoA[B] Claim # 2.    CoA[M] Claim # 3.   CoA[P] # 37. CoA[Ω] # 6. CoA[Y]  # 19.

334.   Count []      On approximately October , 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did

335.   Count []      On October 8th, 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did             claw and tear Plaintiff's right check         See Eighth CoA[B] Claim (#2.08 at ¶ []) & see CoA[M] Claim (#[] at ¶ []). CoA[P] # CoA[Ω] # CoA[H]  # 18. CoA[Y]  # 19.

336.   Count []      On October 8th, 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did             chase Plaintiff up the stairs—in order to run

up the stairs, Plaintiff needed speed and in order to have that speed Plaintiff had to risk Ms. Obi reaching a foot which could have resulted in Plaintiff's death by head impacting the wooden stairs: thus Plaintiff was made morbidly aware of the imminent mortal danger from the acting-State-psychotic-Ms. Obi. [separate chasing upstairs into separate? Combined ok]        See CoA[M] Claim (#[] at ¶ []). CoA[P] # CoA[Ω] # CoA[H]  # 18.

337.   Count []        On October 8th, 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did      hit Plaintiff through upstairs bathroom door and attempted homicidal entry      See Ninth CoA[B] Claim #.   CoA[M] # 3.  CoA[P] # 37. CoA[Ω] # 6.

338.   Count []        On October 8th, 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did hit Plaintiff with potentially deadly object of ceramic-like toothbrush holder  CoA[B] # 2 CoA[M] # 3. CoA[P] # 37.

339.   Count []        On October 8th, 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did action of ejecting data storage device for Plaintiff's reception was done out of intent to entrap [check if tort?] lure Plaintiff with return of security against misappropriation when misappropriated material was not on device (Background—Ms. Obi saying it was another device all together). CoA[] # 27.

340.   Count []        On October , 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did hitting post-police-arrival CoA[B] # 2 CoA[M] # 3

341.   Count        CoA[H] Abuse of Civil Process in Malicious-Fabricating False Cause for Inquiry, i.e. Fair Trial Equivalent in Forcing Plaintiff to Overcome

Fifteen False Allegation by Ms. Obi which Ms. Obi withdrew.  Ms. Obi admitted to saying to Plaintiff prior to committing three distinct homicidal assault qua psychotic attack from which Plaintiff sought refuge in the bathrooms—Ms. Obi penetrated into one as Plaintiff opened the door as Ms. Obi requested slight open—all as reported by the 9-1-1 caller  (¶ 26); ¶27 attempted to close Ms. Obi under instructions of government administration to be adjucdicated for homicidal assaults which Ms. Obi asserted after being arrested for felony assaults upon Plaintiff at 2:18 p..m. on October 8th, 2014.  After ten iterations which Plaintiff had to absolutely defend due to Homicidal-State-Action-Racketeering-State-Action-Substantive-Violation: this experience of being forced to Defendant against horriblyly false allegations—that Ms. Obi had not gone downstairs (this particular information is relevant given Ms. Obi's homicidal activities downstairs, straddling on Plaintiff's bed—(given horrible Defamation+ CoA [Δ][Λ][Σ] )

350.  COUNT CL                    General  Defendants'  Planned  of  the  Life-Destroying Injuring of Plaintiff Count.  Defendant Brown responded to Ms. Obi's phone call indicating that the posse commitatus pursuant the the police sex bribery contract bargained between Ms. Obi and Defendant Brown had been commenced and that Ms. Obi needed Defendant Brown to finish the sex bribery-based corruption abuse and racketeering pursuant to the bargain contracted. Defendant Brown eagerly supported the plan and probed for details[137] to assist with planning constitutional-dimenstion (as well as common-law-actionable) injuring of Plaintiff based on details of racketeering furtherance array beyond

_____

[137] Which included information upon which Defendant Brown surmised basis for anti-miscegenistic prejudice to be inflicted upon Plaintiff as part of the victimization. See []

what had been to Ms. Obi to whatever degree and according to Defendant Brown's off-duty situation, with regard to the operationally compliant police officers who would follow racketeering instructions.  See further details of the instant Admitted telephonic conversation between Defendant Brown and Ms. Obi planning the completion of the posse commitatus of the police sex bribery bargain contract between Defendant Brown and Ms. Obi with a sure plan to

351.   COUNT CLI                    Defendants'   Planned   of   the   Life-Destroying Injuring of Plaintiff Trigger Call Count.  Needing to be concealed from Plaintiff follow-up phone call to from Ms. Obi to Defendant Brown to notify Defendant Brown, as Defendant Brown had earlier instructed in the telephone call notifying Defendant Brown of the tortious posse commitatus opening against Plaintiff that needed to be completed for by Defendant Brown's tortious removing seizure of Plaintiff to commence the completing of the posse commitatus to be continued under the Defendant racketeering furtherance array upon Plaintiff including as involved the planned usurpation of an adjudication until Plaintiff was subdued into signing waiver of liability or eliminated.  [] [] [] [] [] [][] [] [] [] [] [][] [] [] [] [] []

352.   COUNT                       Defendant Brown's Planning for Planning

353.   COUNT CLII                  Defendants'   Planned   of   the   Life-Destroying Injuring of Plaintiff: Appearance as Fourth Amendment Violating Search Count

354.   COUNT CLIII                 Defendants'   Planned   of   the   Life-Destroying Injuring of Plaintiff Terry Seizure of Plaintiff with completing defacto posse commitatus police sex bribery participant, responded to t

355. COUNT CLIV                Defendants' Planned of the Life-Destroying Injuring of Plaintiff: Obstruct ¶ 27 in Planning the Gathering of a Replacement as Search

356. COUNT CLV        Defendants' Planned of the Life-Destroying Injuring of Plaintiff: Avoid to Obstruct ¶ 26 in Planning the Gathering a Fraudulent Information Assemblage as Search (if ¶ 26 Were Inconveniently Present Upon Appearance to Seize Plaintiff).

357. COUNT CLVI                Defendants' Planned of the Life-Destroying Injuring of Plaintiff: Command Plaintiff to be Silent to Obstruct Plaintiff

358. COUNT CLIV                Defendants' Planned of the Life-Destroying Injuring of Plaintiff: Observe Mashed Terrible Tape Ms. Obi has Created as Gathered Towards Pretext [] [] [] [] [][] [] [] [] [][] [] [] [] []

359. COUNT CLIV                Defendants' Planned of the Life-Destroying Injuring of Plaintiff: Fabricate a New 9-1-1 Sprint Report from the Only 9-1-1 Call (in the morning, i.e. ¶ 26 to which ¶ 27 responded).

360. COUNT CLIV                Defendants' Planned of the Life-Destroying Injuring of Plaintiff: As Ms. Obi's Mashed Audio is A Fabrication, Plain to Cite it as if it were evidentiary, but do never collect it.

361. COUNT CLIV                Defendants' Planned of the Life-Destroying Injuring of Plaintiff: Instruction Plaintiff to Leave Phone for Ms. Obi to Access

362. COUNT CLIV                Defendants' Planned of the Life-Destroying Injuring of Plaintiff: Removing seizure and hold while Defendants perform any

needed record adjustments at the time and to allow Ms. Obi to send pretext text messages from Plaintiff's Phone.

363. COUNT CLIV            Defendants' Planned of the Life-Destroying Injuring of Plaintiff: Calling in Chits for Necessary Furtherance Array from KCDA to protect obstructions, get hard, et cetera.

364. COUNT CLIV            Defendants' Planned of the Life-Destroying Injuring of Plaintiff: Find Ms. Obi Class A Misdeamoner Citation, kill it and bury it. ▯ ▯ ▯ ▯ ▯ ▯ ▯ ▯ ▯ ▯ ▯ ▯ ▯

365. COUNT CLIV            Defendants' Planned of the Life-Destroying Injuring of Plaintiff: Get Corruption Blue Wall Crew at 81st Precinct (¶ 29) to be ready to circle Plaintiff when Plaintiff arrives and to assist with fabrication of reports, et cetera, as necessary.

366. COUNT CLIV            Defendants' Planned of the Life-Destroying Injuring of Plaintiff:            Fraudulent source of appearance which readily was necessary per Fouth Amendment required to checked, i.e. choice to defraud active police position by sublimated on admitted personal-relationship basis what stood as police evidential record stripping Plaintiff of hearing rights evidential rights require  . The finding of instant Count concurrently finds the Default Count, Count I. CoA investigate, CoA[Z] 20 21    CoA[K]  # .

367. Count      Defendants, in planning fraudulent appearance (¶ 28), knew the municipal racketeering methods would provide choices for the fabrication of process incumbent with the planned tyrannical removing seizure of Plaintiff. Defendants ultimately chose to fabricate a Sprint Report which Defendants knew

was so wildly indefensible that Defendants did not produce it to Plaintiff with other materials in June of 2015 (after Defendants' counsel disclosures represent that Defendants' had produced idem to the CCRB at the end of May 2015) as Defendants' knew how wildly fraudulent it was and how easily such truth could be exposed.  The finding of the instant Count concurrently finds the Default Count, Count I.

368.  COUNT                  Planning: Ninth-Amendement Self Defense Rights Construed With New York Law:  Citation for Menacing Meant Mortal Danger— Defendant Fictionalized § violation even though theory was beyond hypothetical possibility—and precisely described such without concern to qualify the impossible.  Otherwise obstruction and independent chain for Fourth violation as Defendants knew .  Defendants knew that Ms. Obi saying that Ms. Obi was going to kill Plaintiff and homicidally attacking Plaintiff was fully supported at common law and constitutionally as cause for not allowing Ms. Obi to enter the bathrooms (1 & 2 (Plaintiff had to flee the first when Plaintiff was endangered from Plaintiff's opening the door to bathroom one at Ms. Obi's request) that Plaintiff was occupying: to overcome this, Defendants attempted to use the New York-robbery-self-defense-preclusion:  Plaintiff was chased into bathrooms without windows or other exists, twice.  Facts plainly did not conform to a robbery: Defendants tried to mash assertions of improper possession of ejectum Ms. Obi ejected for Plaintiff's reception (which is supported by the nine relevant considerations of law as being a proper or permissible, defensible, or privileged possession of ejectum ejected for Plaintiff's reception (which is the fact Ms. Obi

did admit occurred—after first denying otherwise)) with the supposed Plaintiff's refusal to open a door Ms. Obi attempted to force from closing and force open (twice (bathroom one (all persons present on CCRB report the time of the only 9-1-1 call)) and not allowing (bathrooms one and two) the doors to be opened with Ms. Obi homicidally attacking Plaintiff and overtly stating that "[Ms. Obi] will kill [Plaintiff]:" as Ms. Obi admitted to the only 9-1-1-responding police and in regard of such and other criminal activity of Ms. Obi (¶ 27 issued Ms. Obi a Class A Misdeamoner Menacing Citation, which Defendants Admit, but refuse to produce given the time being prior to Defendants' assertion of the time ¶ 27 arrived (which Defendants did to obstruct production of the Class A Misdeamnor Menacing Citation—as such Evidence obliterates, essentially by itself, Defendants' Pleading not to be thrown out of by law on all contingent Counts). Class A Misdeamoner Menacing, Ms. Obi literally admitted homicidally attacking Plaintiff and saying that "[Ms. Obi] will kill [Plaintiff]:" (as ¶ 26 witnessed and as ¶ 26 put into a notarized Testimony document from ¶ 26 and delivered to supposedly investigative personnel of the 81st Precinct): literally rules out robbery as the only force Defendants assert is Plaintiff's self defense of not allowing the entry of a sworn and homicidally-attacking homicidal attacker: another sufficient weakness is Defendants' assertion of motive, in many respects—particularly with regard to two separate bathrooms. There is no plausible loss of chattel conceivable (Defendants furthermore assert the ejectum value on 7 October to have never, for a moment, varied through 10 October): none asserted either; furthermore, the evidence of Defendants' crimes against Plaintiff that Ms. Obi

stated (as is otherwise witnessed—also recorded, reported, Docketed, et cetera) were contained on the ejectum that Ms. Obi ejected to Plaintiff for Plaintiff's reception to examine, et cetera: however, Ms. Obi came to admit that this was not true, but that Ms. Obi wanted Plaintiff to properly possess the phone as potential support for pretext for the corruption and racketeering posse commitatus to be used against Plaintiff.

369.    COUNT **CLXX**            General Defendant's Carrying out Defendants' Posse Commitatus Completion Plan Against Police Sex Bribery Victim.  Plan specifically targeted Plaintiff for Plaintiff's petition against Defendants' corruption.  The exceution of the plan particularized with the bargaining of police sex bribery contract bewteen Ms. Obi and Defendant Brown and further particularized in the Admitted telephone calls between Ms. Obi and Defendant Brown—setting up the completion of the defacto fraudulent use of posse commitatus (et cetera) action and then notifying strike time immediately upon Plaintiff's return.  [] [] [] [] [] [][] [] [] [] [][] [] [] [] [] []

370.    COUNT CLXI            Defendant's Carrying out Plan to:  Appearance as Fourth Amendment Violating Search Count

371.    COUNT CL        Defendant's Carrying out Plan to: Terry Seizure of Plaintiff with defacto posse commitatus police sex bribery participant, responded to t

372.    Count            Ms. Obi did privately contact Sergeant Shaun Brown by personal telephone to personal telephone to execute their sex bribery contract produced under the police sex bribery and corruption racket determining criminal, et cetera, further injuries to Plaintiff CoA[P] ## 37., 38., CoA[Ω] # 6.

373.   Count []: Sergeant Shaun Brown did procure from the police corruption racket for his exercise of the racket subpart enterprising in police sex bribery, the dangerous illegal confinement,[138] malicious abuse by fraudulent prosecutorial process,[139] and defamation with false and fabricated pseudo-evidence [140]: completing and furthering the initiated bodily-harm upon Plaintiff in passing most the further harm performance to the broader law enforcement-corruption-racket team for their individual specializations. [add subcounts]   CoA[P] ## 37., 38., CoA[Ω] # 6. CoA[Y] # 25., 26., 27., 36.. CoA[H] # 18.

342.   Count []      Sgt. Brown four (¶ 28) not simply leaving as staying upon clear circumstance of non-exigency to would-be-terry-plus seize Plaintiff upon procedurally and legally violative presence sufficiently violationed Plaintiff's Fourth Amendment rights. See ¶ 65.   Staying after appearing and finding transparent non-exigency of circumstances upon confrontation of Plaintiff's asserting that the precinct clearly had record that the appearance of the Sgt. Brown four (¶ 28) to rehash, review, et alia, definitively settled, closed, et cetera matters (which Ms. Obi and Defendants knew were closed vehemently against probable cause finding against Plaintiff as Defendants and Ms. Obi exercised racketeering operations to violate law and procedure to appear; the first two of the Sgt. Brown four knew Plaintiff was correct in asserting the appearance was errant as either Officer Caraciolo and Casciola, Plaintiff has not been provided with the necessary photograph to tell the difference, et cetera, (the two acted ensemble and

---

[138] see Count  [next]; and the next Count []
[139] Count 8.4
[140] Count 8.[]

entirely in concert, performing their actions as a pair clearly demonstrating regular duty partnership between the two (i.e. "partners" in parlance) (their subsequent removing seizure acts were likewise performed ensemble and indistinguishably—their CCRB reports differ considerably where both were fabricating but demonstrate a shared mind of the event and what they were supposed to fabricate). # CoA[] # CoA[] # CoA[] CoA[P] ## 37., 38., CoA[Ω] # 6. CoA[Y] # 25., 26 CoA[Z] # 7., 20., 21., 22., 23.

343. COUNT CLIV [Merge three iterations]Defendants' Seizure of Plaintiff's Phone Commanding Plaintiff to set it in Plaintiff's private room. On October 8, 2014, Defendants Caracciolo and Casciola by the order of Sgt. Shaun Brown ordered Plaintiff to take Plaintiff's phone off of Plaintiff's person that Ms. Obi could access Plaintiff's phone to create a pretext of fabricated probable cause as Plaintiff laid out in Plaintiff's May 7th, 2018 Pleading. The finding of the instant Count concurrently finds the Default Count, Count I. CoA[Z] ## 7., 20., 21., 22., 23. CoA[P] ## 37., 38. CoA[Ψ] # 16. Intent to fraud CoA[Y] # 28. C & C, per instructions of Sergeant Brown, did order Plaintiff to leave his phone at 677 Quincy Street and then held Plaintiff, at in the station for no purpose other than to elapse time without record that the phone might be found and tampered (e.g. used to send harassing messages) with to fabricate messages that could have better fabricated cause. Claim # of CoA [] CoA[P] # 37. CoA[Ω] # 6. CoA[Z] 7., 20., 21., 22., 23. Count C & C, per instructions of Sergeant Brown, did order Plaintiff to leave his phone at 677 Quincy Street and then held Plaintiff, at in the station for no purpose other than to elapse time without record that the

phone might be found and tampered (e.g. used to send harassing messages) with to fabricate messages that could have better fabricated cause.   Claim # of CoA [] CoA[P] # 37. CoA[Ω] # 6. CoA[Z] 7., 20., 21., 22., 23.

374.   COUNT CLIV                     Defendants' Search of Plaintiff's Belongings While Plaintiff was Life-Smashingly Removingly Seized of Plaintiff: [] [] [] [] [] [][] [] [] [] [][] [] [] [] [] []

375.   COUNT CLIV                     Defendants' Seizure of Plaintiff's Belongings While Plaintiff was Life-Smashingly Removingly Seized of Plaintiff:

390.   COUNT CLIV                     Defendant's Carrying out Plan to: Obstruct ¶ 27 in Planning the Gathering of a Replacement as Search Count []           Defendants violated Plaintiff's Fourth Amendment rights in peremptorily-and-thoroughly-Brady-obstructing the witness of the 9-1-1-responding pair (¶ 27) from action pre-removing of Plaintiff. CoA [Θ] Claim # 16.[] CoA [Ψ])  also ZETA? i.e. process of seizure

391.   COUNT CLV                      Defendant's Carrying out Plan to Avoid to Obstruct ¶ 26 in Planning the Gathering a Fraudulent Information Assemblage as Search (if ¶ 26 Were Inconveniently Present Upon Appearance to Seize Plaintiff as anticipated). Count [] Defendants violated Plaintiff's Fourth Amendment rights in peremptorily-and-thoroughly-Brady-obstructing the witness of the 9-1-1 caller (¶ 26) from action pre-removing of Plaintiff —see detail at ¶ []. (Claim # 29.[] CoA [Θ] Claim # 16.[] CoA [Ψ])

376.   Count                          Ms. Obi and Sergeant Shaun Brown did meet privately, during which Ms. Obi admits disrobing, to finalize terms of closing on

their contract and to determining criminal, et cetera, furtherance of injuries to Plaintiff.  CoA[P] ## 37., 38., CoA[Ω] # 6. CoA[Y]  # 26.

392.   COUNT CLVI                    Defendant's  Carrying  out  Plan  to  Command Plaintiff to be Silent to Obstruct Plaintiff.  Defendants violated Plaintiff's Fourth Amendment rights in ordering Plaintiff, the police-identified victim, not to speak as Defendants sought to edit out Plaintiff's victimhood, [ etc add ] from action preceding removal of Plaintiff   (Claim # 29.[] CoA [Θ] Claim # 16.[] CoA [Ψ])

377.   COUNT CLIV                    Defendant's Carrying out Plan to Observe Mashed Terrible Tape Ms. Obi has Created as Gathered Towards Pretext

378.   COUNT CLIV                    Defendant's Carrying out Plan to Fabricate a New 9-1-1 Sprint Report to replace the plan-destorying records from earlier also indicative of the Class A Misdemeanor Menacing citation issued to Ms. Obi. the Only 9-1-1 Call (in the morning, i.e. ¶ 26 to which ¶ 27 responded).

379.   COUNT CLIV                    Defendant's Carrying out Plan to As Ms. Obi's Mashed Audio Being Fabrication, Plain to Cite it as if it were evidentiary, but do never collect it.

380.   COUNT CLIV                    Defendant's  Carrying  out  Plan  to  Instruction Plaintiff to Leave Phone for Ms. Obi to Access

381.   COUNT CLIV                    Defendant's  Carrying  out  Plan  to,  During  the Removed Seizure: hold while Defendants perform any needed record adjustments at the time and to allow Ms. Obi to send pretext text messages from Plaintiff's Phone. [] [] [] [] [][] [] [] [] [][] [] [] [] [] []

382.    COUNT CLXX               Defendant's Carrying out Plan to Call in Chits for Necessary Furtherance Array from KCDA to protect obstructions, get hard, et cetera.

383.    COUNT CLXX               Defendant's Carrying out Plan to Get Corruption Blue Wall Crew at 81st Precinct   (¶ 29) to be ready to circle Plaintiff when Plaintiff arrives and to assist with fabrication of reports, et cetera, as necessary.

393.    COUNT CXC                Defendants'   Life-Smashing-Injuring   Removing Seizure of Plaintiff:

400.    COUNT CC                 General   Fabrication   of   Fraudulent   Information Assemblage Count.  Defendants' preparation of the fraudulent and life-destroying Information-Assemblage.  Defendants concocted what Defendants believed was a sufficient story (for corruption and racketeering purposes with corruption and racketeering backing) for the removing seizure of Plaintiff which had already occurred and as Plaintiff was there confined and various obstructions were being conduct (e.g.  ¶ 29) to suit the story.  [] [] [] [] [] [][] [] [] [] [] [][] [] [] [] []

401.    COUNT CC+                Incomplete Spoliation of ¶ 27 records (everyone supports far more time between Sprint Time and appearance of ¶ 27.  Everyone reports 9-1-1 was at beginning, not 1:15 hour and minutes after conflict.  Other evidentiary material substantiating multiple acts of spolitation.

402.    Count         Officer Casciola states (Officer Casciola was the first of the three of ¶ 28 with substantive accounts to offer—see [] regarding Officer Hellberg) that Officer Caracciolo and Casciola were assigned by radio an assignment to see Ms. Obi at 18h52 but were busy for over three hours (Defendants claimed there was--

but now admit there was not a 9-1-1 call and such was a Second-Circuit-definition-of-malicious calumny).   ¶ 28 arrived minutes after Ms. Obi's 18h50 go time notice to Sgt. Brown upon which Sgt. Brown sent notice through the radio that Officers Caracciolo and Casciola were to appear.

403.    Count        Concealment of Sgt. Brown's mere presence or involvement at 677 Quincy on October 8th, 2014. Sgt. Brown stated on the CCRB interview that Sgt. Brown's shift went later into the night than Officers C&C and that Sgt. Brown only left the precinct the one time, yet C & C had a different Sergeant sign the reports presented.

404.    Count        First document presented from Defendant-presented, supposed 03h25-03h28 fax of October t 9th, 2014 from Precinct to Central Brooklyn: malicious fabrication.  Sufficient example of Defendants fraud: fabricated event synopsis. Malicious fraud consisting at least of tampered with, or fabricated in reference to ¶ 27 paperwork (as the second document demonstrates).  CoA[Ψ] # 16.  CoA[P]  # 37. CoA[Ω]  # 6. CoA[Λ]  # . CoA[Y]

405.    Count        Second document presented from Defendant-presented, supposed 03h25-03h28 fax of Oc October t 9th, 2014 from Precinct to Central Brooklyn: CoA[Ψ] # 16.  CoA[P]  # 37. CoA[Ω]  # 6. CoA[Λ]  # . Malicious obstructive fraud includes the statement of "0" "Total Witnesses."   Document was purportedly written by Defendant Casciola; ¶ 28 state and confirm in their CCRB interviews that the 9-1-1 caller (¶ 26) was present, material, and attempting to be forthcoming of information when and while ¶ 28 appeared at 677 Quincy.

406.  Count       Defendants' stating zero witnesses was a Fourth Amendment and Brady obstruction as a matter of law given the Affidavit Defendants received at the 81st Precinct from ¶ 26 and the interview conducted by the CCRB of ¶ 26 , et cetera, which contradict the whole of the action against Plaintiff: obviously a 9-1-1 calling witness is a witness—given the sworn statements of the 9-1-1 caller in Affidavit produced to the 81st Precinct and CCRB interview.  CoA[Ψ] # 16. CoA[Ω] # 6.  CoA[Λ] #.  CoA[P] ## 37. & 38. CoA[Y]

407.  Count       Fourth document presented from Defendant-presented, supposed 03h25-03h28 fax of October 9th, 2014 from Precinct to Central Brooklyn: again states no witnesses.  CoA[Ψ] # 16.  CoA[P]  # 37. & 38 CoA[Ω] # 6. CoA[Λ] #

408.  Count       Fifth document presented from Defendant-presented, supposed 03h25-03h28 fax of October 9th, 2014 from Precinct to Central Brooklyn: states that Defendant Caracciolo "Aided" Ms. Obi listing "Time of Occ. [occurrence] 14:00."  Defendants have asserted and retracted and asserted and retracted whether or not they swear before King's County and this Court whether it was C & C that responded to the only 9-1-1 call made at approximately 13h55 (i.e. just before the 14:00 time; which Plaintiff estimates is the time ¶ 27 were dispatched as ¶ 27 arrived at 14h15 and physically arrested Ms. Obi for homicidally attacking (and refusing to stop when ¶ 27 ordered that Ms. Obi stop bashing at Plaintiff's head) Plaintiff who was barricaded behind a door (et cetera as Plaintiff has described in writing and always maintained)).  Defendants would rather have Defendants' racketeering fabricators commit perjury then allow the constitutionally operating police be allowed to be involved (which is why the

King's County Attorney executed Defendants' orders to block ¶ 27 from the proceeding asserting C & C were the only two police to appear ever at 677 Quincy).   The very legal corporate head of Defendants swore to this Court in Defendants' first Pleading that ¶ 27 were did not appear; Defendants then retracted this position admitting ¶ 27 in Defendants' second Pleading.  Defendants also write on this fifth document (as well as the sixth and seventh, infra) of the October 9 3h25-3h28 fax that Sgt. Fishman was the supervisor: (while IAB stated that Sgt. Brown (who admits appearing, gathering all information, and making all decisions in the CCRB interview of Sgt. Brown) was without doubt not on duty on October 8th, 2014: Sgt. Brown says in the CCRB interview (after stumbling over Sgt. Brown's statement of times (i.e. Sgt. Brown changing his own statement)) that Sgt. Brown shift ended after C & C.  Defendants, until at least June of 2015 denied that Sgt. Brown was ever involve, present, or aware of events at 677 Quincy on October 8th, 2014—including the King's County (District) Attorney representatives under instruction from Defendants to obstruct justice on behalf of Defendants: thus the reason for the ranking sergeant present (who says in the CCRB interview of Sgt. Brown that the rest of the night he, Sgt. Brown, was at the precinct) for a different sergeant to be the signatory of documents is that Defendants original racketeering plan was to hide Sgt. Brown's ever having been present thus getting Sgt. Fishman to sign even though Sgt. Brown had actually (according to Sgt. Brown in the CCRB interview) done everything from gather the information to making decisions (Sgt. Brown describes C & C as simply holding the scene, i.e. holding Plaintiff, (which is how Plaintiff maintained

the event occurred on record prior to the turnover of documents to Plaintiff or any involvement of the CCRB.   CoA[Ψ] # 16.   CoA[P]  ## 37. & 38. CoA[Ω]  # 6. CoA[Λ]  # .

409.   Count        Sixth document presented from Defendant-presented, supposed 03h25-03h28 fax of October 9th, 2014 from Precinct to Central Brooklyn: makes fraudulent attribution of statement which Defendants have proven they knew was fraudulent apart from knowing they were committing malicious unconstitutional fraud; it also contains fraud of the time (as much time as ¶ 28 could give before the end of their shifts) in order to give Ms. Obi time to look for Plaintiff's phone to generate a pretext, i.e. Sgt. Brown and Ms. Obi decided as Ms. Obi was naked with Sgt. Brown in Ms. Obi's room (or possibly in their admitted earlier conversation planning the crimes, et cetera, against Plaintiff as execution of the racketeering contract between Ms. Obi and Sgt. Brown which Ms. Obi had passionately described to Plaintiff as something Ms. Obi might use against a woman that Ms. Obi expected to physically fight which Ms. Obi described as being part of the racketeering guaranted by Sgt. Brown and the women who recruited Ms. Obi for the police sex bribery racketeering enterprise); Ms. Obi admits in the CCRB interview of Ms. Obi to undressing for Sgt. Brown while Ms. Obi and Sgt. Brown were together in Ms. Obi's room at this time: while Defendants were unconstitutionally and tortious holding Plaintiff without and contrary to explanation (as Plaintiff elsewhere describes); Defendants had secured that Plaintiff's phone would be in Plaintiff's room that Ms. Obi would be able to search and find Plaintiff's phone and send text messages which would serve as a

pretext for a seizure of Plaintiff that had already occurred. CoA[Z] 7., 20., 21., 22., & 23. CoA[Ψ] # 16. CoA[P] # 37. CoA[Ω] # 6. CoA[Λ] # . CoA[Φ]

410. Count     Seventh document from Defendant-presented, supposed 03h25-03h28 fax of October 9th, 2014 from Precinct to Central Brooklyn: does that same the prior paragraph regarding a fraudulent attribution of statement from Plaintiff and other fraud stated above. CoA[Φ] CoA[Ψ] # 16. CoA[P] # 37. CoA[Ω] # 6. CoA[Λ] # .

411. Count     Document produced to Plaintiff in June 2015 titled "CJA Report" is fraudulent as evidenced in the fraudulent time, the reduction of the only annual income which Plaintiff reported by one hundred thousand dollars, and the assertion that Plaintiff did not have a cell phone in order fraudulently assert (as the worksheet is configured) Plaintiff was a risk of flight to horribly seek Plaintiff's continuing mortally-hazardous confinement. Plaintiff had renewed a major carrier phone contract in September of 2014 (it would be unthinkable to not see as malicious transgression any suggestion by Defendants that Ms. Obi and others would not have been able to provide Plaintiff's phone number, which Plaintiff repeatedly provided subsequently (all with the phone numbers of three others at 677 Quincy including that of Ms. Obi upon such repeated requests by police) but prior to production of the instantly discussed fraudulent and malicious document by Defendants). The instant CJA is otherwise three ways errant. CoA[Γ] # 24. CoA[Ψ] # 16. CoA[Λ] CoA[Ω] # 6.

412. Count     Fabricated Scarcella document. If printout Plaintiff received on October 20th, 2014 (titled "Crims Appearance Menu; Appearance History")

indicating nine, not ten, (no 240) assertions against Plaintiff in the malicious action against Plaintiff or the malicious re-institution of a tenth as an improper use of process to attempt to avoid Defendant liability.  CoA[Ψ]

413.   Count        D[Identify document] efendants conspicuously state on [[]] that Ms. Obi called 9-1-1 but leave the time of the call blank (Defendants have admitted all assertions of Ms. Obi having called 9-1-1 was a based or consisted entirely of Defendant fraudulent.  CoA[Ψ]  16. CoA[Γ] 24.  CoA[Θ]

414.   Count        The King's County (District) Attorney at some time produced a "Notice Pursuant to CPL 710.30(1)(a)" which is fraudulent—the fabricated quotation is almost entirely specious. See Background to Counts ¶ 7[][]  [search "fake quotation"]  CoA[Φ]  #  15.  CoA[P]  ## 37.  &  38.  CoA[Y]tobe hearduponreopeningofFOurth amendscenario  CoA[Λ] # 15. CoA[Ψ]

415.   Count        The King's County (District) Attorney at some time produced a "Notice Pursuant to CPL 710.30(1)(b)" which is fraudulent—the fabricated document knowingly suggests Plaintiff was at 677 Quincy over an hour and a half after Plaintiff's having be removed by ¶ 28 seizing of Plaintiff--.  See Background to Counts ¶ 7[][]  [search "fake quotation"] CoA[P] ## 37. & 38. CoA[Y]tobe hearduponreopeningofFOurth amendscenario  CoA[Λ] # 15.CoA[Ψ].

416.   Count        Defendants fabricated the "Sprint Report" that Defendants provided to Plaintiff in June 2015, including such as the general content and the time of the 9-1-1 responding pair's (¶ 27) arrival.  Defendants assert on the supra #h25 Oct 9 fax of several documents at the "T/P/O [time place occurrence]" started at 14h00, which is the time ¶ 27 were dispatched in response to the 13h55

9-1-1 call of ¶ 26. Defendants sought to obstruct all records of ¶ 27 and to falsify that ¶ 27 was instead C & C. Even though Mr. Rosenkilde had spoken with ¶ 27 in October of 2017 and admitted to Plaintiff that ¶ 27 asserted Defendants' action against Plaintiff was wrong (confirming the November 9th 2015 admission of a representative of the King's County (District) Attorney that Defendants brought the action against Plaintiff by "Brady violation" of obstructing the witness of ¶ 27 and excluding them for the action which ¶ 27 actually responded to at 14h00. After Ms. Obi was arrested at 14h15, ¶ 27 issued charges of Class A Misdemeanor tortious assault against Ms. Obi (not at Plaintiff's request) at 14h25 upon the confession of Ms. Obi that Ms. Obi had repeatedly homicidally attacked Plaintiff and said, "I [Ms. Obi] will kill you [Plaintiff]," amid many other confessions of Ms. Obi as Plaintiff has consistently asserted otherwise, et cetera. Defendants obstructing such: fabricated the Sprint report, which is the subject of the instant Count—presented to Plaintiff in June 2015: trying to rip the Proceeding hour and half from history: Defendants Rosello and Parese are among those who, on recorded interview, admitted that the Class A Misdemeanor criminal citation had been issued to Ms. Obi; Mr. Rosenkilde said in email that such existed and that Defendants were producing it—a year later and Defendants still will not produce it as it demonstrates the Brady crime of a fabricated Sprint report: the maintained capability of fabricating Sprint Reports is a vital part of Defendant racketeering and its exposure is worth Defendant non-production sufficient to trigger default: the Class A Misdemeanor issued against Ms. Obi upon Ms. Obi's admission of having homicidally attacked Plaintiff, which Ms.

Obi admitted as the 9-1-1 caller had witnessed all and was present at ¶ 27. And Ms. Obi having repeated made false assertions and then retractions of the false assertions (which Ms. Obi continued the entire time ¶ 27 were present (as Plaintiff has set down elsewhere and previously) thinking that confession would inspire mercy from ¶ 27 and keep Ms. Obi from being removed under arrest before Sgt. Brown could arrive to execute the standing, ready police sex bribery contract. CoA[Ψ] # 16. CoA[Γ] # 24. CoA[P] 37. & 38. CoA[Y] CoA[Λ] # 13.

417.    Count        Defendants fabricated afternoon Sprint sufficiently due to damning nature of material against Ms. Obi including radio report that Ms. Obi was guilty as sin and confessed to several crimes and should be arrested for any further material as Ms. Obi was given a break as Plaintiff was cooperative to the less-involved simpler resolution of removal: motive to conceal such material and replace with fake that would be conducive, but that would not raise a large amount of unnecessary suspicion. [] [] [] [] [][] [] [] [] [][] [] [] [] []

418.    Count        Defendants' removal in reproducing the fabricated Sprint report: Plaintiff's identification of being under attack and responding with non-violent retreat, ¶ 27 identifying Plaintiff as the victim of a homicidal attack for which Ms. Obi was warned of further arrest with the record noting the police finding of the duty to protect Plaintiff and come to Plaintiff's aid should Ms. Obi attack, again, as conclusory radio communications on the call.

419.    Count        Defendants clipped off at least the front end of the 9-1-1 tape which had nothing to do with any privacy interests and was only purposed as an obstruction as Plaintiff's identification of being in retreat upon the maniacal

attack of Ms. Obi to the 9-1-1 record.  The 9-1-1 operator clearly asked for the callers' identification in the latter half of the 9-1-1 call.  CoA[Ψ] # 16. CoA[Y]  # CoA[P] ## 37. & 38.

420.  Count  Defendants also clipped off producing the time of the 9-1-1 call to obstruct discovery of Defendant crime, et cetera, and to obstruct as Defendants wanted to represent a change of time by over an hour for the sake of obstruction of § 1983 and spoliation purpose. CoA[Ψ] # 16. CoA[Y] # CoA[P] ## 36., 37., & 38. CoA[Γ]  # 24.  CoA[Z] ## 22. & 23. CoA[Θ] #

344.  Count  Defendants list one EMT as Defendants changed the time and the actual EMT who appeared or another or the other EMT was likely on some other record at such time leaving Defendants with the fabrication of there being one EMT. CoA[Ψ]  CoA[Γ] CoA[Θ] Count

345.  Count []  Defendants violated Plaintiff's Fourth Amendment rights in peremptoril (¶ raising up nonsense arguments that are incredulous in basic consideration of the physics (Claim # 29.[] CoA [Θ] Claim # 16.[] CoA [Ψ])

346.  Count []  Defendants unquestionably-maliciously, without-non-corrupt-and-unconstiutional-cause, and for racketeering benefit physically seized Plaintiff and held Plaintiff for 27 consecutive hours (from seven hours past noon until after the defrauded pseudo-arraignment with-Plaintiff-under-mortal-coercion (see ¶ []) racketeering and corrupt purpose with particular intent to further endanger Plaintiff's life and cause other deprivations of liberty, property, et cetera.  Claim # of CoA [Z] # 7. & 21.   CoA[P] # 37. CoA[Ω] # 6. CoA[Y]  # 27.

347.  Count         Defendants demonstrated such casual criminality of so misidentifying Plaintiff in police document that such demonstrates the flippant fabrication of the entire action of Plaintiff and the corrupt, racketeering customs produced. (See the Background concerning Defendants flippant misidentification…of Plaintiff in police reports" at ¶¶ []-[])  Claim # of CoA []

348.  Count         ¶ 28 fraudulently ignoring [insert summary of Plaintiff's witness characterizing such per police victim identification having been standing upon arrival]  CoA [Z] 20., 21.

349.  Count         [PART ELEVEN: DURING FIRST EXTENDED ABSOLUTE CONFINEMENT] On October 8th, 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did as part of the execution of the sex bribery contract between Ms. Obi and Sgt. Brown as Sgt. Brown's representation of the racketeering enterprise to contract its functionality: did destroy Plaintiff's laptop by submerging it into water. CoA[P] ## 37., 38., CoA[Ω] # 6. CoA [T] # 4

350.  Count         On approximately October , 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did as part of the execution of the sex bribery contract between Ms. Obi and Sgt. Brown as Sgt. Brown's representation of the racketeering enterprise to contract its functionality: did steal all-cashmere sweaters which were hiding the laptop, supra. CoA[K] # 5. CoA[P] ## 37., 38., CoA[Ω] # 6. CoA[Y]  ## 25. 26. 27.

351.  Count         On approximately October , 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did as part of the execution of the sex bribery contract between Ms. Obi and Sgt. Brown as Sgt. Brown's representation

of the racketeering enterprise to contract its functionality: did steal some Thirty Dollars worth of candy which Plaintiff had purchased and stored with Plaintiff's belongings in a closed shelfspace—such functioned as a signature crime—as Ms. Obi had particularly and privately rudely and domineeringly ordered Plaintiff to give her any more of the said candy (the first eight-dollar bag Plaintiff had shared with Ms. Obi, et alia)—taking this Candy when Ms. Obi had privately made such a particular point of it being her favorite candy and Ms. Obi's speaking domineeringly (see Ms. Obi's talk of, in sum and substance, "how she made her 'hoes' by her candy, dinners, et cetera) as if such talk forced domineering possession of such candy. CoA[K] # 5. CoA[T] # 4.

352.  Count       On approximately October , 2014 Ms. Obi, a deputized, empowered, more-than-joint-State-actor, did as part of the execution of the sex bribery contract between Ms. Obi and Sgt. Brown as Sgt. Brown's representation of the racketeering enterprise to contract its functionality, did the following three supra Counts, each demonstrating Ms. Obi's having gone through all of Plaintiff's items—i.e. to have found the laptop, Ms. Obi had to, using her exercise of State-power racketeering in having Plaintiff unconstitutionally and horribly seized, in commission of police instructions to find Plaintiff's phone and send Ms. Obi, herself, text messages as a retroactive pretext (i.e. Defendants ¶ 28 fraudulently reported the seizing of Plaintiff as having taken place hours later than it had that Ms. Obi might use such time of Plaintiff's having been tyrannically seized by racketeering police to find Plaintiff's phone, send pretextual text messages which Defendants ¶ 28 and ¶ 29 could say justified the events ¶ 28 and ¶ 29 said took

place at the very end of the shifts of C & C—i.e. C & C falsified the time to the hilt (until the could no longer) in order to maximize time for Ms. Obi to find Plaintiff's phone and fabricate messages). CoA[T] #4. CoA[Z] 7., 20., 21., 22., 23. CoA[Θ] CoA[Y] CoA[Ψ] # 16. CoA[P] # 37

353. Count          Defendants specifically endangered Plaintiff by holding in the most violent category, New Court, where Plaintiff life was threatened by multiple individuals based on Plaintiff's category of physical appearance.   CoA [Z] # 7. & 21.   CoA[P] # 37. CoA[Ω] # 6.  CoA[O]  # .39

354. Count          Battery aggravated by Defendants inflicting subsequent assaults by deliberate choice of new court holding [M]3 [B]2 [P]37-38 [Ω]6

355. Count          Battery impact in context of May 7th, 2015—throw you down the isolation hole plus assault. CoA[B] Claim # , CoA[M]  Claim #   CoA[P] # 37. CoA[Ω] # 6.

356. Count          Jacqueline Scarcella, Anthony Barosi, et alia of the King's County (District) Attorney's Office, collaborated in the pseudo-investigatory phase of operations against Plaintiff with the 81st Precinct to knowingly engage in fraudulent fabrication of evidence to injure Plaintiff.CoA [Z] # 7. & 21.   CoA[P] # 37. CoA[Ω] # 6.  CoA[Θ] # 43.

357. Count          Defendant Casciola and other Defendants Brady-obstructed qua writing no witnesses as Defendants knew not Brady-obstructing the 9-1-1 calling witness (of which Defendant Casciola and Defendants Brown and Caraciolo stated in CCRB interviews of themselves that the three Defendants were aware of the 9-1-1 callers' willingness, relevance, materiality, and availability through the

three Defendants' appearance qua ¶ 28) entirely by-itself exposed Defendants' fraud and defamation against Plaintiff) . The instant Count, which is a matter of law given the documentation of no witnesses authored by Casciola which Defendants turned over to Plaintiff in June of 2015 and Plaintiff provided to Defendants' counsel (see Count [] regarding the document), reaches the Default Count, Count I, and thereby reaches Claims broadly and Plaintiff's Relief ¶ 1103.

358.   Count        Ordering of by 81st and investigatory activity of King's County (District) Attorney led to denial of Sergeant Brown involvement [present count more precisely, claims on t.m. and a.b. as well as 81st; iima]   CoA [Z] # 23. CoA[P] # 37. CoA[Ω] # 6.

359.   Count        Ordering of by 81st and investigatory activity of King's County (District) Attorney leading to boxing out of the 9-1-1-responding pair (¶ 27), declaring that the two would be blocked [multiple claims, relates to November 2015 claims; iima] issue of boxing out and refusing brown involvement demonstrates compromised activity, prosecutor merely puppeteer-ed—while the puppet may not liable in threat action, the act was clearly caused by liable Defendants.  If it were normal cause of prosecutorial operations w(which would not incur liability, perhaps =, the response would not have been the egregiously outside obligations and violating if Plaintiff —the egregious wrongdoing demonstrates that the liable Defendants were the only possible cause. CoA [Z] # 23.   CoA[P] # 37. CoA[Ω] # 6.

360.   Count        Ms. Obi State powered, police sex bribery racketeering participant theft of pure cashmere sweaters of Plaintiff  CoA [K] # 5.   CoA[P] # 37. CoA[Ω] # 6.

361.   Count        Ms. Obi State powered, police sex bribery racketeering participant theft of $30 worth of candy which Ms. Obi had specifically identified to Plaintiff as items that Ms. Obi asserted Claim to without basis (i.e. in some and substance give me all of your x-kind of candy (Plaintiff has at multiples times put forward the details in writing—the concreteness of Ms. Obi's identification of the items and then their left is particular and distinct enough to have immediately acted as signature to the thefts.        CoA [K] # 5.   CoA[P] # 37. CoA[Ω] # 6.

362.   Count        Ms. Obi State powered, police sex bribery racketeering participant theft of Plaintiff's Ipad charger.  As identified in Plaintiff's May 7th Pleading—the Ipad itself was secreted.  Ms. Obi had discussed recently engaging in small transactions of such as $5—an Ipad charger easily fetches $5 and would be one of the  easiest converted items to turn over for cash, et cetera. CoA      [K]      #      5.   CoA[P] # 37. CoA[Ω] # 6.

363.   Count        racketeering the interview at Brooklyn Central to say Plaintiff did not have a cell phone to escalate the seizure against Plaintiff's by fraud (plaintiff wuld not have tried to hide info Ms. Obi had).   Investigatory activity clearly absent jurisdiction.  CoA [Z] # 22. & 23.   CoA[P] # 37. CoA[Ω] # 6.

364.   Count        Defendants faked the time to give Ms. Obi as much time as possible to find Plaintiff's phone which ¶ 28 ordered Plaintiff to leave as C & C

said that Plaintiff and C&C were just stepping out for a bit (violating New York Law). CoA [Z] # 7. & 21. CoA[Y] & & CoA[P] # 37. CoA[Ω] # 6.

365.   Count        Defendants had Sgt. Fishman sign documents even though Sgt. Brown was on scene and claims to have been at the precinct through the time C & C clocked out as Defendants sought to leave false record minimizing the trace of Sgt. Brown's appearing in uniform with an "operator" officer doing the same (i.e. Officer Hellberg) while off-duty. Fishman signature to conceit Defendants crime, et cetera. CoA[Ψ] # 16. CoA[Z] # 7. CoA[P] # 37. CoA[Ω] # 6.

366.   Count        [PART TWEVLE: OCTOBER 8 & 9 DEMONSTRATING SYSTEMIC STATE CORRUPTION]        The broader police corruption racket available responded to Sergeant Brown's exercising a chit to gather approximately nine police to receive Plaintiff at the 81st that, depending on how the fabrications against Plaintiff were to ensue, these police would have seen Plaintiff sufficient to identify Plaintiff, that they might be able to say the performed the illegal seizure as Sergeant Brown's being-not-on duty complicated the paper trail. CoA[Y]

279.   Count        [Count for every fraudulent representation of time (once per document is acceptable; each CCRB interview, et cetera](for either ¶ 27 time or ¶ 28 time)

280.   Count        Defendants practiced coercion upon ¶ 22 and Plaintiff--threatening Plaintiff's life if Plaintiff should speak against the fraudulent statements of the representative of the King's County (District) Attorney to ensure Plaintiff not object to Defendants' apparent and certain fraud before The Honorable J. Hecht

thus ensuring legitimate seizure process at law was never established against Plaintiff even though Defendants continue Defendants' seizure of Plaintiff. CoA[Z] # 23  CoA[Σ]

281.  Count        [October 9 Initial AM] Defendants' treatment of Plaintiff in implementing corporal restrain reflected that Defendants' perception of Plaintiff as a non-violent person which sustances the liability of Defendants' mortal hazarding of Plaintiff in New Court as part of the particular Anti-Miscegenistic tort.  CoA[Z] # 7. CoA[H] # 18, CoA [E] # 8, CoA [Θ]  # CoA[Y] #

282.  Count        Defendants fraudulently claimed The 9-1-1 caller (¶ 26) was a favorable witness for them needing to be protected from Plaintiff as deliberate smokescreen to cover up that they actually simply wanted to avoid not having obtained hostile testimony from The 9-1-1 caller (¶ 26), who was never not a witness favorable to the truth, Constitutionally-operating law enforcement in New York, and Plaintiff.  Fraudulent use of witness protection in absolute lack of jurisdiction. CoA[Ψ] # 16. CoA[P]  # 37. CoA[Ω]  # 6. CoA[Θ]  # 29. CoA[Σ]

283.  Count        Immediately upon being allowed to leave absolute City-confinement, Plaintiff was approached, directly to Plaintiff, as Plaintiff exited a subway with an offer of crack narcotic, free of charge.[141]  CoA[Y] #  CoA[P]  # 37. & # 38.[retaliation for petition qua release] CoA[] #

284.  Count        Plaintiff deliberately and absolutely maliciously was deprived of Plaintiff's hold on shared and private space at 677 Quincy ([further degree of loss

---

[141] as described in Autumn 2018 Filing.

endured since criminality jeopardizing security of property] CoA[T] Claim (#[] at ¶ []). CoA[Z] ## 7. & 21.

285.    Count        Defendants making any assertion that Officer Caracciolo made decisions regarding Plaintiff—originally such fabrication was purposed as part of denying Sgt. Brown's presence (Plaintiff mentioned that the building had a entry security camera in following contact with police prior to Defendants' admission that Sgt. Brown was present). Officer Caracciolo said at 677 Quincy that Officers Caracciolo did not know what was going on and that Officer Caracciolo would do whatever the boss decided and instructed. [Part of plan concocted at Precinct after confinement there of Plaintiff]

286.    COUNT **[CCXL]**        General     ¶ 27-Replacement-Obstruction    Count. Defendants attempted, supported, Filed to the instant Federal Court as First Answer Pleading, et cetera: have asserted that Defendants C&C (Caracciolo and Casciola) were ¶ 27 (and that ¶ 27 were not ¶ 27). Defendants' were forced by the constitutional—operator to admit that Defendants had "Brady violation"-obstructed the relevant, material and contradictory-of-Defendants' witness of ¶ 27—in spite of this, Defendants instructed Corporation Counsel to reaffirm the Brady violation obstruction of ¶ 27 in Defendants' first Answer Pleading denying ¶ 27 were ¶ 27: in Defendants' second Answer Pleading, Defendants' recanted given facts such as the CCRB recordings of C & C stating that C & C were not ¶ 27, stating and indicating that C & C never talked to or discussed matters with ¶ 27 (as of that time, May and June of 2015), et cetera (the later point itself legally determines Defendant liability). [] [] []

287.   Count        Caracciolo and Casciola tried to represent that the two of them were the ¶ 27 and ¶ 27 was not ¶ 27 as indicated from the 03h25 faxed paperwork. The finding of the instant Count concurrently finds the Default Count, Count I, and beyond Defendants' default (¶ 1103): particular Claims regarding ¶ 1104: CoA[Y] # CoA[Θ] ## 43. CoA[N]   Contingently finds Count CCXL

288.   Count        Busy Precinct: ¶ 29 went out and banged on doors to fill up a load for the cover of a "busy precinct" CoA[P]  # 37., 38. CoA[Ω]  # 6. CoA[Ψ]  # 16. CoA[Z]  ## 7. & 21., 22., 23.

450.   COUNT **CCL**             General Usurpation of Adjudication Count [] [] []

451.   Horrible fraudulent defamation before The Honorable J. Hecht with coercion applied upon ¶ 22 and mortal threat gaging of Plaintiff.  Some detail discussed at ¶ 122 and elsewhere, as has also been previously asserted to the docket. CoA[Y] # 19. CoA[Z] # 22., 23. CoA[Ψ] # 16. CoA[O] # 39

452.   Count        Plaintiff was threatened that unless Plaintiff was silent and bit-Plaintiff's-tongue during the outrageous defrauded pseudo-arraignment, that Plaintiff would be sent to some harshest quarter of Rikers to be held indefinitely under changeable, fraudulent force preventing release where Plaintiff would be at extreme of further, immediate, and severe bodily-harm or death by the King's County (District) Attorney staff conveyed through ¶ 22.[142]  CoA [Z] #   23. CoA[P] # 37. CoA[Ω] # 6. CoA[Y] # 19., 25., 26., 27.

453.   COUNT []                 General Coercion of ¶ 22 Count [] [] [] [] [] [][] [] []

454.   [Counts stating different configurations of the usurpation Count]

---

[142] under coercion systemically and particularly

455.  Count        Defrauded process document issued at the idem identified immediately supra

456.  Denial of promised Novemeber opportunity to speak to Court regarding Ms. Obi regarding Ms. Obi's citation of menacing.

457.  Sustained Defendant (and 81st Precinct protocol operators) obstruction of ¶ 27 Conurrently finds COUNT

458.  Sustained Defendant (and 81st Precinct protocol operators) obstruction of ¶ 26 Conurrently finds COUNT

459.  Sustained Defendant (and 81st Precinct protocol operators) obstruction of Fifth Amendment injuring Conurrently finds COUNT

460.  COUNT []              General Count [] [] [] [] []   Continuing failures intervene, investigate, review case files with holes, errors, et cetera.

461.  COUNT              General Obstruction Denial of Vindication Hearing

462.  Blocking Interviews

463.

464.  Barosi belligerence Currently finds COUNT

465.  KCDA Injunction Causes including baked Ms. Obi interview (demonstrated in Butler interview)

289.  Count    [PART    THIRTEEN:    GENERAL    OPERATIONAL RACKETEERING FROM INITIATION TO WITHDRAWAL OF THE PSEUDO PROCESS]    Withholding of Ms. Obi's obvious-fraud recordings consisting of a Brady violation as attempted obviously concocted and ridiculous pseudo-evidence is functionally Brady material. CoA[Θ]

290.  Count        Piling on: Once racketeering-participant-New York-police draw blood or transact some Constitutional violation, such is communicated and other participants seek to pile on violations as if once the situation becomes a risk, all participants are free to take shots to the hearts content, this situation may manifest in where police directly beat victims: continuing victimization is seen as having the benefit of increasing the impact of intimidation and dissuasion from petitionary action against any particular grievance and also is encouraged for the blue wall effect of increasing the number of racketeering-participant-police standing together with a personal stake, jobs on the line, against the victim. Detective Tomasello wanted to be such a pugnaciously un-Constituitional violator that Plaintiff complaints would ring for IAB and police generally to hear of his pervertedly-good works, that the foulness of Detective Tomasello's anti-Constitutionality would reek broadly for Detective Tomasello to hear back about what a foulness Detective Tomasello had laid.

291.  Count        Officer Caracciolo perjured Officer Caracciolo's statement in numerous ways.  CoA[P] # 37., 38. CoA[Ψ] # 16.

292.  Count        Officer Caracciolo's perjury of Officer Caracciolo's statement demonstrates Officer Caracciolo's proactive positioning regarding COUNT CCXL that Officer Caracciolo had appeared earlier in response to The 9-1-1 caller's (¶ 26)' 9-1-1 call in order to "Brady" the Officers who actually did appear whose witness Officer Caracciolo et alia knew would obliterate the fabrications of Officer Caracciolo, et alia.  Barosi and ADA Scarcella & Midey refused to allow the Officers who had appeared in response to The 9-1-1 caller's (¶ 26)' 9-1-1 and

saved Plaintiff from Ms. Obi's continued homicidal attacks, which Ms. Obi' confessed to repeatedly making, et cetera (see all of Plaintiff's previous accounts including in Filings), insisting that those Officers, were, in sum and substance "boxed out" with Barosi and ADA Scarcella & Midey ensuring that Plaintiff party would not be permitted to call those Officers into evidentiary contribution in any way by some procedural abuse. (cf. Background to Counts ¶[ ]).

293.   Count        Spoliation of Evidence **Broadly Encompassing** CoA[Γ] # 24. CoA[Ψ] # 16. CoA[P] # 37., 38. CoA[Ω] # 6. CoA[] # .

294.   Count        Defendant Barosi responded to Plaintiff effort to terminate Defendant-accrual-of-liability and accomplish of the institution of significant constitutionality in the ongoing events by providing the Defendant King's Count (District) Attorney's Office with information (Plaintiff had errantly presumed the Defendants of the King's County (District) Attorney's office were defrauded as opposed to intentionally inflicting constitutional and tortious injury upon Plaintiff as racketeering, retaliation, et cetera: i.e. that Plaintiff's report that the King's County (District) Attorney could in ten minutes determine with certainty that its action against Plaitniff was fraudulent would be investigated (Defendants, of course, continually demonstrate, including with direct crimes against the instant Proceeding for which the United States must be vindicated by this Court, et cetera, that ignorance of Defendants tort and crime, et cetera, was not had by Defendants) or lead to questioning which upon further action by Plaintiff's then party would have brought resolution instead of retaliation instructed, in furtherance of, and instituted by such as Defendant police: Defendant Barosi

responded repeatedly to Plaintiff, five minutes could prevent the King's County (District) Attorney from abetting crime and worse, et cetera: which Defendant Barosi repeatedly responded in effect: we-and-I-will-squish-you-into-jelly. Defendant Barosi effectively repeated the same upon Defendant Barosi's interception of Plaintiff's subsequent similar attempt with also noticed the accrual of into-seven-figures defamation damages in February of 2015 (Count []) and when Plaintiff inquired as to whether the King's County (District) Attorney was part of the legal person of the City of New York or of another entity to which Defendant Barosi also threatened retaliation of the racketeering participating persons at the FBI with whom Defendant Barosi asserted powers to instigate such racketeering furtherance of Defendants' racketeering (see Count []). CoA[Y]

295.    Count        Continuation of COUNT CCXL: The persistent boxing out of the Officers who made a non-racketeering-duty appearance to 677 Quincy on October 8th, 2014 by ADA Scarcella and Miday were injurying-to-Plaintiff racketeering furtherance of Defendants crimes, deprivations, et cetera, against Plaintiff ordered by the prior-to-Obi-and-Brown-formation-of-racketeering-contract-established racketeering relationship between KCDA management including Defendants Barosi and Gutierrez and racketeering police, including IAB Defendants. CoA[Ψ] # 16. CoA[Z] # 7., 22., 23.  CoA[P] ## 37., 38., CoA[Ω] # 6. CoA[Y] # CoA[Θ] # 43. CoA[N] # 44.

296.    Count        As a consequence of actions against Plaintiff being known and deliberate racketeering fraud, et cetera, against Plaintiff: procedures of operations were not followed in ways further demonstrating the flippant criminal intent and

confidence that racketeering mechanisms operational would finish off the threat of Defendants' simple ignoring of basic procedures due to their knowledge of the bogus, malicious, substantively outrageous racketeering operations active in the activity by the City under its racketeering and corruption operations track against Plaintiff. The finding of the instant Count concurrently finds Count IX, which reaches Claims broadly throughout the categories of Cause of Action.

297.   Count        Ms. Obi refused to leave the premises of under State power further depriving Plaintiff of access to Plaintiff's space at 677 Quincy.        CoA[T] # 4.

298.   Count         Plaintiff was not allowed to see the judge appointed to consider the punishments of Ms. Obi for the menacing citation she received on 8 October 2014 due to the criminal intervention of Defendants against such proceeding, which was entirely obstructed. CoA[P] ## 37., 38., CoA[Y] #  CoA[Θ] # 31., 43. CoA[N] # 44.

299.   Count        Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on November [17th], 2014 CoA[Z] # 7., 21., 22., 23. CoA[P] ## 37., 38., CoA[Ω] # 6. CoA[Y] #  CoA[Θ] # 43. CoA[N] # 44. . CoA[Ψ] # 16.

466.   Count        December 17, 2014 Defendants confined Plaintiff to 110 Schermerhorn Defendants' causing Plaintiff's being maliciously seized as by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing)        CoA[Z] # 7., 22., 23.

300.   Count        "Thomas Fellows" move   (see Background to Counts ¶ [])
CoA[P]37,38 [Θ] 35,40,41,42., 43 [Y] [Ω]6 [N]44.

301.   Count        Defendants' coercion of perjury [Discovery]

302.   Count        Internal Affairs and Defendants modified the 9-1-1 call of ¶
26 to cutting the front end of the call off of the recording—Mr. Rosenkilde said
that this simply to protect the phone number of ¶ 26—which is itself horrible
falsehood, but the clear issue is that ¶ 26 does not provide the phone number of ¶
26 until the end of the call; Mr. Rosenkilde is rather caught in a flagrant
furtherance of criminal obstruction.   Furthermore, how would a piece of
evidentiary material be rightly produced without information such as the time of
call.          against Ms. Obi that Plaintiff's identifications of being under
attack by Ms. Obi could not be as identifiable in spite of Plaintiff stating upon
receipt, in June of 2015, the original must be produced and having noted to
Internal Affairs the important evidentiary value.  Defendants continue to refuse to
produce [later Count].   Police resistance to production of radio and 9-1-1
recordings is violative of procedure causing injuries to Plaintiff and policy itself
(as Mr. Rosenkilde presents it against the facts is substantively violative of New
York right or the Constitution of The United States.   Furthermore ensuring
difficult burden of production in spite of Plaintiff's repeated requests of the
original starting upon Plaintiff's June 2015 discovery of the spoiling edits
CoA[Y] # .  CoA[Ψ] # 16.  CoA[Ω] # .  CoA[N] # .

303.   Count        Internal Affairs, Chief Inspector Scott Henderson, and Defendants
fabricated documents before Plaintiff was given discovery in June of 2015.

304.    Documents were fabricated by Defendants to injure Plaintiff, which were replaced (at least once (by the first half of 2015 when other fabrications were presented). Sgt Brown was denied—thus name impossibly on records.

305.    Count         Defendants' causing Plaintiff's being maliciously seized as by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on January 25th, 2015 CoA[Z] # 7., 22., 23.

306.    Count         Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on January 26th, 2015 CoA[Z] # 7., 22., 23.

307.    Count         Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on January 28th, 2015         CoA[Z] # 7., 22., 23.

500.    COUNT **CCC**                Genneral   Tortfeasance   Continuation   After   IAB Identified Defendant Brown Was Not On Duty On 8 October 2014.  Furthermore specified that all precinct records were triple checked and then re-checked before making such determination and that Defendant Brown not have been in uniform on that date by written operational rules.   Such matters were gone over and discussed during the 2015 31 5 Hudson Street IAB in-person interrogation— which   is   among   reasons   Defendant's   have   committed   there-is-one   to contumacious obstruct the instant Proceeding.

501.    Harvitz

502. Sustained Defendant (and 81st Precinct protocol operators) obstruction of ¶ 27 Currently finds COUNT

503. Sustained Defendant (and 81st Precinct protocol operators) obstruction of ¶ 26 Currently finds COUNT

504. Sustained Defendant (and 81st Precinct protocol operators) obstruction of Fifth Amendment injuring Currently finds COUNT

505. Continuing failures intervene, investigate, review case files with holes, errors, et cetera. Currently finds COUNT

506. COUNT []                    General 81st Precinct *Memo* Injuring Count.

507. 81st Detectives

308. Count          Glenn Tomasello belligerence CoA[P] ## 37. & 38.  CoA[Θ] ## 42.-43.

309. Barosi Belligerence

310. Waters

311. February Appearance

312. Count          March 30th Stipulations without consultation—coercions of ¶ 22 with the end of ¶ 22 qua retaliation for Plaintiff petition to Barosi in late February early March [precise dates available via discovery as elsewhere] CoA[P]

550. COUNT **CCCL**          General March 2015 Escalations of Retaliation Against Plaintiff Count

551. Sustained Defendant (and 81st Precinct protocol operators) obstruction of ¶ 27 Currently finds COUNT

552. Sustained Defendant (and 81st Precinct protocol operators) obstruction of ¶ 26 Currently finds COUNT

553. Sustained Defendant (and 81st Precinct protocol operators) obstruction of Fifth Amendment injuring Currently finds COUNT

554. Continuing failures intervene, investigate, review case files with holes, errors, et cetera. Currently finds COUNT

555. Blocking Discovery

556. Overrided Coercion of ¶ 22 Count      []

313. Count          Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on February  2015 CoA[Z] # 7., 22., 23.

314. Count          Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on March 30th or 31st 2015          CoA[Z]  #  7., 22., 23.

315. Count          Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on  May 7th 2015   CoA[Z] # 7., 22., 23.

316. Count          Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) twice on June 23rd, 2015   CoA[Z] # 7., 22., 23.

317. Count          Chief Inspector Scott Henderson and Defendants forcing a certain of the pair of ¶ 27 to fake a memo book entry to support the matter of law fake

Sprint Report—literal timing of the fabricated entry is an impossibility; furthermore, the nature of the would-be-error would be entirely implausible to have been made immediately afterward.

318.   Count        Chief Inspector Scott Henderson and Defendants forcing a certain of the pair of ¶ 27 to scratch a new citation [check for serial numbers showing match] entry as to fraudulently replace one issued as ¶ 27 were leaving in an effort not to have to remove Ms. Obi under arrest (which would have created a more arduous solution than that which Plaintiff identified to ¶ 27 as being the simplest all around: Ms. Obi was being pre-evicted (ordered to leave prior to the 30 day nascency for eviction under local real estate law) the next day on a schedule that had been determined prior to 8 October 2014).

319.   Count        [PART FOURTEEN:        COUNTS RELATING TO THE PILE OF DOCUMENTS TURNED OVER TO PLAINTIFF IN JUNE OF 2015]

Defendants' wildest fraudulent assertions against Plaintiff which were issued to The Honorable J. Hecht on October 9th 2014 were wholly shown to be fraudulent by Ms. Obi's CCRB interview and the subsequent interviews of ¶ 28, who accordingly modified their statements with increasing withdrawal from Defendants wildest fraud: the documents produced to Plaintiff in June of 2015 did not include any statement of what was issued to The Honorable J. Hecht—the continued non-production of this is listed as its own obstruction Count infra. The instant Count addressed with particularity the defensive fabricating of Defendants retracting some of the their wildest and most hoerrible October 9th 2014 slander

upon blatant exposure on then-created CCRB record.  CoA[Γ]  # 24. CoA[Ψ] # 16.

320.  Count  Not producing the fraudulent pseudo-arraingment statement as it could be very easily used to prosecute Defendants for Defendants' constitutional-deprivations of Plaintiff.  CoA[Z] ## 7., 22., 23. CoA[Γ] # 24. CoA[Y] ## 25., 26., 36. CoA[Θ] # CoA[P]  ## 37., 38. CoA[Ω] # 6.

321.  Count  Witholding the fabricated-out-of-thin-air  ¶ 28 Sprint Report produced to the CCRB prior to the production of these documents to avoid exposure of the wildly flagrant fraud of the documents.

322.  Count  Fraud of seeming to produce responsive to Plaintiff's FOIA request for copy of the Class A Menacing Citation of Ms. Obi

323.  Count  [PART FIFTEEN:  AUTUMN 2015]  Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on September 10th 2015  CoA[Z] # 7., 22., 23.

324.  Count  Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on October 6th 2015  CoA[Z] # 7., 22., 23.

325.  Count  Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on November 9th 2015  CoA[Z] # 7., 22., 23.

326. Count          Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on December 8 2015          CoA[Z] # 7., 22., 23.

327. Count          Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on November 2017          CoA[Z] # 7., 22., 23.

328. Count          Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on February 8th 2018          CoA[Z] # 7., 22., 23.

329. Count          Defendants' causing Plaintiff's being maliciously seized by State-process-at-law (without anything close to a non-defrauded or non-coerced basic or superficial adjudicatory hearing) on July 20th 2018  CoA[Z] # 7., 22., 23.

330. Count          [PART SIXTEEN: CIVILIAN COMPLAINT REVIEW BOARD CORRUPTION]          That Inspector Butler when questioning Ms. Obi and failing to induce false statements repeatedly as it is without question such leading behavior multiple times over demonstrates a targeted objective of reaffirming the particular set of fabrications concerning contact in the evening on October 8th, 2014—demonstrates that he obtained such information—as it is likewise unquestionable that Plaintiff hammered in to Inspector Butler that this element was a fabrication—and not even presented to Defendants in all that was witnessed by Plaintiff nor had Plaintiff heard of it until the night of October 9th, 2014— Inspector Butler's dropping it with seeking to reconcile as reconciliation of the fabrication could very likely lead to direct assertion by Ms. Obi that Defendants

deliberately fabricated the elements (possibly added that Ms. Obi perhaps objected or drew a line hammering in material substance for Evidence to convict Defendants. Inspector Butler's actions in this series of deliberate, planned, and calculated interrogation questions and moves demonstrate Inspector Butler's intent to further the crimes, et cetera, of Defendants. CoA[Y] CoA[P] ## 37. & 38. CoA[Θ] ## 41. & 43.

331. Count      That Inspector Butler [similar to prior with diverge Count at result] when questioning Ms. Obi and failing to induce false statements repeatedly as it is without question such leading behavior multiple times over demonstrates a targeted objective of reaffirming the particular set of fabrications concerning contact in the evening on October 8th, 2014—demonstrates that he obtained such information—as it is likewise unquestionable that Plaintiff hammered in to Inspector Butler that this element was a fabrication—and not even presented to Defendants in all that was witnessed by Plaintiff nor had Plaintiff heard of it until the night of October 9th, 2014—Inspector Butler's dropping it with seeking to reconcile as reconciliation of the fabrication could very likely lead to direct assertion by Ms. Obi that Defendants deliberately fabricated the elements (possibly added that Ms. Obi perhaps objected or drew a line hammering in material substance for Evidence to convict Defendants. Inspector Butler's actions in this series of deliberate, planned, and calculated interrogation questions and moves demonstrates Inspector Butler's intent to further the crimes, et cetera, of Defendants and thus that Inspector Butler believed in the fabrication and that

Defendants were at fault for fabrication of pseudo-evidence. CoA[Y]  CoA[P] ## 37. & 38. CoA[Θ] ## 41. & 43.

332.    Count         counts during ccrb interviews [each interview; separate each violating act or categorize per the event?] CoA[Ψ] 16. [Spoliation by Butler] CoA[P] ## 37. & 38. CoA [Θ] ## 29., 35. [assistant present] 40.,41.,42.,

333.    Count         Inspector Butler failure to intervene post-interviews by interviewing ¶ 27 or referring CoD to exculpatory nature of interview content. CoA[Θ] # 43.

334.    Count         Inspector Butler attacking Inspector Butler's duties by seeking to misrepresent precisely the issue of the "offensive language" item of investigation in a manner to diminish the investigation and its materiality.  CoA[Θ] # 43

335.    Count         [PART SEVENTEEN:      KING'S    COUNTY    DISTRICT ATTORNEY-INFLICTED COUNTS CAUSED BY POLICE DEFENDANTS & IDEM CLEARLY ABSENT JURISDICTION]         Defendant planned and attempted to defraud a grand jury, but such plot was foiled by ¶ 22. CoA[Z] ## 22. & 23.

336.    Count         Defendant Scarcella and Barosi fabrication of pseudo-charging of document which was fraudulently re-authorized and signed by Scarcella. CoA[Ψ] # 16.  CoA[Z] ## 22. & 23.  CoA[Θ] # 43.

337.    Count         Scarcella and Barosi fabrication of pseudo-charging of document which was fraudulently re-authorized and signed by Scarcella.  CoA[Θ] # 43.

338.    Count         Scarcella and Barosi  denying the appearance of Sgt. Shaun Brown with ¶ 28 CoA[Ω]  # 6. CoA[Θ] # CoA[Z] # 23. CoA[Θ] # 43.

339.   Count CXV   Tyear Middleton following racketeering and corruption order to execute the boxing out of The 9-1-1-responding pair (¶ 27) in response to Plaintiff demand to give up that with all Brady violations of Defendants.

340.   Count       Scarcella following racketeering and corruption order to execute the boxing out of The 9-1-1-responding pair (¶ 27) in response to Plaintiff demand to give up that with all Brady violations of Defendants.  CoA[Θ] # 43.

341.   Count       Corruption racketeering and corruption participation of the King's County (District) Attorney caused Defendants' injuring of Plaintiff by facilitating enterprise racketeering acts and criminal corruption, et cetera, sufficiently demonstrated in Defendants instructing Mr. Rudnick to without notice, characterization, warning, explanation, or anything but avoiding recognition or description of the act of removing himself from being an intermediary between Plaintiff and the King's County court, et cetera, other than rising when Plaintiff's name was called and unremarkably stating Mr. Gutman, who rose simultaneous according to plan caused only by Defendants, such was unquestionably, given the nature and circumstances, as Plaintiff essentially submitted to this Court in Plaintiff's May 7th Pleading, performed with May 7th's crimes, et cetera, against Plaintiff in mind.  The King's County (District) Attorney and Defendants acting through Defendant Barosi's implementation of this clearly-without-jurisdiction Kafka-esque tyranny substantively violating the Constitution demonstrates.

342.   Count       (Similar to supra, but extended over greater duration) King's County (District) Attorney's Office denied that Sgt. Brown had been present at 677 Quincy on October 8th 2014 or had the slightest involvement with the action

against Plaintiff until the June 2014 release of entirely (all substantive) fraudulent bundle of documents to Plaintiff pro se in which one document which purports to be originally authored by Defendant Casciola which indicate that Sgt. Brown was the bore rank at the scene.  CoA[Γ]  # 24. CoA[Z] ## 22. & 23. CoA[Ω] #6

343.   Count        The King's County (District) Attorney [move to background, denied Sergeant Brown was present and forbade the calling of V&B]  Internal Affairs and the Chief Inspector Scott Henderson and Chief Inspector Scott Henderson's command obstructed and perverted evidence concerning Sergeant Shaun Brown's not having been on duty or on record concerning.

344.   Count        Ms. Middleton conducts an interview of Defendant Officer Caracciolo by the time of a March 30th report with flagrant errors of investigation. Officer Caracciolo makes flagrantly fraudulent false assertions of Plaintiff statements, saying: that "Plaintiff has been trying to get out of the lease."  Not only is that not something anyone would say upon being read Miranda—Plaintiff had not yet even been presented with the lease for signature or discussed details of terms which might have well been made shortly irrelevant—Plaintiff had been invited by the landlord's agent to move ahead of seeing the lease for whatever period Plaintiff preferred.  The matter of the lease was not discussed.

COUNT **CD**        General Piqued Kafka-esqueness Count.  7 May 2015

345.   Count        The King's County (District) Attorney in the clear absence of all jurisdiction coerced ¶ 22 to step aside in silence to move in Mr. John Gutman to: 1) tell Plaintiff that Mr. Gutman would motion the court for dismissal of the wrongdoing against Plaintiff in the clear interests of justice and, then, 2) instead,

just before appearing in court, Mr. Gutman conveyed his task ultimatum from Defendants, acts part of the set cause by Sergeant Brown and the police sex-bribery and corruption racket systemically (Defendants having ordered all necessary criminality to injury Plaintiff beyond remedy) stating to Plaintiff "If you [Plaintiff] do not drop all allegations against the police, you [Plaintiff] will be prosecuted without your [Plaintiff's own] testimony, your [all of Plaintiff's] witnesses' testimony, or [the mere presence of] a jury." This ambush performed by Mr. Gutman continued with Mr. Gutman saying that the King's County (District) Attorney would take "*any* plea" which would block a prosecution or civil action of law enforcement. Rigging evidence by prosecutors is by decisions which stand an immune infraction fro prosecutors , however threatening to remove all adjudication and have only false evidence they help fabricate with no examination or word from the side and no witnesses present that Plaintiff might have a mere cry for help possibly passed on to family a juror writing down Plaintiff' family contact phone number or some such as Plaintiff would be hauled off to a location were incidental death of Plaintiff could occur as was so demonstrated in New court confinement on October 9, 2014., such is a clear obscene of jurisdiction.   Shut up or you're going in a hole and never come out: the literal imposition of the kafka-esque and the entire obscene of any judicial presence remotely resembling the operation of anything the Constitution was supposed to govern, implement, and ensure, in these lands which are supposed to be sovereign of the Untied States. Only take such a risk upon the predicate of

admitting knowing and being put up to crime by [dirty] cops to utilize such in the face of resitance to determination.

346.   Sustained Defendant (and 81st Precinct protocol operators) obstruction of ¶ 27 Currently finds COUNT

347.   Sustained Defendant (and 81st Precinct protocol operators) obstruction of ¶ 26 Currently finds COUNT

348.   Sustained Defendant (and 81st Precinct protocol operators) obstruction of Fifth Amendment injuring Currently finds COUNT

349.   Continuing failures intervene, investigate, review case files with holes, errors, et cetera. Currently finds COUNT

350.   Count          That there is no State authority for review of an attorney criminally, et cetera, threatening a fidu*   i.e. Maxfield Kearse stating no investigation.   That the State should provide some resource to report attorney criminal conduct unless Ms. Maxfield Kearse was wrong.  CoA[Y].  Considering Mr. Gutman clearly did not represent any issues dispositive in the King's County Action against Plaintiff and there was little-to-no argument for supposing a motive for such a report to Plaintiff and given Plaintiff's direct quotation presentation along with having made credible references from the day—should Ms. Maxfield's Kearse's expression be found to conform with policy the policy would be found unconstitutional.  [Move latter to Claims]  [Out of hand dismissal without so much as a demand to Mr. Gutman]

351.

COUNT **CDL**                    General Returned In Lieu of Italian Asylum Count

352. Count          Defendants did instruct the King's County (District) Attorney to lie to Judge Yavinksy in the September 2015 court appearance to move the court to wrongfully sanction Plaintiff, but was rather exposed.  Given May 7th, 2015 attack of Plaintiff, this continuation of State malicious action, even though rather exposed as a lie before Judge Yavinsky in the circumstances as recounted in Plaintiff's preceding affidavit, intentionally inflicted severe mental anguish. CoA[Z] ## 22. & 23.

353. Count          Defendants did plan to fraudulently try Plaintiff was foiled by the penultimate representative of King's County's independent action of contacting Officers The 9-1-1-responding pair (¶ 27) and then relating that the case was built on fraud.

354. Sustained Defendant (and 81st Precinct protocol operators) obstruction of ¶ 27. Currently finds COUNT

355. Sustained Defendant (and 81st Precinct protocol operators) obstruction of ¶ 26 []Currently finds COUNT

356. Sustained Defendant (and 81st Precinct protocol operators) obstruction of Fifth Amendment injuring Currently finds COUNT

357. Continuing failures intervene, investigate, review case files with holes, errors, et cetera. Currently finds COUNT []

358. Count          Escalation of Seizure with Trial Court Appearances and Malicious Application of State Power Seizure qua CoA[Z] ## 7., 22., & 23.

359. Count          [PART EIGHTEEN: MISCELLANEOUS[NESS] AT END OF PSEUDO-PROCESS]Plaintiff called Harvitz as Harvitz had instructed upon

Plaintiff's reaching at least one staffer at the King's County (District) Attorney to operate constitutionally with regard to at least one of the latent materially-determinant-Brady violations (after Mr. Harvitz had promised immediate § 1983 action accepting Plaintiff as a client on January 28th, 2015 at 13h25 and then proceeded to cancel the February meeting after a significant bit saying to call subsequently): when Plaintiff called and said it happened, Mr. Harvitz was frustrated, hostile, threatening trespasses of the fiduciary relations, and indicated discussions Mr. Harvitz had had regarding a specific politician intimidating Plaintiff implicating Plaintiff's professional interests and the noxious threat of exploiting Defendants' defamation; Mr. Harvitz was not shy about having broadly traded with Plaintiff's information to the benefit of Defendants and resoundingly found disappoint and worry that Plaintiff had exposed one of the materially-determinant dimensions of Defendants' Brady-obstructions. CoA[I] # 11  CoA[O]

360.   Count       [PART NINETEEN: IAB COUNTS FROM INITIATION TO WITHDRAWAL OF PSEUDO-PROCESS]       Internal Affairs obstructed and perverted evidence concerning Defendants' illegal confinement of Plaintiff in downtown Brooklyn in an effort to instrument a Second Circuit Fair Trial Right Violation.  CoA[Ψ] # 16. CoA[Y] # 25., 27 CoA[P] ## 36, 37., & 38 CoA[Γ] # 24. CoA[Ω] # 6.

361.   Count       IAB failure to provide materials which should have been provided—i.e. collected and preserved given Plaintiff's having made such complaint to IAB. Including such as radio, 9-1-1, car movements, et cetera. CoA[]  CoA[Θ] # 29

362.   Count         IAB corrupt even doing what investigation they did do as opposed to investigation they now claim to have done to avoid discussing corruption commissions and omissions. CoA[Y] #

363.   Count         In light of off duty finding of January 28th, 2018: IAB not collecting the radio transmissions, et cetera, as opposed to fabricating there was another 9-1-1 call. CoA[Θ] # 29.  CoA[] # 24

364.   COUNT D              General   Accrual   of   IAB   Command   Center Corruption and Racketeering Count

365.   COUNT []              Failure to Train, Supervise, Discipline and Hire in the wake of Brady-violation obstruction—as Admitted and to the extent

366.   Count         [PART TWENTY:   POST-WITHDRAWAL   IAB   COUNTS PRE-ENACTMENT] IAB scrubbing records to prior to generating list of matters IAB fraudulently reports as complete to the Annual Mollen demonstrates constant, comprehensive, and cyclical corruption removing non-racketeering, et cetera, oversight.  CoA[Y]

367.   COUNT []         General IAB 2017 Tort Count.  [Written for the several to refer to the general] [] [] [] [] [] [][] []

368.   Count         Rosello: Technique employed by NYPD and IAB of fabricating that a person is casting wide aspersions in order to mischaracterize a complainant as casting wide aspersions in order to fabricate pseud-cause to undermine what the NYPD or IAB agent knows is legitimate complaint.  CoA[Θ] # 43. [] [] []

369.   Count         Rosello;  That Sergeant Rosello fabricated that a Judge had done something wrong.  CoA[Γ] 24. CoA[Y]  CoA[P]  36., 37., 38., CoA[Θ] # 30., 31., 34., 43.

370.   Count         Rosello's call was based specifically as racketeering exercise, abusing interrogation principles, misusing recorded telephone interrogation investigative tools at IAB disposal, et cetera for the purpose of giving Plaintiff disinformation in attempt dissuade Plaintiff from taking action, e.g. telling Plaintiff that the recordings of Ms. Obi's multiple calls on police lines— multiplicity was point Sgt. Rosello stressed—were the cause of police making a mistaken action against Plaintiff (given the deliberate malice which Defendants sought to further this and the fact that Plaintiff presented IAB with sufficient information to correct any mistake, et cetera, if the 81st had been defrauded by Sgt. Shaun Brown et alia): thus Sgt. Rosello's attempts to convince Plaintiff by this admitted-by-Defendants-qua-fraudulent-disinformation that Ms. Obi was to blame for omnia was immediately redressed by Plaintiff as to corrupt furtherance which had no involvement of Ms. Obi that the matters of corruption were far and away removed from Ms. Obi. CoA[Γ] # 24. CoA[Θ] 43

371.   Count         Rosello [continuation of the immediately supra] Sgt. Rosello's call sought the objective of dissuasion by disinformation and sought using aggressive interrogation on recorded line to obtain any material that might suffice as a basis to present such recording to a jury to possibly support Defendants bad faith case for reasonable doubt in the imminent Proceeding against Defendants which the matter driving Sgt. Rosello's racketeering operations actions where Sgt. Rosello

was supposed to be investigating IAB. Effectively, Sgt. Rosello was acting as a litigant in abusively attempting to obtain ammunition for litigation through chicanery in interrogation mechanics of surprising, interrupting, and changing subjects in calculated manner to attempt to procure elicited partial statements from Plaintiff and prevent Plaintiff from finishing with the whole though precisely as conceived in Sgt. Rosello's premeditated design: Plaintiff stated after such attempt that it was clear to Plaintiff that that was what the maneuver being performed by Sgt. Rosello was, which Sgt. Rosello did not deny and to which Sgt. Rosello simply responded belligerently regarding the pending proceeding. [already stated Count pertaining to Rosello preservation] CoA[Γ] # 24. CoA[Θ] 43

372. Count        Rosello attempted to fraudulently obtain false cause to fraudulently assert that Plaintiff was making assertions against Parties Plaintiff explicitly stated Plaintiff was not making assertions of misconduct, criminality, et cetera, for the purposes of, as Plaintiff asserted in the call with Sgt. Rosello as Sgt. Rosello's motive was thusly so apparent—to which Sgt. Rosello did not make denial, was to attempt the obstruction of Plaintiff's action by going to persons of whom Plaintiff was not asserting misconduct that Sgt. Rosello might be able to collect objections or cooperation, et cetera, from such persons as Sgt. Rosello would have elicited self-righteous responses as such persons Sgt. Rosello would be telling they were under accusation when they were not.    CoA[P] # 37 38 CoA[Γ]    24. CoA[Y]Facility CoA[Θ] 43

373. Count        Rosello fraudulently attempted to fabricate material designed to confuse, weaken, or sabotage Fourth Amendment analysis: 9-1-1 lies directly seeking to defraud Fourth Amendment analysis. CoA[Γ] 24

374. COUNT []        General 2018 Defendant Contumacious Pleading Responseas As This Court Were Not Empowered to Vigrously Punish Defendants Responding to Plaintiff's 7 May 2015 Start on Amended Pleading (rushed without much preparation beyond collecting some timely facts) with the Fabrication of Documents Conceived as as if such were a means to be defend in Federal Court without being thrown out in default.        [Written for the several to refer to the general]

375. Count[N]        Fabrication of "Event Chronology—D14100820643."  Entirely fabricated document.  Defendants' counsel admitted there were no such 9-1-1 calls of communications by Ms. Obi to police—i.e. there was only private cell phone to private cell phone communication between Sgt. Brown and Ms. Obi. Count is established as Matter of Law and the finding of the instant Count concurrently finds the Defendants' Default Count, Count I.  Same fabrications were uttered by Sgt. Rosello pre-enactment, but documents were only produced to Plaintiff post-enaction of the instant Action under D00126-D00129.  Documents appear to have been produced to the CCRB in the Spring of 2015 CoA[Ψ]  # 16. CoA[Y] # 25., 26., CoA[Γ] # 24. CoA[Z] ## 7., 21., 22., 23. CoA[E] #

376. Count[N]        Fabrication of "Event Information—D14100820643."  Entirely fabricated document.  Defendants' counsel admitted there were no such 9-1-1 calls of communications by Ms. Obi to police—i.e. there was only private cell

phone to private cell phone communication between Sgt. Brown and Ms. Obi. Count is established as Matter of Law and the finding of the instant Count concurrently finds the Defendants' Default Count, Count I.  Same fabrications were uttered by Sgt. Rosello pre-enactment, but documents were only produced to Plaintiff post-enaction of the instant Action under D00125.  CoA[Ψ]  # 16. CoA[Y] # 25., 26., CoA[Γ] # 24. CoA[Z] ## 7., 21., 22., 23. CoA[E] #

377.   Count[N]     Fabrication of "Event Unit Information." Fabricated document to fraudulent represent at least the timing of ¶ 27. The finding of the instant Count concurrently finds the Defendants' Default Count, Count I. Documents were only produced to Plaintiff post-enaction of the instant Action under D00126-D00129. CoA[Ψ]  # 16.  CoA[Y] # 25., 26., CoA[Γ] # 24. CoA[Z] ## 7., 21., 22., 23. CoA[E]

378.   Count[N]     Fabrication of "Event Information—D14100814627" with another fabricated copy of what-was-to-defraud the ¶ 27 appearance.   Entirely fabricated document.  Defendants' counsel admitted there were no such 9-1-1 calls of communications by Ms. Obi to police—i.e. there was only private cell phone to private cell phone communication between Sgt. Brown and Ms. Obi.  Count is established as Matter of Law and the finding of the instant Count concurrently finds the Defendants' Default Count, Count I.  "Event Information" document was only produced to Plaintiff post-enaction of the instant Action D00120, but it contains an additional publication of the fabricated as-if-the-early-afternoon-Sprint Report-D00121-D00123.  CoA[Ψ]  # 16.  CoA[Y] # 25., 26., CoA[Γ] # 24. CoA[Z] ## 7., 21., 22., 23. CoA[E]

379. Count        [POST-ENACTION COUNTS]        [Extending    from    supra]
Defendants have caused Corporate counsel to occupy position qua litigant in a
manner wholly unfitting the Forum of this Article III Court and Proceeding,
pointedly in the Defendants' position described throughout the instant Filing as
"unus est" or "there-is-one" pertaining to the flagrant attempt to defraud this
Court in Defendants' repeated attempts to assert there is one recording, i.e. Mr.
Rosenkilde indicated during the July 20th Hearing that the (fraudulently)
represented as single recording was the autumn interview by IAB of Plaintiff at
IAB Headquarters: such wholly fraudulent representation about Plaintiff's
arguably most important claims concerning police corruption and racketeer, i.e.
that IAB operates from the management level primarily with the interest towards
racketeering-participant-police, or all police other than those deemed resistant or
problematic to smooth racketeering operations, (corrupt operations which is itself
proven by Defendants' flagrantly fraudulent instant furtherance regarding the IAB
record)

380. Count[N]        Fabrication of Defendants' production (twice) of D00023
which Inspector Butler clearly identifies did not exist at the time of the CCRB
investigation and which Sgt. Brown says did not exist in Sgt. Brown's CCRB
interview. CoA[Γ] # 24.

381. Count[N]        Fabrication of material produced in "D00019 D00021"
which Inspector Butler clearly identifies did not exist at the time of the CCRB
investigation and which Sgt. Brown says did not exist in Sgt. Brown's CCRB
interview. CoA[Γ] # 24.

382. Count[N]          Defendants represent in Filing to this Court that the Sprint Report containing an "Event Information," "Event Chronology," and an "Event Unit Information" as Documents "D00125-D00130" were produced to the CCRB in May of 2015; these document were not produced to Plaintiff with the documentation produced to Plaintiff in June of 2015 and were fabricated to obstruct the instant action. As idem documents are 100% fabrications as Admitted by Defendants' counsel—they were not produced not simply to avoid critical examination as would have served as an obstruction of that fraudulent proceeding by Defendants to anti-constitutionally injure Plaintiff: but rather as a furtherance qua obstruction of the instant Proceeding. CoA[Γ] # 24. CoA[Ψ] # 16.

383. Count          Defendant Zachary Carter, however Mr. Carter and former Corporate Counsel employee Mr. Stancati communicated, told Mr. Stancati not to include investigatory and jurisdiction-absent Counts by the King's County Attorney's Office, and to reduce Plaintiff's statement of wrongdoing and stall once inacted that Plaintiff might be unnerved to accept a settlement covering zero damages but possibly most costs—Defendants offer was to be negotiated from but Plaintiff's return (which was a reiteration of Plaintiff's number for that juncture) was not even effected to Defendants' counsel by Mr. Stancati; three months later Mr. Stancati had done essentially nothing—and made no claim otherwise and did not contest this assessment when Mr. Stancati was fired. Mr. Stancati has subsequently refused to turn over some substantive evidence in violation of the settlement . Corporate Counsel grooms employees and short term employees to

understand how Corporate Counsel likes to receive suits from the other side. CoA[H] # 49.

384. Count         Defendants' maliciously tampered and edited with materials provided in the instant Action under FRCiP # 26A originating from the central Brooklyn police facility at the 120-120 Schermerhorn complex CoA[Γ] CoA[H]

385. Count         Mr. Rosenkilde's February 8th, 2018 we're the City of New York and we calumny to the United States Courts about matters we just asserted otherwise in the hall outside the hearing room—when you sue the City the City cheats in some and substance assertion of Mr. Rosenkilde as Retalition for Petition and Abuse of Federal Appearance by Mr. Rosenkilde. CoA [P] 37. & 38.

386. Count         Supplemental counts including transcripts   offense of stating only one interview indicates necessity of wrongdoing.   Withhold the obi tape. Withholding the the 9-1-1 caller (¶ 26) tape.   Refusing to interview the 9-1-1 caller (¶ 26).   Deliberately gouing non credible patently not credible obi in mikay and scarcella.

387. Count         Withholding CCRB interviews of Defendants Sergeant Brown and Officers Hellberg, Caracciolo, and Casciola

388. Count         Withholding The 9-1-1 caller's (¶ 26) CCRB interview in mala fides instructed by Defendants as fraud & obstruction.   With matters of law the finding of the instant Count concurrently finds the Default Count, Count I. CoA[Γ]

389.  Count      Mr. Rosenkilde's statement that the 9-1-1 call was redacted to protect Ms. Azmudeh's phone number, when such was on the other end of the 9-1-1 call from the major redaction CoA[H] 49. CoA[Γ] # 24.

390.  Count      The fraud partially perpetrated by Mr. Rosenkilde in Mr. Rosenkilde's reference to the CCRB on the docket.  CoA[Γ] 24.

391.  Count      Defendants letter regarding 9-1-1 erasures where the letter serves to obstruct clear cause of Defendants' criminal, et cetera, activity.

392.  Count      False representation of the EMT.  In fabricating the times, Defendants needed to fabricate the EMT record and so did.  CoA[Γ]  CoA[]

393.  Count      Withholding the Ms. Obi CCRB interview as caused by Defendants. With matters of law the finding of the instant Count concurrently finds the Default Count, Count I.  CoA[Γ] # 24

394.  Count      Defendants' having not produced the Defendant-defrauded pseudo-arraignment statement to Plaintiff in June of 2015 with other documents and then refusing disclosure and production in the instant Proceeding as it implicates in horrible detail (Defendants must eventually produce *confidentially* to Plaintiff to mitigate aggravation of damages) is a matter of law and the finding of the instant Count finds with matters of law: Count I, the Default Count.

395.  Count      Continuing obstruction of original 9-1-1 tape production. Attempted destruction is $100,000.  No one could have listened to the tape and not said, recognized, known, et cetera that Plaintiff's statements were highly determinative of understanding the basics of what was going on—Plaintiff's statements prompted statements from Ms. Obi which are preserved; no training,

instruction, or manual could be created that would not instruct preservation of such material for evidence; no artificial intelligence could be created or deployed (even a robot would know) that would not recognize that Plaintiff's statements that Defendant's continue to obstruct were valuable to any information, et cetera, purposes in knowing, preserving, recording, documenting, understanding what was and what occurred at that time—particularly important is Ms. Obi's reaction to Plaintiff's statements.

396.   Count        Flagrantly not producing written material originating within the 81st Precinct directly pertaining to matters of 17CV4519 for obstructive intent. [memo books such as Bravo's; incident report]  CoA[Γ] Claim #   [].[].  CoA[P] Claim # [].[].  CoA[Θ] Claim # [].[]

397.   Count        Attempted obstruction of the 9-1-1-respondent's citation of Ms. Obi.  The Count of the instant Count finds the Default Count: Count I.  CoA[Γ]  # 24 CoA[H] # 48

398.   Count []              Defendants' not producing IAB materials as the recordings demonstrate, most particularly with Lt. Parese, that IAB pursued Plaintiff's information as credible, reliable, and high quality information for the purposes of falsely asserting IAB personell interacting with Plaintiff did not demonstrate out of the holding of such invesigative procedure such assessment of Plaintiff's information.  [] [] [] [] [] [][]

399.   Count        Defendants' then-counsel Mr. Rosenkilde's argument in November of 2017 and February of 2018 and in Mr. Rosenkilde's Filings that as to actions implicating the Fourth Amendment taken by Defendants such color, negatively,

how this Court should consider Plaintiff's arguments and words: such demonstrates the detriment and reputational damage carried by the gravity of Fourth-Amendment implicating State action.  [] [] [] [] [] [] [] [] []

400.   Count        Plaintiff, managing his legal servant Mr. Stancati, sought to emphasize the value and opportunity for quick resolution, Mr. Stancati conveyed such via his back channels to Mr. Carter.   Tortiously impacting standing and accruing injuries, et cetera: full scope unknown.  [] [][] [] [] [] [] []

401.   Count        Ms. Doreen Ierardo stated on March 28th, 2018 that what Plaintiff had identified was the most important transcript for Plaintiff to collect for Plaintiff's present business before the Court which concerned wrongful actions against Plaintiff in New York court was the November 2015 record pertaining to confessions of Brady violations against Plaintiff by the representative of King's County.  The assistant of Ms. Ierardo promised production, though stated that if the first copy were not accessible a couple month process of retrieving the report, as Plaintiff has described in prior Filings, et cetera, would take place: after much longer than the initial period had passed and only one of six of those things which were to occur had, Plaintiff followed up—the assistant to Ms. Ierardo would not have told Plaintiff six or probably all of six would happen within a few weeks if such were not certainly likely—this activity of pulling court transcripts for people is regular, daily, or hourly business for the assistant of Ms. Ierardo: there is no plausible way the assistant of Ms. Ierardo is unfamiliar with expectations and that when the assistant offers readiness by time certain that a couple weeks later the performance being one-out-of-six rings sufficiently that process is likely

obstructed—such was just the start.  Ms. Ierardo stated Plaintiff would never receive the November transcript and when Plaintiff said such seemed impossible given the existence of the backups—furthermore, that as Plaintiff had spoken to the assistant the day before and it was a couple process to get the back-up, that even if the assistant had said the backup process could start, which actually the assistant had clearly stated the opposite—that the assistant was decided starting the backup process would be premature as the assistant believed the first rung solution would soon avail the result; Plaintiff received no explanation for why only the one no longer associated with Brooklyn had responded in almost double the promised time by that day, March 27th: Ms. Ierardo responded to Plaintiff's saying but the back up had not even started and was not about to when Plaintiff had get spoken with the assistant the day before: Ms. Ierardo said Ms. Ierardo was the assistant's boss and the only thing Plaintiff could do in the matter and Ms. Ierardo never wanted to hear another word was to content Plaintiff's self with never getting the record as it would never happen and could not happen—as a force outside of recovering records prohibited record production.  Plaintiff said none of that was possible given the time frame and that Ms. Ierardo's repeating the Plaintiff would never get it just made it sound like the record or records were deliberately destroyed—to which Ms. Ierardo replied like she was enjoying being malicious that Plaintiff would get a never letter from Ms. Ierardo: which Ms. Ierardo sent and very much indicates that Plaintiff would be a fool to think the transcript would be produced.  Ms. Ierardo specifically refused to address Plaintiff's statement that it was totally impossible that if that assistant would tell

me yesterday that the back-up process had not yet started and would not yet be starting and that Ms. Ierardo would call the next day and refuse to address the back-up's availability but to simply insist menacingly that the transcript would never be produced was not a deliberate expression of foul play and Ms. Ierardo responded as if Ms. Ierardo was glad to hear Plaintiff was getting the message: Ms. Ierardo's letter states "As a result of the loss of notes containing the required proceedings and its unavailability [which are two contradictory things], it will be impossible to furnish a transcript of the minutes required." There is no plausible Pleading by Defendants that these actions by Ms. Ierardo were not the result of Defendants' corruption and racketeering to obstruct justice qua Title 42 of the United States Code §1985 (2) and any denial of foul play in this occurrence shall be dismissed under the Rules, et cetera. Any desire to see a court staffer avoid being called into direct judgment for municipal racketeering performed at the request and behest of Defendants is more than answered with prima facie, per Ms. Ierardo letter a written falsehood which as a matter of law is prima facie malicious per the Second Circuit definition: Plaintiff documented the racketeering Count prior to Ms. Ierardo's mailing of the false written statement; subsequent Counts involving the partial spoliation of the Reporters Notes of Mr. Appel and Ms. Ierardo's dubious assertion that there is no delivery of the mail by staff at the King's County Courthouse from the general receipt to particular offices (further that Ms. Ierardo goes a week without obtaining business letters) further raise the ripeness of the early separated adjudication. [] [] [] [][] [] [] [] [] []

402.   Count          After the obvious act of the obstructing justice by Defendants through Ms. Ierardo, an obvious choice for inclusion in Defendants' corruption racket given such ability as Ms. Ierardo demonstrated to shut down the work of her clerk and lie as discussed immediately supra at 3[][], Plaintiff contacted Judge Tiscione's chambers which led to the demonstration of hostile judicial staff, which may be as damaging to speak of as to not speak of as it is categorically different and perhaps only in the end not determining—Plaintiff need not say more in the instant Filing with so many other issues and if there were any lingering issues they would have the ability to from Plaintiff's view fix themselves without Plaintiff action.  Plaintiff nonetheless was diverted by what there arose for a time and sought confidential assistance of, the recommended by another clerk, Chief Administrative Judge at Beaver Street—that Clerk of another County's Court said a disappear transcript was only an occurrence the that Clerk had heard of happening once in her long career—but, to someone else—never directly in her experience.  Discovery is very relevant to the jury's consideration of the impossible odds of the Defendant-run-and-caused-through-Ierardo-fabricated-obstruction: such as easy matter, et cetera, prompts Plaintiff's call for the Trial of the Claims bundle to be separated under Rule [] as ¶ indicates and as is addressed in the separate document of the instant Filing " [  ]."  Beaver Street betrayed Plaintiff's trust after some confusion about where the first fax Plaintiff sent ended up as the receptionist or administrator could not figure out who took it out of the fax machine and contacted Ms. Ierardo who suddenly was able to produce something regarding the transcript—though it is a tampered version

meant to be close enough that Plaintiff would not know—consistent with those items Plaintiff described to Mr. Stancati and not in ways not described to Mr. Stancati; inconsistencies include facts not described in Plaintiff's May 7th Pleading which addressed the §1985 (2) Obstruction of Justice and called for the immediate separated Trial of the Claim(s)—some of the fabrications were directed squarely at particular details of Plaintiff's May 7th Pleading in ways notably inconsistent with other facts not discussed in Plaintiff's May 7th Pleading or with Mr. Stancati, which rather colors Mr. Stancati's total lack of inquiry about Plaintiff's written documents—not one question in the two years, et cetera. Plaintiff gave Mr. Stancati the presumption of the expertise beyond Plaintiff's laity until Mr. Stancati's total refusal to engage in discovery, to convey Plaintiff's explicit and strict settlement instructions, supposed conversations about compensatory damages in absolute fiduciary violation and against all instruction and assumption that no discussion between Parties would occur about Trial or Claim total damages until Mr. Stancati and Plaintiff had even begun a conversation or discussed Plaintiff's business or such matters (see Plaintiff's Declaratory Judgment Motion at ¶ []). It should be sufficiently specific at this time to refer to Plaintiff's prior Affidavit and Information to this Court regarding the matter of the fraud beyond what Plaintiff has asserted in the instant Paragraph: depositions of such Defendants as Defendant Barosi should likely take place prior to further discussion of the issues—another topic discussed in the Motion for Declaratory Judgment of Plaintiff's instant Filing, mentioned supra in the instant Paragraph at ¶ []) of that adjoining instrument. [] [] [] [] [] [][] [] [] [] [] []

403. Count        Defendants' counsel reproducing the fraudulent Sprint Report on July 13th, 2018.  Disclosure signed by Mr. Rosenkilde.  "Bates" numbers 00245-00247. CoA[Γ]  # 24.

404. Count        Glenn Tomasello fabrication of date of fake report—this fabrication of produced by Defendants was created in 2018 for the purposes of responding to Plaintiff's Pleading with fabrication per unconstitutional municipal racketeering, obstructing-justice policy.   Tomasello reported to Plaintiff that Det. Tomasello was still investigating until 2015—obviously the record created is fraudulent in response calculated to Plaintiff's Pleading of May 7th, 2018.  It is impossible and dismissable as fraud before the Court.   Records states Det. Tomasello claims he was contacted by Plaintiff on October 15th, "I," it says. The fraudulent document states a phone call occurred on Oct 15th by phone. Pertaining to Defendants; "Bates" numbers 00251-00252. CoA [Γ] # 24 CoA[Y] # 27   [] [] [] [] [] [] []

405. Count        IT supervisor of 81st—allowance of fraudulent Culkin report CoA[Y]   CoA[Θ] # 35., 43., [Generally object to system to suit corruption; different Count that other IT Counts—pertaining to the post-May 7 2018 fabrication] CoA[Y] # 27 [] [] [] [] [] [] [][] [] [] [] [] []

406. Count        Glenn Tomasello inverted fabrication of evidence regarding interaction with Plaintiff—Tomasello fabrication of Plaintiff's comments directly contradict 100% of the interaction with Plaintiff and the intake form.  CoA[Γ] 24 [] [] [] [] [] [] [] []

407.   Count        Glenn Tomasello inverted fabrication of "manner of closing" case
"2014-1870."  "Investigative leads exhausted" was fabricated . Michael Culkin
CoA[Γ] # 24 CoA[Ω] # 6 CoA[T] # 4

408.   COUNT       Fraudulent Memo books entries presented implicate the signatories
in relation to the signatories' function.

409.   Count []      Spoliation of material for Evidence: both evidencing Defendants'
fraud and as obstruction of what would be or is [timing of destruction   if
destroyed, is unclear; otherwise still simply obstructed—fact that Defendants'
admitted they still had copy of Plaintiff citation from Bravo (loss of one without
loosing the other)] [] [] []

410.   Count        Inherent Power Sanction:  Topic mentioned in July 20th Hearing
before Judge Tiscione.   Plaintiff said regarding the Protective Order that
Defendants' position was entirely unacceptable as the contents were hardly
confidently and the very procedures employed were matters of fact to be
adjudicated upon and likely almost entirely, perhaps a phrase or two per forty-five
minutes had some legitimate interest in confidential method to protect.   Plaintiff
stated that it was likely that Defendants had not even prepared all the materials,
Mr. Rosenkilde stated that only one had been prepared: it is beyond doubt that
that Defendants' assertion to tell Mr. Rosenkilde there is one is a fabrication
before the United States. [] [] [] [] [] [] [] []

411.   Count        Spoliation of parts of the November 2015 transcript of King's
County court  CoA[] CoA[Λ] # CoA[Γ] # CoA[Y] # CoA[Θ] # CoA[P] #

412.    Count        The idem spoliation identified immediately supra concerned inverted the discussion at an altered time the order originally issued by The Honorable J. Hecht and once renewed without hearing but against Plaintiff refusal on March 31st 2017 (the injury of the one renewal is including in the original Count) CoA[Γ] # 24. CoA[Ω] # 6. CoA[H]# 49.

413.    Count        Corporate counsel has violated many Rules of conduct including contempt, Rule 11 violations, crime-fraud, et cetera. Such furtherance of Defendants' racketeering is caused by Defendants racketeering with further reference to Count [] (which addresses that the promise and functional contract of Mr. Carter, Corporate Counsel, has to offer Mr. Carter's departments obstruction, outrage, et cetera in support of suppressing accessing to fulfillment of proceedings, et cetera)—thus harm, injury, et cetera resulting from Defendants' acts and orders for maltreat, harm, contempt, et cetera against Plaintiff in the instant Proceeding, 17CV4519, are necessarily recovered in idem Action, 17CV4519: it is particularly noteworthy that damages which Plaintiff is trying to mitigate are among those most vulnerable and particularly impacted by this consequence of Defendants' racketeering acts against Plaintiff—specific references must be addressed and discussed under pending aspects of mutual protective order. CoA[Y] #  CoA[H] # 49

414.    Count CL     Comprehensive impact of Batteries by Defendants upon Plaintiff per aggravation and contribution to damages—i.e. Defendants' batteries upon Plaintiff color the comprehensive injuries and particularly color assaults and maliciousness of Defendants' crimes, wrongful acts, tort, et cetera adding severity

to harm, et cetera, inflicted upon Plaintiff by Defendants—i.e. injuries from other torts, et cetera, would not have been as severe had Plaintiff not been close to murdered multiple times et cetera, i.e. outside impact of trauma and aggravation of trauma. See Fourteenth CoA[B] Claim (#[] at ¶ []).   [] [] [] [] [] [] []

415.   Count          Defendants have so sought to defensively fabricate as little as possible to minimize the need to set down assertions which they know to contradict facts that Defendants cannot arrive at a presentation at Trial where all of the various fabrications are found to be reasonably the result of a non-violative-of-Plaintiff honest effort, on top of all other corruption: the very slight fabricated plotline that Defendants would argue was set out could not be free of the particular type of indications of fabrication which are that there would have been no reason not to include Trial fabrications in early form to the extent where the non-inclusion of material is sufficiently impossible for persons whose profession is document findings for legal proceedings and otherwise to be an or the primary instrument o  f order by following procedure.  CoA[Y] [] [] [][] [] [] [] [] []

416.   Count          Defendants comprehensively and pervasively have demonstrated throughout the matters of the instant Action (17CV4519 of the Eastern District of New York) failures of train, supervise, discipline, and staff.  CoA [Θ] ## 40., 41., 42., 43. CoA[Y]

417.   Count          Defendant Carter having caused Mr. Stancati to engage in improper conduct of Mr. Stancati including Mr. Stancati's refusals to turn over all requested materials upon Mr. Stancati's being dismissed by Plaintiff as Mr. Stancati is obligated. [] [] [] [] [] [] [] []

418.    Count        Defendants' instrumented outrageous abuses of process and fraudulent contempts against the United States perpetrated through legal employees of the City of New York. [] [] [] [] [] [] [] [] []

419.    Count        Aggravations of batteries, conversions, trespassing, assaults, confinements, slander,   [configure in another way] upon and subsequent to Plaintiff's seizure [reference most of in damages—right, assert Claims with these tort of aggravation ex post facto by Defendants tort upon and subsequent to ¶ 28.

420.    Count        Other uses of material police obtained in the seizure and processing of Plaintiff as per standard practices of such database material including all third party exposures and publications. [] [] [] [] [] [][] [] [] [] [] []

421.    COUNT []        Barosi 2018 .  Concurrent finds the General Barosi KCDA Corruption and Racketeering Manager Count.   Plaintiff and Barosi each recognized the other's voice and the prior contacts between Plaintiff and Barosi. Almost about to ask confirmation of recognition of Plaintiff, Defendant Barosi made reference a fact that Defendant Barosi thought would intimidate Plaintiff and then threatened to use friends at the FBI to pull some high tech tricks.

422.    Count        Ultimate (Cumulative, Aggregator) Count:  Defendants    caused several liable: offensive, harmful and injurious batteries of Plaintiff, supra and as Plaintiff has asserted in Filings; injurious assaults upon Plaintiff, inherently, contingently, and in causing Plaintiff's life to be explicitly threatened by multiple persons, supra and as Plaintiff has asserted in Filings; injurious trespasses and invasions of Plaintiff's personalty and real estate; injurious conversions injuring Plaintiff; shocking injurious and damaging intentional inflictions of mental

anguish upon Plaintiff; tortious confinements injuring Plaintiff; constitutionally-unequal treatments by three class-configurations injuring Plaintiff as enforcements, State-seizure-process-at-law, and otherwise; harmful intimidation against Plaintiff's professional interests; injurious fraudulent writings and verbal assertions and their instrumentation; injurious and violating representations of contact with Plaintiff qua State-seizure-process implicating the Fifth Amendment; injurious creation and use of false and fabricated pseudo-evidence and injurious deprivations of trial rights; injuries violating Plaintiff's liberty interest in privacy; injurious dispositions and uses of force violating Plaintiff's interests in bodily integrity; injurious mortally hazarding acts against Plaintiff; injurious Fourth-Amendment and tortious seizures of Plaintiff's person, including conversions implicating the Fourth Amendment, and at law by the State;   contumacious, and threatening obstructions of justice under § 1985 (2) attacking Plaintiff; injurious violations of substantive due process concerning State corruption generally, concerning racketeering (i.e. not the pursuit of damages under CoA[A]—but the injuring substantive due process violation of government participation in racketeering enterprise inuring Plaintiff, concerning the systemization, synergy, and synchronicity of obstruction mechanism employed injuring Plaintiff, and concerning the State-action extortion of Plaintiff with misappropriation injuring and threatening Plaintiff; injurious violations of procedural due process concerning failures and refusals to investigate, concerning deprivations of Plaintiff's liberty interest to employment and contract, concerning denials of vindication hearing procedure, concerning takings process, concerning Plaintiff's

freedom of movement and to travel, and concerning Plaintiff's liberty interest in reputation, and concerning failures to intervene; injurious retaliation for Plaintiff's petitioning against government tyranny and for redress of grievances implicating the First Amendment and violating Plaintiff's substantive due process right to petition; injurious violations of Plaintiff's reputational property and thereby expressed reputation as property; injurious failures of government administration including failures to train, supervise, discipline, and manage personnel; injurious negligence; and injurious (racketeering) participation of persons not employed by the City to effect tort injury upon Plaintiff qua conspiracy; injurious deprivations of Plaintiff's access to courts; injurious usurpation of the adjudicatory power to punish; and tortious interference with economic advantage. The instant Count aggregates the supra, Filed, and admissible acts of Defendants' injuring Plaintiff per each category of Cause of Action for the statement of an aggregate Claim of each Cause of Action; Civil R.I.C.O. relief supersedes for its applicable category of injury established generally from the base racketeering cause and its separated into two Claims merely as one is immediate and the other a product of additional adjudication. The structure of having an Ultimate Count is based sufficiently at a minimum, generally, in Procedural principle of inherent-to-Party-asseveration admissibility, of which it is refers [] [] [] [] [] [][] [] [] [] [] []

423.   Count          Erasures as spoliation to undermine contributions of evidentiary material to Plaintiff's integrity. [] [] [] [] [] [] [] []

424.   Count          Third party-possessed records spoliation [] [] [] [] [] [] [] [] [] [] []

425.     Count          Litigation abuse February false assertions to the Court [] [] [][] [] []
[] [] [][] [] [] [] []

426.     Count          Litigation abuse   [] [] [] [] [] [][] [] [][] [] [] [] []

427.     Count          Lower standards intergrity and constitutionality for places such as
the 81st out of lower respect for the people in the 81st, demographically, et cetera.
[] [] [] [] [][] [] [] []

428.     Count          Attempted erasure of material relating to Plaintiff's petition as
obstruction of Fair Trial and obstruction of Civil Rights vindication. [] [] [] [] []

429.     Count          Attempt to procure gag power for price of fake material. [] [] [] []

430.     COUNT **DL**          Spoliation Penalty Count.

525. Injuries to Plaintiff by Defendants are described in the foregoing paragraphs. Claims paragraph reference the foregoing injury paragraphs to simplify statements of Claims[143] and improve the statement of the Complaint as a whole, by more specifically describing Defendants' injuring of Plaintiff. The foregoing paragraphs are stated under labels consisting of English alphabet letters, including some double, treble, and quadruple assignments.[144] Assignments of damages to such predicates better facilitates the Action's description of several sufficient recoveries of the one, whole recovery. It assists the Adjudication for Plaintiff to describe injuries with some particularity to the injuries impacts' Plaintiff, rather than simply using categories such as interntially inflicted mental anguish,[145] bodily harm, apprenhension of bodily harm, lost profits based on quarter of transactions in process from time of accrual of sufficient causing of such injuries, et cetera—it describes nature with respect to Plaintiff and impacts to Plaintiff— and particular Defendant intent to injure. Regarding a considerable amount of Defendant tortfeasance, injury could be described[146] under more than one

---

[143] Not all Claims state all applicable "injuries" (some Claims statements simply reference broadly sounding in injuries); as many Claims best have the emphasis of referencing particular injury predicates—rather than seeking to include such descriptions in the Claims statements the letter is simply referenced.

[144] multi-letter designations are related to the single-letter; in some descriptions the double, treble, and quadruple represent increasing form of the injure, respectively—other times there is merely notable distinction worth drawing with separate signification. "v" and "i" are not used as alternative Claims statements use such as roman numeral designation

[145] Many of the distinctly described and identified injuries, appropriately described with respect to Defendants' particular injuring of Plaintiff, can certainly have foundation when construed as different categorizations of such as intentionally inflicted mental anguish.

[146] Claims are not stated with every relevant assignment of injury (by letter demarcations in Claim statements)—the letter designations highlight Claims' particular inclusions of Defendant-caused injuries to Plaintiff pertaining to the respective stated Claim or relevant

described category of injury of the foregoing paragraphs; the group of types of injuries assigned letters represent a number of descriptions and identifications of injuries that are appropriately emphasized which such designation. Some categories or types of injuries include notable particular items with the category, such are described with an integer beside the identification of injury. Some of the categories rather than being injuries are important factors regarding injuries, such as Defendants' aggravations of Defendants' injuring of Plaintiff and such as mitigations (i.e. where the statement of a Claim is particularly best understood with regard to the particular Defendants' tortfeasance as being an aggravation of another injuring or within the context of a mitigation.

526. Overview of letter assignments of injuries (stated in the foregoing 30 paragraphs): *a* lost profits, *b* lost resume credential, *c* lost economic advantages , *d* lesser damage resulting from necessary mitigation forced by Defendants, *dd* good faith mitigation attempt, *ddd* contingent loss caused by Defendants, *e* light on private matters that would not be so lit, *ee* persecution, *eee* alienation, *f* interpersonal relations, *ff* marriage, *fff*, anti-miscegenation, *ffff* apprehension caused by Defendants' duress upon Plaintiff, *g* shock of police corruption, *gg* advanced municipal corruption, *h* , *h*   *h hhh*   *j* humiliation, *jj* humiliation in having to conceal petition and mandatory activities to mitigate damages, *jjj* religious relation, *jjjj* exposure of private matters and life, *k* continuing until non-obstruction of vindication, *kk* permanent, *l* loss of liberty, *ll* loss of liberty regarding effects, *lll* life destruction of Plaintiff by Defendants, *llll* occupation of

aspects of injuries worth so drawing attention (whether to observe particular potential for mitigation by proposed early Declaratory judments, et alia).

time, *m* notable confidential aspect(s), *n* injuries that will increase without equitable remedy, *nn* injuries from which damages are currently suspended (or believed to be suspended) from increase or accrual by Plaintiff's mitigation efforts that need equitable follow-through to mitigate damages, *nnn* injury increasing until relief cures injury, *o* horror-ourtrage-shock, *oo* kafka-esque tyranny, *ooo* mortal hazarding, *p* political, *pp* political services, *ppp* 2016 MN CD2, *q* financial fiduciary, *r* reputation, *rr* liberty in reputation, *rrr* false light aspect of defamation accruals of injury [consider], *s* familial duties, *ss* familial strain,  *sss* missed rapport, *t* apprehension of bodily harm, *tt* corporal integrity violation, *u* aggravations of prior Defendants' injuring of Plaintiff , *uu* aggravation of acuity to roll ahead injury, *uuu* litigation abuse aggravations, *w* extortion threat (duress, coercion), *ww* defamation threat, *www* tyrannical defamation, *wwww* fear of supplemental recording, *x* social network injuries, *xx* burned relationships; *y* intergrity shading (attempting to portend doubt),  *yy* googleability, *z* petition retaliation (hole, solitatry, gaging)

527.     *a* lost profits, #1 Damages immediately actionable under Civil R.I.C.O. as stated at ¶ 1102  i.e. for lost profits calculated by Plaintiff's transactions[147] in processed or processed for the quarter before injury as basis for calualating lost profits from Defendants' destruction of the continuation of that business (see ¶ [], infa): "a1"

528.     *b* lost resume credential,

---

[147] Includes the considerably discussed-to-the-Docket client's 1031 exchange for Brooklyn Brownstone proposed to Plaintiff as outcome of real estate transactions at the time.  Two other transactions in process at the time which were halved due to dislocation and disqualification resulting from Defendants' injuring of Plaintiff.

529.   *c* lost economic advantages # 1 UES & [] ($ 10 MN USD development performance-equity profit), # 2 City-aware project ($ 25 MN USD development performance-equity profit), # 3 Mediterranean properites ($ 1 MN USD commission profit), # 4 coastal French property ($ 250,000 USD commission profit), # 5 Italian properites ($ 500,000 USD development equity and commission profit) # 6 CA business ($ 25 MN USD, start-up profit), # 7 CA property ($ 12,000 USD commission refferal profit), # 8 (sisters) New York property ($80,000 USD commission profit), # 9 (M.M. ($52,000 USD commission profit) New York property, # 10 (N.) New York property ($85,000 USD commission profit), # 11 (B.) New York property ($ 70,000 USD commissions), # 12 Negotiation underway with real estate corporation ($ 1 MN USD to $ 10 MN USD income), # 13 Western U.S. real estate business (new entity) ($ 2-10 MN USD profit), #

530.   (*D*) Mitigation: *d* damages incurred as the mitigating choice of a lesser damage resulting from a necessary mitigation[148] as an alternative to that forced by Defendants: Damages mitigated by privacy et cetera Declaratory Remedy Mitigation (mitigations, mitigation costs, mitigation costs qua lesser and more remediable damages, ongoing mitigations, mitigation of Declaratory Relief, Action is mitigation, *dd* good faith mitigation attempt, *ddd* contingent loss caused

---

[148] Cost of reducing spread of Defendants' toxic defamation is much less costly than cleaning up vastly permeating if Plaintiff were not to expend the effort to contain (trail follows Plaintiff in everything—keeping a light footprint and minimizing movement mitigates Defendants' toxic sludge dumped on Plaintiff: were Plaintiff to ignore the spread of Defendants' contamination, in the end Plaintiff would in all likelihood spread toxic sludge multiplying Defendants' liability with Plaintiff operating under the injury and bad will of Defendants' toxic defamation cutting gains and increasing permanency of Damages.

by Defendants.   Mitigation of growth to damages (locking in prevention of cetain otherwise permanent damages by such as) ¶ 1103 Damages.  Plaintiff's efforts to mitigation damages have been tremendous and come at considerable price to bear net benefit of reducing damages. Pseudonymization of Plaintiff with the name "L. Davies" named for a civil rights hero Plaintiff knew somewhat, and admired, in Plaintiff's youth: would have considerable mitigation benefit.

531.    *e* component factor of light on private matters that would not be so lit, *ee* persecution, *eee* alienation.   Dark moments particularly reflected in two exemplary expressions of 2015.

532.    *f* interpersonal relations, *ff* marriage, *fff*, anti-miscegenation, *ffff* apprehension caused by Defendants' duress upon Plaintiff, *g* shock of police corruption, *gg* advanced municipal corruption,

533.    (*H*) Aggravations of Injuries Overview (with identifications of phase steps).  The aggravations of injuries compounded them and as Defendants' more-than-malicious grew with increasingly malicious furthering assaults, outrage, et cetera. *h* [change to "h"]aggravations of prior Defendants' injuring of Plaintiff, *hh* aggravation of acuity to roll ahead injury, *hhh* litigation abuse aggravations

534.    (J) humiliation with reference of public service background and election to Officiate Ethics: *j* humiliation, *jj* humiliation in having to conceal petition and mandatory activities to mitigate damages, *jjj* religious relation, *jjjj* exposure of private matters and life.  Humiliation of facial injury from 8 October 2014 (lasted for several days or a week) finger nail scratching after the tearing of the check with fingers inside Plaintiff's mouth.

535.   (*K*) process of litigating takes a toll—though almost insignificant compared to necessary relief of the process—factor of defendants' continuing injuring.   *k* continuing until non-obstruction of vindication, *kk* permanent,

536.   *l* loss of liberty, *ll* loss of liberty regarding effects, *lll* life destruction of Plaintiff by Defendants, *llll* occupation of time,

537.   *m* notable confidential aspect(s), *mm* cannot be under

538.   (*N*) Damages massively greater without injunctive relief as most professional activities and alternative professional activities; life plans, et cetera of Plaintiff are vastly impacted as may be discussed under the mutual protective order, et cetera. General operating presumption of Relief bringing profit to many of Plaintiff's ongoing mitigation effects.   *n* injuries that will increase without equitable remedy, *nn* injuries from which damages are currently suspended (or believed to be suspended) from increase or accrual by Plaintiff's mitigation efforts that need equitable follow-through to mitigate damages, *nnn* injury increasing until relief cures injury,

539.   (*O*) Quite a number of sleepless nights at, after, or before certain Defendant deliberately inflicted vexations. *o* horror-ourtrage-shock, *oo* kafka-esque tyranny, *ooo* mortal hazarding,

540.   *p* political: political professionals like never arrested, charged, or mirandized— Plaintiff has never been any of those—as Defendants should concede and is the position Plaintiff needs to maintain to mitigate damages (hence it is important to minimize aggravation ((*h*[]) the stigmatizing injury in the course of the Proceeding until , *pp* political services, *ppp* 2016 MN CD2.  Plaintiff has been

discussed in publication and outside of publication as a candidate for a certain office of which Plaintiff has certain rapport concerning as is private.[149]  Such injury must be repaired, Plaintiff may well be in Congress now were it not for Defendants' injuring of Plaintiff depriving him of Constitutionally protected rights, liberties, and interests [].  Plaintiff had seven figures in pledged backing in a well-suited district, but had to withdraw given Defendants' injuring of Plaintiff and the latent, concrete-range of ramifications from Defendants' injuring of Plaintiff, which would have been significantly beyond remedy, i.e. public exposure's magnification of Defendants' defamation-injuries to Plaintiff prohibited receipt of donations and campaign activities as ongoing seizure, obligations to mitigate costs and other consequences of Defendants' injury and tort against Platintiff

541.    *q* financial fiduciary, *qq* lost credential development

542.    *r* reputation, *rr* liberty in reputation, *rrr* false light aspect of defamation accruals of injury [consider].  Defamation is a claim which obtains more than those damages which are most precisely claimed by tort action in New York in both libel and slander: defamation tort particularly considers cost to repair reputational injury upon establishing stigma-plus.  Plaintiff will have situations, particularly in political, organizational leadership, and public relations activities of Plaintiff set to increase, where Defendants defamation will be regurgitated and have to be redressed, this will cause pain and at times impact activities adversely and otherwise create need for expenditures to inoculate and countermand the

---

[149] Details of such are to be discussed under measure of FRCiP #26(c)

defamation with corrective information, which is immensely expensive to be effective. Need and impact of immediate relief and ¶ 1101 Concession and Commendation [privacy, protective order, adjudication schedule qua relief]Damages mitigated by mutual protective order. reputation repair damages with anticipation the inevitable regurgitations of Defendants' defamations against

543. (*S*) Familial with full injunctive or consented relief or without: *s* familial duties, familial strain, missed rapport,

544. *t* apprehension of bodily harm, *tt* corporal integrity violation,

545. *u, uu , uuu ,*

546. *w* extortion threat (duress, coercion), *ww* defamation threat, *www* tyrannical defamation, *wwww* fear of supplemental recording,

547. *x* social network injuries, *xx* burned relationships;

548. *y* intergrity shading (attempting to portend doubt), *yy* googleability,

549. *z* petition retaliation (hole, solitatry, gaging)   Plaintiff attempted to seek out assistance to obtain representation, Plaintiff already had an attorney at the time resolving some negotiations (which were trashed by Defendants' injuring of Plaintiff and Plaintiff had to leave town to survive, was professionally immobilized (sufficiently, simply on the basis of Plaintiff's need to mitigate damages).  That the Defendants were a corrupt municipality gaming the system and that the facts could not be construed other than involving massive and horrible corruption intimidated all attorney's until Harvitz agreed to represent upon the IAB identification that Defendant Brown violated

600.    Claims are stated in the foregoing series of paragraphs.  Plaintiff recently added to the CoA the distinguishing [150] CoA at ¶ 153-155 regarding diversity of municipality liability basis for constitutional-based relief pertaining to the compensatory portion: such is thought to allow more specific citation of liability bases: policy, policymaker, or adoption as policy, respectively.  Most statements of municipal liability occur across the following paragraphs where the tort is generally stated.  The structure[151] of the foregoing paragraphs generally seeks to consolidate statement of Claims while allowing identification or descriptions regarding the meeting of CoA and Counts; furthermore, discussion of the litigation can use the system for descriptive pinpoint reference amid the many Counts of the highly multifarious Action.    Injuries are, in the course of statements, pointed out, to some degree, with the italicized English letters as introduced and detailed at the Injuries paragraphs, supra.  No tort for which Plaintiff asserts Defendant liabilities of various types (joint, facility, furtherance, et cetera passim) has or had any immunity, privilege, defensibility, protectability, et cetera.

601.    Claims are being stated in like-sort Claims paragraphs as opposed to the paragraph per Claim approach of DE # 70 (there is still some transition), which

[150] Like CoA[X]: CoA[Θ]53-55 can be compared to the grammatical notion of a "helping" verb compared to the primary verb of a sentence.

[151] CoA are always identified with # (based on ¶ minus 100: i.e. ¶ 103= CoA # 3) so the Attic (Hellenic) letters can be ignored if a reader were to find such designations not useful—nonetheless the CoA # always abuts a bracketed Attic letter, i.e [Δ]13 = libel (libel is the fewest-letter CoA name—generally the combination of Attic with # gives considerable specificity (exact reference to statement of CoA) and brevity—while generally describing aspect of the CoA (i.e. [Δ] are the defamation pair).  Dashes between CoA # (as in the tags at the end of Count statements) are only used to include all consecutive of the like type.

allows for maximized consolidation in a manner which should transition well into planning for adjudication—although many Claims are fully recoverable via determination of law.  The varieties of legal-category of the Cause of Action (CoA—abbreviation use defined at ¶ 2, supra) are distinguished precisely by the CoA # to the immediate right of each (square bracketed Attic letter—which represent larger categories of CoA (e.g. Fourth Amendment CoA are all "[Z]"— see ¶ 99, supra).  Claim groupings are focused to consolidate similar Claims into the same and adjacent paragraphs; this does not mean that groups of consecutive or related Counts raise Claims that are found stated together: the sorting of claim-groups moreso brings similar legal-categories of Cause of Action together—or certain set of liability configurations with a legal category.  All Claims are identified within the pinpoint accuracy of the number corresponding to the Count and legal-category of Cause of Action, upon the finding of the Count—the legal-category to which it applies recovers a Claim: precision of the Claim is established in Many of supra-identified categories of Cause of Action ably recover on the same Counts leading to a great multiplicity of overlap in the means of recovery of which it is appropriate to assert in the instant Instrument: the statement of Claims infra aims to simply identify overlap minizing the length of the section and the number of paragraphs it contains.

602.    The foregoing series of Claims paragraphs are organized generally into clusters which tend to go through certain groups of Counts identifying or discussing all or most of the Claims found by such Counts: (¶ 603 (nature of Outrage within the

Claims, demonstrated); ¶ 604 (Acute Outrages Stated Multifariously[152]); ¶ 605 (General overview of Municipality Liability Claims

603. The phrases "causing outrage" and "intentional infliction of mental anguish" very well describe much of Defendants' injuring of Plaintiff. Indeed, Outrage ([Ω]6) is vehicle for the large part of damages recovery, by itself.[153] Defendants' corruption and racketeering operations, injuring of Plaintiff, obstructions of the instant Proceeding, et cetera, are all shocking-of-the-conscience to meet standards for punitive damages against municipal employes and for Outrage recovery.

604. Plaintiff's enduring the many tortious actions of Ms. Obi with Defendants caused by Defendants' corruption and racketeering—were and are inexplicably astonighingly (without understanding that Ms. Obi's actions were performed out of and contingent upon Ms. Obi's building towards use of the corruption and racketeering posse commitatus—adopted and furthered by the same, particularly or with awareness and intent to inflict the same vein of further and furthering injury) outrageous—and specifically designed to inflict mental anguish (*O*): e.g choking, tongue yanking, head bashing, cheek tearing and scratching, and strangulation[154] as well as dangerously chasing and saying Plaintiff will be

---

[152] Curved brackets identify all simultaneously applicable CoA (the end of the paragraph contains elaborations, as for certain of the CoA)

[153] however, the Second Circuit affirms the widely-recognized principle that Outrage recovery come second to another CoA: hence, on the schedule of recovery (¶ 1111)—Outrage is widely applicable, but often the last prioritized for each recovery to which it applies

[154] {Outrageous 8 October 2014 Joint Acute Batteries [P]37-38 [B]2 [Λ]49 [E]8-9 [Z]19 [Θ]40-43,53-55 [M]3 [N]44 [Π]12 [Σ]33 [Y]25-27 [X]45 : respectively, , ,

killed.[155]  The Three Midnight Bed Attacks of Plaintiff specifically sought to attempt to rouse Plaintiff into an uproar, fume, or rage to get such on audio-data—the demonstrated result was Plaintiff's non-violent, but concerted and determined response that Ms. Obi must stop[156]; such major disruption of Plaintiff's life was intended for such misappropriation to be backed by posse commitatus destruction of Plaintiff's life and threatened for Ms. Obi's unlawful enrichment using the misappropriated material and extortion and harassment of Plaintiff).  Defendants and joint participants have no, defenses, privileges, or immunities for causing such and furthering (Defendants variously and continue to further Defendant caused (and performed with) acute joint outrages) and aggravating (Defendants deliberate have and continue to aggravate Plaintiff's injuries from these acute Outrages) injuries from such early-after-accruing-involvement Acute Joint Outrages, Petition Retaliations ([P]37-38), Tort Caused by Municipal Unconstitutionality ([Θ] 40-43,53-55), Failings of Constitutional Duties to Maintain Integral and Non-Consitutionally-Violative and Prone to Violation Data Resulting in the Racketeering ([Σ]33), and as is otherwise clear or inherent from the Footnoted applications of the CoA to the Counts as bracketed.  Outrage is well established as a continuing tort, Defendants' infractions continue (*K*) under the causes, in the same veins, and for the same injuring of Plaintiff—and Plaintiff continues to accrue injury from the committed tort awaiting vindication suffering

---

[155] {Outrageous 1-8 October 2014 Joint Acute Menacings without Batteries [P]37-38 [Ω]6 [Λ]49-52 [M]3 [Θ]40-43,53-55 [X]45 [Y]25-28,30 [Π]12,17-18 [N]44 [Σ]33: }
[156] {Outrageous Trio of Midnight Bed Attacks [P]37-38 [Ω]6 [M]3 [Θ]40-43,53-55 [X]45 [Y]25-30 [Π]12,17-18 [N]44 [Σ]33 [T]4: }

humiliation, et cetera (*J*). [Ultimate Count, briefing regarding kafka-esque-ness, and frivolous]

605. Municipal liabilities arise from most of Defendants' tort,[157] common law CoA recover the compensatory under respondeat superior: such is generally scheduled for the recoveries (¶ 1111). Plaintiff's recollection of Monroe v. Pape is that even that Decision did anticipate potential municipal involvement that even its standards would approve municipal damages—such that Plaintiff may, in addition to the Monell suite, bring valuable discussion of law that, in terms of case architecture, is beside Monell to a degree worth observing in addition to rests on the Monell suite. This general introductory paragraph regarding Claims of Municipal liability discusses various general and quitessential aspects of the Action's municipal liability Claims. Within the instant iteration of the Complaint, or Fourth Amended Complaint. Injunctive Remedies for the Reform of Defendants (listed at ¶¶ 1150 et sequent, infra) considerably inform equitable Claims against the municipality regarding the Counts in sum.

606. Municipally-chargeable damages arising from KCDA tort (facilitation, non-prosecutorial furtherance, and unconstitutional policies regarding Defendants' injuring of Plaintiff) The facilitation Claims described in the prologue (¶¶ ) are inherently municipal as is otherwise established passim—the KCDA as municipal person or body cannot stand ready to further, protect, and effectively adopt such

---

[157] i.e. most of the Counts specify particular Defendant tort from which Claims against the Defendant Corporation are reached given the municipal liability inherent (from the principles or elaborated municipal corruption context discussed in the prologue (¶¶ 3-80) or as applies from the nature municipal liability tagged, specified, or detailed) in Plaintiff's description.

corruption as police sex bribery so that police sex bribery can confidently operate and continue operating.[158]  In addition to the municipality rightly having the compensatory portion under the proximate quarter of liability.  The furtherance (i.e. *furtherance array*) non-prosecutorial or clearly without jurisdiction applicable to KCDA Defendants (e.g. Barosi) likewise is municipal under the described nature of the corruption orgainzation and racketeering by which such furtherance was conducted.  KCDA policies regarding weakness of organization, systems, failures to supervise, failure to train, failures to hire, failures to discipline: regarding tort upon the Admission of Brady violation obstruction of ¶ 27; the tort of aiding police in obstructing ¶ 26; the tort of aiding police in threatening and attempting to gag Plaintiff; the tort of aiding police in the obstructing of Plaintiff's constitutionally-protected participation; failures to intervene, investigate, ; non-participation (in and protection of persons from) fair trial violations and false and fabricated pseudo-evidence;

607.  Municipal liabilities arising from IAB and police Administration tort

608.  Municipal liabilities arising from 81st Precinct tort

609.  Municipal liabilities arising from CCRB tort

610.  The foregoing three paragraphs discuss mu from the [deliberate unconstitutional furtherance, particularly coordinated support for 7 May 2015]], dysfuncion, failures to traun, supervise, ] [municipality as racketeering person] [Θ] [Y]

---

[158] with various chits traded between racketeers and collected from outside such as attorneys wanting Admitted pay for play quid-pro-quo

611. Retaliation claim-group states most of the Action as Claims of both First Amendment and Substantive Due Process types (), [Cause does not need Counts stated as retaliation, it is sufficient to show the retaliation and then furtherance of such for the purpose to Defendants of Defendants thinking Defendants' corruption wins and day and dominated the corruption and racketeering opponent] [Reference ¶ [2] re: Petition]

[Configure Lozman applicability with reference to notice obvious re: qual. imm. [fact that we have a transparently known retaliation (retaliation for reporting the crimes of a racketeering participant to police ahead of report to a judge upon the report of the police to the judge concerning the ¶ 27 witness of the crimes of the racketeering participant)] [quality of transparent distinction between constitutionally operating police and racketeering police appearing off-duty (but prentending normal duty) (pretending to not be acquintated with the racketeering participant) (fabricating cause to have appeared after the fact) (obstructing the evidence of police witnesses in order to make a physically impossible, otherwise nonesenical and beyond belief story Defendants knew to be opposite of the truth even if due to the physical impossibilities and other nonsense the ) (swore to the existence of evidence Defendants knew would demonstrate its own fraudulent nature if presented and therefore Defendants maintained the assetion and never took the slightest action to prepare the material to a court's access)]]

[Paragraph aggregate on Claims for Pre-Oct 8][Morning and afternoon idem][Early evening [Irony to Defendants' pilling on furtherance and then

arguing Counts have so greatly amounted as to suggest [they purport] relief] [P] [Θ] [Y]

612.    R.I.C.O. 18 U.S.C. § 1964 raise three general types of Claims under the proscription of § 1962 (b), (c), & (d), respectively, upon two Counts each: (b)—Counts XCI & XCIV (Claim ## 1.91 & 1.94); (c)—Counts XCII & XCV (Claim ## 1.92 & 1.95); (d)—Counts XCIII & XCVI (Claim ## 1.93 & 1.96): all Claims reach the Civil R.I.C.O. damages.  The distinction between the former and latter of each of the three pairs of Claims is that the operating racketeering-enterprise-element[159] of the Claims is, in the former of each pair, the full (or any significant part of the full) enterprise and, in the latter each of the pairs of Claims, the enterprise-element is the more-focused police-sex-bribery[160]; the distinction directly accords from the differences of the Counts reaching the respective Claims.  Furtherance, which is, generally, not just carrying out an item of the furtherance array to injure Plaintiff, but for the sake of maintaining the operability of the racketeering and corruption operations system is coincides with statement of CoA[A](b)[161] under § 1962 (b); Defendants' commissions of the furtherance array item to injure Plaintiff that injure Plaintiff correspond CoA[A]   under

---

[159] (see Footnote [] or ¶ [])

[160] "enterprise-within-the-enterprise (see ¶ or Footnote [])" the trail of overt furtherances all the way up to the Comissioners' and municipal management furtherances and diversity of bureaus sufficient for the establishment of the entrenchment of that known in law as intracorporate conspiracy quite easily establishes the full (at least sufficiently) with considerable evaluation after the more, bite-size identification of enterprise as Plaintiff-involving Defendants'-racketeering-enterprise participant, Ms. Obi declared (see Footnote 6).

[161] All statements of § 1962 (b) commissions are simultaneously CoA[Y]27 (actionable in the latter for additional punitive damages with particular respect the offense beyond the statutory provision for harm for racketeering—e.g. punishment under different grounds such as

§ 1962 (c)[162];CoA[A](c) CoA[A](d) § 1962 (d) somewhat resembles the *facility* Claims. Claim ## 1.91 & 1.94 is applied to Defendants and for which liability is plural and to be apportioned sometime after discovery by final adjudication of such liability. CoA[A](d)§ 1962 (d) requirement that individual Defendants are subject to liability under Civil R.I.C.O. when the commission of two predicate acts are identified as being within the mens rea of the decided participator (each individual Defendant implicated under the Civil R.I.C.O. legal-category of Cause of Action)].

613.    Invasions & Trespasses (), [Privacy[Harassment], Theft, Property Destruction, [Grouping in reference to corrdination with particular damages] [Paragraph on chattel destructions and invasions of chattel [Defendant Brown] [Def. Brown and Doe Defendants running the instant Brooklyn police sex bribery racket within the larger racket] [furtherances by ][facility by ][]] [Paragraph on the Action overall as invasion and trespass of privacy via Gallela (Harvitz could be under Gallela)] [paragraph on conversion from withholding discovery production to thieving chattels] [[here, or relocate ti ea Claim:] tortious interference [Iota11] with economic advantage [Def Brown was aware of Plaintiff's having real estate damages for Def Brown's actions prior to Def Brown's early evening and subsequent injuries]] [Harassment [Pi17]under Galella as a single, comprehensive Claim] [reference to certain invasions asserted with search Claims, infra]

[furtherance of theft, harassment qua privacy, destruction of chattels Claims implicating municipal liability in the racketeering municipal

---

[162] CoA[Γ] and CoA[E]10] are *furtherance array* commissions are (with the general establishment of Civil R.I.C.O.) CoA[A](c) (i.e. § 1962 (c)) Claims.

custom (and distributing significant portion of individual liability apart from general appropriation of individual Defendants under conspiracy law): [obstructing November Hearing and prosecution of Ms. Obi] [obstructing Plaintiff's ability to collect evidence of ¶ 27] [false assertions of audio evidence]] [aggravations of theft, harassment qua privacy, destruction of chattels liability Claims [New Court endangering] [destruction of lease and stay-away] [tyrannical procedural malice described as life-threatening by attorney friend as descriptive of real threat aggravating bodily harm injury including mental anguish from bodily harm] [T] [K]

• Claim # 4.01 CoA[T] Trespass  upon Count [] . Tortious intrusion into the private communication of Plaintiff by accessing Plaintiff's phone and then the subsequent tort of commenting about it further asserting the violation of Plaintiff property in that gloating about a crime indicates greater transgression and greater assertion of threat of transgression.          Claim # 4.02 CoA[T] Trespass  upon Count [] .  Defendants' causing, enabling, deputizing Ms. Obi's tortious and threatening entry of Plaintiff's private space against Plaintiff's explicit and immediately prior          Claim # 4.03 CoA[T] Trespass  upon Count [] . Ms. Obi's racketeering-State-authorized submerging of Plaintiff's laptop in water to destroy it, which hobbled Plaintiff's professional capabilities amid Defendants' destruction of Plaintiff's life and business.     [From ¶ 104:] Personalty and personal-occupation-of-real estate trespassed include chattles, real estate lease,

and surety and contracts [DE        invasions  pertaining  to  leased [163] land,

violation of surety, destruction of chattels, interference of chattels, invasion of

chattels, invasions of physical real estate interest, interfence with contract [move

contract to economic advantage] [Common law version of Fourth Amendment

"Search" Claims (based in what specifics can be found and by analogy to seizure

Claims under common law of New York tracking Fourth Amendment)].

(also including violation of surety): covering a variety of invasions of

personalty  and  real  estate  other  than  conversion—[NY  has  broader  than

Restatement definition of trespasses of which "conversion" is inclusive?]: most

other invasions of personalty and real estate other than conversion are, as in the

case of conversion tort reached by the immediately infra, conversion—may be

preferred at law to be reached by another tort cause of action: "trespasses" have a

broad meaning in tort and much meaning comes from invasions of land—such

discussions are relevant to the entire sorting of the tort synopsis, should such be

necessary: such pertains to some central issues should certain fact finding not be

avoided  by  Defendant  concession,  et  cetera.  Trespassing  also  includes

Defendants' attempting to spoliate materials of which Plaintiff has right of

receipt.

---

[163] Plaintiff was award presumptive lease entitlement as bargain with landlord's agent
ahead of review-of-lease-before-signing-of-lease and lease-signing: both of which having
not yet occurred (Plaintiff was invited to occupy the space under an effectively temporary
arrangement for that amount of time as Plaintiff should have need offered upon
landlord's agent's assertion of context of Plaintiff's being a respectable real estate
professional certain to honor agreement and return favor equitably (see ¶ [BtoC]; cf. ¶
[BtoC] regarding Plaintiff's discussions with the landlord's agent of cooperations
regarding transactions of Brooklyn Brownstone Townhouses (see also thereupon
Quaterly transactions-based lost profits damages ¶ [])).

•       Ms. Obi's State-powered-and-caused invasion into Plaintiff's phone

without Plaintiff's permission, assent, consent, et cetera violating Plaintiff's

Claim # 5.02 CoA[K] Conversion upon Count [] .' stealing of $25 caused harm

far greater than $25 as such brazen demonstration of crime by Ms. Obi caused

immediate and broad insecurity and mental anguish.  Ms. Obi's State-sanctioned-

caused-and-followed-through brazen theft was a vicious crime in its circumstance

making the far greater effect the demonstration by Ms. Obi that with police

racketeering powers Ms. Obi would simply delight in crime against Plaintiff

rather than fearing consequences with imminent implications of Plaintiff's injury

to the integrity of Plaintiff and Plaintiff's property.

Claim # 5.03 CoA[K] Conversion qua misappropriation upon Count [] .

Misappropriations of Plaintiff's voice when Plaintiff had expectations of property

prior to Ms. Obi's three consecutive nights of vicious midnight bed invasions

which maliciously attempted aggravated circumstances to stage material more

useful to Ms. Obi's extortion and police sex bribery.

Claim # 5.04 CoA[K] Conversion qua misappropriation upon Count [] . Night 1

October 3rd, 2014.  Similar to Fourth Amendment CoA[Z] 21 #

Claim # 5.05 CoA[K] Conversion qua misappropriation upon Count [] .  Night 2

October 4th, 2014

Claim # 5.06 CoA[K] Conversion qua misappropriation upon Count [] .Night 3

October 5th; 2014

Claims ## 5.07- CoA[K] Conversion upon Counts [] .  Withholding that which

Plaintiff has the right to have produced with and without Defendant attempts to

falsify concerning non-production. Defendants' injurious   upon Plaintiff sound broadly in Remedies.   [figure whether to use an accumulating Count or specify each non-production as an aggregation of Claims in the instant paragraph]

[Clipped from ¶ 105:] There are at least five kinds of Defendant conversions against Plaintiff: misappropriation of audio and the tortious staging to procure such audio (this kind overlaps with Fourth Amendment seizure CoA[Z] stated at ¶ 121): there were three nights of such and one Count for all of the preceding of such.   A second type of conversion is Ms. Obi's thefts of Plaintiff's chattels (Claims ## 5.-5.). A third type of conversion is the taking of Plaintiff lease arraignment and with two months lost (the dislocation expenses of storage and travel are address at the Due Process violation implication the Liberty Right of Movement and Travel at ¶ 133); Plaintiff furthermore on top of being harassed by 81st Precinct police in moving out items was not able to entirely remove items causing loss akin to the subsequent moving loss of November 2017 out of the storage unit to which items were moved from 677 Quincy.   A fourth kind of conversion is Ms. Obi and Defendant continued tenure of   .as part of the same racketeering contract execution   Claims ## 5.10 et sequent CoA[K] Conversion upon Counts [] .   Defendants' injurious batteries upon Plaintiff sound broadly in Remedies.            Ms. Obi qua state actor did perform two distinct forms of conversion.   (I) Simple conversion of items during Plaintiff's removal/abduction (II) Misappropriation via duress and conceit for libelous extortion.   [Fourth Amendment misappropriation of recording where privacy is certainly expected]. Recordings possess considerable latent damages and are also recoverable under

the Fourth Amendment seizure (see Claim #  ). Defendants' attempts to substitute evidentiary material that must be produced to Plaintiff for spoliated substitutes of diminished value is a conversion by Defendants.               of non-conversionary trespass of chattel qua Ms. Obi's invasion of Plaintiff's phone about a week prior to October 8th, 2014 as a conversion—though per the restatement tort law generally may regard such not as conversion, but as another trespass of chattel— therefore while Plaintiff does not duplicate such Claim Plaintiff notes understanding of the potential cause to move such Claim from Cause of Action stated at ¶ 104 to the instant.

614. Defamation claim group states Claims most directly implicating damages for injury to Plaintiff's reputation: the one compensatory relief for these injuries described at ¶ [] should be based on the cost of the curative publicity for injury already impacted and the spread from the present impact including regurgitations of Defendants' libelous defamation sufficient to at least neutralize damages (Plaintiff needs to have power to deal with problems generated by Defendants for the rest of Plaintiff's life—though most injuring can be repaired. Defamation claims raise declaratory relief to mitigate the continued spread and entrenchment of Defendants' libelous injuring of Plaintiff and to relieve the prospective of garguantuan permanent damages; some of Plaintiff's equitable relief accomplishes and empowers repair work compensatory damages (see ¶ []). The finding of most Counts for which defamation group Claims are reached reaches a set of Claims from five legal-categories of the Cause of Action: Libel ([Δ]13), Slander ([Δ]14), Liberty Interest in Reputation ([Λ]34), and Injury to Reputational

Property ([O]39); and Malicious State-Power Hotsile Disinformation ([Y]36) [Consider locating denial of vindication hearing procedure ([Σ]31)]. Claims range from forms of joint-state-action (independent of racketeering); forms of joint-state-racketeering; furthering, adopting, and endorsement the same joint-state-action (racketeering or not); malicious fabrications spoken and written designed to inflict mental anguish by being self-evidently maliciously fabricated to Plaintiff where Defendants deliberately inflated the malice of their defamation (essentially growing the maliciousness for the purpose of demonstrating to Plaintiff Defendants ability to wield such corrupt and racketeering—totally removed from constitutional procedure caused and designed by corrupt and racketeering Defendant police. [Claims concerning Ms. Obi making joint-action-statements] [Claims concerning Lambda and Sigma to Hecht][Claims concerning Defendants' first charging instruments [date]] [Claims concerning Defendants' second charging instruments [date]][Claims concerning implications of the conduct to which Defendants have instructed their attorneys] [Cost of counter publication greater than injury; punitive] [Racketeering organization [consider the substantive claim along these lines stated here—that [Upsilon] 36 Malicious State-Power Hostile Information can be put into a single or few Claims as opposed to the Defamation group stated per act in four or five species of recovery] [Some Counts reach the Lambda, Sigma, and Omicron without an act under common law defamation as the Claim is reached by the nature of the injury and not a defamatory act by Defendants; consider stating a group of, or most of, these Claims in a paragraph, here, to

remove the multiplicity from these, typically major Counts likely to reach a considerable variety of Claims.]

[Supplemental: suggesting the arrest of Ms. Obi was necessary assistance with horrid implications against Plaintiff for the purpose of obstructing—injurious fraud]                    [see Claims # 12 infra for material removed from ¶ 112 generally discussing preliminary matters to Defamation-group Claim statements] [Θ] [Y]

Causing and State action falsified recordings to landlord's agent [professional implications regarding townhouses]

Causing and State action calumnies to V & B powered with otherwise bizarre force of racketeering [mental anguish]

Causing and State action recursive effect of conceit in Sgt. Brown's reliance on falsehoods Sgt. Brown generated in making the most relevant of the police sex bribery contracts [impact against Sgt. Brown possible affirmation of being deceived]

Causing and State action fabricated police records by ¶ 28

Causing and State action slander and receipt of slander upon appearance and Terry-seizing of Plaintiff by C & C

Causing and State action fabricated recording for extortion played upon idem

Causing and State action slander before whole ¶ 28 and its reception [mental anguish]

Causing and State action communication of fabrications to KCDA

Causing and State action KCDA communications to NYS and public

Causing and State action Scarcela libela [not implying certain Scarcela liability on instant Claim]

Causing and State action harassment [Barosi]

Causing and State action impact on protected business negotiation [Filosa]

Causing and State action Sgt. Brown as if not present obstruction [mental anguish]

Causing and State action V & B obstruction falsehood [mental anguish]

Causing and State action Dec appearance slander

Causing and State action Midey libel [not implying certain Midey liability on instant Claim]

Causing and State action January appearance

Causing and State action Brazys derogation

Causing and State action February appearance

Causing and State action Barosi February

Causing and State action Manhattan precinct with female Sergeant [received and projected against Plaintiff]

Causing and State action KCDA to ¶ 22

Causing and State action 9-1-1 tampering

Causing and State action June receipt of false document [mental anguish of receipt]

Causing and State action Comissioner Bratton libel

Causing and State action international business ventures 2015

Causing and State action friends [losing communication, et cetera]

Causing and State action family

Causing and State action Septemeber appearance

Causing and State action October appearance

Causing and State action tampering received by ¶ 30

Causing and State action Rosello [mental anguish; fraud]

Causing and State action slander on CCRB tapes [4]

Causing and State action Butler falsehoods in reports

Causing and State action Butler falsehoods on tape

Causing and State action flagrant Tomsaello report

Causing and State action assertion of affray where Plaintiff was attacked

Causing and State action KHR

Causing and State action EPF

615.   that Plaintiff would steal, let alone rob)  upon Count []sounds broadly to the need for injunctive relief and seven figures of Defamation repair damages given the toxic nature of Defendants recurring Defamation.

that Plaintiff would wrongfully or forcefully take ) upon Count [] sounds broadly to the need for injunctive relief and seven figures of Defamation repair damages given the toxic nature of Defendants recurring Defamation.

. that Plaintiff would wrongfully or forcefully take)  upon Count. sounds broadly to the need for injunctive relief and seven figures of Defamation repair damages given the toxic nature of Defendants recurring Defamation.

repair damages given the toxic nature of Defendants recurring Defamation. Defendants

Malicious saying the falsehood that Plaintiff sought refugee in the bathrooms as a means of robbery when such is inherently contradictory of the statutes sounds broadly to the need for injunctive relief and seven figures of Defamation repair damages given the toxic nature of Defendants recurring Defamation.  Defendants

616.  Physical liberty claim group states a large concentration of the Claims that involve violations of bodily intergrity  ([B]2 & [H]18), violating-threats of violations of bodily integrity ([A]3), confinements violating freedom of movement and liberty of person ([Z]7& [Θ]33) implicating common law and constitutional rights to be free of and from these violations and deprivations. Liability is applied from the upon the finding of the claim-reaching Counts to individual Defendants in their personal and official capacities, individual Defendants on the basis of furtherance, individual Defendants on the basis of conspiracy law, the municipal Defendant based on acts, omissions, adoption, and furtherance of supervisors, and the municipal Defendant based on its unconstitutional policy, custom, and usage causing Plaintiff to subject to the deprivations, violations, harm, and injury.  The foregoing Claims sound upon many Counts under the legal-categories of the Casue of Action of Battery, Assault, Tortious Confinement, Unconstituional Confinement, Abuse of Force as Deprivation of Constitutional Procedure (including cuffing), [Abuse of Force in Seizing strictly to the Zeta Group including planning], Deprivation of Freedom of Movement without Constituional Procedure,  Violation of the right to bodily integrity without Constituional Procedure [Confinements, and Assault, Battery, Abuse of Force ][Planning Claim: Zeta abuse of force]

[Addresses lack of immunity, privilege, justification, defense, et cetera]

[Confinements confinement on bed [genitals], confining into downstairs bathroom threatening homicidal violation then and at opportunity, confining into upstairs bathroom threatening homicidal violation then and at opportunity,                    ] [Assaualts (Abuse of Force (certain one?)midnight bed attacks qua assault, initiation of contact on bed, straddle, confinement on bed [genitals], escalating hitting confined on bed, battery through door, mortal menace expressed at moment and ongoing, homicidal choke, tongue rip, suffocation in mouth, tear cheek, chase up stairs, battery through door upstairs, skull battery with weapon, continued battery after police arrival [scary super-derangement], battery wrists, crowding confinement at 81st, new court

] [Batteries (also Abuse of Force) initiation of contact on bed (## 2.1[][] & 18.1[][]), straddle, confinement on bed, escalating hitting confined on bed, battery through door, homicidal choke, tongue rip, suffocation in mouth, tear cheek, battery through door upstairs, skull battery with weapon, continued battery after police arrival, battery wrists, ] [punitive for attempted: intended harmful bodily contacts (contacts itself and contacts likely resultant (on street, et cetera) crack offer]

initiation of contact on bed, straddle, confinement on bed [genitals], escalating hitting confined on bed, battery through door, mortal menace, homicidal choke, tongue rip, suffocation in mouth, tear cheek, chase up stairs, battery through door upstairs, skull battery with weapon, continued battery after police arrival [scary super-derangement]; battery wrists [refraction of the

Fourth Amended Complaint        E.D. N.Y.  17CV4519        Page 214

search qua appearance under plan formula creating several plan-search-qua appearance Claims—the carrying out of such as attempt to trap phone for manipulation and fabrication of messages are Claims under ## 6, 7, 16, 17, 20/21, 22, 23, 24, 25, 37, 38 [partially released without phone qua  [intended harmful bodily contact] crack offer—such is wishing a poisoning] [PHYSICAL LIBERTY & CONFINEMENT 17 dates of staked confinement [Claim for global damages from Fourth Amendment force (even though to be actioned under NYS before IV Amendment the nature of injury described is the damages of Fourth Amendment force)—Claim derives from the Ultimate Count unless less one more specific is added--Claim][]] [battery—[tight wrist restraints not privileged under even mere "violation"]

[furtherance of batteries and assaults Claims implicating municipal liability in the racketeering municipal custom (and distributing significant portion of individual liability apart from general appropriation of individual Defendants under conspiracy law): [hiding Plaintiff's facial bruise] [obstructing prosecution of Ms. Obi] [partially released without phone qua (intended harmful bodily contact)] crack offer (duress of circumstances)] [obstructing Plaintiff's ability to collect evidence of ¶ 27] [false assertions of audio evidence]]

[aggravations of batteries and assaults liability Claims [New Court endangering] [destruction of lease and stay-away] [tyrannical procedural malice described as life-threatening by attorney friend as descriptive of real threat aggravating bodily harm injury including mental anguish from bodily harm] [all Gamma as obstructing the instant proceeding prolongs the accrual of damages

until recovery raising compounding and aggravations]

[furtherance confinement Claims implicating municipal liability in the racketeering municipal custom (and distributing significant portion of individual liability apart from general appropriation of individual Defendants under conspiracy law): [hiding Plaintiff's facial bruise] [obstructing prosecution of Ms. Obi] [partially released without phone qua (intended harmful bodily contact)] crack offer (duress of circumstances)] [obstructing Plaintiff's ability to collect evidence of ¶ 27] [false assertions of audio evidence]]

[aggravations of confinement liability Claims [New Court endangering] [destruction of lease and stay-away] [tyrannical procedural malice described as life-threatening by attorney friend as descriptive of real threat aggravating bodily harm injury including mental anguish from bodily harm] [all Gamma as obstructing the instant proceeding prolongs the accrual of damages until recovery raising compounding and aggravations]                    [Excessive      Force under PDP? (mirror Terebesi Claims)]                [] [Θ] [Y]

• Claim # 2.01 CoA[B] Battery upon any of the sufficient corrupt-facility-of-the-municipality-existing-before-September-2014-causing-Plaintiff-injuries Counts II through [] and [] or the before-October 8th 2014 Counts of liable acts which brought the police sex bribery Counts which are sufficiently-qua-liability causes of Plaintiff's having been battered and the aggravations of the batteries inflicted upon Plaintiff continuing: thus total relief from batteries and .  Defendants' injurious batteries upon Plaintiff sound broadly in Remedies.                Claims at ¶¶ [] address Defendants' furtherances of Defendants' causing harmful bodily

contacts upon Plaintiff and Defendants' aggravation of those injuries.

The sex-bribery racket, broader corruption racket, and Sgt. Brown are all State action causes of the batteries commited against Plaintiff by the person of Ms. Obi as a State actor and of C & C using metal confinement implements.   Ms. Obi's violence upon others which Plaintiff objected to causing Plaintiff to become a target of Ms. Obi's State-action tort,[164] which led to Plaintiff's necessary actions in defense of Plaintiff's rights, property, and safety—which Ms. Obi (powered by police sex bribery racketeering and Ms. Obi's contract with Sgt. Brown which encouraged, authorized, deputized, etcetera, Ms. Obi to criminality and violence that as any resultant trouble from Ms. Obi's exercise of such municipal racketeering benefits resulting in trouble would merely opportune contract execution (i.e. calling Sgt. Brown to defraud the situation and persecute Ms. Obi victim: contract terms Ms. Obi's precisely described as giving Ms. Obi municipal racketeering power to violence and crime, which Ms. Obi did exercise calling Sgt. Brown (as admitted by Defendants)—see Declaratory Judgment "B."   Ms. Obi described contract execution as being such as oral or anal sex [move to agency paragraph?]), i.e. communicating Ms. Obi's criminality to the landlord's agent which led to the scheduling of Ms. Obi's pending removal on October 9th 2014.   On October 8th 2014, Ms. Obi physically attacked Plaintiff for the first time including squeezing Ms. Obi's right hand around the front of Plaintiff's neck—grabbing Plaintiff's tongue, tearing inside and outside Plaintiff's

---

[164] as is discussed more particularly in the quintessence of such discussion at the First Amendment Retaliation statement of category of Cause of Action ¶ 137

right cheek,[165] bashing Plaintiff's head with Ms. Obi's fist and with a ceramic-like functionally-deadly-weapon, attempting to block Plaintiff's airway by Ms. Obi's inserting Ms. Obi's right hand down Plaintiff's mouth—these are among individual battery Claims against Defendants; Ms. Obi was performing an attack specifically unconstitutionally granted qua Ms. Obi's own words describing Ms. Obi's police sex bribery contract—Defendants follow through and furtherance specifically demonstrates the completion of the racketeering contract.   Counts containing findings reaching the battery Claims are organized chronologically and Claims follow the order of Counts by which each Claim is reached.   The injury of the Defendant-liable, Defendant-caused, State-action batteries, which does largely coincide with Abuse of Force (CoA[H]), continues as Defendants continue to aggravate Defendants' injuring of Plaintiff even with Defendants orders and racketeering organization for Corporate Counsel to abuse via litigation Plaintiff in a manner aggravating Plaintiff having been homicidally attacked for around thirty minutes from the time Ms. Obi committed the batteries of pushing Plaintiff onto Plaintiff's back on Plaintiff's bed with the immediately following battery of mounting and straddling Plaintiff while Plaintiff was thus pushed onto Plaintiff's back with various batteries following (events described [] in various affidavit et cetera as well as in more detail at the individual Counts and in the Background to Counts) until Ms. Obi was physically arrested for refusing police orders to cease beating at Plaintiff's skull: i.e. approximately from 13h45 to 14:17 on October 8th,

---

[165] Ms. Obi's fingernail did scratch across the outside of Plaintiff's cheek after Ms. Obi's hand ripped out of Plaintiff's mouth leaving a mark for days which several police noted observing.

2014: subsequent assaults, i.e. the tort, along with battery and other Defendants'
injuring of Plaintiff aggravate the injury of the batteries—including the pain and
humilitating restraints imposed by C&C as ¶ 28 and the success mortal hazard and
death threats Defendants have caused, effected, and acted against Plaintiff (

Claim # 2.02 CoA[B] Battery  upon Count [] . Ms. Obi striking Plaintiff when
Plaintiff was on his bed (October 8th, 2014; the initial contact between persons)

Ms. Obi pushing Plaintiff onto his back and proceeding to straddle Plaintiff

Ms. Obi grabbing and hitting Plaintiff as she straddled him;

Ms. Obi hitting Plaintiff through doorway downstairs

Ms. Obi choking Plaintiff by squeezing her own hand around the outside of
Plaintiff's neck;

Ms. Obi sticking Ms. Obi's fingers in Plaintiff's mouth and tearing Plaintiff's
right cheek away from Plaintiff's fact with fingers inside Plaintiff's mouth and
then scratching Mr. Obi's own finger nail into Plaintiff's lip and skin on the
outside of the same cheek leaving a bright red mark and bruise for day;

Ms. Obi sticking her hand inside Plaintiff's mouth to block Plaintiff's airway with
Ms. Obi's own fingers;

Ms. Obi hitting Plaintiff through doorway upstairs with potentially deadly weapon

Ms. Obi continuing to hit Plaintiff after police arrival and intervention;

tight cuffing by C & C

represents the aggregate bodily harm    Battery Cause of Action requires a
particular aggregate cause of action inclusive of several of the most severe acts

which are measure under the aggregate for their durable expression of the impact of such as the homicidal physical acts of instrumented bodily harm

Claim # 2.12 CoA[B] Battery  upon Count [] .  Defendants' injurious batteries upon Plaintiff sound broadly in Remedies. the continuing bodily harm and mental anguish from the same aggregate bodily harm encompassing a significant portion of the mental anguish harm to be accounted

• Assault Claims (Could a separate category or subcategory: liberty of sovereignty of bodily integrity and freedom from inflicted apprehension of bodily injury.  Municipal Defendant's deputizing via municipal racketeering operations such menacing threats of bodily harm as (Count [] ripping Plaintiff cheek off Plaintiff's face, et cetera—causing bruise at Plaintiff lips and cheek from Ms. Obi's deliberate cheek tearing trespass upon Plaintiff, injuring Plaintiff, bruise on Plaintiff's cheek and lip with abrasion lasted a considerable amount of time as an outward expression immediately isolating Plaintiff, isolation and alienation are well-noted legal considerations which are officially, by these words, invoked. Thus, the Tort of Assault is further established, although many assaults by multiple individual Defendants in that direct and indirect imposition upon Plaintiff of fear of bodily harm. In Defendants' fabrication Defendants choice of New Court, knowing dynamics (e.g. appearance factors as Plaintiff was as criminally, et alia, as racketeer activity to earn tradable credit within a police sex bribery ring involving many of Ms. Obi's close acquaintances et alia, seized likely to occur to the injury of Plaintiff, which by statistical surety , as is noted in litigation outside of 17CV4519 before the Courts of The Eastern District of New

York, was an Assault.  Batteries color the assault damages as in case of Ms. Obi's finger digging at Plaintiff's cheek the prospect of the tearing off of Plaintiff check is physically imposed in the bodily harm.  Assault Counts share relief by Outrage as Assaults of the instant action very much are recoverable by Outrage (i.e. Intentional Infliction of Mental Anguish) though assault-act-caused damages are preferred relief to outrage (see ¶ 106).

Claim # 3.03 CoA[M] Assault  upon Count [] .  Defendants' injurious assault upon Plaintiff sounds broadly in Remedies.

Defendants' October 8, 2014 causing and State-action trespass into Plaintiff's private room against Plaintiff's instructions without word of cause, condition, right, privilege, et cetera causing injurious assault upon Plaintiff sounding in Remedies.

Defendants' October 8, 2014  causing and State action batteries of Plaintiff raising the prospect of worse batteries qua injurious assault upon Plaintiff sounds broadly in Remedies.

Defendants' October 8, 2014 causing and State action shoving Plaintiff onto Plaintiff's back all the more raising the prospect of Defendant caused serious bodily harm (particularly given the off-defensive position) qua injurious assault upon Plaintiff sounding broadly in Remedies.

Defendants' October 8, 2014 causing and State action mounting of Plaintiff raising all the more the injurious assault upon Plaintiff sounding broadly in Remedies.

Defendants' October 8, 2014 causing and State action attacking Plaintiff through the bathroom doorway  carrying injurious assault upon Plaintiff sounding broadly in Remedies.

Defendants' October 8, 2014 causing and State action continuing to attack Plaintiff' through the doorway as if psychotically raising the injurious assault upon Plaintiff sounds broadly in Remedies.

Defendants' October 8, 2014 causing and State action tearing at Plaintiff's right cheek digging finger nail into Plaintiff's right cheek carrying injurious assault upon Plaintiff sounding broadly in Remedies

Defendants' October 8, 2014 causing and State action grabbing Plaintiff's right cheek from the inside of Plaintiff's mouth by inserting fingers into Plaintiff's mouth as if to tear open Plaintiff's cheek raising injurious assault upon Plaintiff sounding broadly in Remedies

Defendants' October 8, 2014 causing and State action grabbing Plaintiff's tongue as if to tear it out by hand placed into Plaintiff's mouth carrying injurious assault upon Plaintiff sounding broadly in Remedies.

Defendants' October 8, 2014 causing and State action imposition of suffocation upon Plaintiff by hand inserted into Plaintiff's mouth with the hand applied to block Plaintiff's airway carrying injurious assault upon Plaintiff sounding broadly in Remedies

Defendants' October 8, 2014 causing and State action homicidal choking of Plaintiff by hand-squeeze upon the front of Plaintiff's neck escalating the injurious assault infliction upon Plaintiff sounding broadly in Remedies.

Defendants' October 8, 2014 causing and State action chasing Plaintiff up the stairs where were Plaintiff extension of leg movement as Plaintiff's climbed the wooden stairs within reach Plaintiff could have died from violent yanking bring Plaintiff's head to impact with the wooden stairs raising Plaintiff's adrenaline response, again, and inflicting injurious assault upon Plaintiff sounding broadly in Remedies

Defendants' October 8, 2014 causing and State action attacking Plaintiff while Plaintiff, again, sought protection behind a door injurious assaults upon Plaintiff sound broadly in Remedies

Defendants' October 8, 2014 causing and State action hitting Plaintiff on the head with a potentially deadly object inflicting risk of serious head or brain or mortal injury upon Plaintiff sounding broadly in Remedies

Defendants' October 8, 2014 causing and State action hitting Plaintiff on the head with a fist injurious assaults upon Plaintiff sound broadly in Remedies

Defendants' October 8, 2014 causing and State action injurious assaults upon Plaintiff sound broadly in Remedies

Defendants' October 8, 2014 dangerous confinement risking and apparently raising the risk of serious bodily harm at the 81st Precinct sounding broadly in Remedies

Defendants' October 9, 2014 confining Plaintiff in the most dangerous "New Court" in downtown Brooklyn where Plaintiff was mortally threatened as Plaintiff has reported in confidential (privileged) material sounding broadly in Remedies. Defendants calculated likelihood of worse occurring to Plaintiff in respect of

Plaintiff's appearance including dress and Defendants' knowledge of the conditions in downtown Brooklyn considerably addressed in litigation.

Defendants' causing and Plaintiff to be  injurious assaults upon Plaintiff sound broadly in Remedies

Defendants' causing and Plaintiff to be  injurious assaults upon Plaintiff sound broadly in Remedies

Defendants' May 7th 2015 causing Plaintiff to be made to fear the "New Court" infliction, again, with the Kafka-esque retaliation injurious assaulting Plaintiff sounding broadly in Remedies

Defendants' June 2015 causing and Plaintiff to be  injurious assaults upon Plaintiff sound broadly in Remedies

617.   Fifth Amendment (),   [paragraph of the coloring of May 7th, 2015 to Fifth Amendment Claims and the Fifth Amendment violations' coloring of the tort generally] [Overall scope of fraudulent incrimination and violation of rigths of communication including represenations of communication] [Global injury under Fifth Amendment] [To suggest Plaintiff would be free to drop issues is to suggest Plaintiff could have excepted a false plea deal—Defendants are little less obstructing the vindicating process than Defendants were then—the constitutional operator at KCDA forcing the Brady confession and withdrawal—being the marked difference only making partial difference to the seizing and process violations withdrawing.] [NYC is not litigating to the constitution, but trying to get away with it, trying to evade and obstruction the music: Government should not tolerate such contrary-to-the-Constitution (criminal) approach from from this

municipal government being prima facie conducted in this Proceeding.]  [Θ] [Y] [Φ]  []

618.    Fourth Amendment Search-planning (Zeta[4/]20), Seizure-planning (Zeta7/21), Search (Zeta[4/]20), and Seizure Claims (Zeta7/21) [seizure    as    if    process (Zeta22/23), supra at ¶ []].

[Planning of Appearance-qua-Search Claims [Claims for] [Planning qua racketeering contract and planning qua preparations of execution of contract in conversation on October 8th]] [Planning of Seizure Claims [Planning qua racketeering contract and planning qua preparations of execution of contract in conversation on October 8th ] [Planning qua fraudulent referral [for malicious seizure at law]]] [Excessive force antecedent to seizure and referral to pseudo process executed up to October 9] [Claims pertaining to the over twenty-six hour removed seizure from October 8th to 9th]                [Move  following  to quasi-process  Claims  section  (there  asserting  Zeta21  Claims  on  court appearances: [Ten Malicious Assertions Claims] [Seven Malicious Assertions Claims] [Claims of appearance-search] [Three Seizure in Appearance Claims (Terry, Removing, Phone)] [Seizure under false evidentiary material still injuring and pret] [Excessive force to prime (as in a pump) or condition seizure]

619.    Fair Trial Right Violation claims-group.  Acts committed as racketeering and outright-systemic-corruption-protocol pursuant to the municipal racketeering and outright-systemic-corruption policy, usage, facility, practice, et cetera to cause deprivations of constitutional rights injuring Plaintiff are chargeable almost entirely to the municipality (not that the City does not extremely indemnify, even,

criminal police) given the municipality's racketeering and pervasive cause (varying by the particular Count in extent municipal-policy-caused and racketeering-and-corrupt-supervisor-therefore-municipally-caused), though contribution, like apportionment is analysis to be profited from much more upon sufficiently extensive investigatory discovery. [Perhaps even contemporary (supplemental) Counts directed toward the vindication hear regarding King's County court proceeding would be Counts against that hearing and therefor currently obstructions amounting to fair trial as well as under Gamma] [Global injury under Sixth] [including conversion of discovery [Fifth and Sixth dimensions to May 7th—clear absence of jurisdiction as a result of administrative racketeering protocol to use stock facts vehemently contrary to the facts.] [Distinction of prosecutorial Claims, et cetera to form all that should be established for proper approaches—reference to subsequently stated Monell Claims] [very threat of nuking Constitutional trial rights colored directly by Defendants] [Coercion of attorney] [Denying Plaintiff a phone call from the 81st] [Fabricating Paintiff being without cell service contract in order to increase considerably likely violently injurious Riker's Island holdover] [Fabricating a later-afternoon-time Sprint Report (evening one only fabricated to CCRB (such was not turned over to Plaintiff by ADA Middleton(would it not have been policy to collect evening 9-1-1 if there was any indication of its existence—would have been required production not overlooked (Defendants thought Plaintiff would hire an attorney with whom they expected might likely be able to strike a deal under Defendants' bluffing][ADA bluffing—unethical

practice, particularly over long period of time(distinguish from the concurrent fraud upon which false assertion which cannot be legitimately or entirely produced is like a bluff?]      [Maliciously editing against all evidentiary purpose the only-ever 9-1-1 tape to erase Plaintiff's assertions of being under attacked retreated into a bathroom] [                                              [locate evidence tampering under simply procedural due process (unless the Claim would be strictly under Fair Trial in CA2) adjacent and within the paragraph of pseudo-evidence and fair-trial-right-violation Claims] [Wholesale tyrannical abrogation of constitutional operations on parallel corruption track of procedure]      [Θ] [Υ] [Ψ] [Φ]

620.   Fourth Amendment as if legal process clear absence of jurisdiction substitution of witness] [paragraph on up to May 7th non-implicating-prosecutor-if-process-at-law] [paragraph on clear absence of jurisdiction of May 7th, 2015] [paragraph from May 7th non-implicating-prosecutor-if-process-at-law through December] [Continuing Seizures] [Process instruments have not been subject to due hearing for vindication from the instruments' vective] [process or quasi-process as under usurpation the process would have been presumed] [tyrannical defamation] [Facilitation Claims would only lie where cooperation of the administration of the Municipal Prosecutorial Authority (District or County Attorney) as part of the a pre-existing or systemic racketeering enterprise is pleaded and Attorneys demonstrate such misconduct as amounts to implausibily-not (unless under coercion—which Midey's conduct demonstrated free agency and conscious personal choice to share in culpability) sufficient to demonstrate execution of

facility—where the proven facility to be chosen for such execution [Claims against Zachary Carter] [injunctive Claims against attorney Defendants (irreparable harm)]                        aggravations of injuries by each recommission of process seizure [mostly listing of quite a variety of Claims (beta, mu, et cetera) by Counts of the re-commission of the as-if-process seizure, additionally, upon receipt of federal enactment of Complaint]  [Z] [Θ] [Y] []

621.    Eighth recovers compensatory element of the flagrancy of government-being-abused-to-abuse tort.   Alternatively recovered under Zeta 21-23, et cetera. Violation of penealogical interests provides basis for Claim.   Threshold for such claim being not a chance of actual adjudication given all-angles fraud and mortal coercion gives not a chance of the constitutionally required facility (scope and scale of fabrications wildly detached from prior iteration or CCRB naratives). Claim is built that the usurping scope of fraud and coercion of what was to be the judiciary's hearing by Defendants is so great that prosecutorial staff were wielding process without an adjudication to iniating it, with the Claim as supplementing the injury of October 9th, 2014 with all subsequently incurring in relation to process, the as-if-process actions (which by the nature of this important component of the actions' tyrannical-in-cause-relation-and-intended-harm unconstitutionality) is measured to assert the Claim.   and  Claim distinguishes the element of each affirm.  Liability is to strongly wrighted against Defendant Barosi, Defendant Bratton, The King's County District Attorney (no individual), Chief Inspector Henderson,  .  Under such an Eighth Amendment Claim there is no distinction of awaiting a conviction, as the prosecution depends on the plan for

gaging of the defendant and full perjury, and pseudo-evidence fabricated with intent to usurp the adjudication and prohibit access to the actual matters. [Alternate Fourth Amendment and Fourteenth Amendment (Procedural Due Process (or a combination of Due Process—perhaps simply state an alternate version as a combination also including Fifth and Sixth)) based versions] [based in New York Constitution's division of powers, separation of executive from judiciary of NY] [Θ] [Y]  [Λ] [Φ]

622.   42 U.S.C. § 1985 (2) (), ¶ 124 [should have broadly laid out basis—focus on state of the particular intended harm to the Proceeding and Defendatns' preemptive anticipation or current intentions] [reference the organization of obstructions under R.I.C.O. and perhaps include remainder not as well conforming as Title 18 infractions] [similarly (as in Pena v Deprisco 432 F.3d 98 (2005)  Tampering with evidentiary materially to interrupt a civil Claim is cognizable) under Theta Access to Courts—thus a set of Gamma Claims are also Access to Courts Claims and should be proximately stated][Def production indicates (as does plaintiff predating the sprint disc by a year,et cetera ) that Def only produced the faxe evening report to the ccrb (as found in the crrb production)]]   [Γ]24 [Θ] [Y]

623.   [Denial of Vindication Hearing Claims] [Obstructive intent is obvious from their being no appropriate gathered evidentiary material] [Move to defamation claim-group?] [Making hearing for vindication very difficult (requiring the Instant Action and immense [We can work the judge put Fudim in to scream futility obliquely abuse of pretrial practice obstruction] [Knowingly fraudulent from basis of desired objections rather than any possible mistake assertion of improper

conduct of Plaintiff to Ms. Obi (including much but not text message issue which was different error (¶ BtoC)) to leverage a fraudulent need to protect (stark issue of innocence defense (established by retreat and lack of facial retaliation)] [Θ] [Y] [Σ]

624.  Equal Protection (), [Claims need to be stated with reference to others] [Three types—consider 8, 9, 10 as tripartite class configuration—although it does simplify the statement of Claims to only have one of the three—though the Claim statement probably should be stated with a unique Claim # for each viable class type—i.e. three separate Claims as opposed to triple class-basis Claims. [tripartite nature of equal protection clause Claims from § 1985 (3) to class of one to class of police racketeering victims] [selective enforcement Claims] [selective prosecution Claims] [provide a list—provide the basic transformative gloss and then reference the Claim statements and provide the Eq.Pr. Claims ##] [Municipal liability Claim of exercised policy of antimiscegenation with reference to other litigation addressing municipal anti-miscegation such as the Manhattan case] [Duty of racketeering to protect and not racketeer raises Claims] [Θ] [Y] [E]

625.  Procedural Due Process: Liberate refusals and obstructions of due procedural process [Σ], [Focus on investigation, intervening, vindication obstruction] [process violations not absorbed] [paragraph of failure to investigate Claims] [paragraph of failure to intervene Claims] [paragraph of unconstitutional obstruction of vindication Claims (close relationship to 42 U.S.C. § 1985 (2))] [] [[(alternative—even if Defendants were to effect such a fraud on the court as to take away mere-confining seizure Claim for the early evening of ¶ 28) procedures

employed and selected by ¶ 28 beyond mere absolutely confining seizure "photographable offense" procedure] [central booking process] [new court process]]] [locate evidence tampering under simply procedural due process (unless the Claim would be strictly under Fair Trial in CA2) adjacent and within the paragraph of pseudo-evidence and fair-trial-right-violation Claims]

[Waters, failure to intervene: Waters was provided with sufficient duty to intervene, Waters may have been tortiously instructed to be a face available to contact forced to never raise issues—or may have been denied intevenetion expression (specifically or on-prior-occasion-or-occassions-with-universal-and-permanet-effect) in which case the Claim is against KCDA with more particularity than general operational circumstance to prohibit racketeering victims' finding means to reach constitutional operators, et cetera]

[Procedural Due Process version alongside the Fourth Amendment version of the Eighth Amendment usurpation injury Claim]  [Θ] [Y]

626. Negligence (), [Most negligence stated elsewhere alongside?  (i.e. this groups of Claims statements are quintessential or only formulated as ] [Emphasis on utility of punitive] [paragraph on Barosi administrative] [categories of negligence] [many Claims [look for models beyond statements based from Counts] [CCRB Board] [Inspector Butler and Inspector Butler's supervisor] [IAB Command Center staff or senior staff] [Θ] [Y] [N]

627. Substative Due Process (), [paragraphs for each of the six types of pure (consider whether there are other types of pure—though such are likely located in proximity with the related Claim)]  [noticed choice to operate vulnerable information

system] [Municipal liability for corruption operations design based on Sprint Reports; based on ] [Municipal liability for tyrannical corruption] [Municipal policy of turning the screws upon people subject to criminal process: who were previously known to be municipal victims who refuse to submit after initial intimidations, who come to be known to be victims, who are potentially witnesses to municipal racketeering or corruption, who would have an actionable claim under such as § 1983 if they were not forced into signing a waiver for release, : demonstrated by Defendants' inability to demonstrate in the case record that Defendants did come forward with exculpatory material or evidentiary material demonstrating the substance against the victims to be fraudulent or wholly malicious: particularly IAB, and particularly from KCDA were the Clayton Motion screeners were not involved or by the instigation of the KCDA Defendants, and particularly from the 81st Precinct—where such could not have happened so at the 81st Precinct where such not the very deliberate choice of the 81st Precinct Administrators including Scott Henderson and certain Lieutenants and others commanding the 81st Precinct] [Θ] [Y]

628. [Traditional] Monell (), [State with some encompassing-generality as case law allows for development upon discovery of organizational materials allowing for refinement of specificity pre-trial. CCRB. KCDA. Separate deliberate indifference in training and supervising regarding fabrication of pseudo-evidentiary material. Maintaining low standrads in records generally to increase threshold for judicial ntocie of plausibility of technical error as reasonable doubt against obstruction. [Operational corruption down to precinct at such extent

operationally and by such facility] [Sytemic attempts to minimize a victim's ability to register witness [likewise avoidance of witness testimony as systemic practice, though evidenced in avoidance of collections of evidentiary material, including from the eye-witness]] [administrative retaliation against police seen as cracks, weak spots, or vulnerabilities in blue-wall enforcement] [Θ] [Y] [Σ] [Λ]

629.   [Second Monnell Paragraph regarding the identification of each Claim against the municipality by individuals' particular tort or tort-group—for actions in official capacity. [KCDA Bellamy Claims; facility] [CCRB deliberately indifferent to policy to adequately monitor against supervisor and inspector operations in corrupt interest and unconstitionally tortious exercise of bias for police [Inspector Butler quite obviously projected checking dots of believed line-towing [Inspector Butler was guaranteed by CoD or Police Contacts that Interviews of Obi would not be produced]] [Barosi as master of dark arts for KCDA and effective operations manager for KCDA racketeering [carefully establish alternatives to Barosi being trigger puller re Harvitz, Ierardo, Gutman, et cetera racketeering, corruption, and obstruction committed]]                [facilitation: on such as proving capability and utility of Ierardo, et cetera et alia (Defendants' racketeering organization of others (to be identified beyond those identified) providing critical or integral racketeering capacity for the sufficiency of facility).] [Design to limit CCRB to "the areas of force, [below a certain threshold of] abuse of authority, discourtesy, and offensive language"[166] as if non-police are not qualified to such interview or gather information regarding more serious

---

[166] www1.nyc.gov/site/nypd/bureaus/investigative/internal-affairs.page

misconduct when it is the intent of police to control information regarding potential vulnerabilities to continued or beneficial racketeering and corruption operations] [Θ] [Y]

630. Organization Claims: KCDA information recoverability could particularly raise need of development of protections for vigorous prosecutions a la Imbler (just as always on body cameras require special analytics regarding the closer level of observation of police conduct—including consideration of time for instruction to adapt and that Officers have a degree of deference where a situation could have been reasonably and intergrally explained, but from a video a police member's conduct could be argued to cross lines (examinations of such vein both allow better training, supervision, hiring, et cetera; but can simultaneously create unfair ptifalls during the extended period of adapation)] [Argument to be examined that Police administration standards are permissibly not much better than (or markedly resembling (particularly in terms of corruption blue wall[167]) as dramatized in the film *Serpico* as was to illustrate the corruption addressed by the Knapp Comission or may otherwise be generally used to describe police corruption at that time for places such as the 81st Precinct out of potential discriminatory disposition as a municipal policy with regard to demographic factors (such as (as one Democratic politician suggested: much of Brooklyn in half non-legal-resident-or-citizen): i.e. police or municipal policy being argued that law and order has a defacto suspension of rights (a la suspension of habeus corpus in war) where the police administration characterizes the people as being from places of lesser law and

---

[167] Considerable recent litigation has addressed the corruption blue wall as being endemic at, particulary, the 81st Precinct.

order (or otherwise being viewed as appropriately addressed with a not-actually-by-the-book-approach loose with protections to persons in such localities[168])] [Θ] [Y]

631.  Ninth Amendment [deprivation of common law right (usurpation)]

Following is further Outrage Claims:

Defendants' causing and State action breaching Plaintiff's order of non-entry to approach and start hitting Plaintiff without verbal communication (clearly demonstrating desire for violence apart from the issue of Plaintiff's legitimate response to defend against extortion)

Defendants' causing and State action violent physical attack for the purpose of such.

Defendants' causing and State action shoving Plaintiff onto Plaintiff's back and then mounting Plaintiff straddled over the center of Plaintiff's body and proceeding to hit Plaintiff without privilege, defense, necessity, or function other than the violent and imposed-erotic against Plaintiff

Defendants' causing and State action repeated and multiply threatening Plaintiff's life abjectly without privilege, defense, or necessity

Defendants' causing and State action barraging Plaintiff's with batteries so that Plaintiff necessarily had to attempt to flee to the bathroom for protection

---

[168] Policies of personnel assignment to certain precincts with respect to intergrity related measures or rating.

Defendants' causing and State action violent battery through door against Plaintiff without privilege, defense, or necessity as clearly established from Plaintiff's words

Defendants' causing and State action stating to Plaintiff that Plaintiff would be murdered amid multifarious homicidal attacks against Plaintiff without privilege, defense, or necessity

Defendants' causing and State action horrific screaming at Plaintiff for the sake of deceiving listeners to attempt to injure Plaintiff's reputation

Defendants' causing and State action homicidal attempted choking of Plaintiff without privilege, defense, or necessity

Defendants' causing and State action attempting tearing of Plaintiff's tongue out of Plaintiff's mouth

Defendants' causing and State action homicidal attempted suffocation of Plaintiff without privilege, defense, or necessity

Defendants' causing and State action clawing Plaintinff's cheek leaving bright red mark lasting for days

Defendants' causing and State action deadly chase up the wooden staircase

Defendants' causing and State action attacking Plaintiff as Plaintiff attempted to retreat to the protection of a bathroom door

Defendants' causing and State action attempting to bash in Plaintiff's skull without privilege, defense, or necessity

Defendants' causing and State action faking return of security against owed return of misappropriated material in order to pretextual police sex bribery racketeering homicidal assault of Plaintiff

Defendants' causing and State action continuing to bash Plaintiff's head after constitutionally operating police arrived and after the constitutionally operating police ordered the cessation of the attack against Plaintiff

Defendants' fabricating horrible, shocking, and outrageous calumny against Plaintiff entirely fraudulent with respect to the record obtained in the constitutional police operations involved, adjacent, or proximate to ¶ 27

Defendants' fraudulent, racketeering, unconstitutional appearance in which Defendants rest their own casual identification for essentially all subsequent Defendant tort, et cetera, and its furtherance injuring Plaintiff sounding broadly for the need of the Remedies and the entirety of outrageous infliction of mental anguish damages as compensation from and punition against Defendants—as this Claim is both the direct municipal furtherance of the preceding police sex bribery racketeering outrages and the subsequent outrages upon it and furthering it including post-enactment-of-the-instant-Action Claims.

Defendants' attempting to establish pretext for removing seizure of Plaintiff by contriving to facilitate access to Plaintiff's phone in order to send text messages which would serve as pretext for the removing seizure of Plaintiff already commenced

Defendants' removing Plaintiff in restraints and falsely stating the nature of such action

Defendants' evading constitutional police operations to making racketeering arrangements on private cell phones sounding broadly for the need of the Remedy of remuneration for outrageous infliction of mental anguish damages as compensation from and punition against Defendants.

Defendants' stepping aside from Plaintiff during the would-be-Terry-seizure of Plaintiff by ¶ 28 for Sgt. Brown and Ms. Obi to begin or complete execution of the municipal police sex bribery racketeering contract recruited by the ring and then formed as specific felony attack of racketeering victim followed by false arrest and prosecution of idem racketeering victim selected at Ms. Obi's will under Sgt. Brown promise executed, et cetera, where Defendants plotted furtherance and attempted pretext involving making Plaintiff's phone available for sabotage

[Clipped from ¶ 106: ] Malicious abuse of the power of a State in a manner which the victim is certain to be aware that the abuse is known to be inflict as malicious abuse—e.g fabrication of events well-known to the victim is well suited for legal relief under tort action for Outrage; thus many Counts reach Outrage Claims—it is the broadest means of recovery in terms of the number of Counts by which its Claims reach part of Plaintiff's relief.  Though most Defendants-liable-acts, i.e. Counts, reach an Outrage Claim—only damages qua mental anguish are its focus thus making it incomplete—it is preferred at law where another tort, et cetera, relief function (i.e. another category of Cause of Action) completely reaches the relief that  particular Claims' surmizable-qua-mental-anguish damages that the other effect the relief, i.e. it is preferred widely at law for recovery eligible and

another function of recovery to be recovered with the other—e.g. where battery and outrage reach the same relief in final analysis—judgment should reflect the relief by battery as opposed to outrage: this subtle preference of law is of technical note and relates to the categorization of damages, relief, et cetera: the preference of law for relief that may supersede Outrage Claims does not reduce, negate, deflect, et cetera, relief by Outrage where recovery is not fulfilled by another category of Cause of Action; it is simply notable that while Outrage is the most prolific Cause of Action by number of Counts upon which it reaches Claims, in the final statement of how relief is reached—it may also be the most latent-yet-redundant given the preferences of law as such as the American Law Institute's Restatement series propounds.  Analysis for the outrageousness of Defendants' liable acts and Defendants intent to inflict mental anguish is vital even where the tort is at final judgment upon the Count recovered by another Claim, partly or wholly. All of Defendants' acts reaching Outrage Claims are concretely defined under the Second Circuits' continuing tort making the entire mass of Outrage Claims as fresh as the most recent—though were Mr. Stancati's complaint statements as Plaintiff found not to inherently call (though the Cause of Action of Outrage certainly does relate to Mr. Stancati's Complaint and even more so to Plaintiff's filings in King's County Court and other attempts, to bring the instant action (which did effectively function as a § 1983 Complaint save for identifying § 1983))) for the relief of intentional infliction of mental anguish—such was specifically joined par admitted Amendment by Plaintiff Prope Persona on Columbus Day 2018 with number supplemental Counts of Outrage having been

committed in 2018 including the Tomasello-Culkin and Ierardo Counts Plaintiff brings for Separated Trial at the nearest in-person appearance. If Outrage were preferred to supersede instead of to be supersede where multiple Cause of Action overlap in their reach of relief: Outrage would recover most of the pecuniary damages and likely all of the equitable relief—idem point illustrated by an impossible rhetorical voiding of the United States Constitution as Outrage is non-codicil, i.e. common law incorporated into New York law par decisions including Circuit Court.                    CoA [Ω]    This specifically applicable given the deliberate Kafkaesque-ness of Defendants' horrible techniques of intimidation and demonstrably-habitually defined methods of targeting maximum infliction of mental anguish or otherwise emotional distress. To Plaintiff, Defendants' Constitutional tort is best expressed with aspect of Eighth Amendment violation. The component of absence of jurisdiction and real authority in Defendants wielding of state power under Commissioner-and-IAB municipal police corruption custom and policy does involve . attempted tampering with 9-1-1 call (attempted as original is to be recovered; policy to superficially delete while an action is ongoing is unconstitutional). CoA [Ω]  .  Outrage conforms to Ms. Obi-State-action battery counts although Battery, par the historical and present nature of tort, reaches the capacity of mental anguish damages for idem Counts as a part of the continuum, i.e. continuing tort par Second Circuit stare decisis, of Outrage-Claim-reaching Counts—which include recent commissions including litigation abuse, CoA[Γ] obstruction and fraud seeking to inflict mental anguish upon Plaintiff and threaten Plaintiff's relief necessary to mitigate such damages

including bodily-harm. Claim # 6.0[] CoA[Ω]   Outrageous infliction of Mental Anguish upon Count [VC].  Defendants' sounding broadly for the need of the Remedy of remuneration for outrageous infliction of mental anguish damages as compensation from and punition against Defendants.

632.   Claim # 6U Sum of outrage-implicating Defendant liability acts and events reaches a mimimum of 9 MN USD in compensatory damages (excluding R.I.C.O.) including a 2 MN USD municipal corruption aggravation damages minimum adjudicated after the adjudication of the General Default.

OLD COMPLAINT NUMBERING:

633.   Claim # 1.1 CoA[A] (Civil R.I.C.O.) effectuates the immediate professional damages based on Plaintiff's quarter of transaction in process less ten percent as costs with one percent reasonable-quarterly increase ¶ 1101

634.   Claim # 1.2 CoA[A] Civil R.I.C.O.  brings statutory relief consisting of ¶¶ 77, 79-82. ¶ [] along with ¶¶ 77 & 79 do not need jury fact-finding—although continued activity could result in final supplements to ¶¶ 77 & 79.  The nature of Defendants' racketeering sounds broadly across other Remedy.

635.   Claim # 2.13 CoA[B] Battery  upon Count [] .  Defendants' injurious batteries upon Plaintiff sound broadly in Remedies.

636.   Claims ## 3.26-3.35 CoA[M] Assault upon Count [] .  Defendants' October 8, 2014 causing and State action injurious assaults upon Plaintiff sound broadly in Remedies

637.   Claims ## 3.36 et sequent  CoA[M] Assault upon Count [] .  Defendants' injurious assaults upon Plaintiff sound broadly in Remedies

638.   Claim # 3U CoA[M] Assault brought upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: sounds broadly in Remedies.

639.   Claim # 4.12 CoA[T] Trespass upon Count [] . Defendants' injurious trespass against Plaintiff sound broadly in Remedies.

640.   Claims ## 4.13 et sequent CoA[T] Trespass upon Count [] . Defendants' injurious trespasses and invasions upon and against Plaintiff sound broadly in Remedies.

641.   Claim # 4U CoA[T] Trespass brought upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: sounds broadly in Remedies.

642.   Claim # 7.01 CoA[Z] Tortious Confinement upon Count [] . [merge: seizure as-if; given usurpation of process hearing—punished as a chain of retaliatory arrests] As Defendants' usurped the Hearing to be adjudicated by The Honorable John Hect of October 9th, 2015, pertaining to Plaintiff's having been removingly-seized: for the Counts of Plaintiff's being confined as-if-under-process-of-law (which are reviewed under the delieberate legal-knowledge-of-attorney standard of probable cause regardless of the quasi (i.e. as-if) status regarding the process seizures of Plaintiff): Plaintiff asserts these Claims under [Zeta]7 as well as[169] [Zeta]23.                    Tortious Confinement Claims are brought upon Plaintiff's having to appear in King County court given the magnitude of the delieberate deficit of adjudication upon which process would have required and

---

[169] On such Counts are, naturally, also Zeta21 & Zeta22 which are the strictly-constitutionally-operating (Fourth Amendment) pair applicable only to the quasi-process.

Defendants' intent to usurp the adjudicatory power and act of The Honorable John Hecht.  While the minimum confinement might seem to be defined as New York Appellate decisions not allowing New York desk-appearance-tickets to be actionable as tortious confinements, this is not due to the facts that a person is restricted to appear and Terry at a given place, such exclusion is a built-in qualified immunity, i.e. that such a threshold of police activity should not be actionable: in the instant case—greater thresholds being far exceeded allows for inclusion of what might not otherwise be actionable without such context.

643.  Claim # 7.14 CoA[Z] Tortious Confinement upon Count []  .  Defendants' continuing injurious tortious confinement in Defendants' continuing to hold Plaintiff in refusing to acknowledge the false process against Plaintiff or in Defendants' obstruction of such means that Plaintiff is released from the necessity of mitigating the permanent damages Defendnatns' intend.  Plaintiff's being held mitigating continuing dmages and making otherwise permanent damages more easily and efficiently rememdiable by Defendants' continuing confinement reaches Plaintiff's Remedies.

644.  Claim # 7.15-7.30 CoA[Z] Tortious Confinement  upon Count []  .  Defendants ts upon broadly in Remedies                    Aggregate  of  confinements qua mandatory appearances as legal process was not validly established against Plaintiff such confinements fall short of being seizures at law, but merely have such appearance.

645.   Claim # 7.31-7.48 CoA[Z] Tortious Confinement  upon Count [] . Aggregate of Defendants tortious confinements of Plaintiff in between absolute confinements to Court

646.   Claim # 7.56 CoA[Z] Tortious Confinement  upon Count [] .  Defendants' injurious tortious confinement reach Plaintiff's Remedies.

647.   Claim # 7.57 CoA[Z] Tortious Confinement  upon Count [] .  Defendants pon Plaintiff soud broadly in Remedies.

648.   Claim # 7.58 CoA[Z] Tortious Confinement  upon Count [] .  Defendants'

649.   Claims ## 7.59 et sequent CoA[Z] Tortious Confinements upon Counts

650.   Claim # 7U CoA[Z] Tortious Confinement brought upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: sounds broadly in Remedies.

651.   [all or most counts listed in sequence from Claims ## 8.01 et sequent CoA[E] Anti-miscegenation Claims track the Claims otherwise stated which track to Sgt. Brown's actions starting on October 8th, 2014 when Sgt. Brown stated Sgt. Brown's ridicule of Plaintiff as being in Sgt. Brown's opinion a miscegenator. Claims reference other Pleading and Filing of Plaintiff.  Anti-misecegenatistic motive drove Sgt. Brown to greater endangerment of Plaintiff life on October 9th as a particular exemplum.

652.   Claims ## 8 or 9 Midnight in-bed attacks

653.   Claims ## 8 or 9 Assaults, batteries, and outrages of afternoon attack

654.   Claims ## 8 or 9 Appearance, seizure, removing seizure, means of confinement

655.  Claims ## 9 Tomasello

656.  Claims ## 9 IAB & CoD up to May 7th, 2015

657.  Claims ## 10 Coerced pseudo-arraingment

658.  Claims ## 10 Brady obstructions

659.  Claims ## 10 May 7th et sequent

660.  C;aims ## 9 IAB & CoD post May 7th, 2015

661.  Claims ## 8 Post-March 30 Obstructions [mixed with supra?]

662.  Claims ## 8 Post-Enactment

663.  Claims ## 9.01 et sequent CoA[E] Selective enforcement rather well tracks other Claims and the application of its function of Action rather easily applies to various liable action thus it is hereby enforced to fulfill Remedies.

664.  Claims ## 10.01 et sequent CoA[E] Selective misuse and abuse of State-privileged process (akin to selective prosecution claims—process was not validly invoked against Plaintiff and the use of the word prosecution for invalid actions rather has injuriously defamatory, et cetera, effect) rather well tracks other Claims and the application of its function of Action rather easily applies to various liable action thus it is hereby enforced to fulfill Remedies.

665.  Claims under the CoA[I] Intimidation (## 11.01 et sequent) include the racketeering threat that the networks of a certain as-of-2015 politician would be used to wield Defamation against Plaintiff to harm Plaintiff's business (¶ 80) as is asserted various in Plaintiff's prior and instant Pleading and Filing.

666.  Causing and State action

667. Claim # 12.01 CoA[Δ] Defamation  upon Count I references Claims ## 13.1, 14.1, 34.1, 39.1: such sum of Claims sound broadly to the need for injunctive relief and seven figures of Defamation repair damages given the toxic nature of Defendants' continuing and recurring Defamation.

668. [clipped from ¶ 112:] Defamation was a preauthorized (premeditated latently for any victim prior to Plaintiff's making any acquaintance of Ms. Obi or Sgt. Brown—the police sex bribery racket specifically included defamation of the victim in the general exercise of the contract; Ms. Obi was specifically assured fraudulent charges would be made against Ms. Obi's victim and such is quite obviously integrally necessary for the execution of such benefit exchanged to the racketeering-participating-women( i.e. false charges instensely applied against a victim delivers immunizing plea-release deals.  Thus Defamation was a pre-baked component of that which Defendants inflicted upon Plaintiff upon Ms. Obi's-joint-and-deputized-State-Action power to target Plaintiff for the victimization-racketeering-benefit: and defamation is a racketeering injury Plaintiff continues to suffer by Defendants.                Defamation is important given the stigma-more-than-plus nature of certain damages from the injurious false statements and that the power of Defamation Cause of action defamation—what if state defamation cause the whole process injury as opposed to coinciding with it qua stare decisis.  Stigma plus campaign, real estate manifold, particular 1031 clients that requested 2014-exchange property, cannot discuss such matter outside the protective order—but negotiations were deteriorating as plus, loss of business relationships, et cetera.  Defamations of Corporate Counsel may not be actionable,

but are still demonstration of continuation of the tort.  Defamation continuing in that publication in databases is continuing, defamatory materials that must be purged are still being accessed and such is sustained and are continuing to be reported by Defendants—thus also by consideration of such, the Defamation is continuing.  [establish stigma plus]      CoA [Δ]    The City of New York on 9 November 2015 declared for the record that the actual police evidence indicated that Ms. Obi was not a credible witness.  The defamatory and fraudulent, et cetera, State court process against Plaintiff was withdrawn as no claims against Plaintiff had evidentiary support after Brady evidence was acknowledged.  In response to the instant action, 17CV4519, the City management has re-Brady-ied the same actual police evidence it support as functional spoken-only municipal policy.  A pointed example of this deeply re-aggravating and compounding defamatory injury is with regard to Ms. Obi who homicidally attacked Plaintiff with the power, facilitation, authorization, and completion of the City on October 8th, 2014—to which Plaintiff responded with retreat and utter and entire non-violence instructing Ms. Obi to snap out of the psychotic-seeming homicidal behavior.  The City, following a criminal playbook of police operations, avoided more than an affirmation of a paragraph of fraudulent pseudo-evidence from Ms. Obi; thankfully, the CCRB captured at least something on record concerning at least something related to October 8th, 2014.  Ms. Obi has reported myriad contradictory statements based in pure fabrication and fiction concerning October 8th, 2014 and admitted Plaintiff has not lied about October 8th, 2014 and admitted several statements of hers were lies and then subsequently the City represented

them as fact to grievous defamatory injury to Plaintiff. The City assisted her fabrication of defamatory fraud against Plaintiff and currently asserts in via Corporation Counsel even though the City is aware such is defamatory injury against Plaintiff. The City is not immune from this tortious and injuries policy of injuring its victims and its carrying on an illegal war of words designed to destroy Plaintiff that Plaintiff would be weakened from achieving justice compounds damages and escalates damages. Continuing Claim # 12.03 CoA[Δ] Defamation (simultaneously CoA[] # . ) upon Count [] sounds broadly in the need for injunctive relief and seven figures in Defamation repair damages (Plaintiff asserted the accumulation of such having occurred to Defendant Barosi in February 2015 upon which the injury has grown) given the toxic nature of Defendants Defamation against Plaintiff and the implications to Plaintiff fiduciary and public image involving professions, et cetera.

[Clipped from ¶ 113: ] Municipal Liability Claims are brought under the New York Law as is generally done in these Cause of Action where State Stare Decisis of Tort Law exists in needed capacity where Federal Law does not. Continuing

669.   Claim # 13U CoA[] Libel is brought upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: sounds broadly in Remedies. Individual Libel Claims are listed in the supra Defamation series which lists both combined Defamation Claim number and Libel Claim number

Fourth Amended Complaint        E.D. N.Y. 17CV4519        Page 248

670.   Claim # 14U CoA[Σ] Slander brought upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: sounds broadly in Remedies. Individual Slander Claims are listed in the supra Defamation series which lists both combined Defamation Claim number and Slander Claim number.

671.   Claim # 15.1 CoA[Φ] Fair Trial Right injurious violation by Defendants

672.   Claim # 15.2 CoA[Φ] based on the whole Defendant tortious disengagement of Plaintiff.  Saying seizure was not arrest and momentary (New York law requires notice of cause); not mirandizing; the more-Fourth-Amendment prohibition of Plaintiff witness as Plaintiff was per police finding an highly credible victim witness—i.e. being ordered a non-participant in ¶ 28 activity on penalty of obstruction of government administration

673.   Claim # 15.5 CoA[Φ] Malicious & false attribution of Plaintiff statement with considerable prima facie fabrications

674.   Claim # 15U CoA[Φ] Malicious & false attribution of Plaintiff statement is brought upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: sounds broadly in Remedies. .

675.   Claim # 16U CoA[Ψ] Pseudo-evidence  upon Count [] .  Defendants' injurious false and fabricated pseudo-evidence against Plaintiff ultimately sound broadly in Remedies.

676.   Claim # 17.04-17.07 CoA[Π] Privacy violations of the seizure of audio midnight bed terrors Ms. Obi acted to malicious attempt to obtain material for extortion.

677. Claim # 17U CoA[Π] Privacy upon Count [] broadly sounds in Remedies

678. Claim # 19 [ Substantive CoA[Y] see the pure Substantive Due Process lists starting at the paragraphs for Claim # 25 at ¶ [][][]

679. Claim # 20 CoA[Z] Fourth Amendment Search (Sans Process-at-Law).

680. Claim # 20.2 Ms. Obi's Defendant-emboldening-Ms. Obi-to-crime search of Plaintiff's phone with consent, assent, or awareness until Ms. Obi made discussions of findings of the invasion.

681. Claim # 20.3 Defendants malicious, fraud-based appearance (¶ 28) at 677 Quincy without constitutionally reasonable cause violating the Fourth Amendment causually sufficient for the Remedy of Defendants' default a la ¶ 1103.

682. Claim # 20.4 Defendants' instructing, causing, and State-action search of Plaintiff's chattels at 677 Quincy in pursuit of Plaintiff's phone to malicious send unauthorized text messages to facilitate a pretext for the removing seizure of Plaintiff which had already then occurred.

683. Claim # 20U  CoA[Z] upon the aggregating Ultimate

684. Claims ## 21. [4] Fourth Amendment seizure of recordings of midnight bed attacks

685. Claim # 21. Confinement on bed

686. Claim # 21. Confinement in downstairs bathroom

687. Claim # 21. Confinement in upstairs bathroom

688. Claim # 21. Confinement regarding allowing potential opportunities for Plaintiff's voice to be recorded that might be used in tandem. [also movement and travel or # 7]

689.   Claim # 21 CoA[Z] Fourth Amendment Terry-Seizure (Sans Process-at-Law) (see M.L.K. Jr-Friday Complaint Paragraph Four) in violation of the Fourth Amendment

690.   Claims ## 21.[][]-21. restatements of infra should the lack of non-coerced and defrauded process be deemed of sufficient magnitude to establish no legal process was employed to consider the ongoing seizure

691.   Claim # 21.[][] Reasonably the ongoing seizure is police power as police actions in maintaining and perpetuating falsehood is the primary encumbrance f

692.   [Injury from prosecutorial sustaining, increase, aggression]

693.   Claim # 22.01 CoA[Z] Malicious State seizure-as-if-by-process-of-law Process upon Count [] . Defendants' injurious confinements of Plaintiff sound broadly in Remedies.        with respect to the relevant counts of unconstitutional seizure, confinement, and restriction pervertedly under the color of law with their respective counts may be found infra at: see ¶¶ [] regarding the October 8th, 2014th seizure, which began by 7:10 p.m., with utter confinement ending more than 24 hours later on October 9th, 2014[170];

694.   Claims ## 22.0[] & 23.[]  CoA[Z] Malicious State seizure-as-if-by-process-of-law upon Count [113] . Defendants' injurious coercion of Plaintiff to  injurious confinements of Plaintiff as if by process at law sound broadly in Remedies.

---

[170] Plaintiff was instructed that unless Plaintiff remain silent Plaintiff would not be released [See ¶ []], thus only a phase of the still-persisting-seizure [See ¶ []]most pointedly in Defendants' retaliations [see ¶ [ , ]] and 100% denials [see ¶ []] including contradictions [¶¶ [ , ]of City of New York admissions [see ¶¶ [ , ]] and all of the evidence [see ¶ []] supporting Plaintiff's Complaint [see ¶ [] on the outlook of motion for preliminary judgments via FRCiP #[] & #56.

695.   Claims ## 22.0[] & 23.0[]   CoA[Z] Malicious State seizure-as-if-by-process-of-law upon Count [].   Defendants' coercion of ¶ 22, systemic and particular that Plaintiff was forced to be instructed to silence or Rikers.

696.   Claims ## 22.0[] & 23.[] CoA[Z] Malicious State seizure-as-if-by-process-of-law upon Count [] .  Defendants' injurious confinements of Plaintiff as if by process at law sound broadly in Remedies. Appearance at waived November Hearing.

697.   Claims ## 22.0[] & 23.[]  CoA[Z] Malicious State seizure-as-if-by-process-of-law upon Count [] .  Defendants' injurious confinements of Plaintiff as if by process at law sound broadly in Remedies.  Defendants' denial of Sgt. Brown's presence.

698.   Claims ## 22.0[] & 23.[] CoA[Z] Malicious State seizure-as-if-by-process-of-law upon Count [] .  Defendants' injurious confinements of Plaintiff as if by process at law sound broadly in Remedies. ¶¶ regarding that persisting through the December [] appearance;

699.   Claims ## 22.0[] & 23.[] CoA[Z] Malicious State seizure-as-if-by-process-of-law upon Count [] .  Defendants' injurious confinements of Plaintiff as if by process at law sound broadly in Remedies. ¶ [] where prosecutors asserted they would prohibit The 9-1-1-responding pair (¶ 27) from being brought in as witnesses;

700.   Claims ## 22.0[] & 23.[]  CoA[Z] Malicious State seizure-as-if-by-process-of-law upon Count [] .  Defendants' injurious confinements of Plaintiff as if by process at law sound broadly in Remedies.   ¶¶ regarding that December aggression persisting through the winter 2015 reduction of [];

701.   Claims ## 22.0[] & 23.[] CoA[Z] Malicious State- seizure-as-if-by-process-of-law upon Count [] .  Defendants' injurious confinements of Plaintiff as if by process at

law sound broadly in Remedies. ¶ [] where February took further aggressive action;

702. Claims ## 22.0[] & 23.[] CoA[Z] Malicious State- seizure-as-if-by-process-of-law upon Count [] . Defendants' injurious confinements of Plaintiff as if by process at law sound broadly in Remedies. ¶¶ [] regarding that persisting through May 7th, 2015;

703. Claims ## 22.0[] s& 23.[] CoA[Z] Malicious State- seizure-as-if-by-process-of-law upon Count [] . Defendants' injurious confinements of Plaintiff as if by process at law sound broadly in Remedies. ¶ [] May 7th count [May 7th events are involve multiple claims as damages were multifarious as is input and output of single act;

704. Claims ## 22.0[] & 23.[] CoA[Z] Malicious State- seizure-as-if-by-process-of-law upon Count [] . Defendants' injurious confinements of Plaintiff as if by process at law sound broadly in Remedies.

705. ¶ [] pertaining to malicious allegations of calling police which clearly the penultimate attorney knew was likely unsubstantiated by his retreat;

706. Claims ## 22.0[] & 23.[] CoA[Z] Malicious State seizure-as-if-by-process-of-law upon Count [] . Defendants' injurious batteries upon Plaintiff sound broadly in Remedies. ¶¶ [] regarding that from the seizure imminent at moments notice in isolation until potential death through November confessory admissions of penultimate prosecutor;

707. Claims ## 22.0[] & 23.[] CoA[Z] Malicious State seizure-as-if-by-process-of-law upon Count [] . Defendants' injurious confinements Plaintiff as if by process at

law sound broadly in Remedies.  ¶¶ [] regarding that persisting from November []
to December official withdrawal [];

708.   Claims ## 22.0[] & 23.[] CoA[Z] Malicious State seizure-as-if-by-process-of-law
upon Count [] .  Defendants' injurious confinements Plaintiff as if by process at
law sound broadly in Remedies.  ¶¶ [] regarding that persisting from withdrawal
to Corporation Counsel's escalations and through to receipt of the tampered court
reporters' notes on August [];

709.   Claims ## 22.0[] & 23.[] CoA[Z] Malicious State seizure-as-if-by-process-of-law
upon Count [] .  Defendants' injurious confinements Plaintiff as if by process at
law sound broadly in Remedies.  ¶¶ [] regarding that persisting from the tampered
transcript until injunction or judgments provide partial and eventually permanent
relief from the illegal seizure and its lasting unconstitutional holding of Plaintiff.

710.   Claims ## 22.0[] & 23.[] malicious abuse of seizure-process-at-law prosecutory
process has respective counts identified infra at ¶ [] regarding the abuse of
[prosecutorial] process: from contact where invalid vetting took place with the
81st indicating a favor was needed so as to not vet allegations;

711.   Claims ## 22.0[] & 23.[]  ¶ [] were they retracted a few particular horrible libel
from arraignment and tried to hide what was simple juicing to achieve illegal
seize component of removal from property and obstruction of access to unstable
witness they knew was full of myriad vulnerabilities currently being withheld
[supplemental component] indicating King's County all-the-more knows it was
wrong [condense and leave detail to count];

712.  Claims ## 22.0[] & 23.[]  ¶ [] not completing the Brady disclosure by not handing over account from the 9-1-1-responding pair (¶ 27); ¶ [ ].  Penultimate prosecutor was manipulated into fraudulent making claims against Plaintiff, which are being covered for as Plaintiff identified them in May 7th filing, as a direct outcome of fraudulent causes by police Defendants acting in bad faith. CoA []  Fourteenth Amendment Generic is Theta [Θ].

713.  Claims ## 22.0[] & 23.[] CoA[Z] Malicious State seizure-as-if-by-process-of-law upon Count [] .  Defendants' injurious confinements of Plaintiff as if by process at law sound broadly in Remedies.

714.  Claim # 22U CoA[Z] Malicious State-Privileged Process  brought upon the aggregating Ultimate Count compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: broadly sounds in Remedies

715.  Claim # 23U

716.  Claim # 24.11 CoA[Γ] § 1985 (2)  upon Count [] .  Defendants prepared the package of defrauded obstructive material turned over to Plaintiff in June of 2015

717.  Claim # 24.12 CoA[Γ] § 1985 (2)  upon Count [] . Defendants prepared the defrauded Sprint Report turned over to Plaintiff in June of 2015 to obstruct upon Plaintiff's direct notice of § 1983 action.  Defendants not so cautious to remove the 14h00 activity from the initial faxed documentation, however the sprint report is to suggest that the earlier material was not present

718.  Claim # 24.13 CoA[Γ] § 1985 (2)  upon Count [] .  Defendants prepared the defrauded 9-1-1 turned over to Plaintiff in June of 2015 to obstruct upon

Plaintiff's direct notice of § 1983 action Claim # 24.14 CoA[Γ] § 1985 (2) upon Count [] . Defendants' injurious, contumacious, criminal, et cetera obstructions of justice sound broadly in Remedies.

719. Claims ## 24.21-24.25 § 1985 (2) Obstruction of Justice upon Count [] . Defendants' injurious, contumacious, criminal, et cetera obstructions of justice sound broadly in Remedies.

720. Claim # 24U: CoA[Γ] § 1985 (2) Obstruction of Justice brought upon the aggregating Ultimate Count compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: broadly sounds in Remedies.

721. Claim # 25. Substantive CoA[Y] [Group all pure substantive from this point ## 18-36—or cluster at numbers—latter preferable, although # 25 should probably have several groupings]

722. Claim # 25U Substantive CoA[Y] upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies sounds broadly in Remedies.

723. Claim # 26.02-26.05 Substantive CoA[Y]

724. Claims ## 26.06 et sequent Substantive CoA[Y]

725. Claim # 26U Substantive CoA[Y] upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies sounds broadly in Remedies.

726.     Claim # 27U Substantive CoA[Y] upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies sounds broadly in Remedies.

727.     Claim # 28U Substantive CoA[Y] upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies broadly sounds in Remedies.

728.     Claim # 29.01 CoA[Θ]  Failure to Investigate [may need to add Counts—along the lines all Jane and John Does found to have had the duty to investigate [phase] failed to investigate [thus groups of claims upon each of such Count; consider against obstruction Counts]] sounds broadly in Remedies

729.     Claim # 29U CoA[Θ]  Failure to Investigate upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies sounds broadly in Remedies.

730.     Claim # 30U CoA[Θ] Deprivation of Liberty to Employment and Contract upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies sounds broadly in Remedies.

731.     Claim # 31.01 CoA[Θ] Denial of Vindication [Structure in Counts that Claims may be stated with particularly regarding declaratory judgment]     Hearing Procedure sounds broadly in Remedies

732.     Claim # 31U CoA[Θ] Denial of Vindication Hearing Procedure upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or

admissible Defendant-liable acts to which the category of Cause of Action applies sounds broadly in Remedies..

733.    Claim # 32U CoA[Θ] Denial of Constitutional Takings Process upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies sounds broadly in Remedies.

734.    Claim # 33U CoA[Θ] Deprivation of Freedom of Movement and Travel upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies sounds broadly in Remedies..

735.    Claim # 34U CoA[Θ] Deprivations of Liberty Interest in Reputation upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies sounds broadly in Remedies..

736.    Claim # 35A CoA[Θ] Failure to Intervene (Duty to Intervene) Officer Hellberg, however, clearly feels regret for having not avoided a situation where Officer Hellberg would have a stooge's role in Sgt. Brown four racketeering—just the driver, but the driver nonetheless, dressing to perform racketeering in outrageously shocking violation of duty

737.    Claim # 35U CoA[Θ] Failure to Intervene brought upon the aggregating Ultimate Count of compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: sounds broadly in Remedies.

738.     Claim # 36. CoA[Y] upon Count I.

739.     Claims ## 36. CoA[Y] upon Counts

740.     Retaliation Claims commence from the September 2014 Counts and onward. All Defendant tort harming Plaintiff thence can be recovered under the Fist Amendment Peititon Relations CoA[] although certain recoveries depend on jurisdiction grounding of categories of Cause of Action: i.e. State seizing is always based in Fourth Amendment jurisdiction even if the final recovery for all upon all September-2014-and-thence Counts were via the First Amendment category of Cause of Action stated at ¶ 137.  Due Proces Petition (¶ 138) so matchs the First Amendment that they might as well be stated ensemble, although either operates independently and distinctly.

741.     Claim # 37.12 CoA[P] 1st Amendment Retaliation upon Count [] . Defendants' injurious First Amendment-violating retaliation upon Plaintiff for Plaintiff's efforts and actions against State tyranny, corruption, abuse, oppression, et cetera sound broadly in Remedies.

742.     Claim # 37.13 CoA[P] 1st Amendment Retaliation upon Count [] . Defendants' injurious First Amendment-violating retaliation upon Plaintiff for Plaintiff's efforts and actions against State tyranny, corruption, abuse, oppression, et cetera sound broadly in Remedies.

743.     Claim # 37.14 CoA[P] 1st Amendment Retaliation upon Count [] . Defendants' injurious First Amendment-violating retaliation upon Plaintiff for Plaintiff's efforts and actions against State tyranny, corruption, abuse, oppression, et cetera sound broadly in Remedies.

744. Claim # 37.23 CoA[P] 1st Amendment Retaliation  upon Count [] .  Defendants' injurious First Amendment-violating retaliation upon Plaintiff for Plaintiff's efforts and actions against State tyranny, corruption, abuse, oppression, et cetera sound broadly in Remedies.

745. Claims ## 37.96-37.199 CoA[P] 1st Amendment Retaliation  upon Count [] . Defendants' injurious First Amendment-violating retaliation upon Plaintiff for Plaintiff's efforts and actions against State tyranny, corruption, abuse, oppression, et cetera sound broadly in Remedies..

746. Claim # 37U CoA[P] 1st Amendment Retaliation upon the aggregating Ultimate Count compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: broadly sounds in Remedies.

747. [structure by aggregations upon petition events] Claim # 38.01 CoA[P] Retaliation Due Process Petition  upon Count [] .  Defendants' injurious retaliation upon Plaintiff sounds broadly in Remedies.

748. Claim # 38.02 CoA[P] Retaliation Due Process Petition  upon Count [] . Defendants' injurious retaliation upon Plaintiff sounds broadly in Remedies. [Group Claims by petition action]

749. Claim # 38.03 CoA[P] Retaliation Due Process Petition  upon Count [] . Defendants' injurious retaliation upon Plaintiff sounds broadly in Remedies.

750. Claim # 38.21 CoA[P] Retaliation Due Process Petition  upon Count [] . Defendants' injurious retaliation upon Plaintiff sounds broadly in Remedies.

751. Claim # 38.22 CoA[P] Retaliation Due Process Petition  upon Count [] .

752.   Claim # 38U: CoA[P] Retaliation Due Process Petition brought upon the aggregating Ultimate Count compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: broadly sounds in Remedies.

753.   Claims ## 39.01-39.05 CoA [O] [move to # 12 consolidation—perhaps some pure Claim upon ultimate Count] reach Remedies for damages to Plaintiff's reputational property and thereby reputation as and as reflected in property with an example of manifestation of digitally-existent branding.

754.   Claims ## 39.06-39.10 CoA [O] reach Remedies for damages to Plaintiff's reputational property and thereby reputation as and as reflected in property with an example of manifestation of digitally-existent branding.

755.   Claims ## 39.11-39.20 CoA [O] reach Remedies for damages to Plaintiff's reputational property and thereby reputation as and as reflected in property with an example of manifestation of digitally-existent branding.

756.   Claim # 39U: 1 CoA[O] Injurious Violation of Reputational Property brought upon the aggregating Ultimate Count compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: broadly sounds in Remedies.  The Ultimate Claim of Defendants' injury to Plaintiff's reputational property amounts to the damages—not the cost of repair: i.e. what Defendants soiled—property value of such—which amounts to a minimum of 1.2 MN USD.  Like the real estate property affixing Plaintiff's reputation as property, Plaintiff [political]

757.    Claims of ## 40.01 et sequent: CoA[Θ]  Failure to Train Claims will take better
        shape upon Plaintiff being provided the relevant Training documents, etc. Counts
        may be widely implicated and may relate to non-yet-produced specifics of
        training policies that, e.g., foster cooperation, submission, et cetera, with
        racketeering.   Municipal training for racketeering is a failure to train and
        intersects with substantive due process violation [].

758.    Claims of ## 41.01 et sequent CoA[Θ]: Failure to Supervise Claims will take
        better shape upon Defendants' counsel's identification of supervisors and upon
        depositions and discovery.   Municipal liability is gross upon management's
        failures.   Particularized Claims are better formulated per the Complaint upon
        identification of individual Defendant involvement.

759.    Claims of ## 42.01 et sequent: CoA[Θ] Failure to Discipline Claims will be
        broadly applied, but discovery of disciplinary policies themselves will better
        inform construction of the particular Claims—one standout Claim rather
        particularly conspicuous is that which Plaintiff notified to the CCRB that Sgt.
        Brown perjured himself incontrovertibly and importantly in Sgt. Brown's CCRB
        interview stating that Sgt. Brown had no prior knowledge of Ms. Obi—Corporate
        Counsel has admitted Sgt. Brown reports in some and substance having a "prior
        relationship" with Ms. Obi as is substantiated by their phone calls, etc. Such is
        perhaps among the most concretely proven failures to discipline in terms of
        latency of proof thus far in Defendants' meager progress of disclosure—the
        CCRB was notified of such shortly after production of the CCRB interviews to
        Plaintiff and it is likely the CCRB has taken no action even with Plaintiff's

prompting; numerous other frauds including the admittedly fraudulent sworn statements of police produced to Plaintiff provide example of other substance indicated the tip of an iceberg of police failure to disciple.  Municipal liability is gross upon management's failures.  Particularized Claims are better formulated per the Complaint upon identification of individual Defendant involvement.

760.    Claim ## 43.02 et sequent: CoA[Θ] Failure to Hire Claims will be better formulated upon discovery of hiring practices of such persons as police management as well as CCRB investigators who should be selected not to participate in police racketeering, but to vigorously execute CCRB statutes

761.    Claim # 43.01 CoA[Θ] Failure to Hire and Well-Staff—Inspector Butler's racketeering activity for racketeering law enforcement indicates fundamental flaw in CCRB selection process which may involve or have involved hiring former law enforcement with insufficient screening.

762.    Claims # 44.01-44.10 of CoA[N] [Negligence Claims may result from the finding of any of the Counts—although Defendant intent requires Negligence sound broadly in Remedies

763.    Claims # 44.11 et sequent of CoA[N] Negligence sound broadly in Remedies

764.    Claim # 44U CoA[N] Negligence brought upon the aggregating Ultimate Count compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: broadly sounds in Remedies.

765.    Claim # 45.1 CoA[X]  Conspiracy [Racketeering police sex bribery women recruiting Ms. Obi]

766.    Claim # 45.2 CoA[X]  Conspiracy [Ms. Obi police sex bribery contract formation with Sgt. Brown] sounds broadly in Remedies.

767.    Claim # 45.3 CoA[X]  Conspiracy [Harvitz] sounds broadly in Remedies

768.    Claim # 45.4 CoA[X]  Conspiracy [Gutman engaged for tort against Plaintiff]

769.    Claim # 45.5 CoA[X]   Conspiracy [Gutman May 7th 2015] broadly sounds in Remedies

770.    Claim # 45.6 CoA[X]  Conspiracy other

771.    Claim # 45.7   CoA[X] Conspiracy Ierardo sounds broadly in Remedies

772.    Claim # 45.7   CoA[X]  Conspiracy  Ierardo  [Part Two]  sounds  broadly  in Remedies;   additionally non-municipal-employee collaborators in obstruction of justice and racketeering furthered by many obstructions of justice, et cetera: the police-sex-bribery-recruiting women that  recruited Ms. Obi and Mr. Peter Appel (later includes 2018 injury)

773.    Claim # 45U CoA[X]  Conspiracy brought upon the aggregating Ultimate Count compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: broadly sounds in Remedies.

774.    Claim # 46.1 CoA[Θ] Access to Courts deprivation of coercion of ¶ 22 and directly upon Plaintiff before and at the October 9th pseudo-arraignment sounding broadly in Remedies or finds cause for thorough continued Hearing of the Action

775.    Claim # 46.2 CoA[Θ] Access to Courts deprivation of obstructing Plaintiff's access to speak to the Judge regarding the menacing charge against Ms. Obi and Plaintiff's protection from Ms. Obi via a restraining order and order against

continued existence of unconstitutionally-seized recordings sounds broadly in Remedies or finds cause for thorough continued Hearing of the Action

776. Claim # 46U CoA[Θ] Access to Courts brought upon the aggregating Ultimate Count compromising all inherent, Pleaded, Filed, or admissible Defendant-liable acts to which the category of Cause of Action applies: broadly sounds in Remedies.

777. Claim # 47. CoA[Θ] Violation of Fourteenth Amendment basis of State application of the Bill of Rights in Defendants Usurpation of the Adjudication Necessary to Punish in Defendants Constitutional Tort qua Punishment—both in punishing acts and in utter, systemic, and entire usurpation of adjudicatory process exemplified in Defendants' coercion and defrauding of The Honorable J. Hecht on October 9th, 2014.

778. Claims ## 48.[][]-48.[][] CoA[H]  Abuse of Process: Claim # 48.[][]    Claim # 48.[][] June through July violation of Rule 37;  Claim # 48.[][]  Claim # 48.[][]  Claim # 48.[][]  Claim # 48.[][]

779. Claim # 49. CoA Tortious Interference (see mutual protective order discuss— news reported in February 2019 marked significant ripening of a specific Claim discussed between Parties a la the mutual protective order in August of 2018) CoA (see ¶ )

780. Claims' application to individual Defendants, or the division of Claims to particular groups or individuals, allowing the distinguishment of individuals not bearing shared apportioned-from-Defendant-group liability on particular Claims

or sets of Claims—along with distinguishment of individual Defendant Claims where such is required for § 1964 under § 1962 (b), (c), (d).

781.   Assingments of Liabilities[ this section will need more detailed statement with finished Count # and Claim #, et cetera.   Police administration executives added to the Complaint are not alleged to have furthered, have injunctive Claims, negligence, and failed duties regading responsibilities of systems administration—discovery would pertain to facility or furtherance damages liability.  CCRB board is injunctive liability and negligence.

782.   General matters regarding individual liabilities of damages: conspiracy law and common law joint-action principles distribute[171] damages to most, but not quite all Defendants (faciitiy (CoA[X] applies Defendants' tortfeasance.   Such is applied, generally,[172] under three divisions facility, furthered, and furtherance. likewise, furthered and furtherance Furthered and furtherance amount to a distinction of likely no difference to the one, final recovery[173]: the distinction is retained and needed in the proper multifarious[174] statement with regard to how the law regarding the plurality of liability for conspiring works—furtherance incorporates liability for the tortfeasance furthered.[175]   Each furtherance of the Action, known by the particular Defendant actor of the tort to be furthered, as is inherently established from such overt acts when the act is considered against the risks of the act—i.e. slight motive of the individual is primarily to futher

---

[171] Severally between between all Defendants to have committed facilitation tort or furtherance tort (which with respect to individual Defendants is either, chronologically, furthered or furtherance of Defendants' tortious and unconstitutional injuring of Plaintiff. Conspiracy law is most directly addressed at ¶ 145

[172] Certain applications could raise narrower statements which could be amended

[173] as Defendants' furtherance tortfeasance continues all furtherances are furthered

[174] see ¶ 100 regarding Plaintiff discussion of the multifarious CoA stated for the Action

[175] there is no exclusion, as a matter of law, of any particular component of the tortfeasance furthered: Defendants' furthering tortfeasance

(furthermore, risk is diminished by each Defendant actor's knowledge of and confidence in the capacity of Defendants' furtherance array.[176]

783.   Distribution severally (i.e. plurally) under the pertaining laws of conspiracy between the Defendant team persons according to sufficiently assignable weights relative to the involvement (individual authority[177] and role with regard to Plaintiff's injuries or the importance of the tortfeasanceas furtherance)[178] all configure into Plaintiff's standing F.A.C. estimations (to be revised with each iteration of the Complaint until the final schedule of the one, full recovery is exercised for Plaintiff's damages amid the stage of planning final remedy.[179]

784.   Claims assigned to individual Defendant persons, which do not implicate conspiracy law,[180] share only between

785.   Sir William Bratton, Commissioner.  Defendant Bratton's liability is includes considerable facilitation of the corruption and racketeering systems.  There was direct instructions to apply the *furtherance array* against Plaintiff according to racketeering and corruption operations protocol and by the racketeering and corruption operations protocol systems.  Defendant Parese tort was based on direct instructions by Defendant Bratton on Defendant Bratton's last day of Defendant Bratton's incumbency as Commissioner: Defendant Bratton was

---

[176] Consider for prologue terms. Furtherance array.

[177] Which correlates with such factors as power of discretion exercised

[178]   additionally, factors of mens rea (including the Defendants' knowledge of the gravity of the furtherance with respect to Plaintiff' sinjuries and to the importance of the tort to Defendants' furtherance system and the success and continued operability of such system) figure into punitive components

[179] injunctive measures could continue as active litigation beyond Plaintiff's full receipt of pecuniary compensation.

[180] e,g. where Defendant tort found was not inherently or otherwise found with the mens rea required for such as CoA[X]

reviewing loose ends on Defendants' Bratton last day and wanted to hear Defendant Parese's report and determine next actions of Defendants' furtherance array, with respect to Defendant Parese interrogation interested far more in identifying (1) whether Plaintiff was going to sue[181] and (2) the Plaintiff's final communication with the 81st Precinct[182]—rather than making any potential inquiry into identifying the other members of the police sex bribery ring, of which Ms. Obi and Defendant Brown were participants.

786.   Deputy Commissioner, Counsel to Police Commissioner Ashley Waters and Deputy Commissioner, Legal Matters Ernest F. Hart and staff,.[183] Minimum failure to advise of vulnerability to corruption; Injunction on position to advise of vulnerability; Discovery may show facilitation; Negligence to inquiries regarding integrity of which there is evident importance (demonstrated by failures to advise in writing the need for integrity tests, proof of system integrity (of which the opposite is apparent), failures to respond to notice from data integrity that ; lack of concern that Internal Affairs investigations can be erased (of which knowledge would arise with any cursory performance of counsel duties in short order as law pertaining to police liabilities depends on such factors as knowledge of

---

[181] Planitiff was on Defendant Stancati's timetable, which was determined for Defendants' and Corporate Counsel's benefit.

[182] police member who reported the 81st Precinct *memo* policy of standard operating furtherance against Plaintiff

[183] Discovery to show Defendant Hart (in addition to the following paragraph) had related additional duties with regard to legal matters to police generally, as opposed to being counsel to the Commissioner, such involves considerable review of police liabilities (essentially paralleling the course of IAB investigations—inherently raising statistically certainty (of a far greater level than would require actual calculation): job duties would require far more interactions with IAB corruption, et cetera than could be dismissed without certain knowledge of cooking the books).

fundamental probity issues of data (internal affairs investigations being obviously prime matter of counsel duties)—it is inherent that occasions have arisen were allegations of investigation that subsequently disappeared would raise duty prompting responsibility to inquire and investigate (or to pose issue in writing to Commissioner—which has not been done—Police Commissioner hired (municipal attorneys have duties to the public; not insisting corruption and racketeering systems be changed (even in the face of hypothetical Machiavellian argument in response to Commissioner—attorney could not cooperate with systems not being made constitutional and not violative of laws or knowingly be liable))).  18 U.S.C. § 1965 (b)(c)(d)


Minimum failure to advise of vulnerability to corruption; Injunction on position to advise of vulnerability; Discovery may show facilitation; Negligence to inquiries regarding integrity of which there is evident importance (demonstrated by failures to advise in writing the need for integrity tests, proof of system integrity (of which the opposite is apparent), failures to respond to notice from data integrity that ; lack of concern that Internal Affairs investigations can be erased (of which knowledge would arise with any cursory performance of counsel duties in short order as law pertaining to police liabilities depends on such factors as knowledge of fundamental probity issues of data (internal affairs investigations being obviously prime matter of counsel duties)—it is inherent that occasions have arisen were allegations of investigation that subsequently disappeared would raise duty prompting responsibility to inquire and investigate (or to pose issue in writing to Commissioner—which has not been done—Police Commissioner hired

(municipal attorneys have duties to the public; not insisting corruption and racketeering systems be changed (even in the face of hypothetical Machiavellian argument in response to Commissioner—attorney could not cooperate with systems not being made constitutional and not violative of laws or knowingly be liable)))

Commissioner James O'Neill, Commissioner (Office) Chief of Staff (for Commissioner Bratton) Chief of Staff (for Commissioner O'Neill), Police Administration Staff, Police Operations Staff and Senior Systems Administrators ,

Deputy Commissioner Reznick,
Deputy Commissioner IAB (Office), IAB Command Center (all personnel, Does), Internal Affairs Senior Management (Yoes)

Deputy Commissioner, Information (Technology Jessica Tisch) Deliberate indifference to implausible administration design to maintain integrity vulnerability in data. Injunctive (position vigilance requirements),

Deputy Commissioner, Risk Management

Jeffrey Schlanger

Deputy Commissioner of Intelligence

John Miller

Deputy Commissioner, Trials

Rosemarie Maldonado

Retired Chief of Department Carlos Gomez

Chief of Department Terence Monahan

Chief of Department (Office)

Chief of Department Senior Management

  (John or Jane Does [])

Chief of Patrol Terence Monahan

Chief of Patrol (Office)

Chief of Detectives Dermot F. Shea

Chief of Intelligence Thomas Galati

Chief of Personnel William Morris

IAB teams preparing annual reports to the

  annual post-Mollen

Chief and supervisors of the IAB team

  preparing annual reports to the

  annual post-Mollen

Management at Chief of Department

  (John or Jane Does 21-35)

Management at Chief of Patrol

  (John or Jane Does 36-45)

Other Police-Administrator Racketeers

IAB Complaint Managers (and persons of

  pertaining or related duties

(John or Jane Does[184] 46-58)

Supervisor(s)of Chief Insp. S. Henderson

(John or Jane Does 59-61)

Supervisors of Lts. Gluf and Parese

(John or Jane Does 62-67)

Chief Inspector Scott Henderson

Police waiting at 81st Precinct at 8:15 p.m.

Oct. 8th, 2014 upon Plaintiff arrival

(¶ 29: John Does 68-77)

Other 81st Precinct police[185] involved after

8:15 p.m.; John Does 78-85

Lieutenant "Gluf" (Brooklyn IAB)

Lieutenant J. Parese [spelling unknown]

Lieutenant Richard Matellino

Lieutenant "Picoulli" (IAB)

Managers[186] & Supervisors of Sergeant

Rosello in summer of 2017

(John Doe 86-91)

"Brooklyn North" Command of 2015-2016

---

[184] Including the IAB superior(s) whom the tall, slight-haired IAB Detective at Manhattan IAB HQ: referred 2015 IAB-complaint concerning Lt. Blake certainty that Sergeant Brown was not on duty on the evening of October 8th, 2014 having triple checked all paperwork of that day (J Doe 52-55)

[185] Processor and police member stating there was no record identifying who had performed the removing-seizure of Plaintiff to the 81st.

[186] regarding orders given to Sgt. Rosello regarding Sgt. Rosello's recorded call to Plaintiff

(J. Does 92-99):

Police assigned IAB investigation at

     Brooklyn North (J. Does 100-107)

Sergeant Shaun Brown

Sergeant Rosello

Sergeant Brazys

Sergeant Fishman, Louis (922347)

Sergeants signing as if supervising signing

     of "D00007 #1 (J. Doe 108) and

     #2 (J. Doe 109)

Memo book supervisors     []

NYPD Liaison with CCRB Inspector Butler

     (J. Doe(s) [])

Supervisors and Trainers of NYPD Liaison

     with CCRB Inspector Butler

     (J. Does )

Michael Culkin (897277)

Supervisors and Trainers of

     M. Culkin (J. Does )

Detective Glenn Tomasello (926214)

Supervisors and Trainers of G. Tomasello

     (J. Does )

NYPD "Liaison" to Corporate Counsel

Supervisors and Trainers of NYPD

     "Liaison" to Corporate Counsel

     (J. Does )

Officer Carraciolo, Michael (950158)

Supervisors and Trainers of M. Carracciolo

     (J. Does )

Officer Casciola, Gerald (950168)

Supervisors and Trainers of G. Casciola

     (J. Does )

Officer Hellberg

Supervisors and Trainers of Hellberg

     (J. Does )

Police overseeing or approving vulnerable

     police records and data at all recent

     times of review

Police database operators and administrators

     (J. Does )

Additional John or Jane Does (X);


King's County (District) Attorney's Office:

King's County (District) Attorney

Supervisor(s) and Trainers of Defendant

     Anthony Barosi

(J. Roe 1-4)

Supervisor(s) and Trainers of Defendant

J. Scarcella (J. Roe 5-8)

Supervisor(s) and Trainers of Defendant

M. Midey (J. Roe 9-12)

Supervisor(s) and Trainers of Defendant

T. Middleton   (J. Roe 13-16)

Supervisor(s) and Trainers of Defendant

Parugia (J. Roe 17-20)

Supervisor(s) and Trainers of other involved

or of pertaining duties Defendant

KCDA attorneys (J. Roe 20-30)

Manager or liaison of primary Autumn of

2015 KCDA attorney representing

the State, i.e. the "penultimate"[187]

---

[187] Corporate counsel continues to refuse to identify this Defendant among persons specifically requested for identification (Plaintiff has long (without the proper name) referred to this male KCDA attorney (whom Plaintiff would certainly recognize and who was potentially not of ADA rank in 2015) as "the penultimate" for the pivotal significance of this KCDA attorney's court record admission of "Brady violation" obstructions among those KCDA had overtly reinforced for over a year against Plaintiff at the request and directive of police Defendants, et cetera (an act the penultimate was forced to do by another (see ¶ 30)); penultimancy being particularly important as the penultimate essentially declared Plaintiff to be a victim and invoked protocol that an additional appearance would be appropriate upon some inquiry KCDA would be obligated to perform regarding malicious prosecution (the penultimate did not reappear at the withdrawal—(see Count [])—the final KCDA representative was consistent with the penultimate, but seemed to lack having being the most knowledgeable person and rather merely a message carrier (as a defensive tactic by KCDA—there was no promised follow-up to the Court concerning the penultimate's (ashamed and reluctant) describing

(J. Roe 32-34)

Communicator(s) with John Gutman

(J. Roe 35-36)

Anthony Barosi

Persons of duties witnessing Barosi (and

otherwise witnessing and

participating in KCDA racketeering

operations and corruption tort

(J. Roe 37-50)

ADA Jacqueline Scarcella

ADA Matthew Midey

ADA Tyear Middleton

ADA Parugia

"The penultimate"[188] (supra; KCDA attorney

(John Roe 37)

Other KCDA attorneys involved or of

pertaining duties (J. Roes 38-52

Mr. Waters

Other John and Jane Roes (Y);


CCRB Defendants:

---

the penultimate's of duty to investigate defrauding of the King's County court) in saying, in sum and substance, the evidence required full withdrawal by the State on all City assertions against Plaintiff).

[188] See Footnote 6, supra

• The Civilian Complaint Review Board        [Θ]40-43 Traditional Monnel Failures;

Injunctive perogatives in relation to law enforcement reform.

Trainers of J. Butler

     (J. Soe 1-2)

Christopher DeNitto

Inspector J. Butler

Additional John or Jane Soes (Z);


_____

Corporation Counsel  (municipal entity)      Zachary Carter


(X,Y,Z (supra; additional Does, Roes, and

     Soes are of unknown number to be

established in discovery)

787.

788.    Defendant Brown[189]

_____

[189] It is worth noting that Plaintiff was informed by Internal Affairs on January 28th, 2015 that there is another Sgt. Brown (or was as of the turn to 2015) relevant to the operational sphere of police matters, i.e. there are two Sgt. Browns: in all cases matters, et cetera, discussed: Sgt. Shaun Brown of the 81st as has been identified by identification numbers and as was interviewed by the CCRB in the eventually produced interview[189] is the Sgt. Brown referred to—additionally relating to idem Sgt. Brown see ¶ 28.

789. Apportionment of Damages: appropriately apportioned severally between Defendants, throughout the instant Action, it is very much the nature that Defendants acted with the color of law (all tortfeasance is exercised with, by, or in conjunction with the color of law (common law recovery as well as statutory))— and the same color of law—with that municipality the greatest person Defendant with the largest single share of liability. It is precisely the nature of the Action that Defendants acted as team, individuals whose tortfeasance could not be commited (and commited as has been the constant and continuing brazen and unconcerned confidence in the team's unified ability to silence, put away, end such as Plaintiff's petition). The facility Claims are very much based in this trust of loyalty to individual roles of tortfeasance to be called upon at the appropriate moments to strike (called by such as IAB, police command, and Defendant Barosi with the KCDA and Corporation Counsel), without which Defendants would have to suppose a successive chain of telepathic vigilantes whose tortfeasance is impossibly aimed at the right persons, at the right time, in the right places (of course, with random acts, there would no (essential) assurance of a kill (in nature one can safari or travel to see pack carnivores that take down a beast together that individually would be an impossible task—Plaintiff has precisely endured this chain which is obviously not all Defendants' operations (with and without non-municipal joint-tortfeasors)): at the same time, when Defendants know they are all in as a group against Plaintiff, it is few holds barred: spoliate just about everything—everyone take a swing when they have the chance (which is precisely the chain of facts to view in the instant Action—exemplified well by

such as the later in the game there-is-one and Defendant Tomasello bogus Document (blatantly created after and in contumacious response to Plaintiff's 7 May Pleading totally detached from a plausible falsehood); Defendants' nonchalance in making errors in spoliation (e.g. Defendant Casciola writing zero witnesses on the new Documents, but on the older Documents, Defendant Casciola forgot to fabricate the "time of event starting from 2:00 p.m. (which was quite shortly after the only 9-1-1 call of 5-9 October 2014 (see ¶ 26)) to the spoliated 3:15 p.m.  (which Defendants' fabricated in order to conceal the Class A Menacing Citation issued to Ms. Obi (factor that largely (certainly with just some of the other admitted facts) legally rules out reasonable argument for probable cause given the concreteness of Defendants' *information-assemblage*)). Thus, given the clear, tight nit team operations (corruption blue wall, et cetera) demonstrated in the Action.  A fair amount of each part of the recovery in the schedule for Plaintiff's one, whole recovery may be distributed by CoA [Chi], et cetera, to the team members, with special assignments weighted relative to the functions of particular lead agents of particular tort or the municipality's custom, policy, usage et cetera for the importance of such role (New York City Law enforcement operates defacto indemnification anyway covering 99.9997% of employee law enforcement liabilities (including cases where the municipal employees were found criminally guilty, et cetera)).  Thus for each particular recovery of the damages liability to be apportioned (as opposed to the injunctive), an amount such as a quarter can be distributed among facilitators (perhaps, with certain proportionality levels to weight rank or other factors of involvement) and a

half spread similarly across the levels of furtherance committed (with respect to the particular recovery's injuries and involvement in those injuries)).   In final review with regard the one, whole recovery apportioned severally (adjustments with regard to moving compensatory to the municipality as the individuals are the direct bearers everywhere the municipality (even in this Case) cannot bear the significant punitive damages).   Proportionality with regard to over individual liabilities would be an appropriate further step to ensure fair distribution throughout the tortious team.   Discovery will considerably inform the rough forecast that can be from this point very roughly cast.       After                 the municipality's allocation, percentage estimated with most of discovery not yet received   Coercion a factor at a place like the 81st, which has a clearly alleged reputation in litigation (and recent litigation) as a, in sum and substance, you break the corruption blue wall—you go down hard.

1100.     Remedies are instrumented in the foregoing paragraphs, beginning with four components that begin with the letter "C," as Plaintiff has observed: Defendants' Concession, Commendation, Compensation, and Commission.[190]  At ¶ 1110, Plaintiff gives an overview of relief measures (adjudication needs; enjoining Defendants in public and government interest and for Plaintiff's repair and protection [191] for Plaintiff; enjoing of non-Party-actors-with-Defendants; compensatory, punitive, and statutory[192] monetary damages; fees and costs). Details of the program of Remedies in the foregoing paragraphs are to be developed in discovery, et cetera.[193]

1101.     Remedy of Relief via Concession of Defendants' falsehood and Commendation of Plaintiff for redressing corruption of State-power tyranny.  Such reduces life-long

---

[190] See ¶ 1101, infa

[191] Plaintiff has made great efforts and some certain and considerable sacrifices to mitigate damages from such as the contagion of Defendants' defaming: a major accomplish of the injunctive Remedy is to lock the mitigations tenuously maintained as Plaintiff has been able, as well as (and to a larger extent) accomplish tremendous mitigations against life-destroying perament damages.  Compensation and punitive damages of the Action are calculated with the presumption the Defendants' crippling of Plaintiff's life will be overturned and that damages should be caluculated with those cures from reasonable injunctive measures (of which the first two and last of the four "C" words indicate the substantive direction of such injunction (to be as stipulated as possible) available as a matter of law upon the litigation).

[192] 18 U.S.C. § 1964 are more compensatory than punitive, but are a separate statutory category; given municipal involvement—which is overtly not refused by the Second Circuit—as distinct from the Third Circuit's stand-alone position of municipality immunity; see the end of ¶ 101: CoA [A].  As an alternative, the first calculation from which the treble is made should be municipally charged (it is notable, however, that Plaintiff has previously cited, New York City maintains a 99.9997% indemnification rate for law enforcement (including where criminal findings are made)—to the reasonable calculations of available data as published by J. C. S. in a [2014] NYU Law Review). Any particular predicate act found to have or contribute to the cause for the award of the Remedy of ¶ 1102 is not a whole relief for any particular Defendant tort thought the lost profit award contributes to the one, whole recovery (regarding the latter: see ¶ 1111).

[193] for updates and more detailed statements with any needed reiterations of Pleading.

and generational damages by the certified inoculating-against-the-contagion-of-defamation-documents: among the Relieving Instruments should be at least one separate Concession and one separate Commendation as such may need to be used separately. Commmendation with some civilian honor will also mitigate injuries and stand and inoculate against continuing or aggravating tort.

1102.  Remedy particularly ripe for potential early award (or Default to COUNT III) to Plaintiff upon legal determinations include payment of injury component (*a*) # 1 (lost profits based on the quarterly rate of real estate brokerage transations (see detail at ¶ 11[][] , infra) from the time Defendants' arrested that business in early October 2014 (Defendants presently continue to aggravate Defendants' injuring of Plaintiff).[194] Claims referencing the instant paragraph invoke this lost profits damages award based on the quarterly rate until Remedy is complete. The award under ¶ 1102 should also include fees and costs accrued to the date of award, particularly if the award is made under Civil RICO. ¶ 11[][] addresses additional Civil RICO and professional, business, and property recoveries with regard the to the (a) # 1 ripest-for-award lost profits damages ¶ 11[][]).

1103.  Remedy of General Default—according the General[195] Default Count, COUNT I, ¶ 201. Default based in the concurrent or prior implementation of ¶ 1101-1102

---

[194] see injuries component (*h*)

[195] As explained at ¶ 201, there is thicket of Counts determinative of much of Defendants' liabilities below a somewhat variable line from where the corruption and racketeering escalated to where Defendants brazenly, still, demonstrate administration racketeering and corruption capability cultivation—that, too, is strongly demonstrated by Defendants' contumacious fraud against this Court with vast spoliation, et cetera: thus such cluster of "advanced municipal corruption liability," which continued the injuring of Plaintiff and aggravated injuries, et cetera, are set into COUNT II (¶ 202): given that both may be found about now (by default or determination by law)—no time to organization

and the ad damnum is $ 21 MN USD as of the F.A.C. or unless the F.A.C. is amended.  is the compensatory and punitive (to be added to ¶ 1102—with the award of ¶ 1102 procedurally coming first) damages remuneration upon default when such as Count I or equivalent is found.  The formula of punitive damages in default accords with Title 18 intent to punish Defendants' criminal activities, which are ongoing in these matters and accord acceptably with Second Circuit principles of general limit appropriate for the extremely malicious conduct of Defendants of police-sex-bribery-based personal injury by State power (as opposed to considering the magnitude of the accompanying and following more constitutionally-substantive capacity, facility, organization, operation, et cetera of State tyranny of the ¶ 1104 adjudication).

1104.    Remedy of Advanced Municipal Corruption Defendant Default (finding or default on COUNT II) to the ¶ 1104 Adjudication resolving the liability beyond that in the scope resolved by ¶ 1103. 2 MN USD minimum compensatory for the magnitude of municipal corruption aggravating the mental anguish taking the kafka-esque-ness of the intentional infliction of mental anguish to such heights with (plus) a presumptive ten to one ratio of punitive damages in such adjudication upon findings of the globular nature of the municipal corruption [with particular regard to such Claims under CoA[Y] CoA[Ω] CoA[Γ]  CoA[X] CoA[N] and CoA[Θ] .  Whether the default amoun of $ 22 MN USD for the instantly stated advanced municipality corruption liability is reached in default,

---

motion before Defendants Answer to the F.A.C. (other immediate and scheduling issues to consider and even with both of these defaults found—such as, particularly, injuntive Remedies should require some continued discovery and litigation).    The Advanced Municipal Corruption Default Remedy

partly by default and by matters of law, or sufficienty, independently, upon findings of matters of law: or with highly involved damages calculation of larger amount for this ¶ 1104 segment of liability: Defendants' payment of this liability, which occurs contingent with the "Commission" (see ¶ 1101, [add subsequent detailed specification of commission upon the ¶ 1104 finding]), does not resolve all liability for the corruption identified and treated—that is to say the Court may control the subsequent litigation implication for damages outside the scope of the punition addressed in the instant Litigation for the corruption infrastructure, et cetera discovered in the instant Litigation. Thus while

1105. Remedy of Defamation-Mitigating Injunction. Reasonable officers rejected all assertions that Plaintiff had committed any transgression except the allowing of consideration of defensive text messages against Defendants' corruption and racketeering misappropriate harassment, unlawful enrichment, or extortion with *mashed* misappropriated material.

1106. Remedy of Defamation Repair (Defamation Injury General Default Count (Count VII)

1107. Remedy latent for early determination

1108. Remedy latent for early determination

1109. Remedy of Defendants' Spoliation Penalty of over $ 2.5 MN USD: an immediate-compensatory award to Plaintiff and $ 2.5 to drawn from through a blind-transferred (from a Defendant funded spoliation penalty account) unique account by which Plaintiff will exercise costs plan for the varieties of expenses necessary

for the adjudication (such is well-proportional with Defendants' liabilities in the Action, public interest, et cetera).

1110.  Remedy categories overview: ¶ 1120 Adjudication measures needed early to best facilitate Adjudciation (including potential early partial trial) as necessary and hearing and adjudication immediate, and upon more discovery yet ahead of trial, of Plaintiff's clear laying out of legal determinations of Defendant liabilities, et cetera—facilitating Defendant concession or, otherwise, fully enabling vindication and name-clearing; ¶ 1130 Injunctions for Plaintiff; ¶ 1150 Injunctive reform of Defendants ¶ 1195   Injunctive measures upon non-parties ¶ 1205 Compensatory monetary damage award Remedy details [bodily distinguished] [such as lost profits also described in statutory section] [mental anuguish compounded, aggravating, and continuing] [defamation fixing requiring money sufficient to permanently address Defendants' toxic dump [various aspects to discuss across various components closely with details of injuries paragraphs section]]; ¶ 1230 Punitive monetary damage awards Remedy details ¶ 1245 Plaintiff attorney reimbursement;   ¶ 1250 Costs

1111.  Remedy by Recovery Schedule [196]: provides organization of from among multifarious Claims achieving relief of the one, whole recovery—the order (or schedule) of Claims to achieve that one, whole recovery.[197]

---

[196] The instant item of Remedy is under development, it is appropriate for Plaintiff to organize the schedule of recovery—though there has not yet been time to prioritize such.
[197] Given the multifariousness of the applicable law: the one, whole recovery can be achieved meeting all general sufficient need for findings (including for appropriately sufficient injunctions, et cetera) in any number of slightly different technically ways, sufficiently equivalent in context.

1112. Remedy measure that upon General Default (¶1103), but without Advanced Municipal Corruption Default (¶1104): there should be Adjudication of the remaining liabilities (thus neither would resolve the whole Action, but the roughly separable compensatory-heavy General Default and heavier-punitive (Advanced Municipal Corruption Default). It is more likely that in the case of the arrival-at-by-law or default to the Advanced Municipal Corruption Default that the General would be sufficiently found. Proceedings in discovery would be likely for Remedies and remaining liabilities would be likely even with both ad damnum found soon or early.

1120. ¶ 1120 Adjudication measures needed early to best facilitate Adjudciation (including potential early partial trial) as necessary and hearing and adjudication immediate, and upon more discovery yet ahead of trial, of Plaintiff's clear laying out of legal determinations of Defendant liabilities, et cetera—facilitating Defendant concession or, otherwise, fully enabling vindication and name-clearing (including ¶1129 Discovery enforcement including immediate sizeable-with-respect-to-Damages punitive sanctions for Defendants' contumacious obstruction);

1121. Remedy of Rule 11 Sanctions against Defendants' counsel—should Defendants' counsel does not concede to the violations to be put to Defendants' counsel as Plaintiff discussed in Plaintiff's last January 2019 Filing and otherwise (and if such exercise of Due Process rights of confrontation if Defendants should have attempted any ex parte communication to defraud the Court as to Plaintiff's

justified warnings to Defendants counsel concerning Defendants' counsel's Rule 11 violations, et cetera (Plaintiff particularly has in mind an email (which looked like it was written to be submitted as a pretext) from Mr. Rosenkilde saying in effect my-[Mr. Rosenkilde's]-ethics-cannot-be-impeached to which Plaintiff parsed Plaintiff's rightful criticism which had been made in reply upon which nothing of Mr. Rosenkilde's further Filings or communications suggested anything other than having conceded the points Plaintiff parsed and continued to propound upon as necessary and Mr. Rosenkilde's seeming observation that Mr. Rosenkilde had been at least partly put up to unethical or wrongful assignment— which Plaintiff has observed regarding Plaintiff's observations regarding Plaintiff's observations of Mr. Rosenkilde's likely wanting reassignment to avoid the continued captaining a doomed ship).

1122. Remedying meaure of Separated Immediate Trial of Ierardo Counts and Tomasello Culkin Henderson of CountS under Federal Rule of Civil Procedure 38.

1123. Discovery enforcement including immediate sizeable-with-respect-to-Damages punitive sanctions for Defendants' contumacious obstruction)

1130. Injunctions for Plaintiff: requiring, should the municipality not come forward appropriately, permant protections against defamation, commending Plaintiff's improvement of the municipality via Plaintiff's petitioning against Defendants' corruption

1131. Remedy enjoining the Communications and Operations of the City of New York to maintain non-disparagement of Plaintiff. [non-disclosure and non-disparagement binding the City of NY]

1132. Remedy enjoining non-disclosure non-disparagement for Plaintiff from non-party-injunctees]

1133. Remedying Scrubbing Databases and Record of Defendants' Libel (injunction for utter, thorough, interconnected resources expunction of defamatory process, et cetera)

1134. Remedying injunction order Ms. Obi to send letters by mail and email notifying all who may have been recipients of Ms. Obi's defamation against Plaintiff that her reports and accounts (speaking generally to avoid further connectivity to Plaintiff or specifics) were false about whatever it was she made into her fraudulent defamatory reports. Such serves to inoculate against future damages as retraction and admission of fraud would be widely published through the same network.

1135. Remedying injunction for law enforcement commendation by the law enforcement, corporation counsel of, and and the City of New York for Plaintiff's improvement of law enforcement in New York

1136. Injunctive repair to Plaintiff: Commendation by the State of New York of Plaintiff's service to improve the integrity of New York City law enforcement at considerable sacrifices; other ameliorative and defamation-inoculating injunctive relief.

1137. Remedy of Notice to reported-to-parties of fraudulent record creation.

1150.   Remedies of Injunctive Reform of Defendants

1151.   Remedy Commissioning certain reform of precinct operations

1152.   Remedy Commissioning certain reform of information technology

1153.   Remedy Commissioning certain reform of body camera and uniform technology with regard of laying the groundwork for necessary adapations to policing training, supervision, discipline, and organization staffing.

1154.   Remedy Commissioning general reform of King's County (District) Attorney training, supervision, discipline, and staffing.

1155.   Remedy Commissioning certain reform of King's County (District) Attorney information technology.

1156.   Remedy Commissioning certain reform of King's County (District) Attorney implementing counter corruption organizational measures.

1157.   Remedy Commissioning certain reform of City of New York Corporation Counsel training, supervision, discipline, and staffing with regard to

1158.   Remedy Commissioning certain reform of municipal systems responsible for establishing the sufficiently surety of Sixth Amendment representation protections (with regard to Defendants' practices of coercion) in King's County

1159.   Remedy Commissioning certain reform of Corporate Counsel

1160.   Remedy Commissioning certain reform of the Defendant City's legal staffing, training, supervision, et cetera: with personnel review and  outside-the-region retraining.

1161.   Remedies Commissioning certain reform of IAB

1162. Remedy Commissioning certain examination of all IAB personnel with regard to surveying duty performance

1163. Remedy Commissioner certain examination of all IAB records with regard to salient matters, issues, and corrupt facility of IAB established and discussed in the Proceeding

1164. Remedy Commissioning certain examinations of non-New York City employees regarding matters of investigation of corruption of IAB

1165. Remedy Commissioning certain reform of Unconstitutional polices regarding obstructing, duties to citizens to investigate municipal crime

1166. Remedy Commissioning other reform of NYPD

1167. Remedy Commissioning certain reform of different agencies regarding information technology fraud protection

1168. Remedy Commissioning certain reform of different agencies regarding different agencies regarding: audio visual capture cameras

1169. Remedy Commissioning certain reform of amendment of post-Mollen-Oversight-Committee powers, process, observation, and resources for observation and investigation or reconstitution

1170. Remedy Commissioning certain reform of (perhaps, Alternative) injunction (or part of the resultant mix of injunction needed:) injunctive reform would be to expand the CCRB authorization to be able to conduct interviews of police on occasions (or even some occasions) of upon corruption allegations (nuisance factor could easily be slight given that a perjured IAB-complaint could be generated under status quo under the four types of investigations the CCRB does

conduct) particularly where other police divisions with exclusive powers of agency and authority over such examination are avoiding putting persons on record as was a tortious act of the instant Case injuring Plaintiff (additionally, in such a case of deferring to any substantive CoD investigation the CCRB could potentially by certain procedures obtain certain relevant record)

1171. Remedy Commissioning certain reform for inbound-only data capture facility of secure access by New York State officials (hiring specifications, particulary for the commencement—CCRB or other City data access.—consideration of research access—special design for sealing or redaction

1195. Injunctive measures upon non-parties (non-parties found to participate with Defendants: particularly where such is assistance with the corruption organization or racketeering *furtherance array*. non-party-injunctees: to be injuncted relative to findings of non-party-injunctees involvement in Defendants' tort—as the Court should find appropriate—e.g. submission to examination, review, published reprimand, or sanction

1196. set upon racketeering participants particularly identified in the Complaint [others needing such as retraining, but not identified as racketeers

1197. mechanism from criminal-defendant-attorney racketeering

1198. regarding misappropriation and harassment from joint-tortfeasors

1199. set regarding investigation, data, and reports

1205. Compensatory monetary damage award Remedy details [bodily distinguished] [such as lost profits also described in statutory section] [mental anuguish

compounded, aggravating, and continuing] [defamation fixing requiring money sufficient to permanently address Defendants' toxic dump [various aspects to discuss across various components closely with details of injuries paragraphs section]];

1206. Remedy of Defendants' Remunerating Plaintiff's Private & Confidential Information-Related Damages as separate item as such considerations would be damaging to have outside of particularly sensitive consideration.

1207. Survivalability against Second Circuit appeal for Remittur Property values performance in Bedford Stuyvesant have performed among the strongest in the New York City metropolitan area (if not the strongest) such has implications regarding some of the excellent collection of Million Dollar Buildings appreciating beyond derivative growth goals at the front of Real Estate return.

1208. Reputational or Professional Property (with full injunctive or consented relief or without)

1209. Survivalability against Second Circuit appeal for Remittur Property values performance in Bedford Stuyvesant have performed among the strongest in the New York City metropolitan area (if not the strongest) such has implications regarding some of the excellent collection of Million Dollar Buildings appreciating beyond derivative growth goals at the front of Real Estate return.

1210. Defamation Repair Compensatory (with full injunctive or more otherwise as far greater repair would be needed)

1211. Reputational General

1212.   Societal (with full injunctive or consented relief or without, i.e. lifelong alteration), and Latent Damages (doctorate, law school, et cetera; damages upon other damages)

1213.   Regarding Multifariousness of the sufficient of causes of action and sets of injuries in causing compensable damages.

1214.   1.6 MN USD Lost Profits based on brokerage budgeted in-process transactions destroyed by Defendants; 2 MN USD Defamation repair compensation concurrent with injunctive relief; 3 MN USD bodily harm compensatory; 1 MN USD Outrage Compensatory; other Family, Social  (protective order contributing to R.I.C.O.) .   Compensatory Total (excluding R.I.C.O., i.e. professional, business, property): 9 MN USD minimum . R.I.C.O. total 8 MN USD minimum: Punitive: 20 MN USD minimum

1215.   Gross outrage compensatory 7 MN USD minimum  (including collateral damages Defamation, family, social, et cetera which sufficiently casually rests on Defendants' intentional infliction of mental anguish as in seeking to cause mental anguish Defendants caused collaterally other harms which compounded and aggravated the various strains of Defendants' intentionally inflicted mental anguish).  In addition to the compensatory is the finding of the collective outrage Counts carries the Civil R.I.C.O. award and gross outrage punitive remuneration of a minimum of $ 21 MN USD  (+ 15 MN USD minimum with the any needed post General Default Adjudication (¶ 1112)).

1216.   Gross retaliation compensatory 7 MN USD minimum  (including collateral minimum damages Defamation, family, social, et cetera which sufficiently

casually rests on Defendants' First Amendment-or-Substantive-Due-Process-Right-to-Petition Retaliation against Plaintiff as in seeking to cause mental anguish Defendants caused collaterally other harms which compounded and aggravated the various strains of Defendants' intentionally inflicted mental anguish).

1217. Lost Profits Compensation Detail.   Damages real estate brokerage business immediately payable to Plaintiff based on Plaintiff's quarter of transactions in progress at the time of injury continued—Plaintiff sought to either immediately make the provided move to commercial or after continuing or increasing the three hundred and thirteen dollar-per-year rate at which Plaintiff was in transaction at the time of Defendants commencement of the ongoing injuring of Plaintiff (transactions (in billing at the time: \$3,650, \$27,000, and \$45,000 = \$75,650 per quarter) themselves are indicative whereas tax returns are not as Plaintiff received less as a result of injury plus the \$2,500 or more collected in August on a lease giving a subtotal = \$78,150); furthermore, it is noticeably common knowledge in the real estate industry that profits follow activity by periods of six months to year, with a longer period following one's start in the industry—thus Plaintiff's 2013 and 2014 are not exemplary of 2015, 2016, 2017, 2018, 2019, 2020, or 2021; Plaintiff began in New York real estate brokerage in the late spring of 2013—Plaintiff assisted other brokers for most of the first year including being second agent on a nine million dollar Central Park South listing.]] as Plaintiff had clear plans to expand business annual increases could be plotted at 20% thus estimating over five years: \$313,000(5) + \$313,000(1+.2)^5 = \$1,565,000 +

$779,000 = $2,344,000 in earnings from 2015 through 2019 on top of 2014 losses of at least $60,325.  While the real estate figures could have been higher, they could have been lower and Plaintiff will prepare to argue details in support of higher estimation: as a contingency against lower estimation: Plaintiff might have otherwise still entered the race in the Minnesota Second District which, had Plaintiff not been injured by Defendants, Plaintiff would have won as Plaintiff would have won the subsequent election: the value of salary and benefits (including lifetime Congressional legislated benefits of office) would not be less than the $2,344,000 (or one could calculate the residential (and more) real estate income (in addition to the lost pending 2014 business including matters which much be discussed under the protective order) from 2015).  It is well noteworthy that many factors of upside to Plaintiff's real estate business that was occurring prior to Defendants' disabling Plaintiff can only be discussed confidentially, but transactions were in progress of which the City of New York had notice as a Party involving earnings several times greater than the estimate of lost earnings presented for calculation of damages, partly due to the fact that even though time is lost, particular transactions, upon that relief prayed for in 17CV4519, might potentially have new breath with potential investments in New York City real estate of large magnitude precipitating, although market factors are always changing, even if slightly.  Additionally, a certain matter under negotiation (which must be discussed under very limited circumstances to be discussed further under the mutual protective order) at the time would have been resolved in radically different circumstances as would have improved the result for Plaintiff as is to be

addressed privately.  Many of the particular details of these transactions must be discussed under the terms of the Mutual Protective Order.  Prejudgment or damages interest does apply.

1218.  [Paragraph to discuss the (*a*) # 1 ripest-for-award lost profits damages in the context of additional professional, business, and property recovery as well as additional recovery under Civil RICO b] The damages should be calculated as Defendants' required immediate payment to Plaintiff of R.I.C.O. Damages (applied to Plaintiff professional lost profits as calculated from Plaintiff's transaction in process from the quarter up to October 8th. 2014 when Defendants destroyed Plaintiff's life and exercise of such and other profession.  Additional R.I.C.O. professional damages not calculable qua the prima facie calculable by rate of transaction-in-process-of-the-quarter continued at a presumable one percent quarterly rate [with an addition ten percent loss as expenses] .  The amount undergoes statutorily specified (18 U.S.C. § 1964 et sequent) Civil R.I.C.O. transformation to arrive an award amount.  The Remedy instrument of the further Civil R.I.C.O. professional damages (and other Civil R.I.C.O. damages: property, personalty, costs, attorney fees, business damages, professional damages, reputational property damages) remuneration is at ¶ 1[][][].

1219.  Plaintiff's permanent deprivations of chattels—thefts, destructions, et cetera.

1220.  Regarding Plaintiff's monetary damages: repairing systemic corruption begins considerable process of reducing continuing and furthering aggravations caused by the community's dealing with police criminality almost never proved due to the success of corruption measures (Plaintiff's total compensation is considerably

less than the likes of such as Booz Allen or McKinsey would provide for findings establishing the means to modify towards compliance and dramatic mitigations to the incurring of liabilities and caustic fraudulent police enforcement underbelly raising massive expenses in the heightened animosities in ligitation as well as costs of such seen in 2015 with the closing of streets, overtime, et cetera)

1230.  Punitive monetary damage awards Remedy details

1231.  Remedy of punitive damages for usurpation

1232.  Remedy of punitive damages for negligence

1233.  Remedy of punitive damages for obstruction

1234.  Remedy of punitive damages for tyranny

1235.  Remedy of punitive damages for corruption

1236.  Remedy of punitive damages for operations and corruption and racketeering facility

1237.  Punitive for Bodily Danger to Plaintiff

1238.  Punitive for Mortal Danger to Plaintiff

1239.  Punitive for Systemic Corruption and Outrageous Substantive Abuse (awareness and notice established; defrauded mini-Mollen)

1240.  Punitive for Harms to Others within Local Jurisdiction Plaintiff that Plaintiff will turn over to Charitable Entity supporting Education, Civic Legal Initiatives, et cetera.

1241.  Remedy of punitive Damages remuneration for Damages to the public

1242.   Damages in the punitive capacity should seek recompense for the entire scope of malfeasance against the public within the jurisdiction. Each act risking mortality, each policy risking mortatily: Plaintiff mortality damages as model.

1243.   Plaintiff's swating of Defendants' obstructions does not mitigate the punitive liability based with respect to the intended injury and the compensatory injury of intentionally-inflicted mental anguish is considerable.


1245.   Statutory monetary damage award Remedy details [Civil R.I.C.O.]

1246.   Additional R.I.C.O. (other than immediate-quarter-based damages) remuneration

1247.

1250.   Remedy of Plaintiff attorney-fee recovery.  Attorney Fees to be retained regarding Mr. Stancati stated he had completed something somewhere around $70,000 worth of billable hours, but refuses to submit documentation of such among other hostile action for the benefit of Defendants (see ¶ []).[198]


1255.   Remedy of Costs: paper, writing, writing supplies; research operational expenses (computing, transportation); Filing and mail expenses; $13,500 King's County court and Federal Court appearance travel with necessary non-appearance appointments in Manhattan and occasions where Plaintiff was notified an appearance was scheduled, but the appearance did not occur due to such as

---

[198] resolution with Mr. Stancati on February 8th, 2018 was settled to avoid dispute with agreement that Mr. Stancati receive no more than $17,500 regardless of case settlement, award, verdict, terms, et cetera; the issue of Mr. Stancati's voiding his eligibility for a not-more-than-$17,500 interest in matters by refusing to follow through with agreed and complete transfer of material is a separate issue to be consider separate from Mr. Stancati being ordered to supply hours

weather (e.g. January snow day, and resulting Court docket crowding rescheduling in 2015), two post Enactment; $17,000 moving and storage expenses; interest on costs (driving there and back $2500, 11k, finance, 700, ); 17,500 Stancati (alternatively); $600 K, K, & S; w int $75k,

1300.   **Racketeering predicates** under definitions with respect to 18 U.S.C. § 1961 as pertains to ¶ 101.  The greatest multitude of injurious-as-in-causing-Plaintiff's professional, business, property (et cetera 18 U.S.C. 1964-eligible) damages are the three-figure number of Counts of Obruction of Federal Civil Rights Proceeding.[199]  Predicates include acts of the larger racket including the police sex bribery (formely including rape) allegations Anna Chambers; admitted Pay-for-Play between a Criminal Defense firm and 2014-2015 KCDA, Mr. Kenneth Thompson; briberies for off-book police uniformed and equipped security services, police-supported (fromer-police owned) brothels recently reported of involving Brooklyn police connections in Queens; post-Mollen-Oversight-Committee recently reported on a police administrator being insufficiently disciplined for publicized transgression that IAB reported at least some substance about to the post-Mollen-Oversight-Committee regarding improperly taking flights and benefits to or in Las Vegas; Destruction of lab report intended to falsify Ms. Obi-2014-affilliated-academic-institution class record of victim student.

1301.   Regarding § 1962 (d): The minimum of two predicates for the application of § 1962 (d) to selected individual Defendants is described in the Assignment of Liabilities, supra.

1302.   Predicates committed by the racket causing Plaintiff's injuries include the form of criminal offenses under State Law and Federal Offenses allowed under 18 U.S.C. § 1961 are outlined for the purposes of ensuring the threshold of predicates, even

---

[199] 42 U.S.C. § 1985 (2); CoA [Γ]—¶ 124;

though the vast number of obstructions of justice against the instant Proceeding are far more than sufficiently abundant.

1303. Fraudulent documents were transmitted interstate—including some data from the *information-assemblage*[200] amounting to wire fraud,[201] along with other wire fraud identified in the Counts including a recently committed wire fraud of a third party material.

1304. 2018 Mail fraud by Defendants injurying Plaintiff: Defendants mailed-interstate fraudulent Defendants-Tomasello-and-Culkin reports under the racketeering and furtherance of crime directly overseen by Defendant Henderson to Plaintiff committing mail fraud predicate and also attempting obstruction of justice to unconstitutionally and fraudulently strike at via fabrication of intented to obstruct the instant Proceeding documentation.

1305. R.I.C.O. predicate: Title 18 obstructions of justice (see ¶¶ [ ,]); NY Penal Law §§: 120.05, [202] 120.10,[18] 125.25, [203] 125.27[19] under the attempt statute—110.05; 160.15,[204] [second degree], [20]; 121.13 or 121.12 under the attempt statute 110.05 (see ¶ []); 120.13 (see ¶ []); 135.65[205] (see ¶ []); 200.00; 135.10[206] (see ¶ []). Regarding other R.I.C.O. elements see ¶ [], and R.I.C.O. damages, ¶ [].

---

[200] (term defined in ¶ 2, supra) police fabricated documents and materials complied with police instructions for malicious and obstructive use to KCDA
[201] wire fraud under 18 U.S.C. § 1343
[202] See ¶ [] regarding Defendants' attempted murder of Plaintiff
[203] See ¶ [] regarding Defendants' attempted assault of Plaintiff
[204] See ¶ []
[205] See ¶ [] "coercion" qua the R.I.C.O. predicate of "extortion" as identified as a predicate under Title 18 § 1961(1)(A).
[206] See ¶ [] ."unconstitutional imprisonment" qua the R.I.C.O. predicate of "kidnapping" as listed in Title 18 § 1961(1)(A)

1306. Background of police sex-bribery R.I.C.O. cause of action detailing part []²⁰⁷ of []: Title 18 obstructions of justice pre. See ¶¶ [] and [] for further details on particulars [reference May 7ᵗʰ, 2015 antecedent and state simply for purposes of R.I.C.O.]

1307. Background of police sex-bribery R.I.C.O. detailing part [] of []: Title 18 obstructions of justice part [] of []. See ¶¶ [] and [] for further details on particulars [reference post ¶ 24 identification of so potent a cause of action to falsify 81ˢᵗ Precinct duty in following corrupt protocol in attempt to prevent filing of Section 1983 action. by Plaintiff antecedent and state simply for purposes of R.I.C.O.]

1308. Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: Title 18 obstructions of justice part [] of []. See ¶¶ [] and [] for further details on particulars [reference post Rosello destruction of IAB materials to thwart discovery of known filing by Plaintiff antecedent and state simply for purposes of R.I.C.O.]

1309. Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: Title 18 obstructions of justice part [] of []. See ¶¶ [] and [] for further details on particulars [reference March 28ᵗʰ, 2018 antecedent and state simply for purposes of R.I.C.O.]

---

²⁰⁷ See ¶ [] for the opening overview of the R.I.C.O. claim. ¶¶ [] through [] identify particular R.I.C.O. predicates under Federal and New York State criminal law as defined by Title 18 § 1961(1)(A). ¶¶ [] through [] address the satisfaction of Title 18 § 196[] requirement beyond Title 18 §1962[?] predicate acts pertaining more broadly to the nature, purpose, construction, and utility of the 18 U.S.C. § 1964[?] claim by Plaintiff against Defendants in 17CV4519.

1310. Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: Title 18 obstructions of justice part [] of []. See ¶¶ [] and [] for further details on particulars [reference August [], 2018 antecedent and state simply for purposes of R.I.C.O.]

1311. Background of police sex-bribery R.I.C.O. Counts Robbery or theft predicate part 1 of 2: NY State Penal Code §§ 160.15, 160.[], and Robbery—Robbery was an unconstitutional grant accepted by Ms. Obi for her part in the state-action sex-bribery exchange; the city facilitated and supported Ms. Obi's theft, theft which had opportunity upon the violence also facilitated and supported by the City and the unconstitutional seizing of Plaintiff (Det. Tomasello's pointedly gratuitous and intended-to-be-message-sending-and-aggravating a pointed example of municipal endorsement of the theft produced as a part of the sex-bribery act).

1312. Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: Robbery or theft predicate part 2 of 2: Robbery or theft predicate part 1 of 2: NY State Penal Code §§ 160.15, 160.[], or 155.35 (Det. Tomasello's pointedly gratuitous and intended-to-be-message-sending-and-aggravating a pointed example of municipal endorsement of the theft produced as a part of the sex-bribery act).

1313. Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: Ms. Obi acting with municipal dispensation to violence attempted strangulation by Ms. Obi's hand on Plaintiff's neck (detailed further and less specifically for purposes of stating R.I.C.O. predicate at ¶ []): felony in the vein of murder or assault: relevant NY Penal Law: §§ 125. 25, 121.13,

1314.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: Ms. Obi acting with municipal dispensation to violence attempted strangulation by Ms. Obi's hand on Plaintiff's neck (detailed further and less specifically for purposes of stating R.I.C.O. predicate at ¶ []): felony in the vein of murder or assault: relevant NY Penal Law: §§ 125. 25, 121.13,

1315.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: Ms. Obi acting with municipal dispensation to violence attempted skull fracture with ceramic or ceramic-like bathroom object (detailed further and less specifically for purposes of stating R.I.C.O. predicate at ¶ []): felony in the vein of murder or assault: relevant NY Penal Law: §§ 125. 25,

1316.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: Ms. Obi acting with municipal dispensation to violence to state to Plaintiff that she, Ms. Obi "will kill" Plaintiff (detailed further and less specifically for purposes of stating R.I.C.O. predicate at ¶ []): felony in the vein of murder or assault: relevant NY Penal Law: §§ 135.65 menacing in the first degree

1317.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: wire fraud under 18 U.S.C. § 1343 part; Transmission of racketeering purposed document which is fraudulent and defamatory to harm Plaintiff to federal and other out-of-NY databases.  Each transmission a separate racketeering predicate. The "Additional Fingerprint Response" indicates transmission was made at least to the FBI, which is a transmission to federal government databases in Washington, D.C. and all States.

1318.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: Ms. Obi acting with municipal dispensation to violence by seeking to instigate a pretext to wage physical violence causing Plaintiff's bodily harm (detailed further and less specifically for purposes of stating R.I.C.O. predicate at ¶ []): felony in the vein of murder or assault part [] of []: relevant NY Penal Law: §§ 120.10 Assault in the First Degree, 120.25 "Reckless Endangerment",

1319.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: kidnapping (see U.S.C. Title 18 § 1961 et sequent regarding "kidnapping") qua unconstitutional or tortious confinement 1 Ms. Obi's State-action racketeering mounting of Plaintiff after pushing Plaintiff onto Plaintiff's back on Plaintiff's bed

1320.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: kidnapping (see U.S.C. Title 18 § 1961 et sequent regarding "kidnapping") qua unconstitutional or tortious confinement 2 Ms. Obi's confining Plaintiff in the downstairs bathroom as Ms. Obi threatened and attempted to murder Plaintiff

1321.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: kidnapping (see U.S.C. Title 18 § 1961 et sequent regarding "kidnapping") qua unconstitutional or tortious confinement 2 Ms. Obi's confining Plaintiff in the upstairs bathroom as Ms. Obi threatened and attempted to murder Plaintiff

1322.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: kidnapping (see U.S.C. Title 18 § 1961 et sequent regarding "kidnapping")  qua unconstitutional or tortious confinement 2 Sergeant Brown

1323.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: coercion qua extortion dangerous confinement, new court

1324.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: coercion qua extortion May 7th

1325.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: sex bribery 1 NY Penal Law 200.00, 10.00 (17), i.e. the community of police sex-bribery racketeering women who recruited Ms. Obi testifying to the ease and value of their own New York City police sex bribery racketeering successes.

1326.   Background of police sex-bribery R.I.C.O. cause of action detailing part [] of []: sex bribery 2 NY Penal Law 200.00, 10.00 (17), i.e. the community of police sex-bribery racketeering women who recruited Ms. Obi testifying to the ease and value of their own New York City police sex bribery racketeering successes.

1327.   Described as KCDA pay to play campaign (I can provide service because Kenneth Thompson will as has been established between us specifically with regard to my regular and ongoing campaign donations and financial support and contributions to Mr. Thompson: NY Penal Law 200.00,

1350. **Background to Counts** [Instant section generally contains additional information pertinent to Counts and references to such information. The organization and structure of the instant section is considerably inconsistent [mirroring Counts or choosing alternate structure?)]] General: Callous, reckless, and wanton disregard of employment of seizure and instigation of false process demonstrating corruption racket exemplified in the Red Hook case where a upon person randomly seated at a bar near policeman was arrested by the policeman simply, as the policeman admitted, to meet a quota—this flippant attitude to Constitutional infraction is very much the character operational of Defendants and a product of the Commissioner and Command Center's maintenance of operational room form racketeering. [Section detailing discovery, particularly providing close parsing of Defendants' CCRB interviews balanced between getting certain arguments in the pleading and playing defense re: not facilitating mentiri by selecting reference to privilege and minimizing the assistance to Defendants' mentiri formation.] [Should well lay out highly detailed arguments including such as Defendants' brazen confidence and other details establishing Defendants' level of establishment and confidence in Defendants' racketeering mechanisms.]

1351. Background to Counts, important to lay out the timing of Plaintiff's discovery [delay by Defendant fraud] of the fraud of the Sprint reports (2019—had not even realized there were two reports were fraudulent—reviewing evidentiary material uncovered the fraud). The importance of such should be highlighted with regard to the evidentiary material referenced, in addition to other significant parts of the

corpus of evidentiary material which wholly support the fraud of Defendants in fabricating these reports.

1352.   Background concerning Defendants flippant misidentification (part 1 of []) of Plaintiff in police reports. Defendants characterized Plaintiff's education as finishing at "18"—when in fact Plaintiff has 6 years of higher education including a start on a doctoral degree as is in subsequent court record.

1353.   Background concerning Defendants' flippant misidentification (part 2 of []) of Plaintiff in police reports. Defendants described Plaintiff's "Skin Tone" as "Dark:" Plaintiff skin tone does vary, but it was very much not particularly tan in October of 2014—and thus would have been described by someone actually observing Plaintiff as the opposite.

1354.   Background concerning Defendants' flippant misidentification (part 3 of []) of Plaintiff in police reports. Defendants mischaracterized Plaintiff's Adidas athletic sneakers as dress shoes.

1355.   Background concerning Defendants' flippant misidentification (part 4 of []) of Plaintiff in police reports. Defendants mischaracterized Plaintiff's jacket as a sport coat when the correct category brown suede, was an option.

1356.   Background concerning Defendants' flippant misidentification (part 5 of []) of Plaintiff in police reports. Defendants mischaracterized Plaintiff's pants as being "slacks...tan," when Plaintiff was not wearing tan slacks and in fact did not own tan (no brown, beige, khaki, et cetera) slacks for years.

1357.   Background concerning Defendants flippant misidentification (part 6 of []) of Plaintiff in police reports. Defendants mischaracterized Plaintiff's income

statement (taken at 110 Schermerhorn) by a reduction of One Hundred Thousand United States Dollars less per annum—or simply made up a number that was One Hundred Thousand United States Dollars less per annum.

1358.   Background concerning Defendants' flippant misidentification (part 7 of []) of Plaintiff in police reports.  Defendants mischaracterized Plaintiff as being born in NY, when Plaintiff's first visit to anywhere in the NY metropolitan area other than the interstate traveling through was at age 20.  Plaintiff has no known family in New York though some ancestors did reside in New York State in the early period after Revolutionary War service, et cetera.

1359.   Background concerning Defendants' flippant misidentification (part 8 of []) of Plaintiff in police reports.  Defendants list Plaintiff's weight as being over twenty pounds less than Ms. Obi's weight was at the time while, Defendants fabricate concerning Plaintiff—Defendants so fabricate—performing nonsensical and physically impossible tasks, et cetera, which would be all the more doubtful if Ms. Obi had weighed over twenty pounds more than Plaintiff at the time.  Plaintiff had not had such a weight since high school when Plaintiff was not as tall and thus such did not conform to Plaintiff's identification.

1360.   Background concerning Defendants' flippant misidentification (part 9 of []) of Plaintiff in police reports.

1361.   Background concerning policy tolerating sex-bribery-and-equivalent misuse of police actions reflective of de facto New York City policy of tolerating such as sex bribery as if it were an acceptable, if discrete, perk in the following [] parts.

1362.    Background concerning policy tolerating sex-bribery-and-equivalent misuse of police actions, i.e. ¶ [44—one above]; part A of []. Did not even feel the need to fake a 9-1-1 call.

1363.    Background detail to ¶ 25: [Background of May 7th, 2018]part A of []. Parties or non-government parties, legitimately or illegitimately involved, of actions at King's County Criminal Court are prohibited from recording proceedings in courtrooms.

1364.    Background detail to ¶ 25: part B of []. There is no video or audio record of proceedings under express New York State authority; there is only a court reporter's notes.

1365.    Background detail to ¶ 25: part C of []. The King's County Criminal Court keeps a backup of court reporter's notes "upstate."

1366.    Background detail to ¶ 25: part D of []. Ms. Doreen Ierardo, is the Court Reporter's Clerk or Manager, or managing official of other title, who controls access for authorized persons to obtain court reporters notes.

1367.    Background detail to ¶ 25: part E of []. Ms. D. Ierardo has an assistant, receptionist, junior clerk, or assistant by some other title, who generally receives requests for court reporters' transcriptions from notes in person and via telephone.

1368.    Background detail to ¶ 25: part F of []. Ms. D. Ierardo on March 28th via a telephone call to Plaintiff, said the she, Ms. Ierardo, was the "boss" of the woman identified in Number 46 as the assistant of Ms. Ierardo.

1369.    Background detail to ¶ 25: part G of []. Plaintiff, upon firing Plaintiff's former and compromised-by-Defendants attorney, Mr. Stancati, for which Plaintiff

needed to appear before the Honorable Steven Tiscione on February 8th, 2018, went to 110 Schermerhorn, the King's County Criminal Court, where Plaintiff was repeatedly deprived of Constitutional guarantees for American life by agents bearing color of law, on February 7th, 2018 to obtain court transcripts.

1370. Background detail to ¶ 25: part H of [].  Plaintiff met with the assistant of Ms. Ierardo, who explained to Plaintiff pricing policy; Plaintiff ordered  certain important, involved, or substantive transcripts.  The assistant of Ms. Ierardo explained that she relayed requests for transcripts to the individual court reporters and managed the reporters' production of requests and explained that the back-up method of production for somebody retired or out-of-touch for any reason was, expressing consolation, a two-to-three month process to obtain the record from "upstate." Plaintiff realizing that this official, the assistant to Ms. Ierardo, had a considerable role in the safe and efficient production of the evidence Plaintiff rightly was obtaining, identified the critical absolutely most important record of November 2015 as it contained a prosecutor near confession of wrongdoing to Plaintiff concerning which Plaintiff was currently engaged and another certain record as the clear second most important record; this certain record certain, oft-repeated recitation of facts concerning October 8th, 2014—that such was presented as it was when it was serving an importance to the concreteness of evidence in 17CV4519, the instant Proceeding.  Plaintiff was told by the assistant of Ms. Ierardo that the records would be available for pick-up by the end of that month, February; when the assistant of Ms. Ierardo confirmed readiness by the end-of-the-month and that Plaintiff would need to pick up the records in person,

Plaintiff explained that Plaintiff's would be out of town until March when the next business in Plaintiff's proceeding was then scheduled and thus, Plaintiff would arrive to pick up items upon Plaintiff's return to the area in early March.

1371.   Background detail to ¶ 25: part I of [].  Plaintiff called the assistant of Ms. Ierardo in early March as only 2 reporters had contacted Plaintiff, neither was the most important or second-most-important record.

1372.   Background detail to ¶ 25: part J of [].  No additional reporters' contacting Plaintiff by March 27th led Plaintiff to feel the importance of following up, particularly as Defendants had and are continuing to engage in evidence tampering and other obstructions of justice, et cetera, i.e. criminal, bad-faith, dangerous-to-judicial-proceedings-of-The United States behavior, and the clock was a measure of risk, and Plaintiff requested that for at least the most important record, the two-to-three-month process of obtaining the back-up record from "upstate" be initiated, as double the time scheduled from production had passed; the assistant of Ms. Ierardo said in response to Plaintiff's request to start the recovery of the "upstate" back-up copy that she, the assistant, would continue follow-ups with the reporter, that reporter is identified in ¶ [] infra as non-party-Injunctee, Peter Appel.

1373.   Background detail to ¶ 25: part K of [].  Ms. Ierardo called Plaintiff on March 28th, 2018

1374.   Background to prosecutorial deprivations: part [] of []: King's County (District) Attorney prosecutors, speaking on behalf of their authority, stated in the course of the State proceeding that Sergeant Brown was not involved with the matters

involving, connected to, or related to Plaintiff; when such was later admitted no explanation was provided and none has been provided for such a dramatic alteration which occurred by the time Plaintiff was provided with discovery in June of 2015; King's County (District) Attorney prosecutors', speaking on behalf of their authority, insisting that they would officially block the 9-1-1-responding pair (¶ 27) from being in any way sources of evidence in the fraudulent actions against Plaintiff demonstrates clear absence of jurisdiction in their conduct.

1375. Hours of IAB recordings demonstrated without exception that by all calculable measures Plaintiff was telling the truth, Plaintiff is extraordinarily observant and Plaintiff witness would be of great value in addressing police corruption, Plaintiff was not rehearsed, Plaintiff had exceptionally good recall and would make an outstanding witness, Plaintiff was not and would not lie, Plaintiff was a victim of police crimes at the hands of Ms. Obi and others, Plaintiff was not predisposed with a grudge against police saw police as helpful agents until Plaintiff's eyes were opened to the reality of policing under the Corporation of New York.

1376. Sergeant Shaun Brown asked the happily ever after question to test Ms. Obi's reservations on the basis of having complained but expressed having up until recently different feeling.

1377. Background delineation to ¶ [] antimiscegeanation. Sergeant Brown blatant comment made it clear he was not serious about operating constitutionally.

1378. Background delineation concerning Sergeant Brown's not being on duty, which substantiates the fraud of Defendants' representations that Sergeant Brown was on duty. Part [] of [] of count [] and claims []. When Sergeant Brown is introduced

in the CCRB questions, he answers the first few immediately without hesitation, he then is asked when his shift was and with a small panic in his voice he stutters blurts and fake start time and then awkwardly as if trying to elide into the fake closing time so as to make up the time from the stutter as if reducing the net delay would somehow hide the nervous wreck zips out the closing time.   Sergeant Shaun Brown's behavior when being questioned about the circumstances relating to supposedly being on duty on October 8th, 2014 indicates that he was not on duty.   Forceful withholding of materials Lt. Parese indicated was the core and foundation of the IAB investigation indicates IAB supported the fabrication of duty records after the fact as Sergeant Brown was not on duty on October 8th, 2014.   Sergeant Brown and the nervous Officer trying not to be seen keeping-his-eyes-on-the-floor, who says he remembers nothing at all, who showed up with Sergeant Brown have zero notice of shift in their memo books for October 8th, 2014, which strongly corroborates that as ¶ 24 affirmed that ¶ 24 triple-checked all records that would indicate which police were on duty on October 8th, 2014 and Sergeant Shaun Brown was not on duty on October 8th, 2014, someone else was in that role, i.e. not Sergeant Shaun Brown, on October 8th, 2014. [] ¶ 24 stated that ¶ 24 absolute, having-triple-checked, confidence led ¶ 24 to be confident that Sergeant Brown was not on duty; ¶ 24 asked Plaintiff if Sergeant Shaun Brown had been dressed in uniform which ¶ 24 stated he could not have rightly done as he was not on duty on October 8th, 2014.   IAB is withholding or has tried

1379.   Background to Counts [search "fake quotation"] The document states that on October 8th, 2014 at "22:00" Plaintiff at 677 Quincy Street made a statement: the first fraudulent item is that Plaintiff was not at 677 Quincy Street at 22h00—Plaintiff had been taken to the precinct at 20h30.  There was no dispute on October 8th, 2014 other than whether Ms. Obi had municipal racketeering power enough to murder Plaintiff—Plaintiff disputed that Plaintiff's infringement of rights and liberties and Ms. Obi argued that per Ms. Obi's sex bribery contract with police racketeers, Ms. Obi had municipal privileges to homicidal tyranny against Plaintiff.  Regarding the illegal recording of Plaintiff—October 8th, 2014 was not to be about it—Ms. Obi admitted in front of the 9-1-1 calling witness that Ms. Obi's Kyocera contained material evidencing criminal activity of Ms. Obi against Plaintiff.   If Plaintiff had been allowed to speak—Plaintiff would have said that Ms. Obi was scheduled to be removed from the landlords' properties on October 9th, 2014—an event Ms. Obi had, by fraud, managed to delay until that date: Plaintiff would have said nothing of the sort of a "get along" issue—Ms. Obi had homicidally attacked Plaintiff, by three different means, in front of a witness after 9-1-1 was called and continued trying to smash Plaintiff's head after the police arrived—the police (¶ 27) seemed to have made it clear what the consequences would be if Ms. Obi attacked Plaintiff prior to Ms. Obi's removal the next day—if Plaintiff and the others were murdered asleep an international warrant would have been readied for Ms. Obi—"not getting along" had nothing to do with anything.  Lastly is this doozy: Plaintiff "has been trying to get out of the lease" no, Plaintiff had not yet signed or been presented with the lease fro

signature—based on professional trust, Plaintiff was the first occupant, but not bothered with the lease when Plaintiff moved in on September 10th, 2014—the lease had not yet been prepared and Plaintiff and the landlord's agent made an agreement based on verbal exchange and custom—the terms were entirely loose—the arrangement was suggested to Plaintiff by the landlord's agent as a temporary fix to locate Plaintiff's Cal King bed (which Plaintiff would not need to say for anyone familiar with NYC real estate does not fit well in most bedrooms locally) and 100 square feet of stuff Plaintiff had recently removed from a storage unit in Washington D.C.  The landlord's agent even told other tenants to relay inquiries to the landlord's agent to Plaintiff—so, no, Mr. Caracciolo's statement has essentially nothing to do with anything Plaintiff did say—see ¶ regarding related circumstances—or would have said had Plaintiff been allowed a fraction of what Plaintiff had a constitutional right to say

1380.  Background delineation concerning Ms. Obi.  Person to tell friends and strangers about crimes she committed.  Violent potentially measurably sociopathic or psychotic certainly to the extent of being observed.

1381.  Background delineation concerning municipal custom and public knowledge of corruption:  Borough President Eric Adams stated suspicions related to the low rate of investigations of IAB, et cetera, and the notary who backed out of work not wanting to expose dirty cops saying he would not be associated with P "Poking the bear."

1382.  Background delineation to municipal custom and municipal notice of problem: 20 years should be plenty of time to respond to warnings of the Mollen Commission

qua notice of municipal problem. Selwyn Raab (29Dec 1993) New York Times via Wikipedia: "the 'special mayoral panel [The Mollen Commission]...asserted...that the New York City Police Department had failed at every level to uproot corruption and had instead tolerated

1383. Background delineation concerning municipal custom and public knowledge of corruption: Borough President Eric Adams stated suspicions related to the low rate of investigations of IAB, et cetera, and the notary who backed out of work not wanting to expose dirty cops saying he would not be associated with P "Poking the bear."

1384. Background delineation to municipal custom and municipal notice of problem: 20 years should be plenty of time to respond to warnings of the Mollen Commission qua notice of municipal problem. Selwyn Raab (29Dec 1993) New York Times via Wikipedia: "the 'special mayoral panel [The Mollen Commission]...asserted...that the New York City Police Department had failed at every level to uproot corruption and had instead tolerated a culture that fostered misconduct and concealed lawlessness by police officers.' Mollen [the Commission chair Milton Mollen] issued a report in July 1994. The conclusion: 'Today's corruption is not the corruption of Knapp Commission days. Corruption then was largely a corruption of accommodation, of criminals and police officers giving and taking bribes, buying and selling protection. Corruption was, in its essence, consensual. Today's corruption is characterized by brutality, theft, abuse of authority and active police criminality.'"

1385.  Background delineation [move up to count section supra—see Number 68] of count pertaining to the tampering of the November 9th, 2015 Courtroom "Trial 1" of at 110 Schermerhorn, Brooklyn, NY subsequent to the insinuated destruction of this record.  An example of the proof available[208] which has least risk of necessary impeachment value is that Anthony Barosi et alia Defendants' in fabricating upon the transcript of court reporter's notes taken by a Mr. Peter Appel of that day, November 9th, 2015, with the assistance of Mr. Appel, regarding Plaintiff's May 7th Complaint: concocted material as pseudo defense to selected claims of 17CV4519.  Mr. Barosi et alia, inferred from Mr. Barosi's raging against Plaintiff in February of 2015 immediately prior to Plaintiff's message to Mr. Waters at the King's County Attorney's office, which—had it not been negligently ignored—could have brought about resolution sooner, and fabricated "[lines about Sergeant Brown said not to leave messages]" several organizations have not-leaving-messages policies, but this error in fabrication is rather telling as King's County imputed their own response to the 81st Precinct. Plaintiff was never offered and never left Sergeant Brown a voice message, Plaintiff does speak of a direct communication to Sergeant Brown on January 8th, 2015, which Barosi et alia carelessly assumed was a voice message---Sergeant Brown spoke with Plaintiff in the call on January 8th, though Plaintiff did almost all of the talking a delivered a succinct remarks attempting make Sergeant Brown question his motivations in injuring Plaintiff, et cetera, which Sergeant Brown heard before ending the call.  Barosi et alia did not consult Sergeant Brown in the

---

[208] though full pleading of this fraud is taken away given need for such as impeachment, et cetera. [sloppy sentence]

fabrication as they have already correctly decided Sergeant Brown's career with the NYPD is over, and fabricated statements of the penultimate King's County representative, i.e. the advocate representing King's County on November 9th, 2015 against Plaintiff, which he did not come close to saying on November 9th, 2015 as if the penultimate representative of the County had said such then: Sergeant Brown would not have said to the King's County (District) Attorney's office that Plaintiff should not leave messages as Plaintiff had not left him a message, did not know that he had voicemail, Plaintiff did not leave general voice messages or voice messages for Chief Inspector Scott Henderson, Plaintiff did make general communications and ascertained certain things had been conveyed to Chief Inspector Scott Henderson, and followed up with Detective Thomas Fellows as the Precinct directed, but not after Detective Thomas Fellows stated he was not going to take any steps to investigate as such a complaint needed to be assigned to someone as a matter of course[209] for any such report to a precinct of crime [vocabulary use of "complaint?"] in regard of the generally-known interests of the precinct.  Nothing Mr. Appel could have hear on November 9th, 2015 could have been put into notes resulting in such a transcription: Mr. Barosi et alia Defendants had significant reason to insert such fabrication and unique reasons to make such errors as puts Defendants' tampering beyond reasonable doubt. Tampering with evidence in attempt to react to prosecution for Section 1985 (2) violation of directing Ms. Doreen Ierardo to insinuate destruction of the same

---

[209] when Plaintiff's complaint regarding trespass of chattel and conversion (see ¶ []) while Plaintiff was confined by the State was passed to him after being received from intake as Detective Fellows was known by Chief Inspector Henderson to perform the sought deprivation of Plaintiff's of Constitutional rights.

transcript and obstruct others, see ¶ [], that production of tampered record would pose as partial resolution of the particular Section 1985 (2) claim,[210] itself a subsequent supplemental claim via Section 1985 (2) and otherwise (see ¶¶ []), is not an advocacy function of a case of the people of King's County's business—quite a-judicial considering the roots of what can be protected of people's advocates' conduct. Considering the (see ¶ [] general [concerning quotation that pecuniary damages are about the only measure available] resort to pecuniary damages given difficulties of injunctions addressing unconstitutional conduct, addressing intentional torts by the King's County (District) Attorney's office should be significantly punitive pecuniation given the complexity of addressing the County Attorney for intentional tort, which Plaintiff presumes is more difficult than in addressing intentional tort by police.

1386.    Background to there-is-one-unus-est. After Defendants' malicious-effected substitution of Mr. Gutman, Plaintiff felt it urgent to make a new Complaint to IAB about IAB inaction regarding IAB findings that Sgt. Brown was not on duty.

---

[210] As Plaintiff spoke of in May 7th notice of Plaintiff's preliminary statement of such claim and intention to separate Jury Trial for the claim to occur (for damages to have accrued up to the point of concessory production or time of the immediate—upon scheduling of depositions and other business to keep consolidated schedule given Plaintiff's travel, i.e. that depositions, hearings, and the first separated trial occur within the same span of time that travel arrangement can be consolidated as having to make such travel is itself part of the unconstitutional seizure that continues—Plaintiff specifically noted that if the transcript were produced upon Plaintiff's notice of intent to separate and bring about immediately jury trial regarding the counts (see ¶ [] and the attached petition for separated trial) that damages would be sufficient to cover the elapsed time prior to production). Currently, the transcript is only partly produced—as to the current standing of the transcript see the attached Motion to Restrict Defendants or anyone from obtaining the tampered transcript.

1387.    Background supplement to ¶ [] malicious and false use of process.  Immediately after being permitted to exit 110 Schermerhorn, Brooklyn on October 9th, 2018 in return for Plaintiff's silence, at the top of the subway exit of the West Fourth Street stop at West Third Street and Sixth Avenue where a man of a-few-inches-of-five-eight in height and medium skin color held out an approximately-inch-and-a-half-square transparent plastic bag of what he identified as crack very directly and deliberately to Plaintiff; Plaintiff refused.  Ironically, when Plaintiff first lived in New York for a month in 2006, as discussed in ¶ [],Plaintiff has never had any incident similar to this approach with an offer of free crack made on October 9th, 2014 as Plaintiff first exited the subway some matter of minutes whence exiting 110 Schermerhorn as addressed in the first sentence of this paragraph.  It was obvious to Plaintiff that such was likely a product of whence Plaintiff had just exited—the man not treating Plaintiff indifferently with respect to Plaintiff's identity.  Plaintiff can not report crimes witnessed given standing danger from police as addressed in ¶ [], a New York attorney warned Plaintiff that if this attorney were in Plaintiff's shoes a la the NYPD this attorney would fear being shot—a begrudged criminal pretext creating a potential increased likelihood of such a concern.  Plaintiff has never been in the identified presence of crack, so the shear mathematical odds that this occurring upon exit of 110 Schermerhorn combined with the direct, personal approach of free product make such either evidence of the defamation injury or worse.  If that crack-offerer was police than he and anyone to be involved with such targeting would be named Defendants.

1388. Background CoA[Θ]yuvfoh (i.e. Investigative) Internet is rightly of significance relevance to scene as Plaintiff has frequently stated: Ms. Scarcella unintentionally highlights this in the Complaint Room Screening Sheet by stating such is the circumstance of contact on October 8th 2014, the TPO (if that means time, place, occurrence): as such, a reasonable inquiry ex post facto (to reverse disposition) would have needed to go over such. Defendants story screams with falsehood as a matter of law: the Internet cost $55 total—so why would a 4-way split cost 3 persons $25 each: et cetera, as Plaintiff has numerous times documented with entire consistency. The $55 alone demonstrates Ms. Obi is being false—Plaintiff's worksheet and other evidentiary material support the situation being as Plaintiff originally documented in privileged material and as Plaintiff has always maintained. Such an objective falsehood concerning the primary matter of the TPO being given the KCDA oath of asseveration is by itself a strong indicator that what investigation the Fourth Amendment requires and Procedural (Plus) Due Process requires did not occur as this nail-up-from-the-floor-obvious hazard was imbibed and broadcast by Defendants.

1389. Background to ¶ 24: IAB insisted ¶ 24 was lying upon full investigation, while reserving belief, Plaintiff held this until it became beyond all reason after continued cover up activity [list written] brown & h no memos.

1390. Background to Lieutenant Parese call. Lt. Parese and Plaintiff conversed considerably on how Lt. Parese had filed the entire file under the complaint focused on the discovery by ¶ 24 that Sergeant Brown was not on duty on the evening on October 8th, 2018, when he appeared at 677 Quincy Street, Brooklyn,

that ¶ 24 had triple-checked all of the paperwork related to that shift and Sergeant Brown's name was not there, the position was carried out by another police.[211] That the City does not want federal evidence of IAB conspiring to fabricate police documents, et cetera, to cover up municipally-backed-furthered-and-sustained criminal privileges is rather further sustained by the City's statement that the prior interview is the only. [Separate into additional point:] IAB interrogatory techniques indicate the believed ¶ 24 reported Sergeant Brown was not on duty. Plaintiff asserted as explained to IAB previously that Ms. Obi would be easy to interview and have fold upon quick initiation of interrogation: that she would admit perjury, Sergeant Brown criminality, coordination of other police in furtherance of sex-bribery-et-alia-policy, and identify the sex-bribery ring of which she was part—putting the whole thing on the plate for an hungry IAB to expose and correct. As Plaintiff has asseverated, Lt. Parese was only interested in discovering whether Plaintiff was filing a suit and the identity of the detective that was Plaitniff's last contact with the 81st.

1391.  Background to Municipal Policy: Notable Extrinsic Federal Evidence in Anti-Miscegenation suit involving Policewoman [A Lieutenant? At a Manhattan precinct.] antimiscegeanation which is noted in recent $15 MN USD lawsuit concerning workplace discrimination of antimiscegenatory nature;

---

[211] Plaintiff has adopted the use of "police" as directed by Internal Affairs in one of the phone conversations, discussions, and reports via telephone that individual police are correctly referred to by rank or use of the term police, generically, but that it is improper to refer to a police generically as "officer," a practice which Plaintiff had always thought of as politically correct and commonplace in legal texts; Plaintiff faithfully thence adopted and uses "officer," "police," and rank designations in deference to IAB advisement of protocol.

1392.   Background regarding the Kyocera ejectum in question and possession issues: at least seven distinct justifications for Plaintiff's reception of the ejectum as has been asserted.

1393.   Background to (27 hours in coerced custody) exhaustion of remedies or otherwise sectioned or categorized—point concerning final October 8th text message. Plaintiff sent the text message that Plaintiff had worked on in the IKEA parking lot shortly after C&C arrived and then one stepped out and returned saying the Boss knew everything and ; Plaintiff stated to IAB that text message was an effective time stamp of arrival as Plaintiff wrapped up a conclusory reference to Ms. Obi's earlier events and sent while Officers Caracciolo and C announced wait for Sergeant Brown.  C or C did not actually radio or such would have been time stamped and unavoidable fact of timing lied about[—though there was some radio to get there, unless it was cell phones.]

1394.   Background to Tomasello.  Upon reporting trespass of chattel and provocative message-sending conversion at 81st, received by the intake officer with sincere concern, Plaintiff was directed to call back and inquire as to the identity of the Detective to be assigned.  Plaintiff subsequently did as instructed and was, after delay, instructed to contact the assigned Detective, Detective Tomasello, after he had some time to investigate. Plaintiff followed up and inquired for a Detective Tomasello and was told there was no Tomasello; Plaintiff said this was impossible, that Plaintiff had written down the name, et cetera.  Plaintiff was put on hold; then the police said, oh, you meant Detective Thomas Fellows.  Plaintiff was not going to quibble over games, but was concerned about the due

policework the claim merited and thence began communications to Glenn Tomasello as if his name were Thomas Fellows. Detective Tomasello, as the fake Detective Fellows told Plaintiff to call back after two weeks [phone records will indicate precisely], Plaintiff did so and was, again, by the same man, who is now known to be Det. Tomasello, to call back. Finally, after several total calls following up on the preceding call-back instruction, Detective Tomasello, referenced precinct coordination against Plaintiff and stated he was not investigating anything he was supposed to by no other reason than supporting the precincts coordinated activity against Plaintiff. Detective Tomasello said that Plaintiff certainty that Ms. Obi performed the trespass and conversion of Plaintiff's chattel did not matter, as Det. Tomasello already had determined he would do nothing. Plaintiff shortly requested a different Detective be assigned as Det. Tomasello was refusing the slightest investigative action over the deliberate destruction of around $2500 worth of chattel[212] not including intellectual property and with damages going far beyond considering the impact to Plaintiff's activities and the mental anguish of, under the circumstances of Title 42 corruption, Plaintiff's personal chattel being trespassed and converted.

1395.   Background to Counts        C & C were neither shown nor observed any bruising, et cetera, or the slightest manifestation of physical harm to Ms. Obi, but

---

[212] a large screen Samsung laptop, which was then about two years old, with no defects or malfunction, and containing intellectual property and of vital use in Plaintiff's business, and around thirty dollars worth of Starburst candy which Ms. Obi had demanded Plaintiff give to Ms. Obi to spoil, i.e. favor with treat, Ms. Obi as a gratuitous-injury criminal-signature-gesture from Ms. Obi as an I-trespassed-and-converted-your-chattels-signature—Ms. Obi had not demanded the Starbursts in the presence of others, cashmere sweaters of Plaintiff, and Plaintiff's Ipad charger—which is of ready street cash resale value.

did observe the black-eye-clear-as-daylight scratch across Plaintiff's face that Ms. Obi had inflicted upon Plaintiff qua State-action.

1396. Background to Counts Casciola forgot to erase or spoil the electronic record of ¶ 27 which states that Ms. Obi's demand that Plaintiff be cited for sending a series of defensive text messages (Ms. Obi had been very interested in spying into Plaintiff's personal life and relationship (e.g. commenting on Plaintiff's text messages with Plaintiff's extremely private social text messages with certain young woman as an absolute violation of Plaintiff's privacy by Ms. Obi's accessing Plaintiff's phone without Plaintiff's consent, assent, knowledge, permission, or approval (as Plaintiff immediately set down in confidential-privileged paper) that Ms. Obi intended Ms. Obi's extortion to be based in a claim of relationship between Plaintiff and Ms. Obi—thus the text messages served to demonstrate interpersonal communication which could inoculate such a Jerry Springer-Maury claim.  The harshest thing Plaintiff stated in the text messages was that in Plaintiff's limited knowledge of criminology, it seemed as though Ms. Obi's criminal habits might only be resolved by penal reform and that it might be wagered that Ms. Obi had a fifty percent chance of not accomplishing or receive the reform Ms. Obi needed without penal reform (Plaintiff had not yet been informed that Ms. Obi had just gotten off of a three-year probation per a violent felony-charges plea deal). Was such nice? No—and yet—yes.  Plaintiff expressed that Ms. Obi's conduct was shocking and appalling—that closure of the acquaintance was made without straying from the strictly platonic as Plaintiff had become all the more insistent as Ms. Obi's conduct became increasingly

problematic—including matters to be discussed under the mutual protective order (¶ 25) to best mitigate risks (see Privacy Declaratory Judgment)—which Plaintiff politely turned down. Suffice it to say that Ms. Obi said the text messages, which were made October 7th 2014 had upset Ms. Obi and even if there was nothing the Officers were by law allowed to cite Plaintiff for October 8th Ms. Obi demanded the Officers cite the text messages (hoping to appease Ms. Obi that after an hour of bizarre complaining patently without cause and giving every reason to have less than a five percent chance of subsequently uttering a credible allegation after Ms. Obi's successive retractions of allegations after periods of ten to fifteenth minutes thinking in silence about what to make up next: i.e. Ms. Obi asserted one, then retracted one and admitted assertion one was false, idem two, idem three, and so on: behavior certainly caused by Ms. Obi trying to posture for a situation that would give Sgt. Brown the best situation with which to racketeer, et cetera: ¶ 27 told Plaintiff that Plaintiff could include any explanation or defense Plaintiff had for the text messages with Plaintiff's communications to the same judge who would provide Plaintiff with restraining order protection from Ms. Obi, et cetera. Plaintiff did not explain the context of situation much beyond explaining that Ms. Obi was scheduled to be removed the next day which would rather end the most immediate concerns—¶ 27 understood that Plaintiff clearly needed and wanted safe passage until then and that Plaintiff certainly wanted to avoid Ms. Obi for the remaining time; as Ms. Obi had been charged with a potential year in jail Class A Misdeamoner for Ms. Obi's confessed homicidal attacking of Plaintiff, which ¶ 27 furthermore witnessed in the latter of the three forms, an hour earlier—

Plaintiff saved Plaintiff's breath for the judge—it was obviously in Ms. Obi's vein and far-off searching for the least-unworkable fabrication that Ms. Obi would attempt to use any further debating of Plaintiff towards Ms. Obi's fabrications— and thus as ¶ 27 clearly said the matters were furthermore for the judge as police business was closed Plaintiff did not articulate the apparent Defense that given the State-action extortion of Ms. Obi and other serious criminal State-action misconduct of Ms. Obi that Plaintiff's text messages were actually considerably blunted rather than sharp and such was not a cause of downfall of a situation, but rather putting Plaintiff's defensive articulation into text—Plaintiff was deliberately made to fear for Plaintiff's safety with Ms. Obi's State-action invasions and theft and thus articulating the standing and proper accusation of Ms. Obi's criminality into writing simply provided temporary necessary relief given the heightened threat of Ms. Obi Oct 7th 2014 announcement of extortion by misappropriated recordings immediately prior to Plaintiff's text messages of that day sent within a short sequence somewhat piecemeal.  Officer Caraciolo forgot to erase that the text message like-a-"parking ticket" citation for something which Plaintiff did not discuss having sent or submitted with the Officers making no fact of Plaintiff sending any texts to Ms. Obi other than Ms. Obi showing Officers text from someone presumably named by Plaintiff's first name in Ms. Obi's phone— Plaintiff made no recognition as given the text messages' content, purpose, function, and general benignity—Ms. Obi's quest for an accusation falling to such did not raise Plaintiff's concern to comment. Plaintiff discussed such on recording line with Sgt. Rosello (particularly, and otherwise elsewhere) and Defendants

attempts to refuse production of such by committed Obstruction of this Federal Proceeding by falsely asserting (see the inherent power sanction motion of the instant Filing).   Officer Vasco entered the text message complaint by Ms. Obi (image if everyone who said something as harsh as you-might-need-criminal-justice-system-reform-to-straighten-you-out to someone who had committed crimes against the speaker and was threatening further was given a ticket—there is nothing wrong with such a defense as putting a criminal on notice that the criminal justice system is there and that if the criminal does not cut it out the government is likely to end up determining the system needs to be applied upon the criminal); ¶ 27 heard Ms. Obi's side of the text message issue and without hearing from Plaintiff said, effectively, if we give the opportunity to voice such a complaint will you, Ms. Obi, give it a rest so that we, ¶ 27, can get out of here knowing that you, Ms. Obi, have been warned enough that we, ¶ 27, are confident Ms. Obi will not continue crimes against Plaintiff through the next day. ¶ 27 entered the text message complaint as "ready for sign off," which Defendants, including Defendant Casciola, tried falsely represent without realizing that the "ready for sign-off" had been accidentally left on one of the forms sent in the 03h25 et sequent fax of October 9th, 2014.  Plaintiff would reference Plaintiff's Declaratory Judgment with the February 20th, 2019 Extrapolation of the January 18th, 2019 Complaint and Plaintiff's description in Plaintiff's May 7th 2018 Filing on how Defendants had Plaintiff leave Plaintiff's phone while Plaintiff was unconstitutionally seized at the precinct without explanation that Ms. Obi could send text messages from Plaintiff's phone giving a

pretext for the racketeering end already chosen by ¶ 28, for the further injuring of Plaintiff.   [Specific reference] .   When one is put under proven threat of criminality by another—it is a legitimate defense for the one to warn the other of potential consequences to continued crime.  Plaintiff did not say: I am going to prosecute you; Plaintiff's comment was: kid, you're acting like the only way you'll straighten out is law enforcement's hard way.  Paragraph Twenty-Seven said the judge would deal with comprehensive relief and thus when Ms. Obi complained the prior-day's text messages where mean, and it would have taken much explanation to recount the entire situation of Ms. Obi's criminality which led up to the text messages and given the risks of unnecessarily informing a fabricator and ¶ 27 stating that the text message issue did not reflect on any matters of October 8, 2014.

1397.   [Removed from CoA] Failure to Train As a result of the parallel corruption track of operations to those more conforming with Constitutional operating requirement under the Amendment XIV to the United States Constitution, expressed accurately as an effect of the agency of command qua the corruption racketeering enterprise: standards of training are lowered that the distance for a recruit, not outright or expressly recruited for willful racketeering operations functionality; both by generally dulling and numbing the trainee population's from fierce belief in Constitutionality as can be accomplished by this general malaise the racketeering and otherwise corruption activity has a less hostile environment in those police not, or less, participatory in corruption and racketeering. Furthermore, standards of training are lowered to more easily include trainees and

trainee actions into deliberate and non-deliberate-occasional acts of racketeering and corruption, i.e. where the control or non-infected with corruption and racketeering is closer to the corruption or racketeering participation, it is not only closer to the racketeering or corruption that there is less distinction to object to from those lower level police who would object (as described in the first sentence of the instant paragraph) but it is less of a distinction or distance to overcome to obtain the participation of those who would fall to the parallel track of corruption or racketeering participation in non-deliberate occasional or deliberate participation or corrupt or racketeering leadership.  The police command training of racketeering, deliberate Substantive corruption, outrage, and conspiracy (both of such are CoA[X]) participants is under CoA [A], CoA [Θ], CoA [X] (at ¶ [] and ¶ [], respectively) et cetera in certain considerations of liability brought under the stated Cause of Action as mostly opposed to Failure to Train  (CoA []) as Failure to Train may primarily be brought simply to address (as is generally found to the extent stare decisis generally describe a species of Constitutional deprivation) a deficit of needed affirmative training to do and not to do: as opposed to the training of Defendant commanders to do deliberately do wrong; thus Plaintiff considers that as Cause of Action are set forth as functions describing components of Defendant activity in tort and Constitutional deprivation of Plaintiff causing damages, Plaintiff would apply these three CoA [] failures to train, supervise, and discipline (at this point Plaintiff is entirely ignorant of hiring procedures of the NYPD and if a pertinent claim arose in Discovery such would relate back—Plaintiff has particular reason to inquire about

the background of Inspector Butler as Plaintiff believes Inspector Butler was hired to assistant racketeering activity and corruption from within the CCRB in addition to the CCRB failures to train, supervise, and discipline such as Defendant Inspector Butler (see Claim [] at ¶ []).

1398.   Ms. Obi prior residential incident of August 2014 resulting in emergency situation.

1399.   Unconstitutional capture, storage, organization, and retention of data from operations.

1400.   That Defendants' left blank "Miranda given by:" because Defendants had not—rather than calculate a best fraud—Defendants hesitated and left the form blank.

1401.   Background to Counts: Sgt. Brown's happily after ever comment was purposed to test that Ms. Obi's hatred was resolved.  To smoke out a confidence level on Ms. Obi's position as Sgt. Brown knew that Ms. Obi's dedication was a matter of security for Sgt. Brown going forward.  Plaintiff has described how awkward, strange, apparently-baseless this comment was and its function as a part of the pre-medittaed contrivance as it is admitted earnest research was evaded, avoided, and obstructed by Sgt. Brown.  Sgt. Brown wanted Ms. Obi's response a a measure upon which Sgt. Brown could estimate Ms. Obi's comittement, as Sgt. Brown considered Ms. Obi (in the world of fraudulent police racketeering furtherance pre-baked) and to create a suiting mood for the sex bribey exchange. Inspector Butler committed tort in trying to spin false paraphrase that would lead Defendants in interviews to no avail.  Plaintiff has further asserted Sgt. Brown may have concurrently strategized such a comment would confuse

1402.   Inspector Butler general background details including observations in
        conversations inclining to finding of intent to serve Defendants [Butler in CCRB
        interviews, each interview the prejudicing conduct] []

1403.   [Removed from ¶ 104:] It is of great evidentiary degree that Plaintiff captured the
        events of September and October of 2014 in privileged, i.e. as readers are aware,
        identified in disclosure, but exempt from production (though Plaintiff may
        produce as many parts are necessary after such as depositions) written word—no
        other documents than Plaintiff can compare per the substance, fibers, literal
        meaning, spirit, intelligence, et cetera of the Federal Rules of Evidence: such
        importantly regard a lay document differently than one formed from legal
        knowledge: such, with other evidentiary material, assures Plaintiff's assertions.
        Defendants' municipal racketeering the cause of Ms. Obi's practice of criminal
        and tortious disposition: and caused Ms. Obi's tortious and criminal violations of
        Plaintiff—license in terms of State action usually involves discussions about how
        government permitting is not permission: what Ms. Obi demonstrated and stated
        Ms. Obi had obtained: Ms. Obi's police sex bribery was a sure, recruited
        guarantee of a get-out-a-jail-free-plus-State-fraudulent-arrest-of-Ms. Obi-
        victim's: such was the precise and certain terms Ms. Obi was so confident in that
        Ms. Obi was literally discussing its use in having just committed a crime against a
        student at Brooklyn College (which Plaintiff reported out of duty and from having
        served as an academic integrity elected official offended by Ms. Obi's criminal
        retaliation against a victim who refused to give Ms. Obi answers: Ms. Obi
        gloated to Plaintiff and the 9-1-1 caller about how [move to State Action

discussion ¶ [99?] Ms. Obi had secreted the lab report of Ms. Obi victim from the instructor or professor's desk and destroyed it—Plaintiff's report was to serve as valuable information to the instructor or professor, victim student, and institution that the lab report was submitted and there was not mystery or blame to spoil the work of the victim student and professor or instructor: Plaintiff conveyed the report precisely as such—as Plaintiff documented).

1404. Sex bribery with Anna Chapman of Hall and

1405. Appropriately considered public interest as Plaintiff found the matters potent for Swift-Pope-type critical poetry of which Plaintiff had never so particulary endeavored to apply Plaintiff's potential in such vein (late May 2015).

1406. Recordings protection measure employed by Plaintiff, also redressing Ms. Obi fault pursuant to the landlord agent's pronounced attempts to seek Ms. Obi to make sufficient apology from criminal misconduct (serving the landlord agents' interests in avoiding the statistical negative mark of having to alter a lease and remove home equity collateral (Ms. Obi's parents out-of-state) from the portfolio).   Text messages should be reviewed only with regard to the extremely prejudicing circumstances followed as a result of Defendants tort—given such, as the text messages do not show clear violation, review should be truncated with such a conclusion inferable from self-defense and appropriate vindication from Defendant's caused tortfeasance.

1407. [Plaintiff could not have created a story with the instant Action in mind, Plaintiff was clearly ignorant of the applicable law (as Plaintiff understood was essentially the professional treatment of a professional—not to seek knowledge the fiduciary

should know—though the fiduciary should be able to explain for the lay client how things should work with respect to needs and information]

1408.   Processing police member saying you are getting the drubbing irrespective of your actions.

1409.   Time of held at 81st—there being no identification of designating the agent of Plaintiff's being removing-seized.

1410.   Cited *only* for menacing as being liberal to keep the action under felony and to provide for Plaintiff's needed protection after Ms. Obi's scheduled removal the next day.

1411.   Summary of important ¶ 22 exchanges [compare to email]

1412.   Ierardo [Chi] prior general based on Plaintiff's comments, plan particular to Plantiff prior to 8 Feburary 2018, particular exchange after—particularly upon emphasized follow-up after period  instructed that follow up may be necessary after two weeks if there have been no calls, targeting, mail room, tampering. Reference Filings to Court and Third Parties that need to be prevented from disclosure given spoliation risks to the public, et cetera.  [Move to CoA section and footnote?]

1413.   Explain process from presuming that Defendant Brown was an affiliate for the recipient of the police sex bribery and that Plaintiff would need both phone records to find the police sex bribery recipient who requested the action from Defendant Brown.  When Defendants denied Defendant Brown's presence the plausibility that an intermediary would have been more likely used was eviscerated: risks of concealing the presence of a police member were far greater

than risks considered safer of the police sex bribery recipient using an intermediatry.  Furthermore, the location was not cheaper for Ms. Obi and was not convenient for Ms. Obi: it was chosen to be within the precinct that Ms. Obi intended to most likely use it as encouraged by Defendant Brown—it took Ms. Obi an hour to get to school from the location—which otherwise did not have any draw for Ms. Obi—similar, nicer, and less expensive areas were located at much more convenient locations and Ms. Obi's language indicated the cause was to be in Defendant Brown's precinct—considering occasions (before Ms. Obi explained the police sex bribery contract, admissibly, et cetera) when Ms. Obi discussed how there was only one reason to be so far away from school to make such a hastle worthwhile, but not wanting to reveal, at the time, that cause.  Furthermore, Defendant Brown was not on duty, according to IAB; furthmore, Defendant Brown was not allowed to be dressed on that day; furthermore, neither Defendant Brown nor Officer Hellberg (Defendant Brown's operator (driver) on 8 October had any memo book entries for 8 October 2014—according to Defendant Brown, Defendant Hellberg, and Defendant Butler on the audio recording of Defendant Butler's interviews of those two—which Defendant Butler filed a CCRB report concerning for disciplinary consideration against Defendants Brown and Hellberg; furthermore, Plaintiff called Defendant Brown on 8 January of 2015 and had Defendant Brown confirm recall the removing-seizure of Plaintiff from 677 Quiincy on 8 October 2014, which Defendant Brown did.  Plaintiff then related to Defendant Brown how Ms. Obi had explained the police sex bribery contract that Ms. Obi had with Defendant Brown prior to 8 October 2014: Defendant Brown

did not deny the occurrence, and immediately after the call—exited the 81st Precinct to use Defendant Brown's cell phone; furthermore, Corporate Counsel, Mr. Rosenkide, Admitted in late October 2017 that Defendant Brown and Ms. Obi did have a prior relation before 8 October 2014; furthermore, Defendant Brown relays on the CCRB interview of Defendant Brown that Defendant Brown was not really supposed to appear at 8 October 2014 and that it just sort of happened that day that Defendant Brown needed to appear—in sum and substance, like an aligning of stars; furthermore, the CCRB of Ms. Obi considerably indicates that Ms. Obi's only substantive contact, interaction, and relation was with Defendant Brown, whom Ms. Obi disrobed for privately in Ms. Obi's bedroom (at the same time chronologically as Plaintiff has always decribed as is consistent with Defendant Brown's CCRB interview); furthermore, et cetera [the preceding phrases are not in any particular order]. All of the preceding phrases and sentences of the instant paragraph entirely accord with all evidentiary materials—particularly with respect to chronology, et cetera. As there was the opposite of a finding of any innocence of Ms. Ierardo, in Ms. Ierardo's subsequent interaction with Plaintiff: Ms. Ierardo was soaked with guilt in, after ignoring Plaintiff's call concerning confirmation Plaintiff had received confirming Plaintiff's ready-drawn funds, Ms. Ierardo stated that she had not checked mail for a week, et cetera as described,

1414.    That Mr. Harvitz expressed as last breath upon Mr. Harvitz' animosity upon breaking (the second time) his oral contract with Plaintiff: that Mr. Harvitz'

hostility was added upon with menace a specific individual, non-New York City politician.

1415. Defendants took language Mr. Appel, the person identified by the Court Reporters as the Reporter of the November 2015 Absolutely-Seizing (CoA [Z]) Appearance, knew to be of the Judge of the Day, Supervising Judge Yavinsky, (likely Judicially Noticable that Mr. Appel has many times records the frequently Sitting Supervising Judge Yavinsky—this attempt is rather belied by Supervising Judge Yavinsky's experience with Plaintiff, there is particular reason to suspect that Judge Yavinsky managed to Sit for the September, October, and November Seized-Appearances (CoA [Z]) et cetera, with the pattern as described considerably in the May 7th Filing of Plaintiff.

Sincerely with full asseveration of Complaint Pleading for Filing and Docketing in 17-CV-4519,

_____ /S/ _____ 9 September 2019
David Benson-Staebler                9 September 2019

612 West 5th Street Morris, MN 56267
917.960.1189 bensonst@gmail.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————X



David Benson-Staebler                                              :

                              Plaintiff,                           :

                    -against-                                      :                     FOURTH AMENDED

The Corporation of the City of New York;                          :                     COMPLAINT

NYPD Defendants: (Tax # in parentheses)                           :                     17-CV-4519 (AMD) (ST)
Sir William Bratton,                                              :
Commissioner James O'Neill,                                       :
Commissioner (Office)                                             :
Chief of Staff (for Commissioner Bratton)                         :
        John or Jane Doe 1                                         :
Chief of Staff (for Commissioner O'Neill)                         :
        John or Jane Doe 2                                         :
Police Administration Staff                                       :
        John or Jane Does (Twenty)                                 :
Police Operations Staff and Senior Systems                        :
        Administrators J. Does (Ten)                               :
Deputy Commissioner Reznick,                                      :
Deputy Commissioner IAB (Office)                                  :
IAB Command Center (all command or                                :
        critical operations personnel                             :
        John or Janes Yoes (Twenty)                               :
Internal Affairs Senior Management                                :
        John or Janes Yoes (15))                                  :
Deputy Commissioner, Information                                  :
        Technology Jessica Tisch                                  :
Deputy Commissioner, Counsel to Police                            :
        Commissioner Ashley Waters                                :
Deputy Commissioner, Legal Matters                                :
        Ernest F. Hart                                             :
Staff of Deputy Commissioner, Legal                               :
        Matters (Does [])                                         :
Deputy Commissioner, Risk Management                              :
        Jeffrey Schlanger                                         :
Deputy Commissioner of Intelligence                               :
        John Miller                                               :
Deputy Commissioner, Trials                                       :
        Rosemarie Maldonado                                       :
Retired Chief of Department Carlos Gomez                          :